1

2

3

4

5

**07-CV-00631-CMP**

_____ FILED      _____ ENTERED
_____ LODGED    _____ RECEIVED

APR 26 2007    DB

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

6

7

8

# UNITED STATES DISTRICT COURT

9

## WESTERN DISTRICT OF WASHINGTON

10

### AT SEATTLE

11

AMIGA, INC., a Delaware corporation,

**CASE NO.:**

**CV07 - 0631 RSM**

12

Plaintiff,

**COMPLAINT FOR DAMAGES,
SPECIFIC PERFORMANCE AND
INJUNCTIVE RELIEF
[JURY TRIAL DEMANDED]**

13

and

14

HYPERION VOF, a Belgium corporation,

15

Defendant.

16

17

Plaintiff Amiga, Inc. ("Amiga") alleges as follows:

18

1.    This is a complaint for injunctive relief, specific performance and damages for

19

breach of contract, trademark infringement, trademark dilution, unfair competition, replevin

20

and declaratory relief.

21

22

JURISDICTION

23

2.    This Court has jurisdiction over this action under 28 U.S.C. Section

24

1332(a)(2) (diversity jurisdiction), 28 U.S.C. Section 1331 (federal question jurisdiction); 28

25

U.S.C. Section 1338(a) (any act of Congress relating to patents, copyrights and trademarks);

26

28 U.S.C. Section 1367 (supplemental jurisdiction); and the doctrines of ancillary and

27

28

COMPLAINT - 1

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

**ORIGINAL**

Dockets.Justia.com

1    pendent jurisdiction.  The amount in controversy exceeds a sum or value of $75,000,

2    exclusive of interest and costs.

3                                              VENUE

4        3.        Venue is proper in this District pursuant to 28 U.S.C. Sections 1391(b) and

5
     1400(a) because a substantial part of the events giving rise to the alleged claims in this action
6
7    occurred in this judicial district and, by contract, the parties stipulated to jurisdiction and to

8    venue in this judicial district.

9                                             PARTIES

10       4.        Amiga is a Delaware corporation.  It is the successor in interest to all rights,

11   title and interest in the contracts referenced herein between Amiga, Inc, formerly a

12
     Washington corporation ("Amiga Washington") and Hyperion VOF.  More specifically,
13
14   KMOS, Inc., a Delaware corporation, acquired all the assets of Amiga Washington, including

15   the (OEM) LICENSE AND SOFTWARE DEVELOPMENT AGREEMENT, dated

16   November 3, 2001, in 2004.  On January 31, 2005, KMOS, Inc. changed its name to Amiga,

17   Inc.  Amiga, Inc. and its predecessors are collectively referred herein as "Amiga."

18       5.        Amiga is informed and believes and thereon alleges that Defendant Hyperion

19   VOF ("Hyperion") is a foreign corporation organized under the laws of Belgium with its
20
     principal place of business at Leuven, Belgium.
21
22                                  GENERAL ALLEGATIONS

23                                    **BACKGROUND**

24       6.        Amiga is a computer hardware and software development company known for

25   its ground-breaking technological advances in computer operating systems, wired and

26   wireless computers and devices and applications for the same.  Founded under the name Hi

27   Toro during the arcade and home video game craze in the early-1980s, Amiga's business

28

COMPLAINT - 2                          CABLE, LANGENBACH, KINERK & BAUER LLP

1  plan focused on developing and marketing computer software, hardware and peripherals

2  aimed at the home computing and gaming market.

3       7.      Amiga's operating system ("OS") claims lineage back to the highly acclaimed

4  operating systems for the original Amiga computers introduced in 1985 and subsequently

5  owned and distributed by Commodore and Gateway companies.  In 1985, Amiga delivered a

6  multi-function and multi-purpose computer.  Amiga's new computer, the Amiga1000,

7  featured a new, powerful operating system – originally coined, "Workbench," and later

8  referred to as the "Classic Amiga Operating System" -- that represented a quantum leap

9  forward.  Amiga's operating system software garnered praise in the industry for its

10 graphically rich, multi-tasking and multi-threaded system.  From its inception in the mid-

11 1980s, Amiga's OS has included unique and advanced operating features that far surpass the

12 competition.  Indeed, in the mid-1980s, when Macs could not multi-task and when PCs were

13 not using even rudimentary graphics, Amiga's "Classic OS" was performing multi-tasking

14 capabilities – the ability to run multiple programs at the same time – and contained features

15 for advanced graphics.  The Amiga computer and operating system thus won a devoted band

16 of enthusiasts.

17      8.      In subsequent years, through various changes in ownership, Amiga continued

18 to upgrade its Classic OS to provide even greater functionality.  By the mid-1990s, when

19 Amiga released OS 3.1, the Amiga OS was truly state of the art.

20      9.      Consequently, Amiga enjoyed great success in the mid to late 1980s.  Multiple

21 changes of ownership, and attendant changes in direction, however, stunted Amiga's growth.

22 Amiga experienced stagnant business and financial woes throughout the latter part, if not

23 most, of the 1990s.  Nonetheless, Amiga fans have remained loyal.  And, since 2000, two

24 individuals who were firmly associated with Amiga, Messrs. Bill McEwen and Barrie Jon

COMPLAINT - 3

1   Moss, along with additional financial backers, purchased Amiga and the company has been

2   positioning itself to comeback as an industry leader.

3       10.     Hyperion purports to be a software development company. Hyperion claims to

4   specialize in 3D graphics and the conversion of entertainment software.  Primarily, Hyperion

5   "ports" existing computer software (primarily games) from one hardware platform to a

6   different hardware platform.  As described more fully below, in 2001, Amiga and Hyperion

7   entered into a contract for, among other things, development of Amiga's next generation

8   operating system software, Amiga OS 4.0.

9

10      11.     At the time Amiga entered into agreement with Hyperion to develop Amiga

11  OS 4.0, Hyperion did not disclose to Amiga that Hyperion planned to sub-contract the most

12  important aspect of the software development to purported third party contractors.  In fact,

13  Amiga has learned Hyperion purports to have subcontracted the key piece of Amiga OS 4.0

14  development work – development of the "kernel" for the software, which is the heart of the

15  operating system – to two brothers, Messrs. Thomas Frieden and Hans-Joerg Frieden.  Even

16  worse, Hyperion falsely represented to Amiga that the Frieden brothers were Hyperion

17  employees and *not* subcontractors with whom Hyperion would later attempt to contract away

18  a portion of Amiga's intellectual property rights in Amiga's OS 4.0.

19

20                              **THE AGREEMENT**

21      12.     On or about November 3, 2001, Amiga Washington and Hyperion entered

22  into an (OEM) LICENSE AND SOFTWARE DEVELOPMENT AGREEMENT (the

23  "Agreement") whereby, among other things, and subject to Hyperion's performance of its

24  various obligations, Amiga granted Hyperion a license to develop the next generation of the

25  Amiga operating system, OS 4.0 and OS 4.  The Agreement was to continue indefinitely

26  unless terminated by either party for material breach.  A true and correct copy of the

27

28

COMPLAINT - 4

1   Agreement is attached hereto as Exhibit A. Development of OS 4.0 was, and remains,

2   critical to Amiga's plans and its re-emergence as a major force in the computer industry.

3   Hyperion assured Amiga that among other things, it was equipped and capable of delivery on

4   all of its contractual obligations.

5

6       13.    Under the Agreement, Amiga granted to its contract developer, Hyperion,

7   access to, and a limited license to use and modify, Amiga's source code for its Software

8   (defined by the Agreement as the source code for OS 3.1 and related updates). Amiga

9   retained all ownership interest in its intellectual property assets, including its source code.

10  Additionally, under the Agreement, Amiga retained the right to acquire the intended output

11  of the Agreement: the intellectual property assets, including source and object code, for OS

12  4.0 upon the one-time payment of $25,000 (USD) to Hyperion. The Agreement

13  unambiguously provides that Amiga shall retain ownership of its existing intellectual

14  property and have, at its sole option, the right to acquire the intellectual property, including

15  source and object code, for the Amiga OS 4.0. [See Agreement ¶¶ 2.06, 3.01].

16

17      14.    In exchange, under the Agreement, Amiga provided Hyperion three limited

18  licenses to use Amiga's intellectual property. First, Amiga provided a non-exclusive license

19  to access, use and modify, Amiga's Software (again, defined as the source code for OS 3.1

20  and related upgrades). Second, Amiga provided an exclusive license to market and distribute

21  OS 4 (defined as any version of the classic Amiga OS developed by Hyperion under the

22  Agreement) and OS 4.0 as (1) a stand-alone version for the Target Hardware (meaning that

23  Hyperion could market and sell the OS 4 and OS 4.0 software to consumers with computers

24  that use a certain processing chip, called the powerPC, within the Amiga platform), and (2)

25  as an original equipment manufacturer (OEM) version shipped as part of the Amiga One

26  computer (meaning that Hyperion could market and sell OS 4.0 as part of a pre-installed

27

28

COMPLAINT - 5

package with the Amiga One computer).  Finally, Amiga provided a license to use Amiga

trademarks in conjunction with marketing and sales efforts concerning OS 4.0 as bundled

with the Amiga One.  [Agreement ¶2.01].  The Amiga One computer is manufactured by

Eyetech Corporation, which is also a party to the Agreement but is not named in this

Complaint.

15.    The Agreement did **not**, however, grant Hyperion any rights to market and

distribute OS 4 and OS 4.0 for use on any other computer platforms (which are frameworks

that allow the software to run, such as computer operating systems) or to be installed in any

other products.  The Agreement also did **not** grant Hyperion a license to use Amiga's

trademarks outside the Amiga One platform.  Consequently, Amiga reserved for itself the

exclusive right to market and distribute OS 4.0 for all other platforms and the exclusive right

to control its brand and image through the use of its trademarks in all other platforms.  Amiga

also retained ownership of its intellectual property and reserved, at its sole option, the right to

purchase all the intellectual property, including the source and object code, for Amiga OS

4.0.  [Agreement ¶¶2.01, 2.06, 3.01].

16.    Hyperion, during the term of the Agreement, has marketed OS 4 outside the

scope of its narrow license granted by Amiga to Hyperion for other platforms, and, post-

termination of the Agreement, Hyperion has continued to market OS 4 and OS 4.0 without

any license from Amiga.  Hyperion has thereby materially breached the Agreement by (1)

using, during the term of the Agreement, Amiga's trademarks in the marketing of its products

outside the scope of its licensed Amiga One platform, and (2) using, post-termination,

Amiga's marks without any license from Amiga.  In short, Hyperion's unauthorized

marketing constitutes a material breach of the Agreement and infringement of Amiga's

trademarks.

COMPLAINT - 6

17.    Most recently, Hyperion has compounded its bad acts by purporting to enter into an "strategic partnership" with a third party, ACube Systems Srl ("ACube"), whereby Hyperion purports to grant ACube rights to distribute OS 4.0 on a worldwide basis for "a range of PPC hardware platforms." Amiga has not consented to or licensed such use of Amiga's software code. Hyperion's recent actions further compound Hyperion's breach of the Agreement. In direct violation of Paragraph 2.01 of the Agreement, this "strategic partnership" purports to market and distribute OS 4.0 and use Amiga's trademarks beyond the scope of the license. Moreover, Hyperion's actions misappropriate Amiga's exclusive right to obtain a "first to market" position.

18.    The Agreement, as noted above, also provided that, anytime prior to, or six months after, completion of OS 4.0, Amiga, at its sole option, could purchase for $25,000 (USD) the intellectual property, including the source code and object code for, Amiga OS 4.0. Hyperion acknowledged on multiple occasions, in separate signed written agreements, its obligation to deliver the code and rights to OS 4.0 upon payment of $25,000 (USD) by Amiga. Despite Amiga's payment to Hyperion of $25,000 and its request for the intellectual property for Amiga OS 4.0, Hyperion has failed and refused to turn over the intellectual property, including the source code and object code for OS 4.0. These intellectual property assets were bargained for, paid for and are now owned, but not possessed, by Amiga. Hyperion's failure constitutes, at a minimum, a material breach of the Agreement.

19.    The Agreement contains a number of other material provisions that Hyperion has breached. For example, under the Agreement, Hyperion was required to use its "best efforts" to ensure that Amiga OS 4.0 was ready for release by March 1, 2002. In breach of the Agreement, however, Hyperion did not use best efforts to ensure that Amiga OS 4.0 was ready for release before March 1, 2002. Indeed, Hyperion did not render Amiga OS 4.0

COMPLAINT - 7

1    ready for general release until December 24, 2006 – *after* the Agreement was terminated by

2    Amiga. Hyperion further breached the Agreement by claiming that its prior release of a

3    "developer's only" version (not suitable for mass distribution) satisfied its obligations.

4    20.    Pursuant to the terms of the Agreement, in November 2006, Amiga notified

5    Hyperion of Hyperion's material breaches of the Agreement and provided a Notice of

6    Termination under the Agreement. A true and correct copy of the Notice of Termination is

7    

8    attached hereto as Exhibit B. Because Hyperion failed to timely cure its material breaches of

9    the Agreement [*see* Agreement ¶6.02], including Hyperion's refusal to turn over to Amiga

10   the intellectual property, source code and object code for OS 4.0, Amiga terminated the

11   Agreement. Under the terms of the Agreement, the licenses granted by Amiga to Hyperion

12   
     do not survive termination. [Agreement ¶6.03]. Accordingly, all post-termination
13   

14   development or marketing by Hyperion of OS 4 and OS 4.0 products, as well as all post-

15   termination use of Amiga's trademarks, materially breach the Agreement and infringe

16   Amiga's trademarks and copyrights.

17   21.    Amiga has satisfied all conditions and obligations required of it under the

18   Agreement, except as to those conditions which have been excused.

19   
20              **AMIGA'S TRADEMARKS**

21   22.    On December 4, 1985, Amiga filed an application in the United States Patent

22   and Trademark Office ("USPTO") to register its house mark, "AMIGA," on the Principal

23   Trademark Register. Approximately, eight months later, on July 15, 1986, the USPTO

24   granted Amiga's application and registered on the Principal Register the AMIGA ® mark.

25   This mark issued as Federal Trademark Registration No. 1401045. This federal registration

26   for the AMIGA ® trademark covers computers, computer disk drives, RAM expansion

27   cartridges, computer monitors and computer modems in Class 9. This registration for the

28   

COMPLAINT - 8                                    CABLE, LANGENBACH, KINERK & BAUER LLP

1  AMIGA® mark has now achieved incontestable status. A true and correct copy of this

2  trademark registration is attached hereto as Exhibit C.

3        23.    On August 19, 1997, filed an application to obtain a registered trademark on

4  its logo, "POWERED BY AMIGA" and the design associated with that logo. The USPTO

5

6  accepted Amiga's application and entered this combined word and design mark was on the

7  Principal Trademark Register as Federal Trademark Registration No. 2369059. This federal

8  registration for the "POWERED BY AMIGA" trademark covers computers, computer

9  peripherals and computer operating systems in Class 9. This registration also subsequently

10  achieved incontestable status. A true and correct copy of this registration is attached hereto

11  as Exhibit D.

12        24.    On July 11, 2000 Amiga applied for another registration for "AMIGA", and

13  the USPTO entered the mark on the Principal Register on January 6, 2004 as Federal

14  Trademark Registration No. 2802748. This federal registration for the AMIGA® trademark

15  covers computer software used to facilitate development of software applications capable of

16  running on multiple platforms and other electronic devices and for operating system software

17  for personal computers and other electronic devices, in Class 9. A true and correct copy of

18  this registration is attached hereto as Exhibit E.

19        25.    Additionally, Amiga has filed applications to federally register its stylized

20  logo mark and "Boing Ball" logo. Amiga filed its application to register its stylized logo

21  trademark on July 28, 2006, and this application was assigned Serial Number 78/940,426.

22  The same day, Amiga also filed an application for the Amiga "Boing Ball" logo, Serial

23  Number 78/940,434. True and correct copies of the trademark registration applications for

24  the stylized logo and the "Boing Ball" logo are attached hereto as Exhibits F and G,

25  respectively.

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

26.     Amiga has expended substantial time, effort and money in the marketing and promotion of its computer software and hardware products under each of its famous trademarks discussed above.  Amiga has continually used its marks in the promotion of the goods associated with these marks on its website, by participating in tradeshows and in print advertising.  The Amiga name and associated marks have created substantial goodwill for the company and have garnered a cult-like following.  As a result of this longstanding use and promotion, Amiga's marks have achieved broad national recognition as identifying Amiga as the exclusive source of high quality computer software and hardware products.  Put simply, Amiga's trademarks distinguish Amiga's high quality goods from those of others.

27.     Amiga currently offers its products for sale over the Internet through its own website and third party websites. Amiga's computer software products, bearing Amiga's trademarks, are sold and shipped throughout the United States.

28.     Amiga is informed and believes and thereon alleges that Defendant Hyperion has produced, promoted, marketed and offered for sale, and, on information and belief, is still producing, promoting, marketing and offering for sale, software products bearing Amiga's trademarks, both beyond the scope of its licenses under the Agreement when that Agreement was in effect and after Amiga terminated all licenses to produce, promote, market and sell goods under the Amiga trademarks.  Defendant's use of identical Amiga trademarks to promote, market and sell certain of their computer software products in interstate commerce is likely to confuse consumers and actually dilute the distinctive quality of the Amiga's famous trademarks.  Amiga is further informed and believes and thereon alleges that Defendant has produced, promoted, marketed and distributed, and, on information and belief, continues, to produce, promote, market and distribute computer software products bearing the identical Amiga trademarks mark in interstate commerce that are directly competitive

COMPLAINT - 10

1   with, or at least highly related to, Amiga's computer software and hardware products.

2   Moreover, under the recently discovered "strategic partnership" between Hyperion and

3   ACube, Hyperion purports to grant ACube rights to distribute OS 4.0 on a worldwide basis

4   for "a range of PPC hardware platforms" under the Amiga trademarks.

5

6       29.     Amiga has not consented to Defendant's use of the Amiga's trademarks

7   beyond the scope of the licenses granted in the Agreement, nor at all following Amiga's

8   termination of the Agreement.  Amiga has not sponsored, endorsed, or approved the goods

9   offered by Defendant.  Hyperion's actions have caused and threaten to continue to cause

10  irreparable harm to Amiga.

11  ### FIRST CLAIM FOR RELIEF

12                      (Breach of Written Contract)

13

14      30.     Amiga repeats and re-alleges each and every allegation in the foregoing

15  paragraphs as though fully set forth herein.

16      31.     Amiga has performed all conditions, covenants and promises required to be

17  performed by it in accordance with the terms and conditions of the Agreement, except as to

18  those conditions which have been excused.

19      32.     By reason of Hyperion's foregoing acts and omissions and other past and

20  present acts and omissions, including but not limited to (a) Hyperion's failure and refusal to

21  relinquish the intellectual property, including the source code and object code, for Amiga OS

22

23  4.0 upon Amiga's timely payment and demand; (b) Hyperion's failure to exercise its best

24  efforts to ensure that Amiga 4.0 was ready for release before March 1, 2002; (c) Hyperion's

25  failure to release OS 4.0 at all during the license term; (d) Hyperion's development and

26  marketing of Amiga OS 4 and OS 4.0 for sales outside the licensed market, platform and

27

28

COMPLAINT - 11

1    term; and (e) failure to secure all intellectual property rights to OS 4.0, Hyperion has

2    materially breached its obligations under the Agreement.

3        33.    Hyperion's material breaches of the Agreement have irreparably injured and,

4    unless enjoined, will continue to irreparably injure, Amiga.  Damages alone are inadequate to

5    compensate Amiga for Hyperion's wrongful conduct, and Amiga is entitled to injunctive

6    relief.  Among other things, Hyperion should be enjoined from continuing to refuse to

7    provide to Amiga the intellectual property for Amiga OS 4.0 and from continuing to develop

8    and market Amiga OS 4 and OS 4.0 for sales outside the licensed market, platform and term

9    set forth in the Agreement.

10

11       34.    In addition, and/or in the alternative, as a direct and proximate result of

12   Hyperion's breaches of the Agreement, Amiga has incurred extensive monetary damages in

13   an amount to be proven at the time of trial, but in all events, a sum or value far in excess of

14   $75,000, exclusive of interest and costs.  Pursuant to the Agreement, Amiga seeks an award

15   of its reasonable attorneys and experts witness' fees and expenses.

16

17       WHEREFORE, Amiga prays for relief as set forth below.

18                        **SECOND CLAIM FOR RELIEF**

19                            (Declaratory Judgment)

20       35.    Amiga repeats and re-alleges each and every allegation in the foregoing

21   paragraphs as though fully set forth herein.

22

23       36.    An actual controversy has arisen and now exists between Amiga and

24   Hyperion concerning their respective rights in that Amiga contends that (a) Amiga has

25   performed all conditions, covenants and promises required to be performed by it in

26   accordance with the terms and conditions of the Agreement, except as to those conditions

27   which have been excused, (b) Hyperion committed at least one or more material breaches of

28

COMPLAINT - 12

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    the Agreement that Hyperion failed to cure in a timely manner, (c) Amiga properly

2    terminated the Agreement, (d) except as to those obligations and rights that survive

3    termination of the Agreement, the Agreement is terminated; (e) Amiga is the sole owner of

4    all intellectual property rights in Amiga OS 3.1, and all derivative works developed and paid

5    
6    for under the Agreement, including the object code, source code and intellectual property of

7    Amiga OS 4 and Amiga OS 4.0, and (f) Amiga is the sole owner of all intellectual property

8    rights, including the source code and object code, for OS 4.0 by virtue of its timely payment

9    and proper exercise of its option to acquire such rights under Paragraph 3.01 of the

10    Agreement.

11        37.    On information and belief, Defendant contests each of the allegations

12    contained in the preceding paragraph.

13    
14        38.    Amiga seeks a judicial declaration to the effect of each of Amiga's

15    contentions in the immediately preceding paragraph.

16        WHEREFORE, Amiga prays for relief as set forth below.

17    **THIRD CLAIM FOR RELIEF**

18    (Trademark Infringement – Federal Law)

19        39.    Amiga repeats and re-alleges each and every allegation in the foregoing

20    paragraphs as though fully set forth herein.

21    
22        40.    Notwithstanding Amiga's federal statutory rights in its trademarks, Defendant

23    developed, promoted, marketed and sold computer software products under the registered

24    AMIGA® and/or POWERED BY AMIGA® trademarks in interstate commerce.  On

25    information and belief, Defendant continues to develop, promote, market and sell computer

26    software products under the AMIGA® and/or POWERED BY AMIGA® trademarks in

27    interstate commerce.  Defendant does so with actual and constructive knowledge of Amiga's

28    

COMPLAINT - 13

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

federally registered AMIGA® and/or POWERED BY AMIGA trademarks. Defendant's use of the AMIGA® and/or POWERED BY AMIGA® trademarks is not only confusingly similar, but identical, to Amiga's AMIGA® and/or POWERED BY AMIGA® trademarks. Such use by Defendant of Amiga's AMIGA® and/or POWERED BY AMIGA® trademarks is likely to cause confusion, deception and mistake among the consuming public as to the source or affiliation of Defendant and Amiga's goods.

41.    Amiga is informed and believes and thereon alleges that the foregoing actions of Defendant have been knowing, deliberate, willful, and in utter disregard of Amiga's rights.

42.    The above acts by Defendant constitute trademark infringement of Amiga's registered trademarks referenced above. By reason of the foregoing, Defendant have violated and, on information and belief, will continue to violate Section 32(1) of the Lanham Act, 15 U.S.C. Section 1114(1), unless the above acts, among others, are enjoined by the Court.

43.    Alternatively, and/or additionally, as a direct and proximate result of Defendant's trademark infringement, Amiga has incurred extensive monetary damages in an amount to be proven at trial.

WHEREFORE, Amiga prays for relief as set forth below.

### FOURTH CLAIM FOR RELIEF

(Trademark Dilution – Federal Law)

44.    Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

45.    Amiga has built up valuable goodwill in its AMIGA® and POWERED BY AMIGA® trademarks for its high quality computer software and hardware products.

46.    Defendant's widespread misuse of Amiga's registered trademarks and/or confusingly similar variations thereof has caused and is likely to cause damage to Amiga by

COMPLAINT - 14

diluting and weakening the unique and distinctive significance of Amiga's famous AMIGA®

and/or POWERED BY AMIGA® trademarks to identify and distinguish Amiga and its

goods from other sources, and/or by tarnishing the Amiga's name and trademarks in the

minds of consumers.

47.    Amiga is informed and believes and thereon alleges that the foregoing actions

of Defendant have been knowing, deliberate, willful, and in utter disregard of Amiga's rights.

48.    The above acts by Defendant dilute the distinctive quality of Amiga's famous

trademarks.  By reason of the foregoing, Defendant has violated and will continue to violate

Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), unless the above acts, among others,

are enjoined by the Court.

49.    Alternatively, and/or additionally, as a direct and proximate result of

Defendant's trademark dilution, Amiga has incurred extensive monetary damages in an

amount to be proven at trial.

WHEREFORE, Amiga prays for relief as set forth below.

## FIFTH CLAIM FOR RELIEF

(False Designation of Origin)

50.    Amiga repeats and re-alleges each and every allegation in the foregoing

paragraphs as though fully set forth herein.

51.    Defendant's use of Amiga's "Boing Ball" word and logo marks to promote or

mark computer software products promoted or sold by Defendant outside the licensed

market, platform or term is a false designation of origin.  On information and belief,

Defendant continues to falsely designate the origin of such products and does so with actual

knowledge of these Amiga marks.

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

52.     Amiga is informed and believes and thereon alleges that the foregoing actions of Defendant have been knowing, deliberate, willful, and in utter disregard of Amiga's rights.

53.     The above acts by Defendant constitute a false designation of origin.  By reason of the foregoing, Defendant has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and will continue to do so unless the above acts, among others, are enjoined by the Court.

WHEREFORE, Amiga prays for relief as set forth below.

## SIXTH CLAIM FOR RELIEF

(Unfair Competition – Rev. Code Wash Section 19.86.20)

54.     Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

55.     To the extent that Hyperion has produced, promoted, marketed and offered for sale software products bearing Amiga's trademarks, beyond the scope of its licenses under the Agreement and after the licenses are terminated, and to the extent that it continues to do so, Hyperion is in competition with Amiga in the market for software products.

56.     Hyperion's wrongful appropriation and use of Amiga's trademarks is an unfair method of competition and/or an unfair or deceptive act or practice with the capacity to mislead people of ordinary caution into believing that they are dealing with one concern, Amiga, when in fact they are dealing with another.

57.     Hyperion's acts (including, but not limited to marketing OS 4 beyond the scope of its license) perpetuate a fraud on the public, misappropriate benefits belonging to Amiga, and are contrary to the ethical standards of business.  Hyperion's acts are an unfair method of competition and/or an unfair or deceptive act or practice.

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    58.    Given the substantial market for software products in Washington, Hyperion's

2    wrongful acts have the capacity to deceive a substantial portion of the public.

3    59.    Hyperion's acts occurred in the course of trade and commerce, and took place

4    or caused injury, in part, within the state of Washington.

5

6    60.    Hyperion's acts affect the public interest, because, as one example, the acts

7    are likely to confuse and mislead the public into thinking that they are dealing with one

8    concern when they are in fact dealing with another.

9    61.    The harm and potential harm to Amiga and the general public from

10   Defendant's conduct far outweighs the utility of such conduct.

11   62.    Hyperion's wrongful acts have proximately caused and will continue to cause

12   injury to Amiga's business reputation, goodwill, and ability to sell its own products.

13

14   63.    Therefore, Hyperion's wrongful acts constitute an unfair or deceptive act or

15   practice and/or an unfair method of competition within the meaning of RCW 19.86.020.

16   64.    Pursuant to Section 19.86.020, injunctive relief is necessary to prevent

17   Defendant from engaging in the unlawful, unfair and fraudulent business acts and practices

18   alleged herein.  Defendant is now engaging in and will continue to engage in the above-

19   described acts and practices unless enjoined.  Amiga has been and will continue to be

20   irreparably harmed by Defendant's acts and practices.  Amiga has no other adequate remedy

21

22   at law.

23   65.    Pursuant to RCW 19.86.095, Amiga has served or will promptly serve the

24   Attorney General of the State of Washington with this pleading.

25

26

27

28

COMPLAINT - 17

WHEREFORE, Amiga prays for relief as set forth below.

## SEVENTH CLAIM FOR RELIEF

[Replevin – Rev. Code Wash. § 7.64.020]

66.    Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

67.    Under the terms of the Agreement, because Amiga paid Defendant a sum not less than $25,000 (USD) and timely demanded conveyance of the source code and object code for Amiga OS 4.0, Amiga is the owner of that source code and object code of Amiga OS 4.0.

68.    Despite Amiga's ownership of the source code and object code for Amiga OS 4.0, Defendant has wrongfully detained and refused to release the source code and object code for Amiga OS 4.0 to Amiga.

69.    The source code and object code for Amiga OS 4.0 have not been taken for a tax assessment or fine pursuant to statute and has not been seized under an execution or attachment against the property of Amiga.

WHEREFORE, Amiga prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Amiga prays for relief as follows:

1.    That judgment be entered in favor of Amiga and against Defendant Hyperion on all claims;

2.    For an Order directing Defendant to specifically perform its obligation under Section 3.01 of the License Agreement by conveying forthwith to Amiga, and if necessary, taking the necessary steps to obtain possession of and then convey to Amiga, the intellectual property, including the source code and object code, for Amiga OS 4.0;

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

3.    For an Order temporarily restraining and preliminarily and permanently enjoining Defendant, its officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Defendant, jointly and severally, from continuing to distribute Amiga OS 4.0 on any platform and in any market and beyond the term of the Agreement;

4.    For an Order temporarily restraining and preliminarily and permanently enjoining Defendant, its officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Defendant, jointly and severally, from infringing and/or diluting Amiga's federally registered, distinctive and famous Amiga trademarks.

5.    For an Order temporarily restraining and preliminarily and permanently enjoining Defendant, its officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Defendant, jointly and severally, from using Amiga's "Boing Ball" word and logo marks on computer software products sold by Defendant to falsely designate the origin of its computer software products as Amiga.

6.    For actual damages in an amount to be determined at trial; or a trebling on Amiga's claims for trademark infringement and false designation of origin;

7.    For all profits received by Hyperion as a result of its trademark infringement;

8.    For an order disgorging the amount of Defendant's unjust enrichment to be determined at trial;

9.    For treble, punitive and exemplary damages for Defendant's willful and wrongful conduct;

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

10.     For an Order declaring that (a) Amiga has performed all conditions, covenants and promises required to be performed by it in accordance with the terms and conditions of the License Agreement, except as to those conditions which have been excused, (b) Defendant committed at least one or more material breaches of the Agreement that Defendant failed to cure in a timely manner, (c) Amiga properly terminated the Agreement, (d) except as to those obligations and rights that survive termination of the Agreement, the Agreement is terminated; (e) Amiga is the sole owner of all intellectual property rights in Amiga OS 3.1, and all derivative works developed and paid for under the Agreement, including the object code, source code and intellectual property of Amiga OS 4 and Amiga OS 4.0 and (f) Amiga is the sole owner of all intellectual property rights, including the source code and object code, for OS 4.0 by virtue of its timely payment and proper exercise of its option to acquire such rights under Paragraph 3.01 of the Agreement.

11.     For an Order temporarily restraining and preliminarily and permanently enjoining Defendant, its officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Defendant, jointly and severally, from engaging in the unlawful, unfair and fraudulent business acts and practices described herein;

12.     For an Order of Replevin pursuant to Washington Code Section requiring Defendant to convey forthwith the source code and object code for Amiga OS 4.0.

13.     For Amiga's reasonable attorneys and experts' fees and costs as provided by the Agreement or otherwise available by statute;

14.     For pre-judgment interest according to proof; and

15.     For such other relief as the Court deems just and proper.

COMPLAINT - 20

1

DATED this the **26**th day of April, 2007.

2

_____

3

Lawrence R. Cock, WSBA No. 20326
lrc@cablelang.com

4

Cable, Langenbach, Kinerk & Bauer, LLP
1000 Second Avenue

5

Suite 3500
Seattle, WA 98104

6

7

Telephone:  (206) 292-8800
Facsimile:  (206) 292-0494

8

9

Scott D. Baker (Pro Hac Vice application pending)
Morgan W. Tovey (Pro Hac Vice application pending)

10

Alison B. Riddell (Pro Hac Vice application pending)
REED SMITH LLP

11

Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922

12

13

**Mailing Address:**
P.O. Box 7936

14

San Francisco, CA  94120-7936
Telephone:    415.543.8700

15

Facsimile:    415.391.8269
***Attorneys for Plaintiff Amiga, Inc.***

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 21

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Amiga, Inc.

hereby demands a jury trial on all issues triable by a jury.

DATED this the **26**th day of April, 2007.

_____

Lawrence R. Cock, WSBA No. 20326
lrc@cableclang.com
Cable, Langenbach, Kinerk & Bauer, LLP
1000 Second Avenue
Suite 3500
Seattle, WA  98104

Telephone:  (206) 292-8800
Facsimile:  (206) 292-0494

Scott D. Baker (Pro Hac Vice application pending)
Morgan W. Tovey (Pro Hac Vice application pending)
Alison B. Riddell (Pro Hac Vice application pending)
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA  94120-7936

Telephone:    415.543.8700
Facsimile:    415.391.8269

***Attorneys for Plaintiff Amiga, Inc.***

COMPLAINT - 22

CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the COMPLAINT FOR DAMAGES, SPECIFIC PERFORMANCE AND INJUNCTIVE RELIEF [JURY TRIAL DEMANDED] was served on the party of record as stated below in the manner indicated:

Attorney General of the State of Washington
Consumer Protection
800 5th Avenue, Suite 2000
Seattle, WA 98104

**By Messenger**

I declare under penalty of perjury under the laws of the state of Washington, that the foregoing is true and correct.

DATED at Seattle, Washington on April 26, 2007.

_____
Jana C. Schiewe

COMPLAINT - 23

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800