UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| AMIGA, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>HYPERION VOF, a Belgium corporation,<br><br>　　　　　Defendant. | CASE NO.: CV07-0631-RSM<br><br>**AMIGA'S NOTICE OF MOTION AND MOTION FOR EXPEDITED DISCOVERY AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[LOCAL RULE 7(D)(2)]**<br><br>NOTE ON MOTION CALENDAR:<br><br>MAY 11, 2007<br><br>**COURT: HON. RICARDO MARTINEZ** |

EXPEDITED DISCOVERY MOTION　　-1-　　CABLE, LANGENBACH, KINERK & BAUER LLP
Case No. CV07-0631-RSM
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048

Dockets.Justia.com

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ..................................................................................................1

II.   BACKGROUND .................................................................................................3

III.  LEGAL ANALYSIS ............................................................................................6

IV.  CONCLUSION ...................................................................................................8

EXPEDITED DISCOVERY MOTION    - i -    CABLE, LANGENBACH, KINERK & BAUER LLP
Case No. CV07-0631-RSM    1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

A limited liability partnership formed in the State of Delaware

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

*GoTo.Com, Inc. v. Walt Disney Company,*
    202 F.3d 1199 (9th Cir. 2000) .................................................................................. 6, 8

*Renaud v. Gillick,*
    2006 U.S. Dist. LEXIS 75169 (W.D.Wash 2006) .......................................................... 6

*Reno Air Racing association v. McCord,*
    452 F.3d 1126 (9th Cir. 2006) ........................................................................................ 6

*Semitool, Inc. v. Tokyo Electron America, Inc.,*
    208 F.R.D. 273 (N.D. Cal. 2002) ................................................................................ 6, 7

A limited liability partnership formed in the State of Delaware

**NOTICE OF MOTION AND MOTION**

On May 11, 2007, the motion will be decided on the briefing and without oral argument, Plaintiff Amiga, Inc. ("Amiga") will and hereby does move the Court for an order permitting the parties to proceed with expedited discovery.

The motion is made pursuant to Local Rule 7(d)(2) and is made on the grounds that good cause exists for the discovery because it appears that Defendant Hyperion VOF ("Hyperion") is, among other things, infringing Amiga's trademarks and refusing to turn over the source code to intellectual property that Amiga purchased and rightfully owns. Further, expedited discovery is necessary to secure evidence relating to Hyperion's recent announcement of a strategic partnership with ACube Systems SRL that threatens further infringement of Amiga's intellectual property and consequently, would result in additional irreparable harm to Amiga. Amiga needs the discovery to secure additional evidence to support its motion for preliminary injunctive relief and to assist the court in fashioning the appropriate remedy.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of Morgan W. Tovey, the accompanying Motion for Preliminary Injunction, including all documents and declarations submitted therewith, all pleadings and paper on file in this action and such further evidence and argument that may be submitted to the Court at or before the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Amiga brings this motion for expedited discovery to secure additional evidence necessary to (1) prove Amiga's motion seeking to enjoin Hyperion from its illegal use of Amiga's trademarks and requiring Hyperion to turn over the computer software source code legally belonging to Amiga; and (2) aid the court in determining the appropriate equitable relief.

Hyperion has hijacked and is now holding as ransom valuable Amiga's software code and related intellectual property that was developed and paid for by Amiga under an Agreement between Hyperion and Amiga. Despite its limited license to use Amiga's intellectual property to

EXPEDITED DISCOVERY MOTION         - 1 -         CABLE, LANGENBACH, KINERK & BAUER LLP
Case No. CV07-0631-RSM                                        1000 SECOND AVENUE BUILDING, SUITE 3500
                                                              SEATTLE, WASHINGTON 98104-1048
                                                              (206) 292-8800

A limited liability partnership formed in the State of Delaware

develop and market in a limited manner the software code for Amiga, Hyperion also greatly exceeded the scope of its license, thereby exploiting and infringing upon Amiga's intellectual property rights. Even after Amiga terminated the Agreement, Hyperion has continued, without consent or permission, to exploit Amiga's valuable trademarks and otherwise deprive Amiga from the benefit of its bargain under the parties' Agreement. In order to prevent continued irreparable harm, Amiga brought this lawsuit and a Motion for Preliminary Injunction to recover its valuable, unique intellectual property and to restrain Hyperion from further infringement and breaches of the Agreement.

Most recently, Hyperion has compounded its bad acts by purporting to enter into an "strategic partnership" with a third party, ACube Systems Srl ("ACube"), whereby Hyperion purports to grant ACube rights to distribute OS 4.0 on a worldwide basis for "a range of PPC hardware platforms." Amiga has not consented to or licensed such use of Amiga's software code and marks. Hyperion's attempt to hijack Amiga's software – a code that is highly specialized, unique and essential Amiga's success – and misappropriate Amiga's exclusive right to obtain a "first to market" position, while at the same time infringing Amiga's trademarks, is harming Amiga irreparably.

Good cause exists for the very limited expedited discovery related to the Motion for Preliminary Injunction based on Hyperion's continued improper use of Amiga's trademarks, its unjustified refusal to turn over to Amiga the valuable intellectual property that Amiga bargained and paid for under the parties' Agreement and the irreparable harm that Amiga is suffering as a result of Hyperion's infringement and breaches. The discovery – including just eight (8) document requests, ten (10) requests for admission and two (2) interrogatories – is necessary to provide further evidence in support of Amiga's request for preliminary equitable relief and to assist in fashioning an appropriate preliminary injunction. [*See* Declaration of Morgan W. Tovey in Support of Motion for Expedited Discovery ("Tovey Dec.") ¶¶ 4-6, Exs. B-D]. In contrast, any prejudice to Hyperion is minimal, as the discovery has been narrowly tailored to the most pertinent issues at this juncture of the case. Accordingly, Amiga respectfully requests that

1  the Court grant Amiga the right to conduct expedited discovery as set forth in the accompanying
2  proposed order.

## II. BACKGROUND

Amiga is a software and hardware development company that was once a pioneer of early entertainment computer systems. For instance, its original Classic Amiga operating system (OS) garnered praise throughout the industry as being "ahead of its time" and "light years" ahead of the competition. Indeed, Amiga's graphically rich and multi-threaded system won a devoted band of enthusiasts the likes of which the computing industry had never previously witnessed. Despite the great success witnessed by Amiga in the 1980s, Amiga experienced some growing pains. Multiple changes of ownership, and attendant changes in direction, stunted Amiga's growth, and Amiga experienced stagnant business and financial woes in the 1990s. [*See* Declaration of Bill McEwen in support of Motion for Preliminary Injunction and Motion for Expedited Discovery ("McEwen Dec.") ¶¶ 3-7].

Nonetheless, Amiga fans have remained loyal, and since 2000, the company has been positioning itself to comeback as an industry leader. In early 2001, Amiga identified an opportunity to help achieve its goal of re-emerging an industry leader. Amiga decided to develop a new operating system, Amiga OS 4.0 that would propel Classic Amiga operating system into the next century and re-establish the Amiga OS as the innovative and valuable operating system of choice. [McEwen Dec. ¶ 8.]

Because of budgetary and time constraints, Amiga decided to contract with an outside entity, Defendant Hyperion VOF ("Hyperion"), a foreign corporation located in Belgium, to develop OS 4.0. In November of 2001, Amiga signed an OEM LICENSE AND SOFTWARE DEVELOPMENT AGREEMENT (the "Agreement") with Hyperion. [*See* Declaration of Barrie Jon Moss in support of Motion for Preliminary Injunction and Motion for Expedited Discovery ("Moss Dec.") ¶10, Ex. A.]

Under the Agreement, Amiga would grant Hyperion a limited license and access to Amiga's source code for Amiga OS 3.1, and related updates, to develop the next generation

Amiga operating system: OS 4.0. In exchange, under the Agreement, Amiga offered Hyperion the following limited licenses: (1) a non-exclusive license to access, use and modify, Amiga's Software (again, defined as the source code for OS 3.1 and related upgrades), (2) an exclusive license to market and distribute OS 4 (defined as any version of the classic Amiga OS developed by Hyperion under the Agreement) and OS 4.0 as (a) a stand-alone version for the Target Hardware (meaning that Hyperion could market and sell the OS 4 and OS 4.0 software to consumers with computers that use a certain processing chip, called the powerPC, within the Amiga platform), and (b) as an original equipment manufacturer (OEM) version shipped as part of the Amiga One computer (meaning that Hyperion could market and sell OS 4.0 as part of a pre-installed package with the Amiga One computer, manufactured by Eyetech Corporation, (also a party to the Agreement but not this Complaint), and (3) a license to use Amiga trademarks in conjunction with marketing and sales efforts concerning OS 4.0 as bundled with the Amiga One. [Moss Dec. ¶¶ 10, Ex. A, 12, 15, 18; McEwen Dec. ¶19.]

The Agreement expressly provides that Amiga would retain all ownership of its existing intellectual property assets along with the right, at Amiga's sole option, to acquire, for the sum of $25,000 (USD), the key intended output of the Agreement: the source code, object code and intellectual property title to OS 4.0. By carefully limiting Hyperion's rights to market OS 4.0 in connection with the Amiga One computer and in narrowly defined markets, Amiga also reserved for itself the right to market OS 4.0 in all other markets and platforms. Further, the agreement required Hyperion to exercise its "best efforts" to ensure that Amiga OS 4.0 would be ready for release by March 1, 2002. [Moss Dec. ¶¶ 10, Ex. A, 13, 19; McEwen Dec. ¶¶ 18-21.]

After years of attempting to work with its Hyperion as a development partner, Amiga has realized that Hyperion has breached the Agreement and otherwise infringed Amiga's rights in multiple ways. Hyperion not only failed to exercise its "best efforts" to ensure Amiga OS 4.0 would be ready for release within the allotted time, Hyperion exceeded the scope of its license to market and distribute OS 4.0 in violation of the Agreement and Amiga's trademark rights. Specifically, Despite its limited license market and distribute OS 4.0, Hyperion's website reveals

1. that Hyperion sells Amiga OS 4.0 for everything from kiosks, set top boxes, hand-held devices using PowerPC processors, high-end servers and other devices using the PowerPC architecture. [McEwen Dec. ¶¶ 22-23.] Moreover, the same website shows that Hyperion uses the AMIGA® mark, the AMIGA name, the "Powered by Amiga" logo and the Amiga "Boing Ball" in conjunction with the advertisement and distribution of OS 4.0 far beyond that permitted under the Agreement. Hyperion's unauthorized use of the Amiga's software and trademarks breaches the Agreement and infringes Amiga's trademarks. [*Id.* ¶ 23.]

Based on these multiple material breaches of the agreement, and statutory intellectual property violations, in November 2006, Amiga gave notice to Hyperion of Amiga's intent to terminate the Agreement. By its terms, on or about, December 20, 2006, the agreement, as well as all intellectual property licenses granted to Hyperion therein, terminated. [*Id.* ¶ 28.]

Notwithstanding the termination of the agreement, Hyperion continues to market OS 4.0-based products, along with Amiga's famous trademarks, without Amiga's license or consent not only in markets in which Amiga had granted a license to Hyperion during the term of the license but also to markets and platforms for which Hyperion *never* had a license. [*Id.* ¶ 23.] Hyperion also refuses to turn over to Amiga the code and title to OS 4.0 despite Amiga's payments under the Agreement. Amiga bargained for, paid for, and now owns – but does not possess – the source code, object code and title to OS 4.0 – intellectual property assets that are a key component of Amiga's plans for a comeback. [*Id.* ¶¶ 24-26.]

Adding further insult to competitive injury, Hyperion recently announced that it had entered into a strategic partnership with ACube Systems Srl ("ACube") in which ACube would act as a worldwide distributor of Amiga OS 4.0 for a range of hardware devices – all without Amiga's license or consent. [See ACube Systems and Hyperion Entertainment joint announcement, attached to the McEwen as Ex. I.] In the months leading up to this announcement, Amiga and ACube were in negotiations for a strategic partnership relating to Amiga OS 4.0. [*Id.* ¶ 23.] By refusing to release the code to OS 4.0 to Amiga, Hyperion usurped this "first to market" opportunity for itself, further irreparably harming Amiga. [*Id.*]

As a result of Hyperion's breaches and the irreparable harm caused by Hyperion, Amiga has filed the instant lawsuit and has moved for preliminary injunctive relief to restrain further trademark infringement and recover the source code, object code and intellectual property to OS 4.0 under the Agreement.

Amiga now seeks expedited discovery, which is narrowly tailored to address factual issues concerning Amiga's Motion for Preliminary Injunction, including the extent of Hyperion's breaches, the status and location of the source code, object and intellectual property to OS 4.0 and the like.  [*See* Tovey Dec. ¶¶ 4-6, Exs. B-D (copies of proposed discovery requests)].

### III.  LEGAL ANALYSIS

Courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where the party establishes "good cause" for such discovery.  *See Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) (J. Chen).  Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.  *Id.* An *ex parte* motion for expedited discovery is appropriate where, as here, notice to the adverse party would cause irreparable injury to the moving party before the adverse party can be heard in opposition.  *Renaud v. Gillick*, 2006 U.S. Dist. LEXIS 75169 at *5 (W.D.Wash 2006) (quoting *Reno Air Racing association v. McCord*, 452 F. 3d 1126, 1131 (9th Cir. 2006); Fed. R. Civ. Pro. 65(b)(1)).  Here, Amiga easily meets the requirements for obtaining ex parte the expedited discovery it seeks.

Initially, where, as here, the case involves claims of infringement, courts frequently find good cause to permit expedited discovery.  *See Semitool,* 208 F.R.D. at 276.  This is not surprising because establishing such claims gives rise to a presumption of irreparable harm to the plaintiff.  *See GoTo.Com,* 202 F.3d at 1205 n. 4 (showing of reasonable likelihood of success on a trademark claim warrants a presumption of irreparable injury).

Further, the expedited discovery Amiga seeks here will substantially contribute to moving the case forward, as it is essential to securing additional evidence to further support entry of a preliminary injunction claim.  See *Semitool,* 208 F.R.D. at 277 (granting expedited

discovery). Amiga's Complaint alleges prima facie cases of trademark infringements. Amiga owns and has registered various trademarks, which Hyperion first licensed and then used outside the scope of its license, and now, even after termination of the license, continues to use without permission from Amiga. Amiga has further asserted breach of contract and specific performance claims on which it is likely to succeed based on Hyperion's multiple violations of the Agreement. Hyperion has breached the Agreement by, among other things, (1) exceeding the scope of its license to distribute and market OS 4.0, a unique software program, and (2) refusing to turn over to Amiga the rights to source code, object code and intellectual property to OS 4.0 despite Amiga's payment under the Agreement.

The narrowly tailored discovery Amiga seeks by way of this motion directly relates, and is narrowly tailored to explore, the extent of Hyperion's breaches and Hyperion's apparent "defense" that it somehow does not possess or have access to the source code, object code and intellectual property to OS 4.0 (even though Hyperion is required to provide that code and property to Amiga). The discovery further seeks to determine what portion of the code Hyperion does possess and what steps are required, if any, for Hyperion to obtain the code in order to fulfill its contractual duties to Amiga. As such, the discovery is directly relevant to Amiga's preliminary injunction motion and will assist the Court in determining the motion and fashioning an appropriate remedy to prevent ongoing irreparable harm Hyperion is inflicting on Amiga.

Moreover, the discovery will not prejudice Hyperion. The discovery is not only narrowly tailored, but is limited to just eight (8) document requests, ten (10) requests for admission and two (2) interrogatories. Amiga further seeks a reasonable time frame for response – a full ten days after service of the Court's Order.

Finally, this motion is properly heard *ex parte* because the discovery relates to Amiga's preliminary injunction motion and ample evidence supports that Amiga will suffer irreparable harm if a normal noticed motion schedule is applied to this motion. Specifically, Amiga has established a *prima facie* case for a trademark infringement claim, therefore raising a presumption that it will suffer irreparable injury. *GoTo.Com, Inc. v. Walt Disney Company,* 202

F.3d 1199, 1205 at n. 4 (9th Cir. 2000) (once there is a showing of likelihood of success on the merits, irreparable injury is presumed in a trademark case). Likewise, Hyperion has refused and continued to refuse to turn over the source code to OS 4 despite being required to do so by the terms of the Agreement. If this Motion is heard on a normal noticed motion schedule, substantial delay will occur causing Amiga further irreparable harm.

## IV.   CONCLUSION

Hyperion has infringed, and continues to infringe, upon Amiga's trademarks and unique contractual rights by continuing to use Amiga's software and trademarks without consent from Amiga. Hyperion is further causing irreparable harm by refusing to turn over unique intellectual property that was bargained and paid for by Amiga under the parties' Agreement. Amiga cannot possibly grow its sales, much less re-emerge as an industry leader, without such property. The limited expedited discovery sought will help substantiate Hyperion's breaches and infringements and will further support the grant of, and provide information helpful to determine the proper scope of, a preliminary injunction in this case. Accordingly, good cause exists for Amiga to proceed with the expedited discovery set forth in the accompanying proposed order.

1
2   DATED this the 27th day of April, 2007.

3                  CABLE, LANGENBACH, KINERK & BAUER, LLP

4
5          By:     /s Lawrence R. Cock
                   Lawrence R. Cock, WSBA No. 20326
6                  lrc@cablelang.com
                   Cable, Langenbach, Kinerk & Bauer, LLP
7                  1000 Second Avenue
                   Suite 3500
8                  Seattle, WA  98104
                   Telephone:  (206) 292-8800
9                  Facsimile:  (206) 292-0494

10                 Scott D. Baker (Pro Hac Vice application pending)
                   sbaker@reedsmith.com
11                 Morgan W. Tovey (Pro Hac Vice application pending)
                   mtovey@reedsmith.com
12                 Alison B. Riddell (Pro Hac Vice application pending)
                   ariddell@reedsmith.com
13                 Reed Smith LLP
                   Two Embarcadero Center, Suite 2000
14                 San Francisco, CA  94111-3922
                   Telephone:  (415) 543-8700
15                 Facsimile:  (415) 391-8269

16                 Attorneys for Plaintiff

17
18
19
20
21
22
23
24
25
26
27
28