## SOFTWARE ACQUISITION AND DEVELOPMENT AGREEMENT

This agreement (this "Agreement") is made and entered into as of this 4 day of April 2002, by and between STEPHAN RUPPRECHT (hereafter: "Developer"), Apfeldweg 1, D-44359 Dortmund, Germany and HYPERION ENTERTAINMENT VOF (hereafter : "Hyperion"), a Belgian corporation with its administrative seat at Brouwersstr. 1B, B-3000 Leuven, Belgium.

RECITALS

**WHEREAS** Amiga Inc. has contracted with Hyperion to develop the next release of its Classic Amiga operating system tentatively called "Amiga OS 4.0" (hereafter: "OS 4");

**WHEREAS** Developer has developed several software assets which are part of the Amiga OS 3.9 distribution;

**WHEREAS** Hyperion is interested in acquiring ownership of these software assets;

**WHEREAS** Hyperion is also interested in contracting with Developer to carry out further software development in the framework of the Amiga OS 4 project;

**NOW, THEREFORE**, for good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

### ARTICLE I.
### DEFINITIONS

1.01 **Definitions**. For purposes of this Agreement, in addition to capitalized terms defined elsewhere in this agreement, the following defined terms shall have the meanings set forth below:

"Classic Amiga OS" means the operating system owned and developed by Amiga Inc. including but not limited to O 3.1, OS 3.5 and OS 3.9 and largely based on the operating system shipped with the Commodore Amiga line of computers sold in the 1980's and early '90's;

"Confidential information" means any business and technical information of a party hereto that is treated as confidential by such party and furnished to the other party, and which includes but is not limited to computer programs, Source code, Object code, algorithms where such information, if in writing, is identified in writing to the

1

Dockets.Justia.com

other party as confidential prior to or concurrently with the transmission of such information, and, if conveyed orally, is identified orally as confidential prior to or concurrently with the transmission of such information and confirmed in writing within seven (7) days thereafter. Source Code and chip-set documentation is hereby designated as Confidential Information;

"Object Code" means software in a machine readable form that is not convenient to human understanding of the program logic, and that can be executed by a computer using the appropriate operating system without compilation or interpretation. Object Code specifically excludes Source Code;

"Software" or "the Software" means all of Developer's right, title, benefit and interest in and to the software assets developed by Developer and included with the current distribution of OS 3.9 including but not limited to the assets described in Annex I hereof;

"Source Code" means software when written in a form or language understandable to humans, generally in a higher level computer language, and further including embedded comments in the English language;

"Work" or "the Work" means the software development carried out by Developer as described in Annex II hereof.


## ARTICLE II.
## TRANSFER OF OWNERSHIP; OBLIGATIONS OF DEVELOPER

2.01 **Transfer of ownership.**

(a) Developer hereby transfers joint ownership of the Software described in Annex I hereof to Hyperion.

(b) Developer shall make available to Hyperion a complete and documented copy of the Source Code of the Software and of any updates of the Software.

2.02 **Development.** Developer shall carry out the Work described in Annex II hereof and shall provide Hyperion with a complete and documented copy of the Source Code of the Work and of any updates thereof.

2.03 **Timeline.** Developer shall use best efforts to complete the work by May 1, 2002.

2.04 **Ownership.** Ownership of the Work shall be transferred to Hyperion upon completion.

2

Exhibit 18, Page 134

## ARTICLE III.
## OBLIGATIONS OF HYPERION

3.01 **Royalties.** Hyperion shall incorporate the Software into OS 4.0 and shall pay Developer a royalty of Twenty Five (25) eurocent per unit of OS 4.0 (and subsequent versions of the Classic Amiga OS containing the Software). All amounts are excluding VAT.

3.02 **Additional compensation.** Hyperion shall pay Developer One Thousand Two Hundred and Fifty (1250) euro for the Work no later than Forty Five (45) days after the release of OS 4.0 and an additional One Thousand Two Hundred and Fifty (1250) euro no later than Ninety (90) days after the release of OS 4.0.

3.03 **Documentation and technical support.** Hyperion shall provide Developer with the required documentation to allow Developer to complete the Software and integrate it into OS 4 and shall use best efforts to provide technical support including but not limited to granting Developer access to the relevant sections of the Amiga OS Source Code.

3.04 **Records and inspection.** During the term of this Agreement, Hyperion shall deliver to Developer bi-monthly reports within thirty (30) days after the end of each bi-monthly period setting forth the sales of the OS 4. Following such bi-monthly report, accrued royalties shall  promptly be wired to Developer. Amounts of less than Five Hundred (500) euro shall be carried over to the next bi-monthly period. Hyperion shall maintain or acquire complete and accurate records of sales to permit the determination of the sums payable by Hyperion to Developer. Hyperion shall, upon fourteen (14) days advance written notice by Developer, permit reasonable inspection of such records by Developer or its outside accountants. The finding of errors in such records shall not of itself constitute a material breach of this Agreement.  Developer shall bear all of its own costs of such inspection even if it finds errors in Hyperion's records unless the inspection reveals more than 5% underpayment on the part of Hyperion in which case Hyperion shall bear the costs of inspection which shall not be unreasonable.

## ARTICLE IV.
## WARRANTIES AND INDEMNIFICATIONS

4.01 **Warranty and Covenant of Original Development by Developer.**

(I) Developer represents, warrants and covenants that: (a) it is and shall be the owner of all intellectual property rights in the Software under copyright, patent, trademark,

3

$S_d$ / $\ell$

**Exhibit 18, Page 135**

trade secret, and other applicable law; (b) the Software delivered or licensed to Hyperion hereunder is and shall be of original development by (employees of) Developer (in the conduct of their duties as employees) or by third parties who prepared such materials for Developer pursuant to a contract between Developer and who assigned to Developer his or its entire right, title and interest in the software; (c) the Software does not and shall not infringe or otherwise violate any patent, copyright or trade secret of any third party anywhere in the world; (d) it has not received, as of the date of the delivery of the Software to Hyperion, actual notice of any claim that the Software or the use thereof infringes any intellectual property right of any third party anywhere in the world or that any third party has any proprietary interest in or to the software, or any invention, patent, work of authorship, copyright, trade secret, know-how or a similar right to the software.

(II) Nothing in this Agreement shall be construed as limiting Developer's right to use Source-Code available under a license which allows for the royalty-free use, compilation and distribution for commercial purposes with acknowledgement of the copyright holder or which is available under the LGPL license.

**4.02 Indemnification.** Developer shall indemnify and hold Hyperion harmless from and against all claims, suits, demands, actions, judgments, penalties, damages, costs and expenses (including attorney's fees and costs), losses or liabilities of any kind arising from a claim that the Software infringes a patent, copyright or other intellectual property right of any other person anywhere in the world (except to the extent such infringement or violation is due to Hyperion or any third party).

**4.03 Notice.** Developer shall promptly notify Hyperion of any actions brought or claims asserted against Developer whose outcome may affect the rights granted to Hyperion pursuant to this Agreement.

**4.04 Organization and Standing.** Hyperion is a corporation duly organized, validly existing and in good standing under the laws of the kingdom of Belgium.

**4.05 Power to grant rights.** Developer represents and warrants that: (a) it has the right, power and authority to grant the rights and licenses granted in this Agreement and fully perform its obligations hereunder; (b) the making and performance of this Agreement by Hyperion does not and shall not violate any separate agreement, right or obligation existing between Developer and any third party; and (c) there are no outstanding liens, security interests or other encumbrances of any kind whatsoever in or to the Software or to any of the intellectual property rights therein.

**ARTICLE V.**
**CONFIDENTIALITY**

4

(a) Each party may disclose to the other party Confidential Information as may be necessary to further the performance of this Agreement. Each party agrees to treat the other's Confidential Information in the manner prescribed herein.

(b) Developer and Hyperion shall protect the other party's Confidential Information as follows:

(I) Except as specifically provided herein or otherwise permitted by the other party in writing, each party may disclose Confidential Information of the other party only to those employees and agents required to have knowledge of same to perform their duties pursuant to this Agreement. Each party shall require each such employee or agent to enter into a written non-disclosure agreement containing provisions substantially consistent with the terms hereof prior to the disclosure of Confidential Information to such employee or agent. Each party shall treat the Confidential Information of the other party with the same degree of care as it protects its own Confidential Information, and in no event less than a reasonable degree of care.

(II) Except as may specifically be permitted herein, upon the termination of this Agreement, each party shall return to the other, or, if so requested, destroy all Confidential Information of the other party in its possession or control, except such Confidential Information as may be reasonably necessary to exercise the rights that survive the termination of this Agreement.

(c) The foregoing obligations of confidentiality shall not apply with respect to either party's Confidential Information to the extent that it:

(I)  is within or later falls within the public domain through no fault of the party receiving the Confidential Information; or

(II) is, or becomes, available to the receiving party from third parties, who, in making such disclosure, have breached no written confidentiality agreement; or

(III) is previously known by the receiving party;

(IV) is independently developed by or for the receiving party without use of the Confidential Information.

(d) In the event any party receives a request to disclose any Confidential Information under the terms of a valid and effective subpoena or order issued by a court of competent jurisdiction or a governmental body, such party shall (I) immediately notify the party that furnished such Confidential Information of the existence, terms and circumstances surrounding such request, (II) consult with such party on the advisability of taking legally available steps to resist or narrow such request, and (III) exercise reasonable best efforts, at the expense of the party producing such

5



Exhibit 18, Page 137

Confidential Information, to obtain an order or other reliable assurance that confidential treatment will be accorded to such portion of the Confidential Information as may be disclosed.

## ARTICLE VI.
## TERM; TERMINATION

6.01    **Term**. This Agreement shall continue indefinitely, unless terminated as provided herein.

6.02    **Termination for Material Breach**. Either party may, at its option, terminate this agreement in the event of a material breach by the other party. Such termination may be effected only through a written notice to the other party, specifically identifying the breach or breaches on which termination is based. Following receipt of such notice, the party in breach shall have thirty (30) days to cure such breach or breaches and this Agreement shall terminate in the event that such a cure is not made by the end of said period. The claim of material breach justifying termination shall be limited to the specific breached set forth in the above written notice as explained, supported and negated by evidence.

6.03    **Termination in the event of bankruptcy**. If either party files a petition in bankruptcy for liquidation, or ceases doing business in the ordinary course, then the other party shall have the right to terminate this Agreement upon thirty (30) days written notice.

6.04    **Consequences of Termination**. Upon termination of this Agreement by Developer, ownership of the Work reverts back to Developer and the license granted to Hyperion pursuant to this Agreement shall terminate forthwith. Articles IV, V, VI and VII shall survive the termination of this Agreement.

## ARTICLE VII.
## MISCELLANEOUS

7.01    **Entire Agreement.** This Agreement collectively sets forth the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and, except as specifically provided herein, supersedes and merges all prior oral and written agreements, discussions and understandings between the parties with respect to the subject matter hereof, and neither of the parties shall be bound by any conditions, inducements or representations other than as expressly provided for herein.

7.02    **Independent Contractors**. In making and performing this Agreement, Developer and Hyperion act and shall act at all times as independent contractors and

Exhibit 18, Page 138

nothing contained in this Agreement shall be construed or implied to create an agency, partnership or employer and employee relationship between Developer and Hyperion. At no time shall either party make commitments or incur any charges or expenses for or in the name of the other party.

7.03 **Amendments; Modifications**. No amendment, modification or attempt to supersede or cancel any of the terms, covenants, representations, warranties or conditions hereof shall be effective unless such amendment, modification or direction to supersede or cancel such term, covenant, representation, warranty or condition is executed in writing by Developer and Hyperion or, in the case of a waiver, by or on behalf of the party waiving compliance. No waiver by any party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be a further or continuing waiver of any such condition or breach or a waiver of any other condition or of any breach of any other term, covenant, representation or warranty.

7.04 **Severability**. The provisions of this Agreement shall be severable, and if any of them are held invalid or unenforceable for any reason, such provision shall be adjusted to the minimum extent necessary to cure such invalidity. The invalidity or unenforceability of one or more of the provisions contained in this Agreement shall not affect any other provisions of this Agreement.

7.05 **Waivers**. The waiver of any breach of any provision of this Agreement or failure to enforce any provision hereof shall not operate or be construed as a waiver of any subsequent breach.

7.06 **Governing Law**. This Agreement shall be governed by and interpreted in accordance with the internal laws of Belgium without regard to conflicts of laws principles.

7.07 **Forum**. The exclusive jurisdiction and venue of any lawsuit between the parties arising under this Agreement or out of transactions contemplated hereby shall be the Court of First Instance in Leuven, Belgium and each of the parties hereby submits itself to the exclusive jurisdiction and venue of said court for the purposes of such lawsuit.

7.08 **Counterparts**. This Agreement may be executed in any number of counterparts but at least one for each party, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one Agreement.

7.09 **Signatures by Facsimile**. Any facsimile signature of any party hereto shall constitute a legal, valid and binding execution hereof by such party.

Exhibit 18, Page 139

7.10 **Construction**. This Agreement is the product of joint draftmanship and shall not be construed against one party more strictly than against the other.

7.11 **Effect**. The Agreement shall be binding upon and inure to the benefit of each party hereto, and their successors and assigns.

7.12 **Headings**. The headings in this Agreement are inserted merely for the purpose of convenience and shall not affect the meaning or interpretation of this Agreement.

8

**IN WITNESS WHEREOF**, the parties, by their authorized representatives, have executed this Agreement.

FOR DEVELOPER

BY: ~~A. Rupprel VA~~

NAME (PRINTED) _STEPHAN RUPPRECHT_

TITLE _____

FOR HYPERION ENTERTAINMENT VOF

BY: ~~_____~~

NAME (PRINTED) _BEN HERMANS_

TITLE _Managing partner_

9

### Annex I

The Software shall comprise the following items:

- RAWBInfo
- Deflcons v45
- newicon.library emulation
- colorwheel.gadget  v45
- gradientslider.gadget v45
- string.gadget v45
- AslPrefs
- WBRun
- WBInfo
- LoadMonDrvs
- MakeLink
- texteditor.gadget v16

10

Exhibit 18, Page 142

## Annex II

The Work shall implement the following functionality:

- Reworking of Reaction Source-Code including but not limited to further work on ReAction such as adaption to OS4 and misc enhancements.

- Port of latest version of MUI to OS 4

- Rework of OS3.5/OS 3.9 code on a "as needed" basis (ie. IPrefs v45)

- Enhancements to intuition.library including rework of some BOOPSI classes (markable strgclass) and integration of a notification system similar to the notifyintuition.library, screennotify.library patches.

- Modification of Intuition to cope with "off screen" windows



11

**Exhibit 18, Page 143**

```
> From fleecy@amiga.com Sun 25 Nov 2001
> Received: from mail5.svr.pol.co.uk (195.92.193.20)
>     by mail108b.verio.de (RS ver 1.0.60s) with SMTP id 036380597
>     for <olsen@logicalline.com>; Sun, 25 Nov 2001 16:18:17 +0100 (CET)
> Received: from modem-118.ytterbium.dialup.pol.co.uk ([62.136.54.246] helo=amiga.
com)
>     by mail5.svr.pol.co.uk with smtp (Exim 3.13 #0)
>     id 16811U-0003kc-00; Sun, 25 Nov 2001 15:16:51 +0000
> From: fleecy <fleecy@amiga.com>
> To: Olaf Barthel <olsen@logicalline.com>,
>     Ben Hermans <LegendConsulting@netscape.net>
> CC: thomasf@hyperion-entertainment.com
> Date: Sun, 25 Nov 2001 16:13:25 +0600
> Message-ID: <yam8729.1272.1077026080@smtp.amiga.com>
> In-Reply-To: <yam8729.289.144375712@logicalline.com>
> X-Mailer: YAM 2.3 [020] AmigaOS E-Mail Client (c) 1995-2000 by Marcel
> Beck  http://www.yam.ch/
> Subject: Re: OS 3.1 source-code
> MIME-Version: 1.0
> Content-Type: text/plain
> X-Loop-Detect: 1
> X-UIDL: 99ddf6e42f4b47d2186c9374149e8649.06
>
> Hey there 8-)
> On 25-Nov-01, you wrote:
>
> > On 25-Nov-01, Ben Hermans wrote:
> >
> >> Hi Olaf,
> >>
> >> Can you please dump the OS 3.1 source-code on a CD and sent it off
> >> to
> >
> >   Sure, no problem. Hey, wait a minute -- my work has not been paid
> > for, and I'm not going to give it away for free.
>
> Hey Olaf 8-)
>
> you know that I have always remembered that you are owed for that
> work, whether it was at Gateway or at Amiga. You also know that when I
> discussed the OS4.0 contract with you before Hyperion became involved,
> then I put forwards proposals to cover that debt.
>
> I passed this information on to Ben and judging by his email, he has
> also put proposals to you. Ben and I have done a lot of work and put a
> lot on the line to get OS4.0 moving forwards, it isn't ideal, but it
> is a path forwards and I hope you will work with us in that spirit.
> One way or another you will be paid for  your work.
>
>
>
>
> cheers
>
> fleecy moss
> Chief Technical Officer
> Amiga Inc
>
> Notice : contents of this email are the property of Amiga Inc and
> cannot be disclosed to non authorised personnel without the permission
> of Amiga Inc
```