UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

AMIGA, INC., a Delaware corporation,

Plaintiffs,

v.

HYPERION VOF, a Belgium corporation,

Defendant.

No. 07-0631-RSM

**DECLARATION OF THOMAS FRIEDEN IN OPPOSITION TO AMIGA DELAWARE'S MOTION FOR PRELIMINARY INJUNCTION**

THOMAS FRIEDEN, under penalty of perjury, declares and states as follows:

1.    I am an independent contractor with Hyperion Entertainment VOF, a software company located in Belgium. I am a citizen of the Federal Republic of Germany and currently reside in that country. I am over the age of 18, I have personal knowledge of the matters stated herein, and I am competent to testify.

2.    I have been contracted to work on AmigaOS 4.0, an operating system developed under license by Hyperion Entertainment VOF. My main field of work, among others, is the development of AmigaOS 4.0's multitasking kernel, ExecSG. My contract with Hyperion for this work was signed on January 3, 2002, a true and accurate copy of which is attached hereto as

DECLARATION OF THOMAS FRIEDEN IN
TO OPPOSITION AMIGA DELAWARE'S MOTION FOR
PRELIMINARY INJUNCTION          - 1

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  Exhibit A. I have worked for Hyperion Entertainment VOF as a contractor prior to any

2  AmigaOS4 related work. I have never been an employee of Hyperion Entertainment VOF.

3       3.      The fact that I was and am an independent contractor to Hyperion Entertainment

4  VOF was known to Amiga, Inc. (the Washington corporation, hereinafter "Amiga

5  Washington") since early 2001 at the latest. I was mentioned as an independent contractor in

6  Annex II of the original agreement between Hyperion Entertainment VOF and Amiga

7  Washington. In a 2004 agreement between Hyperion and KMOS Inc. (the "Agreement for the

8  provision of software development services") I was again explicitly mentioned as a contractor

9  rather than an employee of Hyperion Entertainment VOF. In a personal meeting I had with

10  Garry Hare (at that time CEO of KMOS, Inc) on June 16, 2005, Mr. Hare confirmed knowledge

11  of the fact that I am a contractor.

12
       4.      At the time I was contracted by Hyperion Entertainment VOF to work on

13
14  AmigaOS 4.0, Amiga Washington was in my opinion no longer interested in continued

15  development of the original AmigaOS but rather wanted to concentrate solely on what was then

16  called AmigaDE. On several occasions, AmigaDE was presented by Amiga Washington as

17  "the" AmigaOS. Additionally, few of the Amiga Washington employees I spoke with—not

18  even Amiga's CTO Barrie Moss—had in-depth technical knowledge about AmigaOS. This fact,

19  and the way Amiga Washington presented itself at that time was a strong indication about its

20  intention not to develop AmigaOS any further. In fact, an "Executive Update" issued just prior

21  to the signing of the AmigaOS 4 agreement stated that Amiga Washington did not intend to

22  release any further updates for AmigaOS beyond 3.9, and that it was instead in the hands of the

23  user community to decide if that would happen. A true and accurate copy of that Executive

24  Update is attached hereto as Exhibit B.

25

**DECLARATION OF THOMAS FRIEDEN IN**
**TO OPPOSITION AMIGA DELAWARE'S MOTION FOR**
**PRELIMINARY INJUNCTION**                        - 2

LAW OFFICES OF
. WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

5.    My contract (Exhibit A) with Hyperion Entertainment VOF explicitly states that Hyperion Entertainment VOF only receives an object-code license (i.e. they would only receive the executable version of the code "as is", not the source code that would be required for modification of the software or further development of the software) for the parts written and co-written by me (including, but not limited to ExecSG, Warp3D and elf.library). All other ownership rights would remain with me and my co-author, Hans-Jörg Frieden, until Hyperion acquired full ownership rights of the software including source-code in accordance with the contract we negotiated with Hyperion. . This fact was acknowledged by Bill McEwen by email on February 16, 2007. A true and accurate copy of that email is attached hereto as Exhibit C.

6.    During the development period, Amiga Washington has repeatedly promised financial support to accelerate development of Amiga OS 4, which never materialized in any way. In addition, Amiga Washington failed to deliver the source code of previous OS releases that they were obligate to deliver to Hyperion under the 2001 agreement.

7.    Prior to the Amiga OS 4 work, I was contracted by Hyperion Entertainment VOF to convert for Amiga Washington the source code of the Mesa3D graphics library so it was able to run on the Intent/AmigaDE platform, which was Amiga's purported successor to AmigaOS. Hyperion sent an invoice to Amiga Washington for this work, and its receipt was confirmed by Barrie Moss. A true and accurate copy of a June 23, 2004 email from Mr. Moss acknowledging that receipt is attached hereto as Exhibit D. However, to the best of my knowledge, the invoice has never been paid.

8.    I did not sign or have knowledge of an agreement called "Arctic Software Development Agreement", which was supposedly dated April 7, 2004 as exhibited by Amiga. To the best of my knowledge, the agreement entered by Hyperion Entertainment VOF and

DECLARATION OF THOMAS FRIEDEN IN
TO OPPOSITION AMIGA DELAWARE'S MOTION FOR
PRELIMINARY INJUNCTION                                    - 3

LAW OFFICES OF
. WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1   Amiga Washington was entitled "Agreement for the provision of software development

2   services". I am mentioned as a subcontractor of Hyperion in this agreement.

3   **I DECLARE UNDER PENALTY OF PERJURY UNDER THE**
    **LAWS OF THE STATE OF WASHINGTON AND THE**
4   **FEDERAL REPUBLIC OF GERMANY THAT THE**
    **FOREGOING IS TRUE AND CORRECT.**

5

6   _18.5. 2007_                              _____
7   Date                                      THOMAS FRIEDEN

8   _Trier, Germany_
    Place
9

    505p.doc
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- -

**DECLARATION OF THOMAS FRIEDEN IN**                    **LAW OFFICES OF**
**TO OPPOSITION AMIGA DELAWARE'S MOTION FOR**            **. WILLIAM A. KINSEL, PLLC**
**PRELIMINARY INJUNCTION**              - 4              MARKET PLACE TOWER
                                                        2025 First Avenue, Suite 440
                                                        SEATTLE, WASHINGTON 98121
                                                        (206) 706-8148

## SOFTWARE DEVELOPMENT & LICENSE AGREEMENT

This agreement (this "Agreement") is made and entered into as of this 3 day of January 2002, by and between THOMAS FRIEDEN and HANS-JOERG FRIEDEN (hereafter collectively referred to as "Developers"), Schlossstrasse 176, D-54293 Trier, Germany and HYPERION ENTERTAINMENT VOF (hereafter: "Hyperion"), a Belgian corporation with its administrative seat at Brouwersstr. 1B, B-3000 Leuven, Belgium.

### RECITALS

**WHEREAS** Amiga Inc. has contracted with Hyperion to develop the next release of its Classic Amiga operating system tentatively called "Amiga OS 4.0";

**WHEREAS** Developers are experts in the field of low-level hardware and PowerPC programming;

**WHEREAS** Hyperion desires to contract with Developers to develop "Exec SG", the kernel for Amiga OS 4;

**WHEREAS** Developers acknowledge and accept that Hyperion is no position to compensate them for their work according to normal commercial rates;

**NOW, THEREFORE,** for good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

### ARTICLE I.
### DEFINITIONS

1.01 **Definitions.** For purposes of this Agreement, in addition to capitalized terms defined elsewhere in this agreement, the following defined terms shall have the meanings set forth below:

"Classic Amiga OS" means the operating system owned and developed by Amiga Inc. including but not limited to OS 3.1, OS 3.5 and OS 3.9 and largely based on the operating system shipped with the Commodore Amiga line of computers sold in the 1980's and early '90's;

1

TF    HF

"Confidential information" means any business and technical information of a party hereto that is treated as confidential by such party and furnished to the other party, and which includes but is not limited to computer programs, Source code, Object code, algorithms where such information, if in writing, is identified in writing to the other party as confidential prior to or concurrently with the transmission of such information, and, if conveyed orally, is identified orally as confidential prior to or concurrently with the transmission of such information and confirmed in writing within seven (7) days thereafter. Source Code and chip-set documentation is hereby designated as Confidential Information;

"Object Code" means the Software in a machine readable form that is not convenient to human understanding of the program logic, and that can be executed by a computer using the appropriate operating system without compilation or interpretation. Object Code specifically excludes Source Code;

"Software" or "the Software" means all of Developers' right and title in and to the software as described in Annex I hereof;

"Source Code" means the Software when written in a form or language understandable to humans, generally in a higher level computer language, and further including embedded comments in the English language.

## ARTICLE II.
## OBLIGATIONS OF DEVELOPERS; APPOINTMENT

2.01 **Scope.** Developers shall use best efforts to develop the Software for the PowerPC line of CPU's as used in the BlizzardPPC, Cyberstorm PPC and AmigaOne hardware. Developers shall on average allocate no less than four hundred (400) hours per month (one Man Month) to this end. Hyperion recognizes and acknowledges that software development of this scope and complexity is inherently unpredictable and that Developers are therefore not held to any specific timeline.

2.02 **Ownership.** Developers shall retain all intellectual property rights in and to the Software until such time as Hyperion has paid the compensation pursuant to article 3.01 in full, at which time full ownership rights shall pass to Hyperion.

2

2.03 **Object Code License – Appointment**. Until such time as Hyperion has acquired full ownership of the Software pursuant to article 2.02 hereof, Developers grant Hyperion a transferable, perpetual, worldwide, royalty bearing Object Code-only license to the Software to use and distribute an Object Code version of the Software as part of AmigaOS4.x.

### ARTICLE III.
### OBLIGATIONS OF HYPERION

3.01 **Compensation**.  Hyperion shall pay Developers thirty thousand (30.000) euro for each Man Month, commencing November 1, 2001 and until completion of the Software. Pursuant to article 2.03 hereof, Hyperion shall nonetheless have the right to distribute Object Code copies of the Software prior to payment in full. For each copy of the Software distributed in this manner, Hyperion shall pay Developers ten (10) euro which shall be applied towards the balance of the outstanding compensation. All payments by Hyperion to Developers during the term of this Agreement shall also be applied to the outstanding balance unless explicitly agreed otherwise.

3.02 **Records and inspection**. During the term of this Agreement, Hyperion shall deliver to Developers quarterly reports within thirty (30) days after the end of each quarter setting forth the sales of the Software. Following such a quarterly report, accrued royalties shall promptly be wired to Developers. Amounts of less than Five Hundred (500) euro shall be carried over to the next quarter. Wire transfer costs shall be born by Hyperion. Hyperion shall maintain or acquire complete and accurate records of sales to permit the determination of the sums payable by Hyperion to Developers. Hyperion shall, upon fourteen (14) days advance written notice by Developers, permit reasonable inspection of such records by Developers or their outside accountants. The finding of errors in such records shall not of itself constitute a material breach of this Agreement.  Developers shall bear all of their own costs of such inspection even if they find errors in Hyperion's records unless the inspection reveals more than 5% underpayment on the part of Hyperion in which case Hyperion shall bear the costs of inspection which shall not be unreasonable.

3.03 **Documentation and technical support**. Hyperion shall provide Developers with the required documentation to allow Developers to complete the Software and integrate it into Amiga OS 4.x and shall use best efforts to provide technical support including but not limited to granting Developers access to the relevant sections of the Amiga OS Source Code.

3

3.04 **Confirmation.** Hyperion shall confirm in writing to Developers that the work was completed and performed to the satisfaction of Hyperion.

## ARTICLE IV.
## WARRANTIES AND INDEMNIFICATIONS

### 4.01 Warranty and Covenant of Original Development by Developers

Developers represent, warrant and covenant that: (a) they are and shall be the owner of all intellectual property rights in the Software under copyright, trademark, trade secret, and other applicable law; (b) the Software delivered or licensed to Hyperion hereunder is and shall be of original development by Developers; (c) the Software does not and shall not infringe or otherwise violate any copyright or trade secret of any third party anywhere in the world with the exception of software patents; (d) they have not received, as of the date of the delivery of the Software to Hyperion, actual notice of any claim that the Software or the use thereof infringes any intellectual property right of any third party anywhere in the world or that any third party has any proprietary interest in or to the Software, or any invention, work of authorship, copyright, trade secret, know-how or a similar right to the Software.

4.02 **Indemnification by Developers.** Developers shall indemnify and hold Hyperion harmless from and against all claims, suits, demands, actions, judgments, penalties, damages, costs and expenses (including attorney's fees and costs), losses or liabilities of any kind arising from a claim that the Software infringes a copyright or other intellectual property right of any other person anywhere in the world (except to the extent such infringement or violation is due to Hyperion or is related to the infringement of a software patent).

4.03 **Indemnification by Hyperion.** Hyperion shall indemnify and hold Developers harmless from and against all claims, suits, demands, actions, judgments, penalties, damages, costs and expenses (including attorney's fees and costs), losses or liabilities of any kind arising from a claim that the Software infringes a copyright or other intellectual property right of any other person anywhere in the world (except to the extent such infringement or violation is due to Developers).

4.04 **Notice.** Developers shall promptly notify Hyperion of any actions brought or claims asserted against Developers whose outcome may affect the rights granted to Hyperion pursuant to this Agreement. Hyperion shall promptly notify Developers of

4

any actions brought or claims asserted against Hyperion whose outcome may affect the rights granted to Developers pursuant to this Agreement.

4.05 **Organization and Standing.** Hyperion is a corporation duly organized, validly existing and in good standing under the laws of the kingdom of Belgium.

4.06 **Power to grant rights by Developers.** Developers represent and warrant that: (a) they have the right, power and authority to grant the rights and licenses granted in this Agreement and fully perform their obligations hereunder; (b) the making and performance of this Agreement by Developers does not and shall not violate any separate agreement, right or obligation existing between Developers and any third party; and (c) there are no outstanding liens, security interests or other encumbrances of any kind whatsoever in or to the Software or to any of the intellectual property rights therein.

4.07 **Power to grant rights by Hyperion.** Hyperion represents and warrants that: (a) it has the right, power and authority to grant the rights and licenses granted in this Agreement and fully perform its obligations hereunder; (b) the making and performance of this Agreement by Hyperion does not and shall not violate any separate agreement, right or obligation existing between Hyperion and any third party.

## ARTICLE V.
## CONFIDENTIALITY

(a) Each party may disclose to the other party Confidential Information as may be necessary to further the performance of this Agreement. Each party agrees to treat the other's Confidential Information in the manner prescribed herein.

(b) Developers and Hyperion shall protect the other party's Confidential Information as follows:

(I) Except as specifically provided herein or otherwise permitted by the other party in writing, each party may disclose Confidential Information of the other party only to those employees and agents required to have knowledge of same to perform their duties pursuant to this Agreement. Each party shall require each such employee or agent to enter into a written non-disclosure agreement containing provisions substantially consistent with the terms hereof prior to the disclosure of Confidential Information to such employee or agent. Each party shall treat the Confidential

5

TF    HF

Information of the other party with the same degree of care as it protects its own Confidential Information, and in no event less than a reasonable degree of care.

(II) Except as may specifically be permitted herein, upon the termination of this Agreement, each party shall return to the other, or, if so requested, destroy all Confidential Information of the other party in its possession or control, except such Confidential Information as may be reasonably necessary to exercise the rights that survive the termination of this Agreement.

(c) The foregoing obligations of confidentiality shall not apply with respect to either party's Confidential Information to the extent that it:

(I)  is within or later falls within the public domain through no fault of the party receiving the Confidential Information; or

(II) is, or becomes, available to the receiving party from third parties, who, in making such disclosure, have breached no written confidentiality agreement; or

(III) is previously known by the receiving party;

(IV) is independently developed by or for the receiving party without use of the Confidential Information.

(d) In the event any party receives a request to disclose any Confidential Information under the terms of a valid and effective subpoena or order issued by a court of competent jurisdiction or a governmental body, such party shall (I) immediately notify the party that furnished such Confidential Information of the existence, terms and circumstances surrounding such request, (II) consult with such party on the advisability of taking legally available steps to resist or narrow such request, and (III) exercise reasonable best efforts, at the expense of the party producing such Confidential Information, to obtain an order or other reliable assurance that confidential treatment will be accorded to such portion of the Confidential Information as may be disclosed.


### ARTICLE VI.
### TERM; TERMINATION

6.01 Term. This Agreement shall continue for the duration of the copyright on the

6

Software, unless terminated as provided herein.

6.02 **Termination for Material Breach.** Either party may, at its option, terminate this Agreement in the event of a material breach by the other party. Such termination may be effected only through a written notice to the other party, specifically identifying the breach or breaches on which termination is based. Following receipt of such notice, the party in breach shall have thirty (30) days to cure such breach or breaches and this Agreement shall terminate in the event that such a cure is not made by the end of said period. The claim of material breach justifying termination shall be limited to the specific breaches set forth in the above written notice as explained, supported and negated by evidence.

6.03 **Termination in the event of bankruptcy.** If either party files a petition in bankruptcy for liquidation, or ceases doing business in the ordinary course, then the other party shall have the right to terminate this Agreement upon thirty (30) days written notice.

6.04 **Consequences of Termination.** Upon termination of this Agreement articles IV, V, VI and VII shall survive the termination of this Agreement.

## ARTICLE VII.
## MISCELLANEOUS

7.01 **Entire Agreement.** This Agreement collectively sets forth the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and, except as specifically provided herein, supersedes and merges all prior oral and written agreements, discussions and understandings between the parties with respect to the subject matter hereof, and neither of the parties shall be bound by any conditions, inducements or representations other than as expressly provided for herein.

7.02 **Independent Contractors.** In making and performing this Agreement, Developers and Hyperion act and shall act at all times as independent contractors and nothing contained in this Agreement shall be construed or implied to create an agency, partnership or employer and employee relationship between Developers and Hyperion. At no time shall either party make commitments or incur any charges or expenses for or in the name of the other party.

7.03 **Amendments; Modifications.** No amendment, modification or attempt to

7

supersede or cancel any of the terms, covenants, representations, warranties or conditions hereof shall be effective unless such amendment, modification or direction to supersede or cancel such term, covenant, representation, warranty or condition is executed in writing by Developers and Hyperion or, in the case of a waiver, by or on behalf of the party waiving compliance. No waiver by any party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be a further or continuing waiver of any such condition or breach or a waiver of any other condition or of any breach of any other term, covenant, representation or warranty.

7.04 **Severability**. The provisions of this Agreement shall be severable, and if any of them are held invalid or unenforceable for any reason, such provision shall be adjusted to the minimum extent necessary to cure such invalidity. The invalidity or unenforceability of one or more of the provisions contained in this Agreement shall not affect any other provisions of this Agreement.

7.05 **Waivers**. The waiver of any breach of any provision of this Agreement or failure to enforce any provision hereof shall not operate or be construed as a waiver of any subsequent breach.

7.06 **Governing Law**. This Agreement shall be governed by and interpreted in accordance with the internal laws of Belgium without regard to conflicts of laws principles.

7.07 **Forum**. The exclusive jurisdiction and venue of any lawsuit between the parties arising under this Agreement or out of transactions contemplated hereby shall be the courts of Leuven, Belgium and each of the parties hereby submits itself to the exclusive jurisdiction and venue of said courts for the purposes of such lawsuit.

7.08 **Counterparts**. This Agreement may be executed in any number of counterparts but at least one for each party, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one Agreement.

7.09 **Signatures by Facsimile**. Any facsimile signature of any party hereto shall constitute a legal, valid and binding execution hereof by such party.

7.10 **Construction**. This Agreement is the product of joint draftmanship and shall not be construed against one party more strictly than against the other.

8

7.11 **Effect.** The Agreement shall be binding upon and inure to the benefit of each party hereto, and their successors and assigns.

7.12 **Headings.** The headings in this Agreement are inserted merely for the purpose of convenience and shall not affect the meaning or interpretation of this Agreement.

9

IN WITNESS WHEREOF, the parties, by their authorized representatives, have executed this Agreement.

FOR DEVELOPERS:

BY: _____

NAME: Thomas Frieden

TITLE: Independent senior software engineer

FOR DEVELOPERS:

BY: _____

NAME: Hans-Joerg Frieden

TITLE: Independent senior software engineer

FOR HYPERION ENTERTAINMENT VOF:

BY: _____

NAME: Ben Hermans

TITLE: Managing partner

10

TF 42

Exhibit A, Page 14

### Annex I: Exec Second Generation (SG): feature-set and design goals

General design goal: ExecSG should offer a high degree of backwards compatibility with the old Exec. As the old Exec is written entirely in 68K ASM, no code can and shall be recycled.

Required functionality for the first release of AmigaOS 4.0:

* Fully pre-emptive multitasking (round-robin)
* Support for shared libraries through new library model (interfaces)
* Very fast inter-process communication
* Fast interrupt handling (low latency)
* Low-overhead task switching
* Fully PPC native
* 68k emulation: both interpreting and JIT emulation available
* Extremely fast context switching times
* Extremely low latency for IPC
* Interrupt handler can be in PPC code but can also be emulated
* New API for DMA device drivers
* Hardware Abstraction Layer (HAL) divided in CPU, machine and common
* Resource tracking: Applications can create "trackable" resources, for example memory, message ports, messages, semaphores.
* Much improved memory handling
* Improved trap handling
* Improved debugging facilities
* Unified MMU interface
   * Limited memory protection: Critical memory areas can be protected: Kernel memory areas, all code areas, unused memory (also unused free memory). Applications can use the MMU interface to protect their memory from others.

To be implemented post-release (at least two features mandatory):

11

* Symmetric Multi-Processing (SMP): support for multiple CPU's.
* Multithreading: Tasks can consist of multiple threads of execution
* Isolated address spaces
* Pluggable schedulers

12



so the world may know











## Executive Update

Dear Amiga Family:

It is now November 2000, eleven months after we took over the helm of Amiga. We have made some changes to the original plan, and continue to do our best in carrying the vision forward.





In the next two weeks, the next new product from Amiga will begin shipping - Amiga OS 3.9! This build has been designed specifically for one group - You, the Amiga family. We have been working very closely with Haage and Partner in creating a great new product offering for Amiga that you will all be very proud of.

Will there be a 4.0? This really depends on the sales of OS 3.9. You see, we did not have any plans for another version of the Classic OS. But we continued to receive requests, and because we listen to community, we decided to move ahead with Haage and Partner on this project. If OS 3.9 sells well, and we see a continuing need to produce for the existing Classic Amiga platform, then there is a strong possibility of a 4.0.

It is in your hands.

No matter what happens, AmigaDE is still moving ahead quickly and we look forward to delivering another version of the Amiga Software Development Kit (SDK) with new features and enhancements. In the coming weeks, we will be adding 3D and sound to AmigaDE.

There are many more exciting things happening at Amiga and I look forward to sharing with you all of the great details, and announcements in Koln, Germany in December. I look forward to meeting all of you there, at the Amiga World tradeshow. Bring a friend!

Looking forward to a great visit in Koln, and a wonderful holiday season,

Bill McEwen and the rest of the Amiga team.

**Exhibit B, Page 17**

Corporate | Support | News | Events | Products | Search

W W W . A M I G A . C O M

© 1996-2000 Amiga, Inc.
webmaster@amiga.com | Site Log | Site Map

**Exhibit B, Page 18**

**Subject:** Amiga and the Friedens - Moving Together
**From:** "Bill McEwen" <bill@amiga.com>
**Date:** Fri, 16 Feb 2007 14:14:05 -0800
**To:** "'Thomas Frieden'" <thomasf@hyperion-entertainment.biz>,
<Hans-JoergF@hyperion-entertainment.com>
**Return-Path:** <bill@amiga.com>
**Received:** from jumpgate.local ([unix socket]) by jumpgate (Cyrus v2.1.12)
with LMTP; Fri, 16 Feb 2007 23:28:03 +0100
**X-Sieve:** CMU Sieve 2.2
**Received:** from localhost (localhost [127.0.0.1]) by jumpgate.local (Postfix)
with ESMTP id A47F63C2A4 for <tfrieden@localhost>; Fri, 16 Feb 2007
23:28:03 +0100 (CET)
**Received:** from mail.hyperion-entertainment.biz [213.133.108.237] by
localhost with POP3 (fetchmail-6.2.1) for tfrieden@localhost (single-drop); Fri, 16
Feb 2007 23:28:03 +0100 (CET)
**Received:** from murder ([unix socket]) by www (Cyrus v2.2.12) with LMTPA; Fri,
16 Feb 2007 23:14:21 +0100
**X-Sieve:** CMU Sieve 2.2
**Received:** by mail.hyperion-entertainment.biz (Postfix, from userid 65534) id
1667E724588; Fri, 16 Feb 2007 23:14:21 +0100 (CET)
**X-Spam-Checker-Version:** SpamAssassin 3.1.3 (2006-06-01) on
www.hyperion-entertainment.biz
**X-Spam-Status:** No, score=-0.8 required=5.0 tests=AWL,BAYES_00,BIZ_TLD,
HTML_70_80,HTML_MESSAGE autolearn=no version=3.1.3
**Received:** from amiga.com (amiga.com [69.44.18.43]) by
mail.hyperion-entertainment.biz (Postfix) with ESMTP id BBCE5724546; Fri, 16
Feb 2007 23:14:15 +0100 (CET)
**Received:** from Billscompaq (63-231-54-37.tukw.qwest.net [63.231.54.37]) by
amiga.com (8.12.10/8.12.8) with ESMTP id l1GMEDTY016879; Fri, 16 Feb 2007
17:14:20 -0500 (EST) (envelope-from bill@amiga.com)
**Message-ID:** <035801c75217$c7339380$5000a8c0@Billscompaq>
**MIME-Version:** 1.0
**Content-Type:** multipart/alternative;
boundary="----=_NextPart_000_0359_01C751D4.B9105380"
**X-Mailer:** Microsoft Office Outlook 11
**X-MimeOLE:** Produced By Microsoft MimeOLE V6.00.2900.3028
**Thread-Index:** AcdSF8VdLvo2cn1iTHK+0uaNBGPI+Q==

Hey Guys:

I want to thank you for your e-mail to me, and again I look forward to our
working together. I think we can get a deal done that is good for all of us, and
that we both (or all three of us) want the same thing: the product shipping.

I would like to spend more time planning our futures and less time the past. I
want to make it clear that I greatly respect you both and I hope that both
understand and recognize this point. Our disagreements with Hyperion are not
disagreements with you.

I do want to respond to the points you have raised, and then begin our focus on
the future.

We understand that Hyperion cannot transfer more rights in OS4.0 than it has.
Having read your contract, it is clear that the contract gives Hyperion only an
object code license to ExecSG until you are paid in full. So, Hyperion currently
only has an object code license to ExecSG.

**Exhibit C, Page 19**

It is also clear that Amiga only acquired object code license rights when we exercised our "buy back" rights with Hyperion. In other words, Hyperion has no ownership rights to ExecSG, and Amiga did not and could not acquire ownership of ExecSG from Hyperion (because Hyperion had no ownership rights to transfer).

Reading your email, it seems that you are concerned that Amiga would try to use the courts to acquire ownership of ExecSG. I can assure you that this is absolutely not the case.

I hope that clears up any misunderstandings we have had, and that we can move forward.

Now, let's move on to business. I will get right to the point. Amiga wants to buy your rights in ExecSG. We would take over your contract with Hyperion. Amiga wants to compensate you for all of the hard work and creativity that you both put into ExecSG. We want to pay you right away, as well have you participate in the potential revenue from ExecSG, with royalties.

Also, Amiga would like to engage you as members of the development team. We can work out the exact terms, but you will be paid for your work while you are working, starting immediately.

This needs to be done quickly and confidentially. We are prepared to come to terms and pay you swiftly. If you are interested (and we hope you are), please respond promptly and we will respond promptly as well, with specific terms.

I look forward to working with you.

Bill

-----Original Message-----
From: Bill McEwen [mailto:bill@amiga.com]
Sent: Tuesday, February 13, 2007 12:23 PM
To: Shatan, Gregory S.; Baker, Scott D.
Subject: FW: Amiga and the Friedens


-----Original Message-----
From: Hans-Joerg Frieden [mailto:Hans-JoergF@hyperion-entertainment.biz]
Sent: Tuesday, February 13, 2007 7:15 AM
To: Bill McEwen
Cc: 'Thomas Frieden'
Subject: Re: Amiga and the Friedens

Bill McEwen wrote:
>
> Gentlemen:
>
>
>
> I want to thank you for your to the point e-mail, and I will reply the

> same.
>
>
>
>     1. Before I can make any announcement about the IP, I have to have
>        a contract with you. The three contracts that we have with
>        Hyperion state that Amiga owns the IP to OS 4.
>          1. We get a contract with you for OS 4.
>          2. We make the announcement.
>          3. OS 4 starts shipping.
>          4. You start making money.
>     2. I have requested a copy of the contract that you have with
>        Hyperion from Reed Smith so that I may review it.
>
>
>
> That is how it can work. We need to move very quickly however if you

**Exhibit C, Page 20**

```
> want to proceed, as this is about to be removed my hands and it will
> no longer be in my control.
>
>
>
Hi Bill.
```

The most recent contract between Amiga and Hyperion for the development
of the Arctic PDA demo states quite clearly that Amiga does not own OS
4. In fact, not even Commodore fully owned 3.1, nor did Gateway/Amiga
ever "own" OS 3.5 and 3.9, which was based on exclusive, terminable
license agreements for an initial 2 year period only. It was Gateway's
legal department that drafted these contracts, not Hyperion.

Even *if* the contract would say that Amiga owns OS 4, we (Thomas and
me) never transferred ownership of our code to Hyperion so Hyperion
could never have transferred ownership to anyone, including Amiga. This
is a point we have been trying to make for years, going back as far as
Garry Hare's visit to Germany.

The original 2001 agreement specified a WarpOS based OS 4 system. WarpOS
is primitive, hand-coded in PPC assembly which only runs on classic
Amigas and without a single line of comments. We developed ExecSG
because Escena failed to deliver the original AmigaOne which would have
been an add-on to the classic Amigas. Our decision to develop ExecSG
from ground up allowed the Arctic demo to run in the first place; this
is also the reason why we are even discussion this today.

It makes no sense whatsoever for Amiga to claim that ExecSG was ever
part of the original 2001 agreement.

 From talking with Evert, we have the distinct impression Hyperion is
also interested in settling this ownership issue once and for all,
through binding arbitration (which is a lot less conspicuous and less
time consuming than litigation) - as Hyperion has, as we understand,
offered countless times - or through the courts if need be. We do not
know what should be understood by "... as this is about to be removed
from my hands and it will no longer be in my control ...", but we assume
you are referring to a pending lawsuit here.

Our lawyer informs us that the chance that Amiga would ever prevail in
court is non-existent. No court can ever take away our ownership rights
under EU copyright law. In fact, even if the contract between Amiga and
Hyperion is declared null and void, or terminated, our ownership rights
would not be affected; quite the contrary, only the license we gave to
Hyperion would be terminated.

A US court decision to the contrary would never be recognized as valid
in the EU.

We do not understand why (under the circumstances) Amiga refuses
arbitration or even wants to push this issue of ownership to its
inevitable outcome which is another defeat in court.

By all means, we *want* to work together, but it is high time for Amiga
to face legal realities. One such reality is that Hyperion can only
transfer to you whatever ownership they have, and the absolutely
positively do NOT have ownership of ExecSG, so there is no way they can
transfer it to you or anybody else.

Best regards,

--
Hans-Joerg Frieden

"The past tempts us, the present confuses us, the future frightens us
and our lives slip away moment by moment, lost in that vast terrible
in-between. But there is still time to seize that one last fragile
moment, to choose something better."
     - Centauri Emperor Turhan, The Coming of Shadows, Babylon 5

**Exhibit C, Page 21**

16.05.2007 12:49

Bill McEwen
Amiga, Inc.
bill@amiga.com
Tel: 425.557.9600 x23
Fax: 425.557.0090

*Important: This electronic mail message may contain information or have one or more attachments containing information that is confidential, proprietary and/or legally privileged information. This message is intended only for the addressees clearly indicated as intended recipients and if you have received this message in error, if you are not the intended recipient (or an employee or agent responsible for delivering it to the intended recipient), or if you aren't sure, you are hereby on notice that you have received this message in error and you may not review, use, download, store, disclose, disseminate, transmit, distribute, save or copy this message or any attachment. If you received this message in error, doing any of these things could be a violation of Federal and State law and subject you to criminal and/or civil prosecution. If you have received this message in error, the only thing you are permitted to do is to notify the sender\* immediately by reply to this message or by telephone if a number is provided and then immediately delete the original message, attachment(s) and any copies, including any copies made by you or any automated system for backup, recovery or any other purpose. Thank you for your compliance and your cooperation.*

**Subject:** Re[2]: Explanation
**From:** Fleecy Moss <fleecy@amiga.com>
**Date:** Wed, 23 Jun 2004 18:34:02 +0100
**To:** Hans-Joerg Frieden <Hans-JoergF@hyperion-entertainment.com>
**CC:** ThomasF <ThomasF@hyperion-entertainment.com>
**Return-Path:** <fleecy@amiga.com>
**Received:** from jumpgate.local ([unix socket]) by jumpgate (Cyrus v2.1.12)
with LMTP; Wed, 23 Jun 2004 19:42:09 +0200
**X-Sieve:** CMU Sieve 2.2
**Received:** from localhost (localhost [127.0.0.1]) by jumpgate.local (Postfix)
with ESMTP id 24B403C113 for <tfrieden@localhost>; Wed, 23 Jun 2004
19:42:09 +0200 (CEST)
**X-Original-To:** thomasf@hyperion-entertainment.biz
**Delivered-To:** thomasf@hyperion-entertainment.biz
**Received:** from hyperion-entertainment.biz [213.133.108.237] by localhost
with POP3 (fetchmail-6.2.1) for tfrieden@localhost (single-drop); Wed, 23 Jun
2004 19:42:09 +0200 (CEST)
**Received:** from panda.host4u.net (panda.host4u.net [216.71.64.116]) by
mail.hyperion-entertainment.biz (Postfix) with ESMTP id 2132913E2C; Wed, 23
Jun 2004 20:31:21 +0200 (CEST)
**Received:** from cmailm4.svr.pol.co.uk (cmailm4.svr.pol.co.uk
[195.92.193.211]) by panda.host4u.net (8.11.6/8.11.6) with ESMTP id
i5NHX6m10689; Wed, 23 Jun 2004 12:33:07 -0500
**Received:** from modem-2685.crocodile.dialup.pol.co.uk ([81.78.42.125]
helo=localhost) by cmailm4.svr.pol.co.uk with esmtp (Exim 4.14) id
1BdBcP-00026c-5T; Wed, 23 Jun 2004 18:33:05 +0100
**Reply-To:** Fleecy Moss <fleecy@amiga.com>
**Organization:** Amiga, Inc
**X-Priority:** 3 (Normal)
**Message-ID:** <748597566.20040623183402@amiga.com>
**In-Reply-To:** <40D9B9DF.6060300@hyperion-entertainment.com>
**References:** <115198368.20040616135611@amiga.com>
<40D97873.4090707@hyperion-entertainment.com>
<1719381977.20040623175529@amiga.com>
<40D9B9DF.6060300@hyperion-entertainment.com>
**MIME-Version:** 1.0
**Content-Type:** text/plain; charset=us-ascii
**Content-Transfer-Encoding:** 7bit
**X-UIDL:** C=h"!pAP"!,a<"!SlD!!

Hey HJ

Businesses operate in a legal context. One of the biggest mistakes I
ever made was not realising that and trying to 'be nice' and 'talk to'
people. If I am told by my advisors not to talk to people, then I don't
do it anymore.

HJF> Or do you want to deny that there has been an invoice from Hyperion for
HJF> the work on Ami3D and the Mesa port, and that it wasn't paid for?

As far as I am aware the only invoice we ever received from Hyperion
was $5k for the Mesa port. As far as Ami3D, that was left to Ben and
Sanjay to sort out a contract and again, as far as I am aware, no

**Exhibit D, Page 23**

16.05.2007 12:55

contract was ever completed. I never heard of any invoice for Ami3D.

Good luck with all your endeavours.

HJF> Thank you. Believe it or not I wish you the same.

I know you do.

--

cheers

fleecy moss

**Exhibit D, Page 24**