1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| AMIGA, INC., a Delaware corporation, | CASE NO.: CV07-0631-RSM |
| Plaintiff, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMIGA'S MOTION FOR PRELIMINARY INJUNCTION** |
| and | (Fed. R. Civ. Pro. 65) |
| HYPERION VOF, a Belgium corporation, | NOTE ON MOTION CALENDAR: MAY 25, 2007 |
| Defendant. | HEARING: MAY 31, 2007<br>TIME: 10:00 A.M.<br><br>COURT: HON. RICARDO MARTINEZ |

REPLY MEMORANDUM
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048 (206) 292-8800

Dockets.Justia.com

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LEGAL ANALYSIS | 4 |
| | A. The Court Should Enjoin Hyperion's Further Infringement Of Amiga's Trademarks. | 4 |
| |     1. Hyperion Fails To Refute That Amiga Is Likely To Succeed On The Merits Of Its Trademark Infringement Claim | 4 |
| |     2. Irreparable Harm Is Presumed Where, As Here, Plaintiff Has Established A Likelihood Of Success On The Merits | 5 |
| | B. Amiga is Entitled to a Mandatory Injunction in Aid of Obtaining the Code to OS 4.0 | 6 |
| |     1. Amiga Owns OS 4.0 And Hyperion Has An Executory Obligation To Transfer To Amiga The Source Code, Title and Intellectual Property Rights In OS 4.0 | 6 |
| |     2. Hyperion's Refusal to Turn Over OS 4.0 Is Causing, And Will Continue To Cause, Irreparable Harm To Amiga | 8 |
| | C. Amiga Has Standing to Bring This Lawsuit | 9 |
| | D. The Court Is Empowered To Issue The Requested Injunctive Relief | 10 |
| | E. Hyperion's Requested Bond Is Excessive And Improper | 11 |
| | F. Objections To Hyperion's Purported Evidence And Motion To Strike Same | 12 |

REPLY MEMORANDUM - i  
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP  
1000 SECOND AVENUE BUILDING, SUITE 3500  
SEATTLE, WASHINGTON 98104-1048 (206) 292-8800

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Disabled Rights Action Committee v. Las Vegas Events, Inc.*,
   375 F.3d 861 (9th Cir. 2004) ............................................................................. 9, 10

*El Pollo Loco v. Hashim*,
   316 F.3d 1032 (9th Cir. 2003) ............................................................................. 3, 4

*GoTo.Com, Inc. v. Walt Disney Company*, ,
   202 F.3d 1199 (9th Cir. 2000) ................................................................................. 4

*National Football League Properties, Inc. v. Wichita Falls Sportswear, Inc.*,
   532 F. Supp. 651 (W.D. Wash. 1982) ..................................................................... 4

*Pasia, Inc. v. N & G Auto*,
   928 F. Supp., 1009 (C.D.Cal. 1996) ................................................................... 3, 4

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*,
   60 F.3d 27 (2nd Cir. 1995) ...................................................................................... 5

*Walczak v. EPL Prolong, Inc.*,
   198 F.3d 725 (9th Cir. 1999) ................................................................................. 11

## STATUTES

Federal Rule of Civil Procedure 19(a)(1) ........................................................................ 9

Federal Rule of Civil Procedure 65(c) .......................................................................... 10

DOCSSFO-12479553.3

REPLY MEMORANDUM - ii
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048 (206) 292-8800

## I. INTRODUCTION

In its Opposition papers, Hyperion concedes – as it must – that it has both (1) infringed, and continues to willfully infringe, Amiga's registered trademarks by using them to market Amiga OS 4.0 outside the scope and term of its terminated license, and (2) materially breached its contractual obligations by, among other things, refusing to release the code and rights to Amiga OS 4.0 to Amiga upon Amiga's exercise of its option to acquire that property and by continuing to market OS 4.0 outside the scope and term of its terminated marketing and distribution license. With no meritorious defense to Amiga's claims, Hyperion offers freshly – but only half – baked excuses for why Hyperion's infringement and breach should somehow be ignored or excused. In its haste, however, to find a defense – *any* defense – to Amiga's claims, Hyperion advances arguments that are not only internally inconsistent but also mischaracterize the facts and misstate the law. Indeed, even a sampling of Hyperion's new, attorney-contrived excuses reveals that Hyperion's attempt to avoid an interim injunction by re-writing the history of the parties' substantial pre-dispute conduct should be summarily rejected.

For example, because Hyperion has used Amiga's trademarks beyond both the scope and term of its license, Hyperion now must argue – for the very first time – that it obtained an exclusive, worldwide license to use Amiga's trademark in *any manner* Hyperion desires, *for as long* as Hyperion desires. Hyperion boldly stakes its new, sweeping license claim on two meritless grounds. First, Hyperion claims that it obtained an exclusive, unlimited and perpetual trademark license from Amiga more than *three years ago* when Amiga allegedly became bankrupt or legally insolvent – despite the facts that Hyperion offers no competent evidence of either and that the course of the parties' pre-litigation conduct proves otherwise. [Declaration of William McEwen In Support of Amiga's Reply ("McEwen Reply Dec.") ¶ 8.] Second, Hyperion claims, also for the first time, that almost *two years ago* it obtained an exclusive, unlimited and perpetual trademark license from Amiga because Amiga "halted development" of its Classic OS. Hyperion's audacious forfeiture argument is founded on a shameless attempt to backdate the completion date for Amiga OS 4.0 and ignores the fact that Hyperion's refusal to release the code

REPLY MEMORANDUM - 1
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048  (206) 292-8800


and rights to Amiga OS 4.0 to Amiga prevented Amiga from undertaking any further development of the Classic Amiga OS for the Target Hardware. [Declaration of Barrie Jon Moss In Support of Amiga's Reply ("Moss Reply Dec.") ¶ 12.]

But that's not all. Hyperion next argues that both its trademark infringement and contractual breach are somehow excused because Hyperion allegedly never consented to the transfer of the Agreement to Plaintiff Amiga's predecessor, KMOS, Inc. In support of this half-baked excuse, Hyperion submits the sworn declaration of Mr. Evert Carton, its Managing Partner, which curiously ignores the fact that *Hyperion itself* promoted Amiga OS 4.0 as "developed under license from KMOS, Inc." [Carton Dec., Ex 8, p. 82.] More egregiously, Mr. Carton's sworn declaration also ignores his own pre-dispute admissions offered in a press release that applauded the assignment to KMOS and warranted that the assignment would "not have any adverse impact whatsoever" in connection with Hyperion's obligations to release of the consumer version of Amiga OS 4.0 [McEwen Reply Dec., Ex. D.]

Next, Hyperion claims that its contractual breach of failing to release the code and title to Amiga OS 4.0 to Amiga should somehow be excused because (a) OS 4.0 was "complete" in December 2004 and (b) Amiga did not timely exercise its option to acquire the code and title to Amiga OS 4.0. Once again, in Hyperion's haste to revise history, it mischaracterizes the Agreement and ignores the following dispositive facts. First, Hyperion solicited – and received – the $25,000 option payment under Section 3.01 from Amiga to stave off Hyperion's pending insolvency in 2003. [McEwen Reply Dec. Ex. H; Declaration of William McEwen in Support of Amiga's Motion for Preliminary Injunction ("McEwen Dec.") Ex. J.] Second, Amiga redundantly exercised its option again when it paid additional monies – once again at Hyperion's behest – in 2006, because Hyperion simply did not complete Amiga OS 4.0 in December 2004. [McEwen Reply Dec. ¶ 19.]

To determine whether the "Developer's Pre-release" of Amiga OS 4.0 in December 2004 constitutes completion for purposes of Section 3.01 of the Agreement, the Court need not look beyond the "evidence" submitted by Hyperion and the parties' pre-dispute conduct. Indeed,

REPLY MEMORANDUM - 2
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048  (206) 292-8800

1  although Hyperion trumpets a review by the "highly acclaimed independent tech website 'Ars
2  Technica,'" [Carton Dec., par. 38], Hyperion omits the key statements in the review concerning
3  whether the December 2004 "Amiga OS 4.0 Developer's Prerelease (Update 1)" was actually
4  complete: "This is a *beta* OS with many issues still to be worked out....Clearly, OS 4 as it stands
5  today is *not ready for general public consumption*." [Carton Dec., Ex. 10 at 102-03 (emphasis
6  added.]

7  Further, Hyperion's dubious claim that it completed the Amiga OS 4.0 is undercut by its
8  pre-litigation conduct. For example, in the Fall of 2006 – more than a year after Hyperion now
9  claims Amiga's option expired – Hyperion demanded that Amiga make additional payments to
10 invoke its option under Section 3.01. [McEwen Reply Dec. ¶ 19.] Amiga again made the
11 payments to avoid a dispute, yet Hyperion has not only refused to release the code and title to
12 Amiga OS 4.0, it has kept the entire ransom. [*Id.*] In sum, Amiga overpaid for the right to
13 exercise its option before Hyperion finalized (assuming – charitably – that Hyperion's non-
14 commercial release of Amiga OS 4.0 in December 2006 is "complete") the source code to Amiga
15 OS 4.0. Hyperion's refusal to release Amiga's property warrants granting the requested equitable
16 relief.

17 Hyperion's remaining "defenses" to Amiga's motion for a preliminary injunction – that
18 Amiga allegedly failed to join an indispensable party and that the Court lacks the power to fashion
19 appropriate equitable relief – are specious both factually and legally. Eyetech Ltd is neither an
20 indispensable party to this litigation nor would its rights be impacted by requested interim
21 injunction. And, on the facts presented, the Court is empowered to issue and appropriately tailor
22 both prohibitory and mandatory injunctions. Accordingly, Amiga is likely to prevail on its claims
23 for trademark infringement, breach of contract and specific performance.

24 Finally, Hyperion's recent announcement concerning its "strategic partnership" with
25 Acube to develop, market and distribute OS 4.0 outside the scope and term of its now terminated
26 license – using both Amiga's trademarks and source code to OS 4.0 that Hyperion hijacked and
27 continues to hold hostage – confirms that the irreparable harm to Amiga is more than just
28

REPLY MEMORANDUM - 3
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048 (206) 292-8800

presumed; its is actual and immediate. Amiga respectfully submits, therefore, that its motion for preliminary injunction should be granted.[1]

II.    **LEGAL ANALYSIS**

A. **The Court Should Enjoin Hyperion's Further Infringement Of Amiga's Trademarks.**

  1. **Hyperion Fails To Refute That Amiga Is Likely To Succeed On The Merits Of Its Trademark Infringement Claim**

It is well-established law in the 9th Circuit that use of a trademark outside the scope of a license constitutes infringement, and that such infringement warrants preliminary injunctive relief. *El Pollo Loco v. Hashim*, 316 F. 3d 1032, 1038 (9th Cir. 2003) (granting a preliminary injunction because a licensee's right to use a trademark is limited by the terms of the license); *see also, Pasia, Inc. v. N & G Auto*, 928 F. Supp, 1009, 1012 (C.D.Cal. 1996) (same). Hyperion does not refute the law.

It is undisputed that Hyperion has used, and continues to use, Amiga's trademarks outside the scope of the license granted to it under the Agreement, thereby infringing Amiga's trademarks and warranting preliminary injunctive relief. Section 2.01 of the Agreement only grants Hyperion a limited license to use the Amiga marks in conjunction with the marketing of Amiga OS 4.0 for the AmigaOne and other Target Hardware (PPC based hardware developed for and marked for the Amiga platform) (*i.e.*, Amiga-approved hardware). [Carton Dec., Ex. 2, p. 41] The AmigaOne is a desktop, personal computer. [McEwen Reply Dec. ¶ 23.] As late as November 2006, Hyperion was using Amiga's marks to market OS 4.0 for everything from kiosks, set top boxes and cellular phones to servers and un-named OEM devices, none of which is the AmigaOne or hardware approved for the Amiga platform. [*Id.*] In response to a November 21, 2006 letter from Amiga demanding that Hyperion cease its use of the Amiga marks in marketing efforts that grossly exceed the scope of the license, Hyperion promised to remove such marketing references from its website. [*Id.*] However, at the time Amiga filed its moving papers, and as of today, Hyperion

---

[1] As set forth in Section F below, Amiga also moves to strike, pursuant to the Federal Rules of Evidence, certain, objectionable portions of the Declarations submitted by Hyperion in support of its Opposition brief.

REPLY MEMORANDUM - 4
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048  (206) 292-8800

1  was, and still is, using the Amiga trademarks and logos in connection with the same products, and
2  more, that far exceed the scope of the license. [*Id.*; McEwen Dec., Ex. H.]

3  Moreover, as evidenced by Hyperion's newly formed strategic partnership with ACube,
4  Hyperion, now along with Acube, continues to use Amiga's marks in a manner that improperly,
5  confusingly – and erroneously – suggests that Amiga endorses or sponsors ACube's distribution of
6  OS 4.0. [McEwen Reply Dec. ¶ 23.] Confusion as to sponsorship constitutes trademark
7  infringement. *See National Football League Properties, Inc. v. Wichita Falls Sportswear, Inc.*,
8  532 F. Supp. 651, 661-662 (W.D. Wash. 1982) (holding that defendant's unauthorized use of
9  plaintiff's trademarks in connection with the sale of replicated professional football jerseys created
10 confusion as to sponsorship and constituted infringement).[2]

11 Hyperion's Opposition does nothing to refute the competent evidence of infringement
12 actions. Rather, Hyperion half-heartedly argues, without any legal analysis or evidentiary support,
13 that there is no risk of confusion over the trademarks because it was "public knowledge" that
14 Hyperion was the software developer for OS 4.0. [Opposition, p. 21.] Hyperion's conclusory
15 statement ignores settled law and reality. Under controlling law, marketing efforts using Amiga's
16 trademarks outside the scope of the license is likely to cause confusion among customers, *El Pollo
17 Loco*, 316 F. 3d at 1038, and the presence of Amiga's marks on ACube's marketing creates
18 confusion as to sponsorship. *NFL Properties,* 532 F. Supp. at 661-62. Accordingly, Amiga has
19 established that it is likely to succeed on the merits of its trademark infringement claim.

20   2.   **Irreparable Harm Is Presumed Where, As Here, Plaintiff Has Established A Likelihood Of Success On The Merits**

21 Under controlling Ninth Circuit precedent, once a plaintiff in a trademark case establishes
22 that a likelihood of success on the merits exists, it is presumed that the plaintiff will suffer
23 irreparable harm. *Pasia*, 928 F. Supp, at 1012; *see also GoTo.Com, Inc. v. Walt Disney Company,*

---

[2] Indeed, although Acube is aware that a license from Amiga is required to use Amiga's marks, as demonstrated by Acube's requests to Amiga for a trademark license [McEwen Reply Dec., Ex. N] Hyperion and Acube nonetheless proceeded with an infringing advertising campaign that displays Amiga name, Amiga's registered trademark symbol and Amiga's logo, thereby falsely suggesting that Amiga endorsed or sponsored their efforts. *NFL Properties,* 532 F. Supp. at 661-62.

REPLY MEMORANDUM - 5
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048  (206) 292-8800

1. 202 F. 3d 1199, 1205 (9th Cir. 2000) (finding that a presumption of irreparable harm is proper once the plaintiff establishes that it is likely to succeed on its trademark claim). As demonstrated above, Amiga's unequivocal – and undisputed – evidence of Hyperion's use of Amiga's marks outside the scope and term of the terminated license and in a manner that erroneously suggests endorsement or sponsorship by Amiga, infringes Amiga's marks. Because Amiga is likely to prevail on the merits, Amiga is, therefore, entitled to a presumption of irreparable harm.

Here, the potential irreparable harm, absent an injunction is more than presumptive; it is actual. Under the Agreement, Amiga reserved for itself all markets and platforms outside the Target Hardware. Hyperion's announced plans with Acube, however, demonstrates its intent to market and distribute Amiga OS 4.0 outside its pre-termination license scope in one or more platforms reserved for Amiga. [McEwen Reply Dec. ¶ 23.] Thus, Hyperion's attempt to usurp and obtain a "first mover" position in one or more markets and platforms reserved for Amiga constitutes actual irreparable harm as well. *See Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F. 3d 27, 37-38 (2nd Cir. 1995) (finding irreparable harm where defendant wrongfully deprived plaintiff of a unique product and contract right that would have allowed plaintiff to expand its business).

**B.     Amiga is Entitled to a Mandatory Injunction in Aid of Obtaining the Code to OS 4.0**

    **1.     Amiga Owns OS 4.0 And Hyperion Has An Executory Obligation To Transfer To Amiga The Source Code, Title and Intellectual Property Rights In OS 4.0**

Amiga seeks a preliminary injunction requiring Hyperion to abide by the terms of the Agreement governing Amiga's right to acquire the code and title to Amiga OS 4.0. With no meritorious defense to its hijacking of the code and title to OS 4.0 Hyperion resorts to mischaracterizing the Agreement and mis-stating the facts.

Amiga has completed the only two steps that are required to invoke its right to buy back the source code, title, interest and intellectual property in OS 4.0 under Section 3.01 of the Agreement: (1) Amiga tendered full payment of the $25,000; and (2) Amiga's payment was timely, as it occurred within six months after the completion date of OS 4.0.

REPLY MEMORANDUM - 6
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048 (206) 292-8800

Indeed, the evidence overwhelmingly establishes that in March 2003, Amiga tendered $25,000 to Hyperion.[3] Hyperion does not dispute that it received $22,500 of this amount, and Amiga has demonstrated that the remaining $2,500 was wired from the personal bank account of Amiga's President to Hyperion. [McEwen Reply Dec., Ex H.] As detailed in the Supplemental McEwen Declaration, a subsequent invoice and e-mail correspondence from Hyperion to Itec, who had since acquired Amiga, confirm that Amiga made full payment to acquire OS 4.0 in March 2003. [*See* McEwen Reply Dec., ¶ 16 & Ex. I; McEwen Dec. Ex. J.]

After coming to Amiga in 2003, "hat in hand," seeking Amiga's $25,000 payment under the Agreement to avoid its own potential insolvency, Hyperion gladly accepted Amiga's money and characterized it as payment in full under Section 3.01 of the Agreement. Three years later, however, in 2006, when Amiga demanded delivery of what it had already paid for – the source code to Amiga OS 4.0 – Hyperion had the temerity to claim that Amiga's payment in 2003 did *not* satisfy the $25,000 buy-out amount in Section 3.01. Based on a superficially clever – but nonetheless erroneous – interpretation of Section 3.01, Hyperion claimed that it had the right to "set off" other invoices owed by Amiga from the amount paid by Amiga. Hyperion's reading of Section 3.01 was, and remains, wrong, however, because Section 3.01 merely provides that any monies paid by Amiga under Section 3.01 must be applied by Hyperion to reduce any of Amiga's partnership debts before Hyperion can apply the payment for its own use. By its plain language, Section 3.01 does *not* give Hyperion a right of "off set." [McEwen Reply Dec., ¶ 18.]

Amiga also satisfied the second requirement to acquire the code and title to OS 4.0: that payment be tendered no more than six months after completion of the OS 4.0. While Amiga vigorously disputes that OS 4.0 has even been completed,[4] even if one were to take Hyperion's

---

[3] Payment in 2003 was made at Hyperion's request, so that Hyperion could stave off bankruptcy. Coming to Hyperion's aid, Amiga tendered the $25,000, and Hyperion acknowledged that the payment was in compliance with the provision in the Agreement allowing Amiga to purchase the code and title to OS 4.0. [McEwen Reply Dec. ¶ 17.]

[4] Under the Agreement, "completion" of OS 4.0 occurred when it was suitable for release to the general public. [Moss Reply Dec. ¶ 10.] Yet all Hyperion has released to this date are developer pre-release versions of OS 4.0 and subsequent updates of such pre-releases. [*Id.*] Moreover, Hans-Joerg and Thomas Frieden, two of the key developers of OS 4.0 have made statements as recently as one month ago that OS 4.0 was not complete. [McEwen

REPLY MEMORANDUM - 7
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048  (206) 292-8800

1 | assertion that OS 4.0 was complete in December 2004, Amiga's payment of $25,000 for the code
2 | in March 2003 was timely, as it occurred prior to the alleged completion of OS 4.0.

### 2. Hyperion's Refusal to Turn Over OS 4.0 Is Causing, And Will Continue To Cause, Irreparable Harm To Amiga

Hyperion makes no effort to refute the fact that without the OS 4.0, Amiga is suffering and will continue to suffer irreparable harm. Indeed Hyperion's refusal to turn over OS 4.0 resulted in a lost business opportunity for Amiga. Before Hyperion and ACube entered in its newly formed strategic partnership for distribution of OS 4.0, Nicola Moroccuti of ACube approached Amiga in late 2006 with an offer to enter into the very same distribution agreement that Hyperion has now secured. [McEwen Reply Dec., Ex. O.] However, because Hyperion has refused to release the source code to Amiga OS 4.0 to Amiga despite Amiga's full payment, Amiga was not able to follow through on a distribution agreement with ACube. Hyperion then negotiated a distribution agreement with ACube, usurping a business opportunity belonging to Amiga. Moreover, Hyperion's retention of the source code to OS 4.0 prevents Amiga's ability to enter into agreements for distribution of OS 4.0. [*Id.* ¶ 25.]

Rather than attempting to refuting this clear irreparable harm suffered by Amiga without OS 4.0, Hyperion turns to a newly concocted and borderline frivolous argument that Amiga cannot suffer irreparable harm because it is insolvent. This contention completely misconstrues the facts. Before its assignment of rights to Itec in 2003, Amiga Washington was active and fully operating.[5] Amiga Washington never filed for bankruptcy nor was legally insolvent before this

---

Reply Dec. ¶ 20, Exs J-K.]   Finally, and most tellingly, the evidence Hyperion itself presents in attempt to support its position that OS 4.0 was complete in December 2004 in fact negates such a position. Indeed, the January 17, 2005 "Ars Technica" review of Amiga OS 4.0 twice characterizes OS 4.0 as in "beta" form. [Carton Dec., Exh. 10, p. 102]. A source code in beta form is simply not a complete code. [Moss Reply Dec. ¶ 10] More importantly, the "Ars Technica" review states "OS 4 as it stands today is not ready for general public consumption. There are many rough edges with this version of the OS, stability is still and issue, and the web browsing situation clearly needs to be improved." [Carton Dec., Exh. 10, p. 102.]

[5] Admittedly, Amiga Washington was experiencing financial difficulties during 2002. However, Hyperion was well aware of these financial problems at the time and at the time of our contact in November 2001. In 2003, Amiga Washington was involved in a law suit over the Amiga Digital Environment ("DE"). Amiga's then financial distress became well known to those involved in the lawsuit, including Evert Carton, the managing partner of Hyperion. Mr. Carton served as a declarant in support of Amiga in this case in March 2004. [McEwen Reply Dec. ¶ 8, Ex. A.]

REPLY MEMORANDUM - 8
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048  (206) 292-8800

1 transfer. Indeed, in 2002 Amiga Washington was releasing products and had signed a lucrative
2 OEM deal with Microsoft whereby Microsoft shipped Amiga products under Microsoft's name.
3 [McEwen Reply Dec. ¶ 7.]

4 **C.    Amiga Has Standing to Bring This Lawsuit**

5 Recognizing Amiga's high likelihood of success on the merits and strong showing of
6 irreparable harm, Hyperion desperately argues that Amiga has no standing to bring its claims.
7 Specifically, Hyperion contends that Amiga has no rights under which to sue because (1) it was
8 insolvent in 2003 and (2) Hyperion and Eyetech did not consent to an assignment of the
9 Agreement each time Amiga changed ownership.  Each of these arguments is without merit.

10 First, Hyperion's allegation that Amiga was insolvent is simply false, and is not supported
11 by any competent evidence.  To the contrary, Amiga has demonstrated that it neither filed for
12 bankruptcy nor was insolvent prior to the transfer in 2003, but was instead fully operating and
13 releasing products. [McEwen Reply Dec., ¶¶ 7-10.] Moreover, although Amiga experienced
14 financial difficulties in 2003, Hyperion was aware of Amiga's financial troubles at the time, did
15 not object, and should be estopped from doing so now.  [*Id.* ¶¶ 9-10.]

16 Second, both Hyperion and Eyetech either expressly or impliedly consented to each
17 assignment of the Agreement through Amiga's three changes of ownership.  First, with regard to
18 Amiga's April 2003 assignment to Itec, Hyperion expressly consented to the assignment and
19 Eyetech impliedly consented by continuing the same course of dealings after Amiga became Itec.
20 [*Id.*, ¶ 12 & Ex. 16.]  Second, regarding Itec's October 2003 assignment to KMOS, Inc, both
21 Hyperion and Eyetech implicitly consented by continuing their course of dealings after Itec
22 became KMOS.  [*Id.* ¶¶ 13-14 & Exs. C-F; Carton Dec., Ex. 8.]  By not raising objections to the
23 assignment of Itec to KMOS at the time, despite clear knowledge of the change in ownership, both
24 Hyperion and Eyetech should be estopped from objecting now.  Finally, as to the third alleged
25 change of ownership, KMOS merely changed its name to Amiga, Inc. on January 25, 2005 – there
26 was simply no assignment requiring *any* consent by Hyperion or Eyetech.  [McEwen Reply Dec.¶

27

28

REPLY MEMORANDUM - 9
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048  (206) 292-8800

Case 2:07-cv-00631-RSM   Document 33   Filed 05/25/2007   Page 13 of 15

15, Ex. G.] In sum, Hyperion's argument that Amiga lacks standing to bring its claims lacks any legal or factual support, and it should be rejected by the Court.

### D. The Court Is Empowered To Issue The Requested Injunctive Relief

First, in a last-ditch effort to avoid an injunction, Hyperion resorts to questioning the Court's authority to issue the requested relief. Hyperion claims that the requested relief is improper because Eyetech is a "necessary party" to this lawsuit. Under Rule 19(a)(1), a party may be "necessary" if the absence of the party would preclude the district court from fashioning complete relief among those already parties. Fed. R. Civ. Proc. 19(a)(1); *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 878 (9th Cir. 2004). Here, however, the absence of Eyetech would in no way prevent the Court from fashioning complete relief between Amiga and Hyperion. Under the Agreement, Eyetech was responsible for hardware development, not the OS 4.0 software at the core of this dispute. [*See* McEwen Reply Dec., ¶ 5.] Moreover, Eyetech has abandoned the Amiga business entirely (including selling all its remaining inventory of Amiga One inventory), and is for all intents and purposes defunct.[6] [*Id.*, ¶ 26.] Because Eyetech does not possess the OS 4.0 software that Amiga seeks by way of injunction, and because it has not engaged in the wrongful conduct that Amiga seeks to enjoin, the requested relief would have *no* impact on any of Eyetech's rights. Because it is simply not affected by the requested preliminary injunctive relief, Eyetech's absence would not affect the Court's ability to afford complete relief and Eyetech thus cannot be considered a "necessary" party under Rule 19(a)(1).

Likewise, Eyetech cannot be considered "necessary" under Rule 19(a)(2). That Rule, cited by Hyperion, focuses on whether the absent party's participation is necessary to protect its legally cognizable interests or to protect other parties from a substantial risk of incurring multiple or inconsistent obligations because of those interests. Fed. R. Civ. Proc. 19(a)(2); *Disabled Rights Action Committee*, 375 F.3d at 880. Importantly, although parties to a contract may be considered necessary where their interests may be affected by an action to *set aside* a contract, they are not

---

[6] Indeed, Eyetech never even exercised its rights under the Agreement, in part because it was unable to use the OS 4.0 software with *any* hardware, given that Hyperion refused to release that software.

CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048   (206) 292-8800

"necessary" parties merely by virtue of their status as contracting parties where, as here, the contract would not be invalidated, but would instead remain legally binding, if the lawsuit were successful. *See, e.g., Disabled Rights Action Committee*, 375 F.3d at 881-82 (rejecting contention that university was necessary party merely because it was contracting party to licensing agreement, where agreement would remain legally binding even if plaintiff prevailed in lawsuit against other party to agreement). Here, an adjudication of *Hyperion's* rights under the Agreement – including a ruling that the Agreement were properly terminated as to Hyperion – would *not* impact Eyetech, as the Agreement expressly provides that it shall "remain in force with respect to the parties other than the party found in material breach . . . ." [Declaration of Barrie Jon Moss in Support of Amiga's Motion for Preliminary Injunction, Ex. A ("License Agreement"), § 6.03.] As such, Eyetech also does not qualify as a "necessary" party under Rule 19(a)(2).

Second, Hyperion contends that the requested injunctive relief should not issue because it would impact third party rights in the OS 4.0 software. Specifically, Hyperion suggests that the Frieden brothers and perhaps other unnamed entities retain rights to the OS 4.0 software and its underlying code because Hyperion has not paid in full for the software. However, Hyperion has admitted in correspondence that it has paid all but $40,000 for the source code for OS 4.0. [*See* McEwen Reply Decl., ¶ 27.] Given the Court's wide discretion in fashioning injunctive relief, it could simply order Hyperion to pay the remaining $40,000 to alleged third party developers as part of any order requiring Hyperion to deliver the software to Amiga.

Finally, any suggestion by Hyperion that it neither possesses nor has access to the OS 4.0 source code is directly contradicted by its conduct with ACube. Specifically, ACube recently admitted that it "ported" OS 4.0 to the Apple MiniMac Computer, which it could have done only if it had access to the OS 4.0 source code. [*Id.*] If Hyperion can release the OS 4.0 source code to ACube, it can undoubtedly release the code to Amiga as well.

E.   **Hyperion's Requested Bond Is Excessive And Improper**

Federal Rule of Civil Procedure 65(c) grants district courts wide discretion in setting the

REPLY MEMORANDUM - 11
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048  (206) 292-8800

amount of a security bond. *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999). Notably, the district court can weigh the evidence in determining the amount of the bond. *See id.*, 198 F.3d at 733-734 (district court did not abuse discretion in setting bond amount at $100,000; court discredited declaration submitted in support of party's request for increased bond amount where party could have easily rescinded contract and thereby avoided risk of purported $2 million tax liability). Here, Hyperion's conclusory assertion that it is entitled to a $1.5 million bond bears no relation to the factual realities of this case. It is undisputed that Hyperion already valued the sale of OS 4.0 to Amiga at $25,000. That is the appropriate amount for a bond as to the mandatory injunction. As to the balance of the injunction, although Hyperion has put on no competent evidence relating to alleged damages, Amiga suggests that a bond be reasonably limited to $75,000 - $100,000, to account for any alleged disruption to Hyperion's business should the injunction be deemed improvidently granted.

**F.    Objections To Hyperion's Purported Evidence And Motion To Strike Same**

Amiga objects to the following purported evidence submitted by Hyperion on the grounds that they lack foundation, include improper opinions by lay witnesses, constitute inadmissible hearsay, and are irrelevant and misleading (Fed. R. Evid. 401-403, 602, 701, 802, 1002).

1. Declaration of Evert Carton: ¶¶ 7-18, 20-30, 33, 38-47, 49-52, 54-59, 63-64, 65-67;
2. Second Declaration of Evret Carton: ¶¶ 3-5;
3. Declaration of Hans- Joerg Frieden: ¶¶ 4-9;
4. Second Declaration of Hans-Joerg Frieden: ¶¶ 6, 12, 17, 21-23;
5. Declaration of Thomas Frieden: ¶¶ 2-7.

Amiga respectfully requests the Court to strike the same.

DATED this the 25th day of May, 2007.

REED SMITH LLP

By:    /s/ Morgan W. Tovey
Morgan W. Tovey (Admitted Pro Hac Vice)
Lawrence R. Cock, WSBA No. 20326 (CABLE, LANGENBACH, KINERK & BAUER LLP)

REPLY MEMORANDUM - 12
CASE NO. CV07-0631-RSM

CABLE, LANGENBACH, KINERK & BAUER LLP
1000 SECOND AVENUE BUILDING, SUITE 3500
SEATTLE, WASHINGTON 98104-1048 (206) 292-8800