1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF WASHINGTON AT SEATTLE
9

10   AMIGA, INC., a Delaware corporation,

11                              Plaintiffs,              No. 07-0631-RSM

12          v.                                           **HYPERION'S ANSWER,
                                                         AFFIRMATIVE DEFENSES AND
13   HYPERION VOF, a Belgium corporation,                COUNTERCLAIMS**

14                              Defendant.

15

16          COMES NOW defendant Hyperion VOF and, for its Answer, Affirmative Defenses

17   and Counterclaims against Amiga, Inc., a Delaware Corporation ("Amiga Delaware"),

18   responds as follows:

19                                       **ANSWER**

20          *Objection to Amiga Delaware's prefatory sentence:*  Amiga Delaware begins its

21   complaint with the following sentence:  "Plaintiff Amiga, Inc. ("Amiga") alleges as

22   follows:"  This sentence, defining Amiga Delaware to be "Amiga" for essentially all intents

23   and purposes, is fundamentally flawed both as a matter of fact and law.  For instance, the

24   allegations of the complaint repeatedly assert that Amiga Delaware, as "Amiga," performed

25   acts that occurred before it came into existence, which of course is impossible.  In so doing,

26   Amiga Delaware attempts to claim rights to which it is not entitled.  Hyperion objects to this

HYPERION'S ANSWER, AFFIRMATIVE                          LAW OFFICES OF
DEFENSES AND COUNTERCLAIMS - 1              WILLIAM A. KINSEL, PLLC
                                                    MARKET PLACE TOWER
                                                  2025 First Avenue, Suite 440
                                                  SEATTLE, WASHINGTON 98121
                                                       (206) 706-8148

stratagem and, accordingly, strictly construes the allegations of the complaint in responding thereto.

1.     This paragraph contains matters of merely an introductory nature which require no response.

2.     Hyperion admits that the Court has jurisdiction over the parties to this matter. Hyperion denies that the Court has jurisdiction over all of the entities that Amiga Delaware is attempting to reach through this suit, e.g., subcontractors of Hyperion. Furthermore, depending on the disposition of the various claims in this matter, the Court may or may not have supplemental, ancillary or pendent jurisdiction.

3.     Hyperion admits that venue is proper pursuant to the contract between Amiga Washington, Hyperion and Eyetech dated November 3, 2001 (hereinafter the "Agreement"). Hyperion denies that a substantial part of the events giving rise to the alleged claims in this action occurred in Washington.

4.     Denied.

5.     Hyperion admits that it is a foreign general partnership organized under the laws of Belgium with its principal place of business in Leuven, Belgium. Hyperion's status as a partnership is disclosed in its signature block on the Agreement. Hyperion denies the remainder of this paragraph.

6.     Hyperion denies that Amiga Delaware is the company it claims to be in this paragraph.

7.     Hyperion denies that Amiga Delaware is the company it claims to be in this paragraph. Because the generalized statements about Amiga OS are not relevant to the current dispute, and because Amiga Delaware and its staff are not in a position to have personal knowledge of the matters contained herein, Hyperion declines to admit or deny the same.

8.     Denied.

9.     Denied.

HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS - 2

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

10.     Hyperion admits that it is a software development company, that it specializes in, among other things, 3D graphics and the conversion of entertainment software.  With respect to the last sentence of this paragraph, Hyperion denies that Amiga Delaware entered into the Agreement.

11.     Denied.

12.     Hyperion admits that Amiga Washington, Hyperion and Eyetech entered into the Agreement on or about November 3, 2001.  Hyperion denies that Exhibit A to the complaint is a true, accurate and complete copy of the Agreement.  Hyperion specifically denied that Amiga Delaware had any plans in 2001, or that Hyperion made any representations to a nonexistent corporation.

13.     Denied.  The Agreement speaks for itself.

14.     Denied.  The Agreement speaks for itself.

15.     Denied.  The Agreement speaks for itself.

16.     Denied.  The Agreement speaks for itself.

17.     Denied.  The Agreement speaks for itself.

18.     Denied.  The Agreement speaks for itself.

19.     Denied.  The Agreement speaks for itself.

20.     Hyperion admits that Exhibit B is a true and accurate copy of a document dated November 21, 2006.  Hyperion denies the remainder of this paragraph, including Amiga Delaware's assertion that it had any right to terminate Hyperion's rights under the Agreement.

21.     Denied.

22.     Denied.  Exhibit C, assuming that it is a true and accurate of the document it purports to be, proves that Amiga Delaware did not do the acts it claims to have done in this paragraph.

**HYPERION'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** - 3

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

23.    Denied.  Exhibit D, assuming that it is a true and accurate of the document it purports to be, proves that Amiga Delaware did not do the acts it claims to have done in this paragraph.

24.    Denied.  Hyperion further notes that Exhibit D transitions directly to Exhibit F, with no Exhibit E identified.

25.    Hyperion denies paragraph 25 for lack of knowledge.  Hyperion furthermore specifically alleges that Amiga Delaware has failed to prove its title to the Amiga trademarks in any form and, thus, that it has failed to prove that it had or has any rights to file trademark applications with the Patent and Trademark Office.

26.    Denied.

27.    Denied for lack of personal knowledge.

28.    Denied.

29.    With respect to the first sentence of this paragraph, Hyperion denies both that it has used any trademarks beyond the scope of its rights under the Agreement, and that Hyperion was required to obtain any consent for its actions from Amiga Delaware.  With respect to the second sentence, Hyperion states that Amiga Washington did enter into the Agreement that transferred the rights specified in that Agreement to Hyperion.  The reference to "goods" in this second sentence is ambiguous.  To the extent that it refers to the hardware developed and produced by Eyetech, and to the extent (if any) that Amiga Delaware was entitled to do so, Hyperion denies that Amiga Delaware failed to sponsor, endorse or approve the relevant goods.  To the extent that this second sentence refers to software, code, OS 4 or OS 4.0 as "goods," Hyperion denies that if failed to have any required sponsorship, endorsement or approval for the same.  Hyperion denies the third sentence of this paragraph, as well as all other allegations contained within this paragraph not specifically addressed above.

30.    Hyperion realleges each and every answer to the foregoing paragraphs as if fully set forth herein.

HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS - 4

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1     31.     Denied.

2     32.     Denied.

3     33.     Denied.

4     34.     Denied.

5     35.     Hyperion realleges each and every answer to the foregoing paragraphs as if fully

6  set forth herein.

7     36.     Denied.

8     37.     Admitted.

9     38.     Hyperion admits that Amiga Delaware seeks a judicial declaration regarding

10  Amiga Delaware's erroneous allegations.

11     39.     Hyperion realleges each and every answer to the foregoing paragraphs as if fully

12  set forth herein.

13     40.     Denied.

14     41.     Denied.

15     42.     Denied.

16     43.     Denied.

17     44.     Hyperion realleges each and every answer to the foregoing paragraphs as if fully

18  set forth herein.

19     45.     Denied.

20     46.     Denied.

21     47.     Denied.

22     48.     Denied.

23     49.     Denied.

24     50.     Hyperion realleges each and every answer to the foregoing paragraphs as if fully

25  set forth herein.

26     51.     Denied.

**HYPERION'S ANSWER, AFFIRMATIVE**
**DEFENSES AND COUNTERCLAIMS** - 5

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1    52.    Denied.

2    53.    Denied.

3    54.    Hyperion realleges each and every answer to the foregoing paragraphs as if fully

4  set forth herein.

5    55.    Denied.

6    56.    Denied.

7    57.    Denied.

8    58.    Denied.

9    59.    Denied.

10   60.    Denied.

11   61.    Denied.

12   62.    Denied.

13   63.    Denied.

14   64.    Denied.

15   65.    Denied for lack of knowledge.

16   66.    Hyperion realleges each and every answer to the foregoing paragraphs as if fully

17  set forth herein.

18   67.    Denied.

19   68.    Denied.

20   69.    Denied.

21      Wherefore, the entirety of Amiga Delaware's Prayer for Relief should be denied and

22  dismissed with prejudice.

23                          **AFFIRMATIVE DEFENSES**

24      For its affirmative defenses to Amiga Delaware's complaint, Hyperion alleges the

25  following Affirmative Defenses:

26

**HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS** - 6

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  1.  If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-

2 interest to Amiga Washington; then Amiga Delaware and/or its predecessors-in-interest failed

3 to comply with the obligations of the Agreement to pay Hyperion $25,000, and to release a

4 substantially new version of the Classic Amiga OS for the Target Hardware, by June 27, 2005.

5 (See, for instance, Sections 2.06, 2.08, and 3.01 of the Agreement.)  Amiga Delaware therefore

6 is not entitled to the relief it seeks in this suit.

7  2.  Hyperion and Eyetech have an exclusive, perpetual, world-wide and royalty free

8 right and license to develop, use, modify and market the Software and OS 4 under the "Amiga

9 OS" trademark pursuant to Section 2.07 of the Agreement.

10  3.  Hyperion and Eyetech have an exclusive, perpetual, worldwide right and license

11 to develop, use, modify and market the Software and OS 4 under the "Amiga OS" trademark

12 pursuant to Section 2.08 of the Agreement.

13  4.  Hyperion possesses all ownership and title in the enhancements of and additions

14 to the Software pursuant to the terms of Section 3.01 of the Agreement.

15  5.  Amiga Delaware has no rights under the Agreement because the requirements of

16 Section 7.12 of the Agreement were not met.

17  6.  Amiga Delaware has no rights pursuant to the self-executing terms of Section

18 2.07 the Agreement because Amiga Washington was insolvent before the purported transfer of

19 rights to Itec LLC.

20  7.  If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-

21 interest to Amiga Washington, then Amiga Delaware and/or its predecessors-in-interest

22 breached their warranties and obligations under the Agreement.  See, e.g., Sections 4.01, 4.02

23 and 4.06.

24  8.  If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-

25 interest to Amiga Washington, then Amiga Delaware is estopped from denying that it and/or its

26

**HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS** - 7

**LAW OFFICES OF
WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  predecessors-in-interest agreed with Eyetech to modifications in the PPC hardware developed

2  and/or provided for "Amiga One" under the Agreement.

3      9.      Amiga Delaware lacks the capacity and right to sue under the Agreement, and

4  under the other causes of action asserted in its complaint.

5      10.     To the extent not subject to the claims of its subcontractors, Hyperion claims title

6  to the Software, code and intellectual property sought by Amiga Delaware in this lawsuit.

7      11.     If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-

8  interest to Amiga Washington, then Amiga Delaware and/or its predecessors-in-interest failed to

9  provide consideration for that which they seek in this suit.

10     12.     Amiga Delaware has failed to name a necessary party to this action, to wit,

11 Eyetech Group Ltd.  See FRCP 19.

12     13.     Amiga Delaware has failed to state a claim upon which relief can be granted.

13     14.     The laws of Belgium and the European Union apply to certain aspects of this

14 case, e.g., the obligations of Hyperion to, and the rights of, defendant's subcontractors to the

15 Software, Code and intellectual property at issue.

16     15.     Amiga Delaware failed to issue sufficient process in order to obtain jurisdiction

17 over Hyperion and the subject matter of this suit.

18     16.     Amiga Delaware has failed to serve process upon this Defendant in the manner

19 and form required by the applicable law.

20     17.     If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-

21 interest to Amiga Washington, then Amiga Delaware's claims are barred by laches.

22     18.     If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-

23 interest to Amiga Washington, then Amiga Delaware and/or its predecessors-in-interest failed to

24 perform conditions precedent to these claims.  See, e.g., Sections 2.06, 2.07, 2.08, 3.01, 3.02,

25 4.01, 4.02, 4.06, and 7.12.

26

**HYPERION'S ANSWER, AFFIRMATIVE**
**DEFENSES AND COUNTERCLAIMS** - 8

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

19.    If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-interest to Amiga Washington, then Amiga Delaware ratified actions about which it now complains.

20.    The transactions on which Amiga Delaware's lawsuit is based was beyond the express or implied powers of Amiga Washington because Amiga Washington was insolvent at the time it purportedly transferred, for inadequate consideration, its interests under the Agreement, its interests in its trademarks, and it interests in other assets.

21.    Amiga Delaware's claims are barred by its unclean hands.

22.    Amiga Delaware's claims are barred because it obtained the rights its now claims to own through a series of fraudulent conveyances conducted with the assets of Amiga Washington and the aid of other entities that are not parties to this suit.

23.    Amiga Delaware has failed to prove its right and title to any of the Amiga trademarks.

24.    Amiga Delaware has failed to prove that it is merely a renamed KMOS, or that it acquired the rights and title of KMOS in some other legal and proper manner.

25.    Amiga Delaware has failed to prove that KMOS acquired the rights and title of Itec LLC in a legal and proper manner.

26.    Amiga Delaware has failed to prove that Itec LLC acquired the rights and title of Amiga Washington in a legal and proper manner.

## **COUNTERCLAIMS**

COMES NOW Hyperion VOF, and for its counterclaims against Amiga Delaware, alleges as follows:

### **JURISDICTION**

1.    This Court has jurisdiction over this action under 28 U.S.C. §1332(a)(2), 28 U.S.C. §1331 (federal question jurisdiction); 28 U.S.C. §1338(a)(any act of Congress relating to patents, copyrights and trademarks); 28 U.S.C. §1367 (ancillary jurisdiction), and the doctrines

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  of ancillary and pendent jurisdiction.  The amount in controversy exceeds a sum or value of

2  $75,000, exclusive of interest and costs.

3  **VENUE**

4  2.  Venue is proper in this District because defendant Hyperion VOF stipulated to

5  jurisdiction and venue in this District in an (OEM) License and Software Development

6  Agreement dated November 3, 2001 (the "Agreement") with Amiga, Inc., a Washington

7  Corporation ("Amiga Washington"), and Eyetech Group Ltd. ("Eyetech"), and because plaintiff

8  Amiga, Inc., a Delaware corporation ("Amiga Delaware") is asserting that it succeeded to the

9  rights of Amiga Washington under that Agreement.

10  **PARTIES**

11  3.  Plaintiff Amiga Delaware purports to be a Delaware corporation.

12  4.  Hyperion VOF, d/b/a Hyperion Entertainment VOF ("Hyperion"), is a foreign

13  general partnership organized under the laws of Belgium with its principal place of Business in

14  Leuven, Belgium.

15  **FACTS**

16  5.  Hyperion is a party to the Agreement.

17  6.  Amiga Delaware did not exist on November 3, 2001.

18  7.  Amiga Washington was insolvent no later than the end of July 2002 up through

19  and including April 24, 2003.

20  8.  Upon Amiga Washington's insolvency, the self-executing provision in §2.07 of

21  the Agreement transferred to Hyperion and Eyetech "an exclusive, perpetual, world-wide and

22  royalty free right and license to develop (at their sole expense), use, modify and market the

23  Software and OS 4 under the 'Amiga OS' trademark."

24  9.  Amiga Washington remained insolvent from April 24, 2003 through the date of

25  its administrative dissolution by the State of Washington on September 30, 2004.

26

**HYPERION'S ANSWER, AFFIRMATIVE**
**DEFENSES AND COUNTERCLAIMS** - 10

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

10.    Amiga Washington, its representatives, Itec LLC, and its representatives, failed to inform Hyperion on or before April 24, 2003, that Amiga Washington was insolvent.

11.    Hyperion did not know, on or before April 24, 2003, that Amiga Washington was insolvent.

12.    On April 24, 2003, Hyperion and Itec LLC ("Itec") entered into an agreement that purported to relate to Amiga Washington's rights under the Agreement. This contract is hereinafter referred to as the "Itec Contract."

13.    Amiga Washington did not give is prior written consent to the Itec Contract.

14.    Eyetech did not give its prior written consent to the Itec Contract.

15.    On information and belief, a common core of major investors, shareholders, officers and directors were directly involved in the affairs of Amiga Washington and Itec on and prior to April 24, 2003. This common core of individuals included Mr. William McEwen, Mr. Barrie Jon Moss and Mr. Pentti Kouri. Itec, and this common core of major investors, shareholders, officers and directors were therefore "insiders" of Amiga Washington within the meaning of RCW 19.40.011.

16.    At the time of the Itec Contract, Itec and the other insiders of Amiga Washington knew that Amiga Washington was insolvent.

17.    On information and belief, on, before and after April 24, 2003, Itec failed to give Amiga Washington a reasonably equivalent value for Amiga Washington's contractual rights that were purportedly transferred in the Itec Contract.

18.    On information and belief, Itec and the other insiders of Amiga Washington acted in bad faith when Itec entered into the Itec Contract.

19.    At the time of the Itec Contract, Hyperion was a creditor of Amiga Washington because, for instance, Amiga Washington had breached its warranties in Article IV of the Agreement, to the substantial damage of Hyperion.

HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS - 11

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

20.     On information and belief, the purported transfer to Itec in the Itec Contract of Amiga Washington's rights under the Agreement, if any such rights existed following Amiga Washington's insolvency, was made by Itec and its insiders with the actual intent to hinder, delay or defraud creditors of Amiga Washington.

21.     Because of §2.07 of the Agreement, and because of the failure of Itec to obtain prior written consent as required by §7.12 of the Agreement, the Itec Contract is invalid, void and otherwise unenforceable.

22.     Attached as Exhibit B to the Declaration of William McEwen In Support of Plaintiff Amiga [Delaware's] Reply to Hyperion's Opposition to Amiga's Motion for Preliminary Injunction is what Mr. McEwen purports to be a true and accurate copy of a Stock Purchase and Sale Agreement and Agreement of Assignment of Intellectual Property Rights" dated October 7, 2003.  This agreement is hereinafter referred to as the "Itec/KMOS Contract."

23.     By the explicit admissions of the Itec/KMOS Contract, the insiders of Itec were the insiders of KMOS.  By necessary implication, then, the insiders of KMOS were and are insiders of Amiga Washington, which prevents KMOS, now purportedly known as Amiga Delaware, from being a good faith purchaser of the assets of Amiga Washington under the terms of RCW 19.40.081.  On information and belief, the Itec Contract, and the Itec/KMOS Contract were merely part of an elaborate scheme to hinder, delay or defraud the creditors of Amiga Washington.

24.     KMOS failed to obtain the prior written consent of Hyperion and Eyetech to the Itec/KMOS Contract as required by §7.12 of the Agreement.  The Itec/KMOS Contract is therefore invalid, void and otherwise unenforceable.

25.     Attached as Exhibit G to the Declaration of William McEwen In Support of Plaintiff Amiga [Delaware's] Reply to Hyperion's Opposition to Amiga's Motion for Preliminary Injunction is what purports to be a cover page of a certified copy of the original Agreement on Acquisition and Assignment of Trademarks between Assignor Amiga, Inc.

**HYPERION'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** - 12

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  [Amiga Washington] and the Assignee, KMOS, Inc.  (Hereinafter the "Amiga

2  Washington/KMOS Contract".)  This Exhibit G purports to claim that the Amiga

3  Washington/KMOS Contract was signed on August 30, 2004, or just one month before Amiga

4  Washington was administratively dissolved by the State of Washington.  However, the

5  certification itself was not signed until September 5, 2006, or more than two years later.

6       26.     On information and belief, based on the physical appearance of Exhibit G to Mr.

7  McEwen's Reply Declaration, the Amiga Washington/KMOS Contract was not signed before

8  Amiga Washington was administratively dissolved, making said contract invalid, void and

9  otherwise unenforceable.  This, in turn, makes KMOS' assertion of its rights to the "Amiga"

10 trademarks invalid, at least as those asserted rights conflict with the rights held by Hyperion

11 pursuant to the Agreement.

12      27.     The insiders of KMOS are the insiders of Amiga Washington.  KMOS and its

13 insiders knew that Amiga Washington was insolvent on August 30, 2004, assuming that that

14 was in fact when the Amiga Washington/KMOS Contract was signed.  KMOS, therefore, acted

15 in bad faith when it entered into that contract with the actual intent to hinder, delay and defraud

16 creditors of Amiga Washington, including Hyperion.  Furthermore, on information and belief,

17 KMOS failed to provide reasonably equivalent value for the "intellectual properties," including

18 the "Amiga" trademarks, that are allegedly covered by the Amiga Washington/KMOS Contract.

19      28.     Hyperion completed AmigaOS 4.0 as required by Annex I of the Agreement no

20 later than December 27, 2004.  To the extent that Amiga Delaware had or has any rights under

21 the Agreement, Hyperion gave timely notice of this completion in a joint press release issued

22 with KMOS in 2004, and separately via email.

23      29.     By June 27, 2005, neither Amiga Washington nor any of its purported

24 successors-in-interest had paid to Hyperion the $25,000 required by §§3.01 and 2.06 of the

25 Agreement.

26

**HYPERION'S ANSWER, AFFIRMATIVE**
**DEFENSES AND COUNTERCLAIMS** - 13

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

30.     By June 27, 2005, neither Amiga Washington nor any of its purported successors-in-interest had issued a substantially new version of the Classic Amiga OS for the Target Hardware.

31.     Amiga Delaware alleges that it is KMOS, Inc., and that KMOS merely changed its name to Amiga Delaware.  Based on the failure of Amiga Delaware to produce documentation supporting this allegation in its reply in support of its motion for preliminary injunction, Hyperion alleges that the facts support the conclusion that there was yet another corporate entity change between KMOS, Inc. and Amiga Delaware.

32.     If there was another entity change between KMOS, Inc. and Amiga Delaware, then Hyperion alleges that the insiders of Amiga Delaware were the insiders of KMOS, Inc., Itec LLC and Amiga Washington, that Amiga Delaware failed to obtain the prior written consent required by §7.12 of the Agreement, and that that transfer was yet another link in the effort to hinder, delay and defraud the creditors of Amiga Washington.

33.     Even if one assumes that Amiga Washington was not insolvent and that all required parties gave their written consent to the transfer of Amiga Washington's rights in the Itec Contract and all subsequent contracts, Hyperion has at no time, and will not in the future in its dealings with ACube Systems Srl, violate the provisions of its license under the Agreement. Amiga Delaware therefore has no valid basis upon which to terminate the licensing agreement.

34.     Hyperion specifically alleges that it went well beyond its contractual obligations under the Agreement—at substantial expense to itself—and unquestionably met its obligations to exercise "best efforts," both with respect to releasing AmigaOS 4.0 as promptly as possible, and with respect to obtaining the widest possible rights from third party developers.

35.     Because Amiga Delaware and its purported predecessors in interest failed to pay $25,000 to Hyperion by the required date, Amiga Delaware and its purported predecessors in interest failed to timely exercise the "buy-in option" in §3.01.  Hyperion, therefore, has no

HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS - 14

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  obligation to provide to Amiga Delaware the Object Code, Source Code and intellectual

2  property of OS 4.0 pursuant to and within the limits set out in §2.06 of the Agreement.

3      36.    Amiga Delaware had neither the legal right nor the factual basis upon which to

4  terminate the Agreement.

### CAUSES OF ACTION

**CAUSE NO. 1:  DECLARATORY JUDGMENT UNDER RCW CH. 7.24**

7      Hyperion realleges paragraphs 1 through 36 as if restated in full herein.

8      37.    Pursuant to RCW Ch. 7.24 *et seq.,* Hyperion seeks a declaratory judgment under

9  the November 3, 2001 Agreement that:

10      (a) Under the self-executing provisions of §2.07 of the Agreement, the Amiga

11  One Partners received an exclusive, perpetual, world-wide and royalty free right and license to

12  develop (at their sole expense), use, modify and market the Software and OS 4 under the Amiga

13  OS trademark upon Amiga Washington's insolvency, and that Amiga Washington was

14  insolvent prior to and on April 24, 2003;

15      (b) Amiga Delaware and its predecessors did not comply with the requirement of

16  §7.12 of the Agreement that the Amiga One Partners and Amiga Washington each provide prior

17  written consent before the purported assignment of Amiga Washington's rights under the

18  Agreement could occur in the Itec Contract.  Amiga Delaware therefore has no rights under the

19  contract upon which it is suing;

20      (c) Amiga Delaware and its predecessors did not comply with the requirement of

21  §7.12 of the Agreement that subsequent transfers of rights under the Agreement also be

22  completed only after obtaining the prior written consent of the parties thereto.  Amiga Delaware

23  therefore has no rights under the contract upon which it is suing;

24      (d) Even if one assumes that Amiga Washington was not insolvent and that all

25  required parties gave their written consent to the transfer of Amiga Washington's rights, neither

26  Amiga Washington nor any of its purported successors paid the $25,000 within the six-month

HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS - 15

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1   time period required by §3.01 to "buy in" to OS 4. Thus, Amiga Delaware has not acquired the

2   Object Code, Source Code and intellectual property of OS 4.0 pursuant to and within the limits

3   set out in §2.06 of said Agreement. Instead, Hyperion possesses all ownership and title in the

4   enhancements of and additions to the Software effected by Hyperion and its subcontractors

5   pursuant to the terms of the Agreement;

6         (e) Even if one assumes that Amiga Washington was not insolvent and that all

7   required parties gave their written consent to the transfer of Amiga Washington's rights, the

8   self-executing provisions of §2.08 of the agreement transferred an exclusive, perpetual,

9   worldwide right and license to develop, use, modify and market the Software and OS 4 under

10   the Amiga OS trademark at their sole expense because Amiga Washington and its purported

11   successors failed to release a substantially new version of the Classic Amiga OS for the Target

12   Hardware within six months of Hyperion's completion of OS 4.0;

13         (f) Even if one assumes that Amiga Washington was not insolvent and that all

14   required parties gave their written consent to the transfer of Amiga Washington's rights, (i)

15   Hyperion exercised its "best efforts" as required of it under the Agreement, and (ii), Hyperion

16   has at no time, and will not in the future in its dealings with ACube Systems Srl, violate the

17   provisions of its license under the November 3, 2001 Agreement. Amiga Delaware therefore

18   has no valid basis upon which to terminate the licensing agreement; and

19         (g) Hyperion is entitled to whatever other declaratory relief is required to fully

20   adjudicate the rights of the parties to the Agreement pursuant to RCW 7.24.010, .020, .030,

21   .050, .080, and .090.

22       38.    In addition to a declaratory judgment in its favor, Hyperion is entitled to an

23   award from Amiga Delaware of its attorney's fees and expenses under §7.07 of the Agreement

24   and its costs under RCW 7.24.100.

25

26

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

**CAUSE NO. 2:  FRAUDULENT CONVEYANCE OF THE AMIGA WASHINGTON/KMOS CONTRACT**

Hyperion realleges paragraphs 1 through 38 as if restated in full herein.

39.     Hyperion is a creditor of Amiga Washington because, among other things, Amiga Washington breached its Warranties and Indemnification obligations in Article IV of the Agreement.

40.     For example, Amiga Washington breached its warranty that it was the owner of all intellectual property rights in the Software, defined to include but not be limited to OS 3.1, 3.5 and 3.9, when it in fact did not own said rights and could not deliver the code.  (Agreement, §4.01.)  On information and belief, Amiga Washington and its insiders knew it could not comply with these warranty obligations at the time the Agreement was entered into.  This breach caused Hyperion substantial damage because Hyperion was then forced to enter into dozens of contracts with the actual owners of that Software and acquire the liabilities attendant thereto.

41.     Amiga Washington then further breached its duties of indemnification under §4.02 of the Agreement because it failed to hold Hyperion harmless from those damages, costs and expenses.

42.     As another example, Hyperion's rights under §2.01 of the Agreement included the right to retain all revenues from the distribution of OS 4.0.  In 2001 and 2002 Amiga Washington breached Hyperion's rights by engaging in illicit discount voucher schemes aimed at future end-consumers of OS 4.0.  Specifically, Amiga Washington issued $100 "Amiga Party Pack" and $50 "I am Amiga" vouchers designed to induce consumers to pay Amiga Washington $100 or $50 in anticipation of the release of OS 4.0.  Amiga Washington represented that in exchange for these vouchers it would either grant a discount or provide free copies of software, e.g. OS 4.0, that it did not own.  By Amiga Washington's own admissions, it raised at least $90,000 from consumers in this manner.  Hyperion never endorsed these

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

schemes, was never paid any of the money, and has been damaged both in its reputation and monetarily as it was confronted with demands from these consumers for benefits that Hyperion was not in a position to provide.

43.     Hyperion assumed the status of a creditor of Amiga Washington prior to April 24, 2003.

44.     The Amiga Washington/KMOS Contract, purportedly signed on August 30, 2004, violates RCW 19.40.041(a) and RCW 19.40.051(a).

45.     Amiga Delaware, either as the renamed KMOS or as a subsequent transferee who failed to take in good faith and failed to provide reasonably equivalent value, is liable to Hyperion for this fraudulent transfer pursuant to RCW 19.40.071 and .081.

46.     Pursuant to RCW 19.40.071 and .081, Hyperion is entitled to a judgment voiding the transfer that took place in the Amiga Washington/KMOS Contract and to a judgment awarding Hyperion full right and title to the intellectual property rights covered by the Amiga Washington/KMOS Contract in partial satisfaction of Amiga Washington's liabilities to Hyperion.

47.     Pursuant to RCW 19.40.071 and .081, Hyperion is further entitled to an injunction prohibiting Amiga Delaware from using the name "Amiga" in its corporate name, in corporate sponsorships of public facilities, and from using the Amiga trademarks in any of its commercial or noncommercial activities.

48.     Finally, Hyperion is entitled to any other relief required by the circumstances of this case to provide it full relief pursuant to RCW 19.40.071(a)(3)(iii).

**CAUSE NO. 3:  FRAUDULENT CONVEYANCE OF THE ITEC/KMOS CONTRACT**

Hyperion realleges paragraphs 1 through 48 as if restated in full herein.

49.     The Itec/KMOS Contract was purportedly entered into on October 7, 2003.

50.     At the alleged time of that contract, Hyperion was a creditor of Amiga Washington.

HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS - 18

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

51.     The Itec/KMOS Contract violates RCW 19.40.041(a) and RCW 19.40.051(a) in as much as it was part of a larger scheme to hinder, delay or defraud the creditors of Amiga Washington.

52.     Amiga Delaware, either as the renamed KMOS or as a subsequent transferee who failed to take in good faith and failed to provide reasonably equivalent value, is liable to Hyperion for this fraudulent transfer pursuant to RCW 19.40.081.

53.     Pursuant to RCW 19.40.071 and .081, Hyperion is entitled to a judgment voiding the transfer that took place in the Itec/KMOS Contract.  To the extent that Hyperion has not already received the same in response to its cause of action for declaratory judgment, Hyperion is further entitled to a judgment awarding Hyperion full right and title to the intellectual property rights covered by the Itec/KMOS Contract in partial satisfaction of Amiga Washington's liabilities to Hyperion.

54.     Finally, Hyperion is entitled to any other relief required by the circumstances of this case to provide it full relief pursuant to RCW 19.40.071(a)(3)(iii).

**4.     CAUSE NO. 4:  BREACH OF CONTRACT**

Hyperion realleges paragraphs 1 through 54 as if restated in full herein.

55.     If Amiga Delaware is in fact a valid successor in interest to Amiga Washington under the Agreement, then Amiga Delaware assumed all of contractual obligations and liabilities of Amiga Washington with respect to the same.

56.     As alleged previously, Amiga Washington breached its warranties and indemnification obligations of Article IV of the Agreement by failing both to deliver OS 3.1, 3.5 and 3.9 source code free of encumbrances and, with respect to OS 3.5 and 3.9, the outright failure to produce that code in any form.  These breaches caused substantial damages to Hyperion in an amount to be proven at trial.  Amiga Delaware is liable for those damages if in fact it is the legitimate successor in interest to Amiga Washington.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

57.    As alleged previously, Amiga Washington breached Hyperion's rights under §2.01 of the Agreement by engaging in the "I am Amiga Club" and "Party Pack" voucher schemes.  These breaches caused substantial damages to Hyperion in an amount to be proven at trial.  Amiga Delaware is liable for those damages if in fact it is the legitimate successor in interest to Amiga Washington.

58.    Discovery is ongoing and additional breaches of contract by may be discovered.

59.    Hyperion accordingly demands judgment against Amiga Delaware in an amount to be determined at trial, plus attorney's fees and expenses, if plaintiff is in fact determined to be a valid successor in interest to Amiga Washington.

**CAUSE NO. 5:        VIOLATION OF RCW CH. 19.86 ET AL.**

Hyperion realleges paragraphs 1 through 59 as if restated in full herein.

60.    Amiga Delaware has misrepresented to third parties that it owns the Object Code, the Source Code and all intellectual property of the Operating System known as OS 4 in the context of negotiating, or attempting to negotiate contracts with said parties relating to the development, marketing, distribution and/or sale of OS 4.  One such example of this is a Subscription Agreement between KMOS and a Singapore company named TAPUL S.A. dated May 10, 2004.  In making these misrepresentations, Amiga Delaware made a representation of existing fact, the factual misrepresentation was material, it was false, Amiga Delaware knew it was false, and Amiga Delaware intended that third parties act on those false representations.

61.    In making the foregoing misrepresentations, Amiga Delaware was engaging in an unfair or deceptive act or practice that occurred in trade or commerce.  Those misrepresentations have had a public interest impact because certain of those third parties have accepted as true Amiga Delaware's misrepresentations, and their subsequent actions have had a negative impact on Hyperion's ability to develop, market and sell its intellectual property.  Furthermore, certain of Hyperion's independent contractors have viewed Amiga Delaware's actions as an infringement on their rights, and those third parties have instituted, or threatened

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  to institute, legal proceedings against Hyperion.  Because of the same, Amiga Delaware's

2  actions have caused injury to Hyperion's business or property.  RCW 19.86.020.

3        62.    In light of the foregoing violations, RCW 19.86.090 entitles Hyperion (a) to

4  injunctive relief requiring Amiga Delaware to cease and desist its wrongful acts, (b) to recover

5  actual damages, trebled to no more than $10,000 per violation, and (c), to recover costs of suit,

6  including a reasonable attorney's fee.

7  **CAUSE NO. 6:  LANHAM ACT—TRADE MARK INFRINGEMENT AND DILUTION**

8        Hyperion realleges paragraphs 1 through 62 as if restated in full herein.

9        63.    As previously alleged, Amiga Delaware acquired its alleged rights to the Amiga

10  trademarks through a fraudulent conveyance.  As such, those alleged rights are invalid and

11  unenforceable.

12        64.    Amiga Delaware's past and present use of the Amiga trademarks violates

13  Hyperion's explicit contractual rights under the Agreement.

14        65.    As between Amiga Delaware and Hyperion, Hyperion also has the right of first

15  use with respect to the Amiga trademarks because Hyperion in fact was the first to use those

16  marks in conjunction with the expenditure of time and the resources needed to develop the

17  Amiga OS 4.0 Software and to promote the same within the scope of its rights under the

18  Agreement.

19        66.    Amiga Delaware's use of the Amiga marks is and has been done with actual and

20  constructive knowledge of, and with deliberate, willful and utter disregard of Hyperion's rights

21  in the same. Furthermore, Amiga Delaware uses those marks in a way that is not only

22  confusingly similar, but identical, to Hyperion's use of its trademark rights.  Amiga Delaware's

23  use of those marks is likely to cause confusion, deception and mistake among the consuming

24  public as to the source or affiliation of Hyperion's goods, namely Amiga OS 4.0.

25

26

**HYPERION'S ANSWER, AFFIRMATIVE**
**DEFENSES AND COUNTERCLAIMS** - 21

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

67. Amiga Delaware has used and seeks to use the Amiga marks to falsely proclaim that it is the source of the Amiga OS 4.0 Software, to the damage of Hyperion's valuable goodwill as the source of the same.

68. Amiga Delaware's actions have had the effect of diluting and weakening the unique and distinctive significance of Hyperion's rights in the Amiga trademarks as acquired through the Agreement and through first use.

69. By reason of the foregoing, Amiga Delaware has violated §32(1) and §43(c) of the Lanham Act, 15 U.S.C. §1114(1) & 1125(c).

70. Because of the above acts, Hyperion asks the Court to enjoin Amiga Delaware from continuing these wrongful acts and to award it monetary damages in an amount to be proven at trial.

**CLAIM NO. 7: LANHAM ACT—FALSE DESIGNATION OF ORIGIN**

Hyperion realleges paragraphs 1 through 70 as if restated in full herein.

71. Amiga Delaware's use of the trademark AmigaOS 4.0 to promote and sell Software and products to which it has no contractual right is a false designation of origin.

72. On information and belief, Hyperion alleges that Amiga Delaware's actions have been knowing, deliberate, willful and in utter disregard of Hyperion's rights.

73. The above acts by Amiga Delaware constitute a false designation of origin. By reason of the foregoing, Amiga Delaware has violated §43(a) of the Lanham Act, 15 U.S.C. §1125(a), and will continue to do so unless the above acts, among others, are enjoined by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, having fully answered the allegations contained in Amiga Delaware's Complaint, Hyperion prays that said Complaint be dismissed and that all costs incurred herein by Hyperion, plus a reasonable attorney's fee, be taxed against Amiga Delaware. Hyperion further requests the following relief:

HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS - 22

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1      1.      For declaratory judgment that:

2            (a) Under the self-executing provisions of §2.07 of the Agreement, the Amiga

3   One Partners received an exclusive, perpetual, world-wide and royalty free right and license to

4   develop (at their sole expense), use, modify and market the Software and OS 4 under the Amiga

5   OS trademark upon Amiga Washington's insolvency, and that Amiga Washington was

6   insolvent prior to and on April 24, 2003;

7            (b) Amiga Delaware and its predecessors did not comply with the requirement of

8   §7.12 of the Agreement that the Amiga One Partners and Amiga Washington each provide prior

9   written consent before the purported assignment of Amiga Washington's rights under the

10  Agreement could occur in the Itec Contract.  Amiga Delaware therefore has no rights under the

11  contract upon which it is suing;

12           (c) Amiga Delaware and its predecessors did not comply with the requirement of

13  §7.12 of the Agreement that subsequent transfers of rights under the Agreement also be

14  completed only after obtaining the prior written consent of the parties thereto.  Amiga Delaware

15  therefore has no rights under the contract upon which it is suing;

16           (d) Even if one assumes that Amiga Washington was not insolvent and that all

17  required parties gave their written consent to the transfer of Amiga Washington's rights, neither

18  Amiga Washington nor any of its purported successors paid the $25,000 within the six-month

19  time period required by §3.01 to "buy in" to OS 4.  Thus, Amiga Delaware has not acquired the

20  Object Code, Source Code and intellectual property of OS 4.0 pursuant to and within the limits

21  set out in §2.06 of said Agreement.  Instead, Hyperion possesses all ownership and title in the

22  enhancements of and additions to the Software effected by Hyperion and its subcontractors

23  pursuant to the terms of the Agreement;

24           (e) Even if one assumes that Amiga Washington was not insolvent and that all

25  required parties gave their written consent to the transfer of Amiga Washington's rights, the

26  self-executing provisions of §2.08 of the agreement transferred an exclusive, perpetual,

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

worldwide right and license to develop, use, modify and market the Software and OS 4 under the Amiga OS trademark at their sole expense because Amiga Washington and its purported successors failed to release a substantially new version of the Classic Amiga OS for the Target Hardware within six months of the completion of OS 4.0 by Hyperion;

(f) Even if one assumes that Amiga Washington was not insolvent and that all required parties gave their written consent to the transfer of Amiga Washington's rights, (i) Hyperion exercised its "best efforts" as required of it under the Agreement, and (ii), Hyperion has at no time, and will not in the future in its dealings with ACube Systems Srl, violate the provisions of its license under the November 3, 2001 Agreement. Amiga Delaware therefore has no valid basis upon which to terminate the licensing agreement; and

(g) Hyperion is entitled to whatever other declaratory relief is required to fully adjudicate the rights of the parties to the Agreement pursuant to RCW 7.24.010, .020, .030, .050, .080, and .090.

2. For a declaration that the Amiga Washington/KMOS Contract is void as a fraudulent conveyance, and for a judgment awarding title to Hyperion of all rights of any kind covered by said Contract;

3. For a declaration that the Itec/KMOS Contract is void as a fraudulent conveyance and, to the extent that said rights have not already been awarded to Hyperion under paragraph 1 above, a judgment awarding all rights of any kind covered by said Contract, to the extent that they are not owned by third parties (e.g., Eyetech);

4. For an award of damages against Amiga Delaware for the breaches of the Agreement committed by Amiga Washington, if Amiga Delaware is actually a valid successor in interest to that Agreement;

5. For treble damages, injunctive relief, fees and costs as a result of Amiga Delaware's violation of RCW 19.86 *et seq.*

6. For injunctive relief and damages under the Lanham Act;

HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS - 24

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

7.      For an award of fees and expenses in bringing this suit as permitted by contract, statute and equity; and

8.      For such other relief as the Court deems appropriate.

DATED this 13th day of June, 2007.

KINSEL LAW OFFICES, PLLC


By: /s/ William A. Kinsel
     William A. Kinsel, WSBA #18077
Attorney for Defendant Hyperion VOF


William A. Kinsel, Esq.
Kinsel Law Offices
2025 First Avenue, Suite 440
Seattle, WA  98121
Phone:  (206) 706-8148
Fax:      (206) 374-3201
Email:  wak@kinsellaw.com

513p.doc

HYPERION'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS - 25

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148