UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMIGA, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>and<br><br>HYPERION VOF, a Belgium corporation,<br><br>    Defendant. | CAUSE NO. CV07-0631RSM<br><br>AMIGA'S REPLY MEMORANDUM OF LAW |

## PRELIMINARY STATEMENT

Plaintiff Amiga, Inc., a Delaware corporation ("Amiga Delaware"), replies in support of its Rule 12(c) motion. Hoping to distract the Court from unfillable deficiencies in its counterclaims, Defendant Hyperion's opposition misrepresents fact and law in an effort to create false issues. Hyperion also proffers declarations making irrelevant, demonstrably false assertions and attaching irrelevant exhibits, all of which are extrinsic to the pleadings and should be stricken.

**I.  HYPERION'S 15 U.S.C. §1114(1) INFRINGEMENT CLAIM FAILS BECAUSE HYPERION IS NOT A "REGISTRANT" OF ANY AMIGA MARK**

   **A.  Contrary to Hyperion's Irrelevant Misstatements, the PTO Has Accepted All Assignments to Amiga Delaware, Which Owns the Trademark Registrations**

Hyperion is not a "registrant" of any federally registered AMIGA formative or related

AMIGA'S REPLY MEMORANDUM OF LAW - 1
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE
BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1  mark and so it lacks standing under 15 U.S.C. § 1114(1). Hyperion has submitted no evidence to
2  the contrary, because there is no evidence to submit. Attempting to obscure this simple truth,
3  Hyperion makes the irrelevant and demonstrably false assertion that ***Amiga Delaware*** is not a
4  registrant of any registered AMIGA mark. (*See* Dkt. 56, p. 3:24-25; p. 9:13-14) Amiga
5  Delaware, as a matter of public record, is the registrant of all relevant registered AMIGA
6  formative and related trademarks. (Paterson *Registration* Decl. ¶¶ 4-5; Ex. A)[1] However, on this
7  motion, Amiga Delaware's registrant status is irrelevant to the undeniable fact that ***Hyperion*** is
8  not a "registrant" of any registered mark purportedly being infringed – an essential element of
9  Hyperion's §1114(1) claim. All assertions that Amiga Delaware is not a registrant of such marks
10 should be stricken (*see* Point V below) and the 15 U.S.C. § 1114(1) counterclaim dismissed.

**B.    The PTO Has Approved Amiga Delaware's Recent Trademark Applications**

Hyperion makes the further, irrelevant and misleading statement that the PTO issued "final" refusals to register various trademark applications recently filed by Amiga Delaware. (*See* Dkt. 56, p. 3:14-25) Again, the status of recent Intent-to-Use applications filed by Amiga Delaware is entirely irrelevant to the fact that Hyperion is ***not*** a "registrant" of any federally-registered AMIGA trademark purportedly being infringed by Amiga Delaware. Accordingly, these assertions in Hyperion's opposition papers should be stricken. (*See* Point V below)

Hyperion also mischaracterizes the nature and consequences of the PTO action as well as the current status of those applications, all which have now been ***approved*** by the PTO. The applications will now be published in the PTO's Official Gazette and will continue toward registration. (Paterson *Application* Decl. ¶¶ 4-5, Ex. A)

---

[1] Amiga, Inc., is submitting two declarations of Tim Paterson. One addresses trademark *registrations*, and the other trademark *applications*.

AMIGA'S REPLY MEMORANDUM OF LAW - 2
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

**C. As a Matter of Law, Hyperion is Neither "Successor" Nor "Assign" With Respect to Any Registered AMIGA Trademark, by Virtue of Any Limited License Purportedly Granted Under the Agreement or Otherwise**

Hyperion's sole basis for claiming that it should be treated as a "registrant" within the meaning of 15 U.S.C. §1114(1) is its conclusory assertion that it "meets the *common sense* definition of the term 'successor' or 'assign'" (Dkt. 56, p. 11:20-23; emphasis added) by virtue of the license it claims to have acquired through Sections 2.07 and 2.08 of the Agreement and based on Hyperion's erroneous contention that as of September 30, 2004, when Amiga Washington was administratively dissolved by the Secretary of State, the corporation "no longer existed." (*See* Dkt. 56, p 4:10-25; p. 11:14-23)  Hyperion is wrong as a matter of fact and law.

1. <u>Amiga Washington Has Never Ceased to Exist</u>

As a threshold matter, Hyperion's assertion that Amiga Washington "no longer existed" upon administrative dissolution by the Secretary of State is entirely inaccurate.  "A corporation administratively dissolved continues its corporate existence," RCW 23B.14.210 (3), and has five years to remedy whatever deficiency led to its dissolution and be reinstated.  RCW 23B.14.220.  During the period of its dissolution, a corporation may operate to the extent necessary to wind up and liquidate its business and affairs.  *Equipito Div. Aurora Equip. Co. v. Yarmouth*, 134 Wash.2d 356, 370, 950 P.2d 451, 458 (1998).  Reinstatement, when obtained, relates back to the date of dissolution, and the corporation may resume its business as if the administrative dissolution had never occurred.  RCW 23B.14.200 (3).  Therefore, Amiga Washington has never ceased to exist.  Moreover, even if it is never reinstated, any sale or assignment of its trademarks and intellectual property after it was dissolved would constitute a permissible and valid step toward winding-up and liquidating its business and affairs.

2. <u>Any Licenses Under the Agreement Are Extremely Narrow in Scope, Compared With the Registrations</u>

Simply put, a license is *not* an assignment.  Any trademark license purportedly granted pursuant to Sections 2.07 or 2.08 of the Agreement was to Amiga One Partners, not Hyperion,

AMIGA'S REPLY MEMORANDUM OF LAW - 3
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

and certainly was not an assignment of all rights in a registered AMIGA trademark for all purposes, as Hyperion claims. Hyperion disingenuously asserts that rights it allegedly received under these sections, allowing it to develop a new version of the operating system based on prior versions, also gave it unlimited rights to use all AMIGA formative and related trademarks for all purposes and glibly concludes that "there appears to be nothing left for anyone else to possess." (Dkt. 56, p. 11:6-18) However, Hyperion is blurring the distinction between copyright and trademark rights purportedly licensed to Amiga One Partners under these sections, in an attempt to beef up a narrow putative trademark license and make the further leap that the license was an assignment. "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression," 17 U.S.C. § 102(a), while "[t]he term 'trademark' includes any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

Any license allegedly granted to the Amiga One Partners under Section 2.07 ( "an exclusive, perpetual, world-wide and royalty free right and license to develop (at their sole expense), use, modify and market the Software and OS 4 under the 'Amiga OS' trademark") or under Section 2.08 ( "an exclusive, perpetual, worldwide right and license to develop, use, modify and market the Software and OS 4 under the 'Amiga OS' trademark and at their sole expense") would comprise separate copyright and trademark rights: (1) a *copyright* license to develop certain updated versions of Amiga Operating System software based on the Source Code of certain pre-existing versions of the Amiga Operating System (constituting derivative works of copyright, *see* 17 U.S.C. § 101) and (2) a limited *trademark* license to market only those updated versions – *i.e.,* only those derivative works – only under the "Amiga OS" trademark.

This alleged limited trademark license for use of the "Amiga OS" mark is a far cry from what Hyperion claims was a complete assignment of all AMIGA formative or related trademarks covering a wide range of goods far beyond new versions of an old operating system. The Court

AMIGA'S REPLY MEMORANDUM OF LAW - 4
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

may take judicial notice of publicly filed documents demonstrating that Amiga Delaware's trademark registrations encompass a broad range of goods. For example:

- <u>Registration No. 1,401,045</u> for the trademark AMIGA, issued July 15, 1986, covers computers, computer disk drives, RAM expansion cartridges, computer monitors and computer modems. (Complaint Ex. C)
- <u>Registration No. 2,369,059</u> for the POWERED BY AMIGA & Boing Ball Design mark, issued July 18, 2000, covers computers, computer peripherals and computer operating systems. (Complaint Ex. D)
- <u>Registration No. 2,802,748</u> for the AMIGA trademark, issued July 18, 2000, covers computer software used to facilitate development of software applications that can run on multiple platforms and other electronic devices; operating system software for personal computers and other electronic devices. (Complaint Ex. E)

Further, any license under Sections 2.07 or 2.08 of the Agreement to use the "Amiga OS" trademark is expressly limited to the Amiga One Partners' use of that particular mark in connection with updated versions of the old operating system software. It would ***not***, for example, extend to use of the "Amiga OS" trademark to market an entirely new operating system that is not derived from Source Code of pre-existing versions, let alone to separate software applications (*e.g.,* word processing and spreadsheet programs and games), or for computer hardware or peripherals. Any such license also would not extend to use of the "Boing Ball" mark or any AMIGA or AMIGA-formative marks, aside from just the mark "Amiga OS." All other rights regarding all other products and all other trademarks and all trademark registrations were retained by Amiga Washington in the Agreement – assuming the Section 2.07 or 2.08 licenses were ever triggered. Amiga Delaware now owns all those other rights, trademarks and trademark registrations. (*See* Paterson *Registration* Decl. ¶¶ 4-5 and Ex. A)

As a matter of law, Hyperion is neither a "registrant" nor a successor or assign of a "registrant" with respect to any AMIGA formative or related trademark registrations and so lacks standing under § 1114(1). *See Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1254 (E.D. Wash. 2004). The § 1114(1) Counterclaim should be dismissed.

AMIGA'S REPLY MEMORANDUM OF LAW - 5
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

## II. HYPERION'S 15 U.S.C. § 1125(C) DILUTION CLAIM FAILS BECAUSE, AS A MATTER OF LAW, IT IS NOT "OWNER" OF ANY FAMOUS AMIGA MARK

Erroneously asserting that it is the owner of the "AmigaOS" trademark, (*see* (Dkt. 56, p. 5:8-23; p. 12:13 to p. 13:21), Hyperion again confuses the distinction between copyright and trademark. Hyperion claims that Amiga Washington (or its successors-in-interest) failed to make payment pursuant to Section 3.01 of the Agreement, with the result that Hyperion purportedly retained ownership of the Object Code, Source Code and intellectual property of OS 4.0, which is just an updated version of prior operating systems (*i.e.*, derivative copyright work, 17 U.S.C. § 101) previously sold by Amiga Washington and its predecessors under the AMIGA brand. Hyperion then makes the conclusory leap that ownership of the OS 4.0 derivative copyright includes "necessarily the right to call it by name, specifically AmigaOS 4.0." (Dkt. 56, p.13:17-19; *see also* p. 5:21-23) That is simply wrong.

Contrary to Hyperion's assertion, alleged ownership of the copyright in the derivative work, including Object Code and Source Code, would not carry with it ownership of the AMIGA trademark that was used to sell prior versions of the operating system. The 4.0 version is merely a version of an "operating system" – a derivative copyright work. Its "name," if any, is "OS 4.0," not "*Amiga*OS 4.0." Neither "AmigaOS," nor "AmigaOS 4.0," is a generic designation for this or any other operating system. "AMIGA" and "AmigaOS" are trademarks used to identify a single source of goods -- i.e., the trademark owner. *See* 15 U.S.C. § 1127 (purpose of a trademark is to "identify and distinguish" one's products "from those manufactured or sold by others and to indicate the source of the goods"). Whatever Hyperion might have acquired pursuant to Section 3.01 of the Agreement, it was not ownership of a trademark.

Since Hyperion is not the "owner" of any famous AMIGA trademark allegedly being diluted by Amiga Delaware, its Cause No. 6 should be dismissed with prejudice. *See Thane Int'l v. Trek Bicycle Corp.*, 305 F.3d 894, 907 (9th Cir. 2002); *see also Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1012 (9th Cir. 2004).

AMIGA'S REPLY MEMORANDUM OF LAW - 6
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

### III. HYPERION NEVER PLED AND CANNOT AS A MATTER OF LAW STATE ANY CLAIM FOR COMMON LAW TRADEMARK INFRINGEMENT OR DILUTION OR FALSE DESIGNATION OF ORIGIN

#### A. Hyperion's Counterclaims Do Not Allege Common Law Causes of Action

Faced with dismissal of its Federal claims, Hyperion scrambles to assert that its counterclaims are intended to include common law causes of action for trademark infringement and dilution and false designation of origin. However, Hyperion's allegations in Cause No. 6 and Cause No. 7 claim only Lanham Act violations. It is not just the Counterclaims' titles that reference the Lanham Act. Paragraph 69 in Cause No. 6 expressly states: "By reason of the foregoing, Amiga Delaware has violated § 32(1) and § 43(a) of the Lanham Act, 15 U.S.C. § 1114(1) and 1125(c)." *Accord* paragraph 73 in Cause No. 7. Nowhere in either Counterclaim does Hyperion allege anything about trademark rights, infringement, dilution or false designation of origin under common law. Such claims must be pled separately and specifically if at all.

#### B. Trademark Dilution Under Washington Law Is Exclusively Statutory

Hyperion adamantly asserts that its trademark dilution claim encompasses a claim of dilution under Washington common law. (*See* Dkt. 56, p. 13:22 to p. 14:6) No such cause of action exists. Trademark dilution under Washington law is exclusively statutory: RCW § 19.77.160. Accordingly, any such counterclaim should be dismissed as a matter of law.

##### 1. Attempting to Assert a Statutory Dilution Claim Under Washington Law Would Not Avail Hyperion Which is Not "Owner" of Any AMIGA Mark

Even if Hyperion could invoke Washington's dilution statute, as explained in Amiga Delaware's moving papers, Hyperion is not the "owner" of any AMIGA trademark purportedly being diluted by Amiga Delaware, and Washington's dilution statute makes relief available only to "[t]he owner of a mark that is famous in this state . . . ." RCW § 19.77.160(1).

##### 2. Any Claim Under Washington's Dilution Statute Is Preempted By 15 U.S.C. § 1125(c)(6) Due to Amiga Delaware's Federal Registrations

Moreover, any dilution claim under the Washington statute would, by virtue of Amiga

AMIGA'S REPLY MEMORANDUM OF LAW - 7
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Delaware's federal trademark registrations, be preempted by 15 U.S.C. § 1125(c)(6), which provides that "ownership by a person of a valid [federal trademark] registration . . . shall be a complete bar to an action against that person with respect to that mark [for trademark dilution] brought by another person under the common law or a statute of a State . . . ."

In sum, Hyperion has no basis whatsoever for any kind of trademark dilution claim against Amiga Delaware under any federal or Washington statutory or common law.

### C. Washington Has Never Recognized a Common Law Claim for False Designation of Origin Apart From a Claim Under 15 U.S.C. § 1125(a)

Research has revealed no case in Washington ever recognizing a false designation of origin claim under state common law, apart from a claim under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). Accordingly, there is no basis for allowing such a claim by Hyperion.

### D. Hyperion's Opposition Papers Demonstrate Its Lack of Priority Of Trademark "Use in Commerce" as a Matter of Law, Thereby Barring Any Kind of Common Law Trademark Claim

Hyperion's opposing papers demonstrate that Hyperion has never engaged in any trademark use that could establish any trademark rights inuring to its own benefit and thus cannot, as a matter of law, establish common law trademark rights superior to Amiga Delaware's.

Hyperion purports to claim priority over Amiga Delaware by virtue of having "used" various AMIGA formative and related marks ever since entering into the Agreement in November 2001, which granted limited trademark use rights to Amiga One Partners. (*See* Dkt. 56, p. 4:1-6) However, Hyperion's purported trademark "use" pursuant to that license, as a matter of law, does not and cannot constitute "use in commerce" giving rights to Hyperion or the Amiga One Partners. *See* 15 U.S.C. § 1127 ("'use in commerce' means bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark."); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999) ("The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods ... in commerce - which typically occurs when a mark is used in conjunction with the actual

AMIGA'S REPLY MEMORANDUM OF LAW - 8
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1  [non-token] sale of goods."); 1 Gilson, Trademark Protection and Practice § 3.02 (2007) ("With
2  the enactment of the [Lanham Act] . . . minimal or token trademark use was no longer available
3  as a basis to establish registrable trademark rights.").  All use of a trademark by a licensee
4  necessarily inures to the benefit of the licensor, not the licensee.  *See Twentieth Cent. Fox Film*
5  *Corp. v. Marvel Enter.*, 155 F. Supp. 2d 1, 20-21 (S.D.N.Y. 2001); *Printers Serv. Co. v.*
6  *Bondurant*, 1991 U.S. Dist. LEXIS 20561, *13 (C.D. Cal. 1991); *see also* 15 U.S.C. § 1055.

7       Although Hyperion further asserts that it has used AmigaOS, AmigaOne and Boing Ball
8  trademarks outside the scope, and independent, of the license granted in the Agreement (s*ee* Dkt.
9  56, p. 8:18-21; Dkt. 54, Carton Decl. ¶¶2-10, Exs. A-C), the purported "use" described by
10 Hyperion, as a matter of law, does not and cannot constitute "use in commerce."  For example,
11 Evert Carton, Managing Partner of Hyperion, alleges that the name "AmigaOS 4.0" was
12 mentioned "in interviews and appearances at enthusiasts shows to create public awareness and
13 explain the project to the public," and alleges that Hyperion used the trademarks in press releases
14 and over the internet, including in "announcements about the development of OS 4.0" on its
15 website and to "develop consumer awareness" about the operating system.  (Carton Decl. ¶¶ 2-4,
16 6 and Exs. A, B)  Such conduct barely rises to the level of mere advertising, which does not
17 constitute "use in commerce."  *See Brookfield*, 174 F.3d at 1052-53 (defendant's "purported use"
18 of a mark by "limited email correspondence with lawyers and a few customers" and
19 "register[ing] its domain name" insufficient; these activities show a mere intent or preparation to
20 use a mark in commerce, not "use in commerce"); *Sleep Country USA, Inc. v. Northwest Pacific,*
21 *Inc.*, 2003 U.S. Dist. LEXIS 26055 (W.D.Wa. 2003) (holding "pre-sale activities," consisting of
22 a listing in the phone directory and distributing flyers, did not constitute "use in commerce" to
23 establish trademark ownership.); *Future Domain Corp. v. Trantor Sys. Ltd.*, 1993 U.S. Dist.
24 LEXIS 9177 (N.D.Cal. 1993); *see also Sweetwater Brewing Co., LLC v. Great Am. Rests., Inc.*,
25 266 F. Supp. 2d 457, 464 (E.D.Va. 2003) ("use of a mark on press releases, brochures, sales
26 presentations, newspaper articles, and the like, [is] not relevant trademark use ... Defendants'
27

AMIGA'S REPLY MEMORANDUM OF LAW - 9
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE
BUILDING
SEATTLE, WASHINGTON 98104-
1048
(206) 292-8800

1  attempts to establish 'use' of the mark through promotional activities are without merit.").

2  Moreover, various Hyperion web pages cited by Carton bear a legend and notice stating:
3  ***"AMIGA and its logos are registered trademarks of Amiga, Inc."***  (Carton Decl. Ex. B, pp. 17,
4  18; emphasis added)  Similarly, Carton cites Hyperion's placement of Amiga trademarks on the
5  CD jacket and CD containing Developer Pre-release versions of OS 4.0, but those bear the
6  legend and notice:  ***"developed under license from KMOS, Inc.  All rights reserved.  Amiga ®***
7  ***is a registered trademark of Amiga, Inc."***  (Carton Decl. Ex. C, pp. 20, 21; emphasis added)  Far
8  from establishing Hyperion's trademark rights in AMIGA marks, such notices constitute
9  admissions that Hyperion lacked such trademark rights and was not using the AMIGA marks to
10 exercise or establish trademark rights for itself.  *See Sengoku Works v. RMC Int'l*, 96 F.3d 1217,
11 1221 (9th Cir. 1996) (holding that trademark ownership, or the lack thereof, can be established
12 by "admissions by the parties as to which one owns the trademark.")  Much the same is true of
13 the Amiga History Guide web site (http://www.amigahistory.co.uk) cited by Carton as a
14 supposed example of "public awareness of the relationship between Hyperion and Amiga OS
15 4.0."  (Carton Decl. ¶ 7)  That site, like Hyperion's own web pages, contains a legend stating
16 unequivocally ***"Amiga is a registered Trademark of Amiga Inc."*** demonstrating third party
17 awareness that the AMIGA mark does ***not*** belong to Hyperion.  (Lawrence Cock Decl. Ex. 1;
18 emphasis added)  In any event, a link on a ".uk" web site in the United Kingdom does not
19 constitute evidence of any kind of general, "public awareness" of anything – even in the United
20 Kingdom, let alone in the United States.  *See Grupo Gigante SA DE CV v. Dallo & Co., Inc.*, 391
21 F.3d 1088 (9th Cir. 2004) ("[A] well-established principle of trademark law, the territoriality
22 principle, ... says that priority of trademark rights in the United States depends solely upon
23 priority of use in the United States, not on priority of use anywhere in the world.")

24 As a matter of law, Hyperion has failed to identify any "use in commerce" that could
25 create ***any*** common law trademark rights for itself, let alone rights senior to Amiga Delaware's
26 federal registrations.  Accordingly, Hyperion has no basis for asserting any supposed common
27

AMIGA'S REPLY MEMORANDUM OF LAW - 10
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE
BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

law infringement, dilution or false designation of origin claims.

## IV. HYPERION HAS ADMITTED THAT THE AMIGA ONE PARTNERS PARTNERSHIP IS THE SOLE LICENSEE UNDER SECTION 2.07

A partnership is created whenever two or more persons agree to carry on a business and share profits and ownership control and may be formed regardless of whether the persons entering into the agreement intend to form the partnership entity. RCW 25.05.055(1). "Property acquired by a partnership is property of the partnership and not of the partners individually." *Curley Electric, Inc. v. Bills*, 130 Wn.App. 114, 122, 121 P.3d 106, (2005); RCW 25.05.060. Hyperion has previously admitted what appears from the Agreement's face: Amiga One Partners is the sole licensee under provisions at issue in the Counterclaims, including Section 2.07. (*E.g.,* Dkt. 39, Counterclaims, p. 15 ¶ 37(a)) Hyperion itself has asserted that Eyetech Group Limited ("Eyetech"), the other partner therein, is a necessary party to claims arising from the Agreement, which certainly include Hyperion's Counterclaims. (Dkt 24. Hyperion Prelim. Inj. Opp. Brief, p. 2:13-16, p. 14:17-25) Thus, Hyperion is estopped to deny the partnership. Moreover, when the Agreement's drafters intended to give rights or obligations to Hyperion (or Eyetech) individually, they knew how to do so. (*See e.g.,* §§ 2.02, 2.03 (A), (B), (C) and 4.02) If Hyperion's Cause No. 6 or No. 7 somehow survive this motion, Hyperion should be required to join Eyetech and Amiga One Partners. In their absence, this Court should dismiss Hyperion's Counterclaims for trademark infringement and dilution and for false designation of origin, which are based on rights allegedly acquired through licenses made expressly to "Amiga One Partners," not to Hyperion individually and apart from the partnership, whether *de jure* or *de facto*.

## V. MOTION TO STRIKE: HYPERION'S DECLARATIONS INJECT MATTERS OUTSIDE THE PLEADINGS AND SHOULD BE IGNORED

A Court reviews a motion for judgment on the pleadings as it would a motion to dismiss under Rule 12(b)(6). *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir.1999). All well-pleaded material allegations of the non-moving party's pleadings are taken as true, *Ang v. Proctor &*

AMIGA'S REPLY MEMORANDUM OF LAW - 11
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1 *Gamble Co.*, 932 F.2d 540, 544 (6th Cir.1991), and facts outside the pleadings are disregarded
2 unless the court decides to convert the motion to one for summary judgment. *See, e.g., Whiting v.*
3 *Maiolini*, 921 F.2d 5, 6 (1st Cir.1991); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642
4 (2d Cir.1988). However, where the motion is based entirely on pleadings and exhibits therein,
5 and only the non-movant introduces new factual matters, there is no reason to convert the
6 motion. Instead, the court should strike the non-movant's extrinsic material. *See e.g. Proctor v.*
7 *DialAmerica Mktg.*, 2007 WL 1394153 (N.D.Ohio); *John S. Clark Co. v. United Nat'l. Ins. Co.*,
8 304 F.Supp.2d 758, 764 n.4 (M.D.N.C., 2004) (striking the factual matters presented by non-
9 movant where movant under Rule 12(c) limited itself to the pleadings and pleading exhibits).

10     Amiga's Rule 12(c) motion is based on Hyperion's failure to plead elements essential to
11 two Counterclaims and is limited to the pleadings. The Court need only consider the Counter-
12 claims, not extrinsic facts. Hyperion has proffered William Kinsel's Declaration (Dkt. 55),
13 devoted entirely to injecting new exhibits attacking allegations in Amiga's Complaint, but on a
14 12(c) motion, Hyperion's denials of allegations in Amiga's Complaint are accepted, rendering
15 the declaration and exhibits unnecessary. The Declaration of Evert Carton (Dkt. 54) contains
16 exhibits of which the Court can take judicial notice, but is primarily devoted to introducing
17 evidence not in the pleadings (as well as improper legal conclusions). The sufficiency of
18 Hyperion's Counterclaims can and should be judged under Rule 12(c) without considering either
19 of these declarations or their non-judicially noticeable exhibits, all of which should be stricken.

20     DATED this 30th day of July, 2007.

21     CABLE, LANGENBACH, KINERK & BAUER, LLP

22
23     By:   /s/
           Lawrence R. Cock, WSBA No. 20326
           Attorneys for Plaintiff Amiga, Inc.

AMIGA'S REPLY MEMORANDUM OF LAW - 12
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

William A. Kinsel
Law Offices of William A. Kinsel, PLLC
Market Place Tower
2025 First Avenue, Suite 440
Seattle, WA  98121

/s/
Lawrence R. Cock, WSBA No. 20326
Attorney for Plaintiff Amiga, Inc.
CABLE, LANGENBACH, KINERK & BAUER, LLP
Suite 3500, 1000 Second Avenue Building
Seattle, Washington 98104-1048
(206) 292-8800 phone
(206) 292-0494 facsimile
lrc@cablelang.com

AMIGA'S REPLY MEMORANDUM OF LAW - 13
Case No. CV07-0631RSM

CABLE, LANGENBACH, KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800