THE HON. RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMIGA, INC., a Delaware corporation,

     Plaintiff,

and

HYPERION VOF, a Belgium corporation,

     Defendant/Counterclaim Plaintiff,

v.

ITEC, LLC, a New York Limited Liability Company,

     Counterclaim Defendant.

CAUSE NO. CV07-0631RSM

**NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER**

**NOTE ON MOTION CALENDAR: NOVEMBER 30, 2007**

**ORAL ARGUMENT REQUESTED**

## <u>NOTICE OF MOTION AND MOTION</u>

     TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  NOTICE IS HEREBY

GIVEN THAT pursuant to Rule 12(b)(2), (3) and/or (6)  of the Federal Rules of Civil Procedure,

on November 30, 2007, in the courtroom of the Honorable Ricardo Martinez, located at 700

Stewart Street, Seattle, Washington, additional Counterclaim-Defendant  Itec, LLC, a New York

Company, ("Itec") will and hereby does move the Court for an order dismissing the claims

**ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER** - 1
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    brought against it by Hyperion VOF, a Belgian entity, ("Hyperion") for lack of jurisdiction over

2    the person of Itec and for lack of proper venue in this forum; or for failure to state a claim upon

3    which relief can be based; or, in the alternative, for an order pursuant to 28 U.S.C. § 1404 and/or

4    1406 transferring this cause to the United States District Court for the Southern District of New

5    York.[1]

6

7    **MEMORANDUM OF POINTS AND AUTHORITIES**
**I. PRELIMINARY STATEMENT**

8            In its June 26, 2007 motion to join Itec as an additional counterclaim defendant in this

9    action  --  a motion to which Itec had no chance to respond  --  Hyperion provided the Court with

10   a great deal of misinformation about Itec; Itec's relationship to the parties herein; and its role in

11   the events giving rise to the dispute between Hyperion and defendant Amiga, Inc. ("Amiga").

12

13   But when the record is set straight, it becomes immediately clear that Itec's involvement in these

14   matters was *de minimus* at best, and in any event was totally unrelated to this forum such that

15   this Court has no jurisdiction over Itec's person.

16           To set the record straight:

17

18           Pursuant to a simple, two-page written sales contract dated as of April 24, 2003, made

19   and to be performed in Belgium and New York  --  the "Itec/Hyperion Contract"  --  in return for

20   payment of $25,000, the receipt of which Hyperion acknowledged, Hyperion agreed to transfer

21   ownership of certain technology  --  the OS 4.0 --  to Itec.  Hyperion never did so, and it is now

22   being sued by Itec in New York for breach of contract as a consequence.

23           Hyperion is also being sued by Amiga here for a variety of claims, having their genesis in

24   a separate 2001 Agreement among Hyperion, Eyetech Group, Ltd. ("Eyetech"), Amiga One

25

26   _____

27   [1] Unless otherwise stated, defined terms used herein will have the meaning ascribed to them in the Declaration of
John Grzymala (the "Grzymala Dec."), filed herewith.

**ITEC'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO**
**DISMISS OR TRANSFER** - 2
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    Partners, and a Washington state corporation formerly called Amiga, Inc. (which is not a party to

2    this action; hereinafter "Amiga Washington"). Itec is not a party to that Agreement.

3          Whatever Hyperion's disputes are with Amiga, and whatever connection they may have

4    with the State of Washington, Hyperion seems to forget  --  or more precisely, it seeks to obscure

5    --  the fact that the very limited Hyperion/Itec relationship, which is founded solely and

6    exclusively on the Itec/Hyperion Contract, has no connection with this forum.  The

7    Itec/Hyperion Contract was not made by or in Washington, nor is it to be performed here, neither

8    does it contain a Washington choice of forum provision; and while it makes brief reference to the

9    separate 2001 Agreement between Hyperion and Amiga that contains such a provision, it does

10   not provide for Itec's assumption of Amiga Washington's rights or obligations thereunder, nor

11   does it incorporate the terms of that Agreement  --  much less the choice of forum provision  --

12   into the Itec/Hyperion Contract.

13         It would undoubtedly be more convenient for Hyperion to force Itec to come to this

14   forum, and tactically advantageous as well:  it would permit Hyperion to delay adjudication of

15   the claims that Amiga has brought against it.  But Hyperion's personal convenience is not the

16   test for determining whether personal jurisdiction exists over Itec.  That test involves an analysis

17   of whether Itec  --  not Hyperion, not Amiga, not Amiga Washington, but Itec  --  has contacts

18   with this forum out of which Hyperion's claims against it arise.  And under this test --

19   notwithstanding some very artful, albeit very inaccurate, pleading by Hyperion -- its claims

20   against Itec in this forum must be dismissed.

21         Finally, if dismissal on jurisdictional grounds were not required, the Court should transfer

22   this cause to the United States District Court for the Southern District of New York.  In addition

23   to a number of more traditional reasons for such a transfer  --  including that New York is the one

24   place where jurisdiction exists over both Itec and Amiga  --  Hyperion's joining Itec as an

ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER - 3
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

additional "Counterclaim Defendant" here smacks of bad faith and forum shopping.  Hyperion has known all of the facts that it relies on for its claims against Itec since the time that Amiga's motion for a preliminary injunction was submitted in April 2007.  Nonetheless, Hyperion did not seek to assert those claims here until after Itec had made it clear that unless Hyperion performed its contract with Itec and delivered the OS 4.0 to it in New York, Itec would sue Hyperion there.  Only then, hoping to pretermit that suit, did Hyperion race to this Court to seek a declaratory judgment that its contract with Itec is invalid -- a disfavored tactic the allowance of which would "reward Pearl Harbor tactics at the expense of the Marquis of Queensbury rules." Briarwood Shoe Corp. v. Sears Roebuck & Co., 479 F.Supp. 563, 568 (S.D.N.Y. 1979).  Moreover, many of Hyperion's assertions in its Amended Counterclaims are in direct contradiction of the documents upon which it purports to rely --  and worse yet, in direct contradiction to what Hyperion has represented to the court in New York, and what it represented to this Court in its opposition to Amiga's motion for injunctive relief.

For all of these reasons, and those set forth below, Itec's motion to dismiss or transfer should be granted in all respects.

## II.  STATEMENT OF FACTS

The facts relevant to this motion are actually quite simple and not subject to legitimate dispute, as they are largely documentary in nature:

Itec is a New York limited liability company, engaged primarily in venture financing.  It does not do business in the State of Washington.  It is not and never has been an affiliate of Amiga Washington, and while it has a substantial equity interest in Amiga, it is a minority interest only.  Grzymala Dec. at ¶¶ 2-4.

Itec's involvement with Hyperion was of limited object and duration.  Specifically, in or about April 2003, Hyperion and Itec communicated concerning Amiga Washington.  Itec knew

ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER - 4
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1   Amiga Washington, as it had lent money to it in connection with a then-contemplated acquisition

2   of the company's assets that never came to fruition.  Grzymala Dec. at ¶¶ 5-6.

3       At that time, Hyperion had a 2001 Agreement with Amiga Washington, et al., involving a

4   variety of licensing, distribution and trademark rights; one facet of that Agreement involved the

5   development of the OS 4.0.  While Hyperion had ownership rights in technology related to the

6   OS 4.0, Eyetech and Amiga One Partners had no ownership interest therein.  Under the 2001

7   Agreement, Amiga Washington had an option  --  but not an obligation  --  to buy the rights to

8   the OS 4.0 any time within six months of its completion for $25,000.  As of April 2003, the OS

9   4.0 was not yet completed, but Hyperion was in desperate financial straits and needed the

10  $25,000 immediately to stave off bankruptcy.  Amiga Washington was not interested in

11  exercising its option to buy the OS 4.0, but did not object to Hyperion's selling the OS 4.0 to

12  Itec.

13

14      Because a failure by Itec to buy the OS 4.0 could result in the product's going to a third

15  party or having title thereto enmeshed in Belgian legal proceedings if Hyperion indeed went

16  bankrupt, Itec concluded that it was advisable to buy the OS 4.0 while it considered whether or

17  not to acquire Amiga Washington's assets.  Accordingly, Itec entered into a separate, standalone

18  purchase and sale agreement with Hyperion, memorialized in the Itec/Hyperion Contract.

19  Grzymala Dec. at ¶¶ 7-9, Ex. 1.

20

21      As is apparent from the face of that document, Amiga Washington was not a party to the

22  Itec/Hyperion Contract; and Amiga Washington did not purport to assign, and Itec did not

23  purport to assume, the detailed rights or obligations of Amiga Washington under the 2001

24  Agreement.  Indeed, Itec understood at the time that with the agreed upon sale to it of the OS 4.0,

25  Amiga Washington and Hyperion had abandoned the 2001 Agreement.  All Itec did was to buy a

26  single product  --  the OS 4.0.  Grzymala Dec. at ¶¶ 9-10.

27

**ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER** - 5
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    In October, 2003, before the OS 4.0 was completed, Itec sold the OS 4.0 to a Delaware

2    company then known as KMOS, (now "Amiga, Inc."), which had determined that it was going to

3    acquire the assets of Amiga Washington in a separate transaction between those two parties.

4    Grzymala Dec. at ¶¶ 16-17. The Amended Counterclaims do not allege any other act by Itec

5    here relevant after its sale of the OS 4.0 to KMOS in October 2003 until June 20, 2007, when

6    Itec, reserving all rights, sent a letter notifying Hyperion that Itec had elected to exercise its

7    rights under the Itec/Hyperion Contract, tendering an additional payment in the amount of

8    $25,000 to Hyperion, and demanding that Hyperion transfer the OS 4.0, and all rights relating

9    thereto, to Itec no later than June 26, 2007. Grzymala Dec. at ¶ 21, Ex. 4.

10

11    It appears that in 2004, KMOS did acquire all of Amiga Washington's remaining assets,

12    and that in December 2006, Hyperion announced that the OS 4.0 was finally completed.

13    However, Itec had no involvement in any of this. Grzymala Dec. at ¶ 18. Thereafter, Hyperion

14    apparently refused to transfer the OS 4.0 to KMOS n/k/a Amiga, and Amiga thus brought suit

15    against Hyperion in this Court. Grzymala Dec. at ¶ 19. In so doing, Amiga alleged that

16    Hyperion "had stipulated to jurisdiction and to venue in this judicial district." Complaint at ¶ 3.

17

18    As the Court is aware, in that lawsuit, there is a welter of claims and counterclaims back

19    and forth between Amiga and Hyperion involving trademark rights and other matters, all of

20    which have nothing to do with Itec, which sold OS 4.0 KMOS in 2003 and which asserts no

21    rights or claims to any of the Amiga trademarks. Grzymala Dec. at ¶ 20. Nonetheless, Hyperion

22    now seeks to pull Itec into this welter.

23

24    But as shown above, there is simply no basis for Hyperion to sue Itec here under the

25    Itec/Hyperion Contract. The Contract has no connection with this forum, and there is no other

26    basis for Hyperion to sue Itec here since Itec is not a party, directly or by assignment, to the 2001

27    Agreement between Hyperion and Amiga Washington. Grzymala Dec. at ¶ 23.

**ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER** - 6
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1
2
3
4
5
6
7
8
9
10
11

What has complicated an otherwise straightforward case of no jurisdiction is that on its motion for a preliminary injunction in April 2007, Amiga, which was not a party to the Itec/Hyperion Contract, asserted that the Contract constituted an acknowledgement of an assignment by Amiga Washington of the 2001 Agreement to Itec.  Grzymala Dec. at ¶ 24. Hyperion then argued that by reason of Article 7.12 of the 2001 Agreement any "assignment" was ineffective, and a good part of the preliminary injunction argument was focused on this issue.  Order Denying Motion for Preliminary Injunction at pp. 6-7.  Moreover, as more fully set forth below, Hyperion now tries to exploit this statement by Amiga to support its Counterclaims against Itec, arguing it means that Itec must be asserting that its rights to the OS 4.0 arise under the 2001 Agreement.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The short of it is, Amiga, which operated under the time constraints of preparing a motion for a preliminary injunction, was simply mistaken.  Itec does <u>not</u> claim to be an assignee of the 2001 Agreement, and it does <u>not</u> assert any rights to the OS 4.0 thereunder.  Grzymala Dec. at ¶ 25.  Nor has anyone ever pointed to anything that looks or reads like an assignment agreement between Amiga Washington and Itec  --  probably because none exists.  Rather, Itec had its own separate sales contract with Hyperion, and Hyperion alone, and that Contract is the basis of Itec's claim that it was the owner of the OS 4.0 from April – October 2003.  Grzymala Dec. at ¶ 9.  Moreover, far from the 2001 Agreement's being "incorporated" into the Itec/Hyperion Contract (as Hyperion has recently implied), the only reference to that Agreement is in the context of prescribing <u>Hyperion's</u> delivery obligation.  In other words, the Itec/Hyperion Contract provides only that Hyperion would deliver the OS 4.0 at the same time and manner as it would have had to deliver it to Amiga Washington, if Amiga Washington had exercised, rather than abandoned, its option to buy the OS 4.0.

27

**ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER** - 7
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Hyperion's argument on the injunction motion that Itec was an assignee of the 2001

Agreement, and that it did not acquire and could not sell the OS 4.0, came as a complete surprise

to Itec. Grzymala Dec. at ¶ 27. Not only is the Itec/Hyperion Contract devoid of any prohibition

regarding what Itec could do with the OS 4.0, but Hyperion had actually assisted Itec in

arranging the sale of OS 4.0 to KMOS, *inter alia*, representing to KMOS in 2003 that there were

no liens or encumbrances on the product except as might be specifically stated in the 2001

Agreement (regarding third-party contractor rights). See Grzymala Dec. at ¶ 17, Ex. 3.

However, with Hyperion taking the position that the transfer to KMOS was ineffective (while

curiously enough retaining the $25,000 payment it acknowledged that it had received from Itec

in 2003), that would necessarily mean that title to the OS 4.0 reverted to Itec -- which was under

a contractual obligation to transfer same to KMOS. Accordingly, on June 20, 2007, Itec wrote

Hyperion warning that if it was not delivered to Itec in New York by June 26, 2007, Itec would

have to take steps to protect its legal rights. Grzymala Dec. ¶21.

Hyperion's response was to file its motion in this Court on June 26, 2007 to join Itec as

an additional Counterclaim Defendant on what is essentially a declaratory judgment claim that

the Itec/Hyperion Contract should be declared void. Grzymala Dec. at ¶ 22. And Hyperion has

since told the New York State Court in response to Itec's breach of contract action, commenced

on July 6, 2007, that because Hyperion "filed first", the New York action should be stayed in

favor of this action. Grzymala Dec. at ¶ 29.

<u>Hyperion's Jurisdictional Allegations</u>

Hyperion's jurisdictional allegations are hinged on its erroneous argument that Itec is

claiming rights under the 2001 Agreement rather than under the Itec/Hyperion Contract. Thus,

Hyperion pleads in regard to how Itec can be subject to suit in this forum by stating that:

**ITEC'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO**
**DISMISS OR TRANSFER** - 8
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1

2

3

> Venue is proper in this district because Defendant Hyperion VOF stipulated to jurisdiction and venue in this district in [the 2001 Agreement] with Amiga, Inc., a Washington corporation . . . and Eyetech Group Ltd. Plaintiff Amiga Inc., a Delaware corporation . . . and Counterclaim-Defendant Itec, LLC . . . each asserts that it succeeded to the rights of Amiga Washington under that agreement.

4

Amended Counterclaims at ¶3.

5

6

      But because Itec claims no such thing, Hyperion's jurisdictional premise is simply wrong

7

from the start.

8

      Hyperion knows this.  In fact, the substantive portions of pleadings here and elsewhere

9

negate its jurisdictional averment.  For example, in Paragraph 13 of its Amended Counterclaims,

10

Hyperion abandons its contention that Itec is asserting that it "succeeded to the rights of Amiga

11

Washington" under the 2001 Agreement and avers that the Itec/Hyperion Contract only

12

"purported to relate to Amiga Washington's rights under the [2001] Agreement."  Even this

13

statement is incorrect  --  once again, the Itec/Hyperion Contract does no such thing  --  but even

14

if the statement were correct, entering into a contract that "relates to," but is not, a contract to be

15

performed within this state is hardly a recognized predicate for *in personam* jurisdiction.

16

17

      Similarly, Hyperion has asserted in the New York proceedings that the Itec/Hyperion

18

Contract "expressly incorporates" the 2001 Agreement.  Affidavit of Evert Carton in Support of

19

Defendant Hyperion's Motion to Dismiss or Stay [New York Action] at ¶ 19.  But "document

20

*ipsa loquitur*."  The Itec/Hyperion Contract says no such thing, and as Hyperion also knows, the

21

distinction is not just semantic but legally critical—absent such express language, Hyperion

22

cannot make Itec subject to the choice of forum provision in Hyperion's 2001 Agreement with

23

Amiga Washington to which Itec is not a signatory.

24

25

      On its motion to join Itec, Hyperion also asserted:

26

27

> Amiga Delaware has claimed the benefits and obligations of this Agreement §7.08 therein by virtue of its alleged status as a successor in interest to Amiga Washington. (Complaint, ¶4.)  Since Amiga Delaware's status as successor in interest depends on the

**ITEC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR TRANSFER** - 9
Case No. CV07-0631RSM

CABLE, LANGENBACH, KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

> validity of the alleged transfer between Itec, LLC and it, Itec must also be bound by November 2001 Agreement's jurisdictional and forum provisions.

Hyperion's Motion to Join Itec, LLC as a Counterclaim Defendant at p. 4.

Once again, this simply is not correct. Amiga's rights under the 2001 Agreement arose by reason of is acquisition in December 2004 of all of Amiga Washington's assets—including its contracts—and not from the October 2003 limited transfer agreement between KMOS and Itec that dealt only with the OS 4.0. Grzymala Dec. at ¶ 18.

But perhaps most puzzling, Hyperion claims that the attempted assignment of Amiga Washington's rights to Itec via the Itec/Hyperion Contract was void and unenforceable. Amended Counterclaims at ¶¶14-22). However, if Hyperion prevails on that issue at trial, or at a pre-trial evidentiary hearing on the jurisdictional issue, Hyperion will have proven that there was no basis for its assertion that jurisdiction exists over Itec, and the Amended Counterclaims would have to be dismissed on that basis.

Pleading in the alternative only goes so far. At some point, Hyperion must either say that Itec in fact succeeded to the rights of Amiga Washington under the 2001 Agreement and for that reason is subject to jurisdiction here, or that Itec did not succeed to the rights of Amiga Washington under the 2001 Agreement, in which case it cannot be sued here based on the forum selection clause in that Agreement. While the latter formulation is in fact the correct one -- Itec will stipulate that it was not an assignee of the 2001 Agreement or any rights thereunder if it would resolve this issue -- Hyperion cannot continue have it both ways. It cannot ask this Court to charter a jurisdictional inquiry based on a claim of Itec's succeeding to Amiga Washington's rights and obligations under the 2001 Agreement unless Hyperion is prepared to say, if asked, that it takes the position that Itec in fact succeeded to Amiga Washington's rights and obligations thereunder. And Hyperion is understandably unwilling -- and unable -- to do so.

**ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER** - 10
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    Thus, Hyperion has alleged no factual -- or even fanciful -- basis for jurisdiction over

2  Itec here.

3    Finally, if Hyperion really believes that it cannot litigate this matter without both Itec and

4  Amiga being present it is wrong, but its remedy is simple.  Having been sued in New York State

5  Court by Itec, all that Hyperion need do is to implead Amiga, which has an office and is subject

6  to jurisdiction in New York.  But the one thing that Hyperion should not be permitted to do is

7  force Itec to travel 3,000 miles to litigate on Hyperion's claims for declaratory relief in a forum

8  in which Itec is not present and in connection with claims that have nothing to do with

9  Washington just because Amiga and Hyperion have gotten into a dispute here.

10

11                    **III.  ARGUMENT**

12    The legal principles applicable on these facts are also simple and not subject to legitimate

13  dispute.

14              Standards on a Jurisdictional Motion

15

16    1.    Plaintiff has the burden of pleading and, where challenged, proving jurisdiction.

17  Scott v. Breeland, 792 F. 2d 925, 927 (9th Cir. 1986).

18    2.    As in any pleading context, plaintiff must meet its burden by alleging facts, not

19  naked conclusions.  Scott v. Breeland, 792 F. 2d at 929; Amba Marketing Systems, Inc. v. Jobar

20  International, 551 F. 2d 784, 787 (9th Cir. 1977).

21    3.     Where a party characterizes a document on a Rule 12 motion, the court is not

22  bound by that characterization.  It will read the document itself and determine its legal meaning

23  and, if clear, reject any contrary assertion by a party as to the intent or meaning of the document.

24  Steckman v. Hart Brewing, 143 F.3d 1293, 1295-96 (9th Cir. 1998); Polar Int'l Brokerage Corp.

25  v. Reeve, 108 F. Supp. 2d 225, 241 (S.D.N.Y. 2000) ("At the motion to dismiss stage, a court

26  must accept as true the well-pleaded allegations of the Complaint. However, the court need not

27

ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER - 11
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    adopt plaintiffs' subjective characterizations of documents properly before it.")

2         4.    Under the Washington long arm statute (Wash. Rev. Code § 4.28.185),

3    jurisdiction over non-residents lies only where the defendant does an act in or affecting

4    Washington enumerated in that section, and the cause of action arises from the doing of the

5    enumerated act.  Wash. Rev. Code § 4.28.185(1) & (3).  The Washington long arm statute goes

6    to the full limits of the Constitution and thus only a "due process" analysis is required as to

7    whether jurisdiction exists.  Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnanain Co., 284

8    F. 3d 1114, 1126 (9th Cir. 2002); Childers v. Sagem Morpho, Inc. 2006 U.S. Dist. LEXIS 88425,

9    *7 (W.D. Wash. 2006) (Martinez, J.).

10

11                        Hyperion's Jurisdictional Averments

12         5.    Hyperion does not claim that Itec is "doing business" in the State of Washington

13   such as to give rise to "general jurisdiction" over it, which would permit a plaintiff to sue it here

14   on any claim, even one unrelated to its in-state activities.  Perkins v. Benguet Mining Co., 342

15   U.S. 437, 445 (1952); Tuazon v. R.J. Reynolds Tobacco Co., 433 F. 3d 1163, 1169 (9th Cir. 2006).

16        6.    Hyperion's sole jurisdictional averment  --  that Itec has claimed rights under the

17   2001 Agreement and thus is subject to "specific" jurisdiction here  --  is a mere conclusion.  It is

18   not supported by any facts as to when, where and how Itec has supposedly done so, and is thus

19   insufficient on its face to support a claim of jurisdiction.  Schwarzenegger v. Fred Martin Mtor

20   Co., 374 F. 3d 797, 802 (9th Cir. 2004); Childers v. Sagem, 2006 U.S. Dist. LEXIS 88425 at *9-

21   10.

22        7.    In any event, Itec's declaration in support of the instant motion establishes that it

23   never claimed rights under the 2001 Agreement, nor is it doing so now.  The burden thus shifts to

24   Hyperion to controvert that declaration with competent evidentiary material.  Miracle v. N.Y.P.

25   Holdings, Inc., 87 F. Supp. 2d 1060, 1063 (D. Hawaii 2000), citing Ziegler v. Indian River

**ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER** - 12
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

County, 64 F. 3d 470, 473 (9th Cir. 1995).

8.    Hyperion's argument that by its 2003 contract with Hyperion, Itec became an assignee of the 2001 Agreement between Amiga Washington and Hyperion, is both unsupported and unsupportable.  The Itec/Hyperion Contract contains no words of assignment.  It is not signed by Amiga Washington (the putative assignor), nor is there any separate agreement alleged to have been signed by Amiga Washington that would acknowledge or evidence such an assignment.  The Itec/Hyperion Contract on its face is a standalone contract for the sale of the OS 4.0.  Where a written contract is clear on its face, the construction and legal effect of the document is a question of law for the court.  Wm. Dickson Co. v. Pierce County, 128 Wash. App. 488, 493, 116 P2d 409 (2005); Paradise Orchards Gen. Partners v. Fearing, 122 Wash. App. 507, 517, 94 P3d 372 (2004).

9.    Moreover, Hyperion resisted Amiga's motion for a preliminary injunction by asserting that any attempted assignment of the 2001 Agreement to Itec would be void.  Memorandum in Opposition to Motion for Preliminary Injunction at p. 17.  In accepting Hyperion's argument and denying the motion, the Court stated:

> Nowhere in the record is there a document demonstrating the initial transfer or assignment of rights from Amiga Washington to Itec . . . .
>
> As set forth above, Section 7.12 of the [2001] Agreement provides that '[n]either party shall assign or subcontract the whole or any part of this agreement without the other party's written consent.'  Hyperion contends that Amiga Delaware and its predecessor, Amiga Washington, did not comply with this requirement.  Nowhere in the record is there a copy of written consent, signed by the parties to the 2001 Agreement to the transfer of rights under the agreement from Amiga Washington to Itec. . . .

Order Denying Preliminary Injunction at pp. 6-7.

10.    Having sought and attained judicial relief based on the argument that any attempted assignment of the 2001 Agreement was legally ineffective, Hyperion is judicially estopped from arguing now that there was such an assignment.  See Russel v. Rolfs, 893 F. 2d

ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER - 13
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1033, 1038-39 (9th Cir. 1990).

11.    Nor can Hyperion argue the terms of the 2001 Agreement were "incorporated" into the Itec/Hyperion Contract.  Whether a forum selection clause applies is a matter of ordinary contract law.  Holland America Line, Inc. v. Wartsila North America, Inc., 485 F.3d 450, 458 (9th Cir. 2007); Comerica Bank v. Whitehall Specialties, Inc., 352 F.Supp.2d 1077, 1081 (C.D. Cal., 2004).  Under Washington choice of law principles, it is a New York law question as to whether the Itec/Hyperion Contract, which was partly made and was to be performed in New York, and which does not itself have any nexus to Washington, incorporated by reference in the 2001 Agreement.  Mulcahy v. Farmers Ins. Co., 152 Wn.2d 92, 100 (2004) ("The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties") quoting Restatement (Second) of Conflict of Laws § 188 (1971).

12.    Under New York law, for one contractual document to be incorporated by reference into another, there must be a clear manifestation that the parties assented and intended to be bound by the terms of the incorporated instrument.  PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1995).  Merely referencing the former document in the latter is insufficient as a matter of law to do this.  Federated Mutual Insurance Co. v. Woodstock '99 LLC, 140 F.Supp.2d 229, 228-29 (N.D.N.Y. 2001);  CooperVision Inc. v. Intek Integration Technologies, 7 Misc. 3d 592; 794 N.Y.S.2d 812 (Sup. Ct. Monroe Co. 2005).  See generally, Golden v. Belden, 754 F.2d 1059, (2d Cir. 1985) ("limited quotation does not constitute incorporation by reference")  (federal law).

13.    The Court need not reach the issue of whether there is any incorporation by reference here, however, because even assuming that there were, it would be a most limited one. Where incorporated matter is referred to for a specific purpose only, it becomes a part of the

ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER - 14
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1  contract for that purpose only.  Lodges 743 and 746 International Ass'n of Machinists v. United

2  Aircraft Corp., 534 F.2d 422, 441 (2d Cir 1975); CooperVision, 7 Misc.3d 592, 794 N.Y.S.2d at

3  819.  Bachman Emmerich & Co. Inc. v. S.A. Wenger & Co. Inc., 204 A.D. 282, 197 N.Y.S. 879

4  (1st Dep't 1923).

5          14.    As relevant, the Itec/Hyperion Contract provides:  "Hyperion shall transfer the OS

6  4.0 to Itec in accordance with the 2001 Agreement."  Grzymala Dec. ¶ 9, Ex. A.  Thus, the 2001

7  Agreement was, at most, incorporated only as to Hyperion, and only for purposes of governing

8  the terms on which Hyperion transferred the OS 4.0 to Itec.  The "incorporation" did not purport

9  to apply to Itec, and it did not bind either Itec or Hyperion to the "legal" terms of the 2001

10  Agreement  --  the choice of forum or choice of law provisions  --  as distinct from the

11  commercial terms of that Agreement.  U.S. Steel Corp. v. Turner Construction Corp., 560

12  F.Supp. 871, 873-74 (S.D.N.Y. 1983).  See also Bachman Emmerich, 204 A.D. 282, 197 N.Y.S.

13  879; CooperVision, 7 Misc.3d 592, 794 N.Y.S.2d at 819.

14

15          15.    This is a conclusion born of necessity.  There are innumerable provisions in the

16  2001 Agreement which, if engrafted into the Itec/Hyperion Contract, would lead to absurd and

17  clearly undesired results.  For example, how could Itec, which owned no rights in the Amiga

18  trademark, purport to license the trademark rights that Amiga Washington was licensing to

19  Amiga One Partners (a stranger to this transaction) under the 2001 Agreement?  See Declaration

20  of Evert Carton In Opposition to Amiga Delaware's Motion for Preliminary Injunction, Ex. 2.

21  Or, if Paragraph 2.07 of the 2001 Agreement (providing that if Amiga Washington became

22  insolvent Hyperion would receive a perpetual license on the OS 4.0) were read into the

23  Itec/Hyperion Contract, would it mean the parties intended that although Itec had already paid

24  the $25,000 purchase price for the OS 4.0, if someday in the future it became insolvent, then

25  Hyperion would receive such a license?  Moreover, even Hyperion admits that the choice of

26

27

ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER - 15
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1   forum provision was included in the 2001 Agreement for the personal convenience of Amiga

2   Washington.  Hyperion's Memorandum of Law in Support of Motion to Dismiss or Stay [New

3   York Action] at p.4.  Why, then, would Itec, a New York company with no contact with

4   Washington, consent to exclusive jurisdiction there in connection with its own separate contract

5   with Hyperion?  A contract should never be construed so as to produce an absurd result.  Boag v.

6   Farmers Ins. Co., 117 Wn. App. 116, 124 (2003), citing Morgan v. Prudential Ins. Co. of Am.,

7   86 Wn.2d 432, 434-5 (1976).

8

9         16.     This is also a conclusion born of sound policy considerations.  Hyperion is

10  invoking the incorporation by reference doctrine in an effort to deprive Itec of its Constitutional

11  right not to be sued in a forum within which it has no connection.  As such, "incorporation" in

12  this context is a term of art and strictly construed.  Where a plaintiff asserts that defendant has

13  "incorporated" a forum selection or other dispute resolution provision contained in another

14  contract to which defendant is not a party, plaintiff must point to specific and explicit language

15  of incorporation.  General Silk Importing Co. Inc. v. Gerseta Corp., 198 A.D.16, 189 N.Y.S. 391

16  (1st Dep't 1921) (contract providing that sales were governed by rules adopted by Silk

17  Association of America did not incorporate arbitration provisions of those rules because the

18  reference to the rules did not include the arbitration provisions thereof; as such, that rules only

19  governed parties' performance of contract, not resolution of disputes); CooperVision, 7 Misc.3d

20  592, 794 N.Y.S.2d 812 (forum selection clause in software licensing agreement was not

21  incorporated by reference into the implementation agreement governing services to be provided

22  by licensor absent an express provision making it applicable to the implementation agreement,

23  even though that document referred to the license agreement as part of the "entire agreement of

24  the parties");  CG Trading Corp. v. Sun-Fast Textiles Inc., 24 Misc.2d 77, 201 N.Y.S.2d 883,

25  885 (Sup. Ct. N.Y. Co. 1960) (mere reference to set of rules insufficient to incorporate

ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER - 16
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

arbitration obligation).  See generally, Grundstad v. Ritt, 106 F3d 201, 205 (7th Cir. 1997)

(guarantor of "all" the provisions of a written contract did not express intent to be bound by

arbitration clause in the underlying agreement because guarantee lacked express incorporation

language), 23 Carmody-Wait 2d, New York Practice With Forms § 141:15 (2004) ("Unless there

is additional evidence showing an intent to adopt an arbitration clause contained in another

contract, a general incorporation by reference of such other contract without specific mention of

the arbitration clause, is not sufficiently clear to obligate the parties to arbitrate.")  There is no

such language here, so, even if, *arguendo*, the 2001 Agreement governed the parties'

performance under the Itec/Hyperion Contract, it did not bind Itec to litigate disputes thereunder

in accordance with the choice of forum provision in the 2001 Agreement.

17.     Absent an ability by Hyperion to rely on the forum selection clause in the 2001

Agreement, its assertion of jurisdiction over Itec in this forum on the claims set forth in the

Amended Counterclaims would, if allowed, violate the Due Process Clause of the United States

Constitution.  Those claims all arise from the Itec/Hyperion Contract  --  a contract between a

Belgian seller and a New York buyer made to be performed in Belgium and/or New York.

Because Hyperion is asserting only specific jurisdiction over Itec, Hyperion must show that its

claim arises from the in-state activities of Itec.  RCWA 4.28.185 (1) & (3);  Holland America,

485 F.3d at 460 ("Unlike general jurisdiction, specific jurisdiction is tethered to a relationship

between the forum and the claim"); Kransco Manufacturing Inc. v. Markwitz, 656 F.2d 1376 (9th

Cir. 1981) (dismissing on due process grounds where claim did not arise out of or result from

defendant's forum related activities.)  Hyperion cannot assert jurisdiction over Itec by

referencing Hyperion's own in-state activities or those of Amiga.  Burger King, Corp. V.

Rudzewicz, 471 U.S. 462, 474-475 (1985); Petrik v. Public Service Mutual Insurance Co., 879 F.

2d 682, 684 (9th Cir. 1989).  Because the Itec/Hyperion Contract has no nexus to this state,

**ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER** - 17
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1  jurisdiction over Itec's person for claims arising out of that Contract is thus lacking.  Holland

2  America, 485 F. 3d at 460-1; Petrik, 879 F.2d at 684-85; FDIC v. British-American Insurance

3  Co., 828 F. 2d 1439, 1443-4 (9th Cir. 1987).

4      18.    To the extent that Hyperion tries to allege any other nexus between its claims

5  against Itec and this forum, this effort also fails.  Thus, Hyperion claims in "Cause Three" of the

6  Amended Counterclaims that "the Itec/Hyperion contract, and the Itec/KMOS contract were

7  merely part of an elaborate scheme to hinder, delay or defraud the creditors of Amiga

8  Washington."  Amended Counterclaim ¶24.  But Cause Three is plainly not sufficiently pled.

9  Rule 9(b) of the Federal Rules of Civil Procedure requires that all claims sounding in fraud must

10  be pled with particularity.  Here, however, Hyperion has made a naked, conclusory claim of

11  fraud, which is entirely insufficient under Rule 9(b).  Accordingly, this claim should be

12  dismissed.  Vess v. Ciba-Geigy Corp. USA, 317 F. 3d 1097, 1106 (9th Cir. 2003) (Rule 9(b)

13  requires the plaintiff to specify the "who, what, when, where and how of the misconduct

14  charged").

15      19.    Moreover, attempting to assert jurisdiction over an out-of-state defendant by

16  saying that it schemed or conspired with an in-state defendant is a highly disfavored practice.  To

17  be sustained, such allegations must be coupled with a strong factual showing, even on a motion

18  to dismiss pursuant to R. 12(b)(2).  Again, Hyperion's conclusory allegations do not approach,

19  must less meet, this strict standard.  Underwager v. Channel 9 Australia, 69 F. 3d 361, 364 (9th

20  Cir. 1995) (holding that a bare allegation of conspiracy between defendants and a person with

21  personal jurisdiction is not sufficient to establish personal jurisdiction).

22      20.    Hyperion's Cause Six, a Lanham Act claim directed at Itec, is legally deficient for

23  the reasons set forth in Amiga's Motion for Judgment on the Pleadings, which arguments are

24  expressly incorporated by reference herein.  In addition, Hyperion alleges that "Itec's potential

**ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER** - 18
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1  future use of the Amiga trademarks violates Hyperion's explicit contractual rights under the

2  [2001] Agreement." However, Itec is a venture capital company that has never used, and has no

3  intention to use, any Amiga trademarks in commerce. If a claim could be stated by a naked

4  assertion that an adverse party might, in the future, undertake to violate a plaintiff's rights, the

5  whole concept of limiting federal jurisdiction to "real cases and controversies" would go out the

6  window. <u>United States v. Aukai</u>, 2007 U.S. App. LEXIS 18995, *14-16 n. 6 (9th Cir. 2007);

7  <u>Covedell v. Department of Social and Health Services</u>, 834 F. 2d 758, 766 (9th Cir. 1987).

8  Finally, given that Itec does no business in Washington, even if a Lanham Act claim were stated,

9  the claim would have no nexus with this forum, and no predicate for personal jurisdiction over

10  Itec here. <u>Holland America</u>, 485 F. 3d at 460-1; <u>Kransco Manufacturing</u>, 656 F. 2d 1376.

11  21.    Accordingly, the Amended Counterclaims should be dismissed as to Itec.

Alternative Grounds for Transfer

22.    Pursuant to 28 U.S.C. §§ 1404 and 1406, the Court has the power to transfer an

action where it is brought in an inconvenient or improper forum.

23.    Even assuming that jurisdiction and venue existed here in respect of Itec, it would

be a proper exercise of the Court's discretion to: (a) sever the Counterclaims against Amiga and

Itec from the principal suit; and (b) transfer same to the United States District Court for the

Southern District of New York. 7 Charles A. Wright and Arthur R. Miller, <u>Federal Practice &

Procedure</u> § 1689, p. 2 (1986) (2007 update) ("Even when venue is proper as to all defendants,

the court may sever a claim against a party and transfer it to a more convenient forum.")

24.    The fact that Amiga may be subject to a jurisdictional choice of forum provision

is not a bar to transfer. <u>See Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 31-32 (1988)

(whether jurisdiction or venue exist are matters of law; the Court can disregard a forum selection

clause where necessary to achieve other significant purposes); <u>Red Bull Associates v. Best</u>

**ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER** - 19
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1   Western International, Inc., 862 F. 2d 963, 966 (2nd Cir. 1988).  In any event, Hyperion has

2   asserted that the clause was included in the Agreement for the benefit of Amiga Washington,

3   (see Hyperion's Memorandum of Law in Support of Motion to Dismiss or Stay [New York

4   Action] at p. 4) and not for the convenience of Hyperion, so Hyperion has no basis to raise it as a

5   defense to a transfer.

6           25.     Further, Hyperion's claims against Itec are primarily for declaratory relief.  When

7   a court has to choose the forum in which a contract dispute should be resolved, the forum in

8   which a party alleges a breach of contract and seeks damages will usually be preferred to the

9   forum in which declaratory relief is sought, and that is true even if the party seeking declaratory

10  relief has "won the race to the courthouse."  See 10B Charles A. Wright and Arthur R. Miller,

11  Federal Practice & Procedure § 2758, p. 2 n. 9 (1986) (2007 update), citing First Nationwide

12  Mortgage Corp. v. Fisi Madison, LLC, 219 F. Supp. 2d 669 (D. Md. 2002) (dismissing an action

13  filed in Maryland district court seeking a declaration that a contract had been breached because

14  Tennessee court, where a breach of contract claim was pending, was a more proper forum to

15  resolve the dispute even though the Maryland action was filed first).

16          26.     Moreover, Hyperion started that race only after it received Itec's June 20, 2007

17  letter which suggested that if Hyperion did not perform the Itec/Hyperion Contract, Itec would

18  bring suit in New York.  Winning a race to the courthouse in that circumstance reflects clear

19  forum shopping and a court will not honor the "first filed" rule in such circumstances.  Ven-Fuel,

20  Inc. v. Department of Treasury, 673 F. 2d 1194, 1195 (11th Cir. 1982) (dismissing suit for

21  declaratory judgment that was filed immediately after the plaintiff received a letter threatening

22  that defendant would file a suit in a different forum); see also Briarwood Shoe Corp. v. Sears,

23  Roebuck & Co., 479 F. Supp. 563, 568 (S.D.N.Y. 1979).

24          27.     If the Counterclaims are so transferred, Itec understands that Amiga will withdraw

ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER - 20
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

its affirmative claims for breach of contract in this Court and join them in the New York

litigation, such that any risk of double liability that Hyperion may assert will be obviated, and

neither this Court nor the New York court will have to deal with a jurisdictional or venue-type

motion.  In such circumstances, transfer is preferred.  See 15 Charles A. Wright and Arthur R.

Miller, Federal Practice & Procedure § 3842, p. 4 (1986) (2007 update), citing Kahhan v. City of

Fort Lauderdale, 566 F. Supp. 736, 740 (E.D. Pa. 1983) ("Substantial time, money and effort will

be required to determine these preliminary jurisdictional issues which are rendered unnecessary

if the action is transferred to the Southern District of Florida, which has *in personam* jurisdiction

over the defendant and is a forum where the action might have been brought. A transfer,

obviating a jurisdictional difficulty, has been found to serve the interests of justice within the

meaning of that language in § 1404(a).") (internal quotations omitted).

## IV.  CONCLUSION

For the foregoing reasons, Itec's motion to dismiss or transfer should be granted.


DATED this 8th day of November, 2007.


/s/
Lawrence R. Cock, WSBA No. 20326
CABLE, LANGENBACH, KINERK & BAUER, LLP
Suite 3500, 1000 Second Avenue Building
Seattle, Washington 98104-1048
(206) 292-8800 phone
(206) 292-0494 facsimile
lrc@cablelang.com


/s/
Lance Gotthoffer (Pro Hac Vice), NYBA No. 1088186
Jeffrey M. Tamarin (Pro Hac Vice), NYBA No. 1935071
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone:  212.521.5400
Facsimile:  212.521.5450
lgotthoffer@reedsmith.com
jtamarin@reedsmith.com

ITEC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER - 21
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1

2          _/s/_____

3          Alison Riddell (Pro Hac Vice), CBA No. 246142
           REED SMITH LLP
           Two Embarcadero Center, Suite 2000
4          San Francisco, CA  94111-3922
           P.O. Box 7936
           San Francisco, CA  94120-7936
5          Telephone:  415.543.8700
           Facsimile:  415.391.8269
6          ariddell@reedsmith.com

7          ***Attorneys for Counterclaim Defendant ITEC, LLC***

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on November 8, 2007, I electronically filed the foregoing with the

4

5   Clerk of the Court using the CM/ECF system which will send notification of such filing to the

6   following:

7        William A. Kinsel

8        Law Offices of William A. Kinsel, PLLC
         Market Place Tower

9        2025 First Avenue, Suite 440
         Seattle, WA  98121

10

11       A copy was also served by hand delivery on November 8, 2007.

12

13                                    /s/

14                                    Lawrence R. Cock, WSBA No. 20326
                                      *Attorneys for Counterclaim Defendant ITEC, LLC*

15                                    CABLE, LANGENBACH, KINERK & BAUER, LLP
                                      Suite 3500, 1000 Second Avenue Building

16                                    Seattle, Washington 98104-1048
                                      (206) 292-8800 phone

17                                    (206) 292-0494 facsimile
                                      lrc@cablelang.com

18

19

20

21

22

23

24

25

26

27

**ITEC'S MEMORANDUM OF LAW**                          CABLE, LANGENBACH,
**IN SUPPORT OF MOTION TO**                           KINERK & BAUER, LLP
**DISMISS OR TRANSFER** - 23                          SUITE 3500
Case No. CV07-0631RSM                                 1000 SECOND AVENUE BUILDING
                                                      SEATTLE, WASHINGTON 98104-1048
                                                      (206) 292-8800