UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMIGA, INC., a Delaware corporation, | |
| Plaintiff, | CAUSE NO. CV07-0631RSM |
| and | DECLARATION OF JOHN GRZYMALA IN SUPPORT OF ITEC'S MOTION TO DISMISS OR TRANSFER |
| HYPERION VOF, a Belgium corporation, | |
| Defendant. | |

I, JOHN GRZYMALA, declare:

1. I am Secretary of Defendant, Itec, LLC, ("Itec") and am fully familiar with the facts stated herein, which are based on my personal knowledge as well as documents, including Itec business records. I submit this declaration to set forth underlying facts in support of Itec's Motion to Dismiss Hyperion's Amended Counterclaims or, in the Alternative, to Transfer the Action to the United States District Court for the Southern District of New York.

DECLARATION OF JOHN GRZYMALA IN SUPPORT OF
ITEC'S MOTION TO DISMISS OR TRANSFER - 1

Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE
BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

### Itec

2. Itec is a New York limited liability company, which at all relevant times had its principal place of business, an office located at 102 Prince Street, in the City, County and State of New York. Itec is still located there.

3. Itec is engaged primarily in venture financing. It does not do business in the State of Washington and has no office or place of business in the State of Washington or, in fact, anywhere other than in the City, County and State of New York.

4. Itec is not and never has been an affiliate of the Washington state corporation formerly called Amiga, Inc. (which is not a party to this action), and while it has a substantial equity interest in Amiga, Inc., f/k/a KMOS, Inc., the plaintiff in this action, it is a minority interest only.

### The Genesis of Itec's Agreement with Hyperion V.O.F. ("Hyperion")

5. Itec's involvement with Hyperion was limited in duration, specific in purpose, and focused entirely on a straightforward agreement requiring performance by Hyperion in New York.

6. In April 2003, Hyperion communicated with Itec concerning a corporation then called Amiga, Inc. ("Amiga Washington") and a 2001 Agreement that Hyperion then had with Amiga Washington and other parties (the "2001 Amiga Washington/Hyperion Agreement"). Itec had previously loaned money to Amiga Washington in connection with a contemplated acquisition of Amiga Washington's assets and was familiar with Amiga Washington. However, Itec was not and never has been a party to the 2001 Amiga Washington/Hyperion Agreement.

7. The 2001 Amiga Washington/Hyperion Agreement involved a variety of copyright and trademark licenses and distribution rights primarily in connection with Hyperion's

DECLARATION OF JOHN GRZYMALA IN SUPPORT OF
ITEC'S MOTION TO DISMISS OR TRANSFER - 2

Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

development of an incremental version of the AMIGA brand computer operating system software for Amiga Washington known as OS4.0 ("OS4.0"). Under the 2001 Amiga Washington/Hyperion Agreement, Amiga Washington had an option – but not an obligation – to buy the rights to OS4.0 any time within six months of its completion for $25,000.

8. As of that time, OS4.0 was not yet completed, but Hyperion, which claimed ownership in OS4.0, was in desperate financial straits and needed $25,000 immediately to stave off bankruptcy. Amiga Washington advised Itec that Amiga Washington was not interested in exercising its option to buy OS4.0 and would not object to Hyperion's selling OS4.0 to Itec. Furthermore, Itec knew that a failure to buy OS4.0 could result in the product going to a third party or having title to OS4.0 enmeshed in Belgian legal proceedings if Hyperion indeed went bankrupt.

9. On this basis, Itec concluded that it was advisable for it to buy OS4.0 while it considered whether or not to acquire Amiga Washington's assets. Accordingly, Itec entered into a separate, standalone purchase and sale agreement with Hyperion, pursuant to which Hyperion agreed that, for the receipt of $25,000 (which payment Itec made or caused to be made), it would transfer to Itec all of its interests in OS4.0. That agreement was memorialized in the written contract annexed hereto as Exhibit 1, which is also Exhibit F to Amiga Washington's Motion for Preliminary Injunction and Exhibit 16 to Hyperion's Opposition to Amiga Washington's Motion for Preliminary Injunction. Itec was not thereby taking assignment of the 2001 Amiga Washington/Hyperion Agreement, which for all practical purposes Itec assumed was abandoned by the parties thereto, and Itec claims no rights under that agreement.

10. The Itec/Hyperion Contract is the only operative agreement between Itec and Hyperion, and it forms the sole and exclusive basis for Itec's claims in this lawsuit.

DECLARATION OF JOHN GRZYMALA IN SUPPORT OF
ITEC'S MOTION TO DISMISS OR TRANSFER - 3

Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE
BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

### The Itec/Hyperion Contract Does Not Contain a Forum Selection Clause

11. Since Itec was located only in New York, the sole place contemplated or available under the Itec/Hyperion Contract for delivery of OS4.0 to Itec, was New York.

12. The Itec/Hyperion Contract does not contain any forum selection clause regarding in what jurisdiction or courts disputes or lawsuits arising out of the Itec/Hyperion Contract should be resolved.

13. Furthermore, the Itec/Hyperion Contract does not incorporate, expressly or impliedly, any mandatory Washington state forum selection provision from the 2001 Amiga Washington/Hyperion Agreement, nor was it the intention of Itec, a New York limited liability company with offices in New York to select courts in Washington state for mandatory adjudication of all disputes under it's April 24, 2004 Agreement with Hyperion. While the Itec/Hyperion Contract makes brief reference to the separate 2001 Amiga Washington/Hyperion Agreement that contains such a forum selection provision, it does not provide for Itec's assumption of Amiga Washington's rights or obligations thereunder, nor does it incorporate the terms of that Agreement into the Itec/Hyperion Contract.

### Itec Paid Hyperion for OS4.0

14. In 2003, Hyperion received at least $24,750 in payments relating to the OS4.0, at least $20,000 of which was paid by Itec directly, the rest by third parties on Itec's behalf and/or for Itec's benefit. That this amount was $250 less than the agreed upon payment amount for OS4.0 was a mathematical error, and both Itec and Hyperion evidenced their belief at that time that it constituted payment of the full agreed upon $25,000. Accordingly, the written

**DECLARATION OF JOHN GRZYMALA IN SUPPORT OF ITEC'S MOTION TO DISMISS OR TRANSFER - 4**

Case No. CV07-0631RSM
CABLE, LANGENBACH, KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Itec/Hyperion Contract, entered into after these payments were made, "confirms that for the receipt of $25,000 USD," Hyperion shall transfer the ownership of the Object Code, Source Code and intellectual property of OS 4.0 to Itec . . . ." See Ex. 1.

15.  Hyperion retained the payments made by or on behalf of Itec. At no time material to Hyperion's performance obligation did it ever advise or notify Itec that it was still owed $250 or that it would not perform its obligations unless and until it received an additional $250.

### Itec's Resale of OS4.0 to KMOS, Inc.

16.  In October 2003, with OS4.0 still incomplete and undelivered, Itec resold OS4.0 to a Delaware Corporation then known as KMOS, Inc., which later changed its name to "Amiga, Inc."[1]

17.  KMOS had determined that it was going to acquire the assets of Amiga Washington in a separate transaction between those two parties. With knowledge of that resale by Itec to KMOS and in aid of that transaction, Ben Hermans, then a principal of Hyperion and the individual who signed the Itec/Hyperion Contract, represented that there were no liens or encumbrances on OS4.0 except as might be specifically stated in the 2001 Amiga Washington/Hyperion Agreement (regarding third-party contractor rights). A copy of an email dated October 10, 2003, containing that representation by Ben Hermans, is annexed hereto as Exhibit 3.

---

[1] See Certificate of Amendment of Certificate of Incorporation attached hereto as Exhibit 2, which states that it was filed with the Delaware Secretary of State on January 26, 2005 and changed the name of KMOS, Inc. to Amiga, Inc.

**DECLARATION OF JOHN GRZYMALA IN SUPPORT OF ITEC'S MOTION TO DISMISS OR TRANSFER - 5**

Case No. CV07-0631RSM

CABLE, LANGENBACH, KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

### Hyperion Has Refused to Transfer the Completed OS4.0 to KMOS, Inc. (Now Known As Amiga, Inc.) and Contends That Itec's Sale to KMOS, Inc. Was Ineffective

18. I understand that in 2004 KMOS, Inc. entered into an agreement, which provided for its acquisition of all of Amiga Washington's remaining assets, and that in December 2006, Hyperion announced that OS4.0 was finally completed. However, it is my understanding that Hyperion refused to transfer OS4.0 to KMOS, which had changed its name to Amiga, Inc. in January 2005. However, Itec had no involvement in any of this.

19. In April 2007, Amiga, Inc., f/k/a KMOS, Inc., sued Hyperion in this Court, and on June 13, 2007 Hyperion filed counterclaims against Amiga, Inc.

20. That welter of claims and counterclaims back and forth involving trademark rights and other matters had nothing to do with Itec, which had sold OS4.0 to KMOS, Inc. in 2003, and which asserts no rights or claims to any of the Amiga-related trademarks. Itec was not a party to that suit and it is my understanding that Hyperion did not attempt to join Itec or assert any claims against Itec when it filed those initial counterclaims, although Hyperion did assert that Itec's conveyance of OS4.0 to KMOS, Inc. in 2004 was ineffective. See Answer and Counterclaims, p. 9: Hyperion's affirmative defenses at ¶ 25.

### To Protect its Rights, Itec Demanded That Hyperion Deliver OS4.0 to Itec

21. If Hyperion's contention in its Answer and Counterclaims were found to be right that Itec's transfer to KMOS was ineffective, that would necessarily mean that title to the OS4.0 had remained with or reverted to Itec – which was under a contractual obligation to transfer OS4.0 to KMOS. Accordingly, on June 20, 2007, I sent a letter to Hyperion by overnight delivery service warning that if OS4.0 was not delivered to Itec in New York by June 26, 2007, Itec would have to take steps to protect its legal rights. In addition, reserving its rights, Itec

DECLARATION OF JOHN GRZYMALA IN SUPPORT OF
ITEC'S MOTION TO DISMISS OR TRANSFER - 6

Case No. CV07-0631RSM

CABLE, LANGENBACH, KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

tendered another $25,000 to deflect any possible assertion Itec that it had not received full payment under the 2003 Itec/Hyperion Contract. A copy of my June 20, 2007 letter is annexed hereto as Exhibit 4.

### In Response to Itec's Demand for OS4.0, Hyperion Sued Itec in This Court

22. In direct response to Itec's letter demanding delivery of OS4.0 to Itec in New York, Hyperion immediately took steps to sue Itec in this Court. On June 26, 2007 Hyperion filed a motion to join Itec as a counter claim defendant on what is essentially a declaratory judgment claim that the Itec/Hyperion Contract should be declared void. Without Itec having an opportunity to respond to Hyperion's motion, this Court granted Hyperion's request and Hyperion filed its Amended Answer and Counter Claims adding Itec as a defendant on September 10, 2007.

23. But as shown above, there is simply no basis for Hyperion to sue Itec under the Itec/Hyperion Contract in this forum. The Contract has no connection with Washington, and there is no other basis for Hyperion to sue Itec in Washington since Itec is not a party, directly or by assignment, to the 2001 Agreement between Hyperion and Amiga Washington and Itec does not do any business in Washington and does not have any other contacts with the state.

### The Itec/Hyperion Contract Was Not an Assignment by Amiga Washington of the 2001 Agreement to Itec

24. Although Itec is not a party to the 2001 Agreement between Hyperion and Amiga Washington and has no contacts in the state, Amiga has complicated an otherwise straightforward case of no jurisdiction. In its motion for a preliminary injunction in April 2007, Amiga, which was not a party to the Itec/Hyperion Contract, asserted that the Itec/Hyperion

DECLARATION OF JOHN GRZYMALA IN SUPPORT OF
ITEC'S MOTION TO DISMISS OR TRANSFER - 7

Case No. CV07-0631RSM

CABLE, LANGENBACH, KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

contract constituted an acknowledgement of an assignment by Amiga Washington of the 2001 Agreement to Itec.

25. Amiga, which operated under the time constraints of preparing a motion for a preliminary injunction, was simply mistaken. Itec does <u>not</u> claim to be an assignee of the 2001 Agreement, and it does not assert any rights to the OS4.0 thereunder. As stated above, Itec had its own separate sales contract with Hyperion, and Hyperion alone, and that Contract is the basis of Itec's claim that it was the owner of the OS4.0 from April – October 2003.

26. Moreover, far from the 2001 Agreement's being "incorporated" into the Itec/Hyperion Contract, the only reference to that Agreement is in the context of prescribing <u>Hyperion's</u> delivery obligation. The Hyperion/Itec Contract provides only that Hyperion would deliver the OS4.0 at the same time and manner as it would have had to deliver it to Amiga Washington, if Amiga Washington had exercised, rather than abandoned, its option to buy the OS4.0.

27. Hyperion's argument on the injunction motion that Itec was an assignee of the 2001 Agreement, and that it did not acquire and could not sell the OS4.0, came as a complete surprise to Itec. Not only is the Itec/Hyperion Contract devoid of any prohibition regarding what Itec could do with the OS4.0, but Hyperion had actually assisted Itec in arranging the sale of OS4.0 to KMOS, *inter alia*, representing to KMOS in 2003, that there were no liens or encumbrances on the product except as might be specifically stated in the 2001 Agreement (regarding third-party contractor rights). <u>See</u> Ex. 3.

**DECLARATION OF JOHN GRZYMALA IN SUPPORT OF ITEC'S MOTION TO DISMISS OR TRANSFER - 8**

Case No. CV07-0631RSM

### Hyperion's Race to the Western District of Washington Should Not be Condoned

28. Hyperion's response to my June 20, 2007 letter demanding delivery of OS4.0 to Itec in New York was to race to this Court on June 26, 2007 and blindside Itec with a motion asking this Court to join Itec as an additional counterclaim defendant in the lawsuit between Amiga, Inc and Hyperion – essentially to drag Itec, a New York domiciliary, 3,000 miles away into the welter of claims and counterclaims between Hyperion and Amiga, Inc. that have nothing to do with Itec, in a forum with which Itec has no relationship.

29. Hyperion has since told the New York State Court in response to Itec's breach of contract action, commenced on July 6, 2007, that because Hyperion "filed first," the New York action should be stayed in favor of this action.

30. A few days before the filing of these papers, Itec filed opposition papers to Hyperion's Motion to Dismiss the claims against it in a lawsuit filed by Itec in New York State Court for breach of contract of the Itec/Hyperion Contract.

31. If Hyperion were to succeed in having its New York action dismissed based on its purportedly pending counterclaims against Itec in the this case, and then also succeeded in having the entire underlying case dismissed for lack of personal jurisdiction in this Court (See Answer and Counterclaims, p. 8: Hyperion's affirmative defenses ¶¶ 15, 16), Itec would be without a forum for its claims.

### There is No Risk of Double Liability of Conflicting Determinations

33. There is also no risk of double liability or conflicting decisions if the instant action and New York Action proceed simultaneously. The simple fact is that if it is determined that Itec owns OS4.0, Itec will undertake to fulfill its obligations to Amiga, Inc. by transferring all of its rights in OS4.0 to Amiga, Inc. Itec also understands that if Itec is determined to be the owner of OS4.0, Amiga, Inc. will drop its claim in Washington seeking to compel Hyperion to deliver the OS4.0.

DECLARATION OF JOHN GRZYMALA IN SUPPORT OF
ITEC'S MOTION TO DISMISS OR TRANSFER - 9

Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE
BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

34. Thus, it is of no consequence that Amiga, Inc. and Itec both seek to compel Hyperion to deliver OS4.0, pursuant to separate agreements with Hyperion, since Itec and Hyperion agree that Amiga, Inc is the rightful owner.

35. Accordingly, Itec respectfully requests that its Motion to Dismiss the claims against it or, in the alternative, to transfer this case to New York.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: 11/8/07

_____
JOHN GRZYMALA

DECLARATION OF JOHN GRZYMALA IN SUPPORT OF
ITEC'S MOTION TO DISMISS OR TRANSFER - 10

Case No. CV07-0631RSM