1

HONORABLE RICARDO S. MARTINEZ

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

| | |
|---|---|
| AMIGA, INC., a Delaware corporation, | No. 07-0631-RSM |
| Plaintiff, | **HYPERION'S MEMORANDUM IN OPPOSITION TO ITEC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER** |
| v. | |
| HYPERION VOF, a Belgium corporation, | **Note on Motion Calendar: Friday, 11/30/07** |
| Defendant. | |
| HYPERION VOF, a Belgian General Partnership, | |
| Counterclaim Plaintiff, | |
| v. | |
| ITEC, LLC, a New York Limited Liability Company, | |
| Counterclaim Defendant. | |

10

11

12

13

14

15

16

17

18

19

20

21

## I.    INTRODUCTION

22

COMES NOW defendant Hyperion VOF and files this memorandum in opposition to

23

Itec, LLC's motion to dismiss or transfer.  As the court will recall, it granted Hyperion's

24

motion to add Itec to this suit.  (Dkt #65.)  The genesis of that motion was Amiga Delaware's

25

claim that it now owns Amiga Washington's rights under the 3 November 2001 Agreement (the

26

**HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER**                    - 1
 **Cause No:  07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

"Agreement") that was signed by Amiga Washington, Hyperion and Eyetech Group, Ltd.  A representative of Amiga Washington and Amiga Delaware testified that Amiga Delaware received those rights from Itec via an assignment, and that Itec likewise obtained them via an assignment from Amiga Washington.  (McEwen Reply Dec., Dkt. 35, ¶¶12 & 13.)  With the recent failure of Amiga Delaware's motion for a preliminary injunction, Itec launched a parallel lawsuit in New York state court hoping to obtain that which Amiga Delaware has been unable to do here, namely, the issuance of an order directing Hyperion to produce OS 4.0. [1]  The basic point of Hyperion's motion to join Itec in this litigation was simple:  All of the parties' competing claims should be resolved in one forum, both for purposes of avoiding potential inconsistencies in results and to avoid wasting the resources of both the judiciary and parties.

　　　　Having been added to this suit, Itec now asks the Court either to dismiss it from this suit, or to have the claims against it transferred to the United States District Court for the Southern District of New York, wherein a third lawsuit would potentially be commenced to join this litigation and the one filed in New York's state court.[2]  Because personal jurisdiction exists over Itec on four separate grounds,[3] and only one is needed to provide this Court with personal jurisdiction over all claims, Itec's motion should be denied.  Rosenberg v. Seattle Art Museum, 42 F.Supp.2d 1029, 1037-8 (USDC, WD WA 1999)(where jurisdiction lies over one claim, it is appropriate to assume jurisdiction over the other claims under principles analogous to the doctrine of pendent jurisdiction, if the interests of justice and the efficient use of the parties' and Court's resources are served).

---

[1] Hyperion's motion to join was filed before Itec commenced its litigation in New York.
[2] Hyperion's motion to dismiss or stay that New York state action is currently pending.
[3] The first three grounds are found at RCW 4.28.185(1)(a), (b) and (c), and constitute the transaction of business, the commission of a tortious act, and the ownership of personal property within Washington.  The fourth grounds is original jurisdiction under the Lanham Act.

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER          - 2
　Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

## II.    FACTS

### A.    AMIGA DELAWARE'S REPRESENTATIONS REGARDING ITEC'S CONTACTS WITH WASHINGTON

Because a claimant may no rely on the bare allegations of its claims, if those allegations are controverted, it is appropriate to point to evidence submitted by an adverse party, and by witnesses who represent or have represented both parties and non-parties to the litigation.  We begin with Amiga Delaware's complaint, which reads as follows at paragraph 3:

> Venue is proper in this District pursuant to 28 U.S.C. Sections 1391(b) and 1400(a) because <u>a substantial part of the events giving rise to the alleged claims in this action occurred in this judicial district</u> and, <u>by contract, the parties stipulated to jurisdiction and to venue in this judicial district</u>.

(Complaint, Dkt. #1, emphasis added.)  In paragraph 4 of that Complaint, Amiga Delaware alleges that it "is the successor in interest to all rights, title and interest in the contracts referenced herein between Amiga, Inc. formerly a Washington corporation ("Amiga Washington") and Hyperion VOF."  Id.

Mr. William McEwen was the President and CEO of Amiga Washington, and he is the Acting President of Amiga Delaware.  Mr. McEwen affirmatively stated that he had personal knowledge of, and was competent to testify regarding, all matters stated in his declarations. (McEwen Dec, Dkt. 4, ¶¶1,2 & 6; McEwen Reply Dec., Dkt. 35, ¶¶1-2.)  In his reply declaration (Dkt # 35), Mr. McEwen makes the position of his current and former companies absolutely clear:

> 12.    In April 2003, Amiga Washington assigned its rights under the [November 3, 2001] Agreement to Itec. . . .

> 13.    In October 2003, Itec then assigned its rights to the Object Code, Source Code and Intellectual Property to OS 4 under the [November 3, 2001] Agreement to KMOS, Inc.

**HYPERION'S MEMO OPPOSING ITEC'S MOTION TO DISMISS OR TRANSFER**   - 3
**Cause No:  07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

(McEwen Reply Dec., Dkt 35.)  Furthermore, during oral argument on Amiga Delaware's motion for preliminary injunction, counsel for Amiga Delaware confirmed his client's position that these assignments took place.  (Transcript, Dkt 37, p. 35, ll. 5 to 9 (Mr. Baker).)[4]  The logic of the situation is unavoidable:  Because Amiga Delaware stipulated to jurisdiction and venue in this District, it is both Amiga Delaware's and Mr. McEwen's position that Itec necessarily did the same thing.  (Complaint, Dkt 1, ¶3.)  That this was also Itec's position is seen in the language of the 24 April 2003 contract between it and Hyperion:

> Hyperion confirms that for the receipt of 25,000.00 USD, Hyperion shall transfer the ownership of the Object Code, Source Code and intellectual property of OS 4.0 to Itec in accordance with the provisions of the November 1 [sic], 2001 agreement between Amiga, Hyperion and Eyetech and to the extent it can do so under existing agreements with third party developers whose work shall be integrated in OS 4.0.

(Carton Dec., Dkt. 43, Ex. A, p. 5, underlined emphasis.)

It is certainly true that Hyperion has denied the effectiveness of these alleged assignments from Amiga Washington to Itec to Amiga Delaware.  This does not change the fact, however, that evidence was submitted to support the position that such assignments took place.  Further, to address the possibility that the Court or trier of fact might determine that the alleged assignments were partially or wholly effective, Hyperion has alleged facts and causes of action to address the same.  (*See, e.g.,* Hyperion's Counterclaims against Itec at Dkt 66, ¶¶31-33, 36-39, Cause #1, ¶40(d), (e) & (f), Cause #4, ¶¶58-63).)

Additional evidence of Itec's attempt to assume Amiga Washington's place in the 3 November 2001 Agreement, and thus be bound by its Washington choice of law and forum provisions, is found in a declaration filed by Mr. Garry Hare in an action pending before Judge Lasnik.  Again, Mr. Garry Hare was the President and CEO of KMOS/Amiga Delaware, of

---

[4] The reporter erroneously spelled "Eyetech" instead of "Itec" in this portion of the transcript.

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER          - 4 -
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

which Mr. Grzymala is an officer and director (Declaration of Evert Carton, ¶12, Ex. H, p. 31,

hereinafter "Carton Dec."), and it was Mr. Hare who controlled how Amiga

Washington/Amino spent money that supposedly was owned by Amino, not KMOS.  (Carton

Dec., ¶10, Ex. E, p. 27, ¶2.c.)  As Mr. Hare stated in his declaration dated March 12, 2004:

"On April 24, 2003, Itec . . . acquired all rights and ownership to Amiga [Washington's]

Operating System ("Amiga OS").  Itec's acquisition included Amiga OS source code,

including, but not limited to, the Classic Amiga OS, OS 3.1, OS 3.5, OS 3.9, OS 4.0 (not yet

commercially available) and all subsequent versions of this source code and associated

trademarks."  (Hare Dec, attached to Carton Dec. as Ex. I, pp. 39-41, at ¶2.)  Thus, it is clear

that Mr. Grzymala's fellow officer believed that Itec had acquired Amiga Washington's rights

under the November 3, 2001 Agreement.  (Grzymala Dec., Ex. 1, pp. 12-13; Carton Dec., ¶14.)

Next, Mr. Hare testifies that in an October 10, 2003 agreement between Itec and

KMOS, KMOS "acquired all of Itec's interest in Amiga's Amiga OS family of products," and

that as a part of that agreement "KMOS specifically agreed to honor the terms of [the]

November 3, 2001 [Agreement]."  (Carton Dec., Ex. I, p. 41, ¶¶4-5.)  In other words, and

contrary to Grzymala's contention at ¶6 of his declaration, Itec must have considered itself a

party to the 3 November 2001 Agreement, as KMOS subsequently believed that it was bound

by all of the requirements of that Agreement through its acquisition of the same from Itec.

(Carton Dec., ¶15.)

**B.    SUBSTANTIAL EVIDENCE EXISTS OF ITEC'S CONTINUING CONTACTS
WITH THE STATE OF WASHINGTON**

In any case where personal jurisdiction over a non-resident is based upon specific

jurisdiction, it is important to assess the contacts between the non-resident and the forum.  This

case is slightly different than the standard dispute of that sort, however, because of Itec's

**HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER**          - 5
 **Cause No:  07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

participation, as an alleged assignee, of the 3 November 2001 Agreement, which contains a mandatory forum selection clause.  Regardless, even without the provisions of the 3 November 2001 Agreement, Itec has engaged in significant activities within this state that gave rise to the current dispute, thereby making the assertion of personal jurisdiction over it appropriate.

For instance, Mr. Grzymala contends that Itec has done no business in Washington and that it has no other connection with Washington State.  (Grzymala Dec., ¶¶3, 23.)  In fact, a May 22, 2003 "Loan Facility Agreement" between Itec and Amiga Washington was recently produced in this litigation that proves Mr. Grzymala's contention to be false.  A true and accurate copy of that Loan Facility Agreement, as produced by Amiga Delaware, is attached as Ex. A to Mr. Carton's declaration at pp. 12-16.  In that contract Itec and Amiga Washington state that Itec had already loaned $75,750 to Amiga Washington (located at that company's office in Ravensdale, Washington), and that Itec would loan additional funds up to a total of US $175,000.  (Carton Dec., Ex. A, p. 12.)  In §20 of that contract, Itec and Amiga Washington agreed that the contract was "to be construed in accordance with the laws of the State of Washington, without regard to that state's choice of law rules," and that venue would lie in King County, Washington, in the event of any disputes between them under the contract.  (Id., Ex. A, p. 15.)  Then, §8 of that contract purports to grant Itec a security interest in Amiga Washington's assets, some if not all of which would necessarily be located in the State of Washington.  (Id., Ex. A, p. 13.)  A true and accurate copy of the Security Agreement, again recently produced by Amiga Delaware, is attached as Ex. B to Mr. Carton's declaration at pp. 17 to 20.  The Security Agreement is dated July 3, 2003, and at §11 it too contains a choice of law and venue provision similar to the Loan Facility Agreement in that it specifies Washington. Finally, attached as Ex. C to Mr. Carton's declaration is a true and accurate copy of a letter (once more recently produced by Amiga Delaware) dated May 12, 2004 from Pentti Kouri,

**HYPERION'S MEMO OPPOSING ITEC'S MOTION TO DISMISS OR TRANSFER**    - 6 -
 Cause No:  07-0631-RSM

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  Managing Member of Itec, to William McEwen, then President of Amiga Washington,

2  reflecting the fact that $267,159 was due and owing under the Loan Facility Agreement,

3  including $50,000 "loaned" on the very date of the letter, and that Itec was going to "foreclose"

4  if that entire $267,159 was not repaid within 10 days, or by May 22, 2004.  (Carton Dec., ¶7,

5  pp. 21-23.)

6          The Loan Facility Agreement, the Security Agreement, and the May 12, 2004 letter are

7  three pieces of evidence that support the conclusion that Washington State is the epicenter of

8  the relationships and transactions between Amiga Washington, Itec and Amiga Delaware, and

9  that one of the main aims of that relationship was to fraudulently convey the assets of Amiga

10  Washington away from Amiga Washington's creditors, including Hyperion.  For instance, less

11  than one month after signing the April 24, 2003 Contract with Hyperion, Itec entered into the

12  above-described Loan Facility Agreement with Amiga Washington to cover both past and

13  future loans.  That Loan Facility Agreement (Carton Dec., Ex. A) is signed by Pentti Kouri on

14  behalf of Itec, and he is the same person who signed the April 24, 2003 Contract on behalf of

15  Itec.  (*See* Grzymala Dec., Ex. 1, pp. 12-13.)  Note further that, based on Carton Dec., Ex. C, p.

16  23 (last entry), the final $50,000 "loan" to Amiga Washington went straight into the pocket of a

17  corporate insider, Mr. McEwen, rather than being used for the benefit of that company's third-

18  party creditors.  (Carton Dec., ¶8; Hermans Dec., ¶9.)

19          Mr. Kouri also signed the "Stock Purchase and Sale Agreement and Agreement of

20  Assignment of Intellectual Property Rights" dated October 7, 2003 (Carton Dec., Ex. D, pp. 24-

21  26) by which Itec purports to assign to KMOS/Amiga Delaware the rights to OS 4.0 (the

22  "Itec/KMOS Sale Agreement").  The assignment language appears at Id., Ex. D, p. 25, second

23  paragraph from the bottom and, obviously, in the contract's title.  It is particularly noteworthy

24  that Mr. Kouri signed the Itec/KMOS Sale Agreement on behalf of all three signatories:  Itec,

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER          - 7
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  Amiga Delaware and Monrepos, LLC, the shareholder of Amiga Delaware.  (Id., Ex. D, p. 25,

2  first "Whereas" paragraph re Monrepos' status.)  The suspect nature of this transaction is

3  highlighted by the fact that at the end of the transaction Itec ended up owning 6,999,000 of

4  KMOS' 7,000,000 outstanding shares.  (Id., Ex. D., p.25.)

5       By comparison, when reading Mr. Grzymala's declaration, one would think that he had

6  nothing to do with KMOS/Amiga Delaware.  (See, e.g., Grzymala Dec. at ¶18.)  The

7  documents Hyperion has obtained again disproves Mr. Grzymala's contention.  For instance,

8  KMOS/Amiga Delaware was involved in some litigation in the United States District Court for

9  the Southern District of New York, and Hyperion obtained copies of some of the documents

10  filed in conjunction with that suit.  One of the documents so filed is a copy of the December 10,

11  2004 corporate minutes for KMOS/Amiga Delaware, a true and accurate copy of which is

12  attached to Carton Dec. as Ex. E, p. 27.  In those minutes Mr. John Grzymala is identified as

13  the corporate Secretary for KMOS, Mr. Kouri is identified as the Chairman, and Mr. Garry

14  Hare is identified as the President and CEO.  Amiga Delaware is, again, the plaintiff in this

15  litigation, and thus Mr. Grzymala willingly launched his company into litigation "3,000 miles

16  away" in Washington State—something which he now complains is totally unreasonable for his

17  companies to have to do.  (See Grzymala Dec., ¶28; Carton Dec., ¶10.)[5]

18       Mr. Grzymala also clearly wants to distance Itec (the stated owner of 6,999,000 of

19  KMOS' 7,000,000 outstanding shares) and KMOS/Amiga Delaware from Amiga Washington.

20  (See again Grzymala Dec., ¶28.)  Yet, those same corporate minutes (Carton Dec., Ex. E, p. 27

---

[5] One has to wonder why it is so burdensome for Itec to litigate this matter in Washington when Itec and Amiga Delaware are represented by the same counsel and will necessarily need to use common witnesses.  (Declaration of Ben Hermans in Opposition to Itec's Motion to Dismiss or Transfer, ¶12, Ex. 3, p. 21, hereinafter "Hermans Dec.")

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER          - 8
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

at ¶2.c) reflect the fact that KMOS was paying a company called "Amino Development

Corporation" $240,000, and that <u>KMOS' CEO</u> (Garry Hare) had to approve of how <u>Amino</u>

spent that money.  How, one may wonder, is this relevant?  Because "Amino Development

Corporation" is actually the renamed Amiga Washington, as is demonstrated by corporate

registration forms obtained from the Washington Secretary of State.  (*Compare* the Uniform

Business Identifier numbers on Carton Exs. F and G, which are the same, to the changing

names of that corporation.)  (Carton Dec., ¶11, pp. 28-29.)

The ongoing relationship between Mr. Grzymala, Itec, Mr. Kouri, Amiga Delaware and

Amiga Washington/Amino is reflected in Ex. H, pp. 30-31 to Mr. Carton's declaration, which

is a "Form D" filed by Amiga *Delaware* with the SEC in January 2006.  As is reflected on Ex.

H, p. 31 of that SEC filing, Mr. *John Grzymala* is an Executive Officer and Director of Amiga

Delaware, Mr. *Pentti Kouri* is a Promoter, Beneficial Owner, Executive Officer and Director of

Amiga Delaware, *Itec, LLC* is a Beneficial Owner of Amiga Delaware, and *Amino* of

Ravensdale, Washington (i.e., Amiga Washington[6]) is <u>also</u> a Beneficial Owner of Amiga

Delaware.  Under these circumstances, and considering the Loan Facility Agreement (Carton

Dec., Ex. A, pp. 12-16) and the Security Agreement (Carton Dec., Ex. B, pp. 17-20) Itec

entered into with Amiga Washington, it is difficult to understand how Mr. Grzymala can in

good faith maintain that Itec has no business connection with Washington State with respect to

the causes of action at issue in this lawsuit.  (Carton Dec., ¶12.)

When viewed as a whole, the various contractual maneuvers and machinations by

which Itec stripped the assets and rights from Amiga Washington and then moved them to

another entity it controlled, namely Amiga Delaware, were all closely related to the events in

---

[6] *See* Carton Dec., Exs. F & G, pp. 28-29.

**HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER**          - 9 -
 **Cause No:  07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

Washington State that gave rise to this lawsuit. For instance, Itec's Loan Facility and Security

Agreements with Amiga Washington/Amino (i.e., Carton Dec., Exs. A & B, pp. 12-20) contain

Washington choice of law and forum selection clauses. Furthermore, by stripping those assets

away from Amiga Washington and moving them to a different state, Itec caused damage to

Hyperion in Washington State. (Carton Dec., ¶13.)

In addition to the above problems with Mr. Grzymala's testimony and legal contentions,

Mr. Garry Hare directly contradicts Mr. Grzymala's assertion (at ¶20 of Grzymala's

declaration) that Itec "asserts no rights or claims to any of the Amiga-related trademarks." Mr.

Hare does so by stating that "Itec's acquisition included Amiga OS source code including . . .

associated trademarks." (Carton Dec., ¶16, Ex. I, pp. 39-41 at ¶2.)

## C.    THE ITEC CONTRACT DID NOT REQUIRE PERFORMANCE IN NEW YORK

Itec expends substantial effort trying to convince the Court that the April 24, 2003

Contract between Hyperion and Itec was a stand-alone agreement that required Hyperion to

deliver goods or provide some other performance in the State of New York. This assertion is

not correct (Hermans Dec., ¶11), and in any event is not determinative of whether this Court

has personal jurisdiction over Itec.

Contrary to Mr. Grzymala's assertion at ¶5 of his declaration, the April 24, 2003

Contract did not require the "performance" of anything in New York. Rather, it only provides

for the "transfer [of] the ownership of " OS 4.0. (Grzymala Dec., Ex. 1, p. 12.) The transfer of

the ownership of OS 4.0 would have been self-executing, without the performance by Hyperion

of any task in New York, if the November 3, 2001 and April 24, 2003 contracts had been

performed by Amiga Washington, Itec and/or Amiga Delaware. In fact, as this Court found in

its June 11, 2007 order, at most $24,750 was paid to Hyperion by an aggregate of entities, and

Hyperion disputes a variety of issues related to the same, including whether some of that

**HYPERION'S MEMO OPPOSING ITEC'S**
**MOTION TO DISMISS OR TRANSFER**            - 10 -
 **Cause No:  07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

money needs to be applied to other outstanding invoices instead of the $25,000 "buy-in" amount, and whether the payments that were made were timely made.  (*See* Dkt. #40, pp. 8-9.) Thus, Hyperion's obligation to make the limited "transfer of ownership" of OS 4.0 never became due.  (Carton Dec., ¶18.)

Even if some type of "delivery" was contemplated by the April 24, 2003 agreement, that delivery would have most logically and securely been accomplished by Itec downloading OS 4.0 from computer servers located in Europe.  To explain, the Amiga OS 4.0 source code is located on a Concurrent Versions System (CVS) server in Germany.  A CVS server is a server running software which automates the storing, retrieval, logging, identification, and merging of revisions of software source code and object code in order to avoid incompatible changes being made by multiple developers at the same time.  A "delivery" of software code would typically take the form of a "check out" of the source code from the CVS server located in Germany from anywhere in the world.  Thus, Hyperion would never have had reason to deliver anything to New York.  (Carton Dec., ¶19.)

In addition, Itec's position is logically inconsistent, since Itec asserts that it is merely a venture financing firm.  (*See* Carton Dec., Ex. A, p. 12, fifth "Whereas" clause; Grzymala Dec., ¶3.)  Thus, if Itec is to be believed, it never intended to actually utilize OS 4.0.  Rather, Itec merely would have acted as a conduit to transfer "title" to OS 4.0 from Amiga Washington to KMOS/Amiga Delaware, if it had in fact performed all of the obligations required under the November 3, 2001 Agreement.  (For example, the $25,000 was not paid.  See Dkt. #40, at pp. 8-9.)  In short, contrary to Itec's assertions, the April 24, 2003 Contract did not require performance in New York, even if Itec had fully performed all of its obligations under that contract.  (Carton Dec., ¶20; Hermans Dec., ¶10.)

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER                - 11 -
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1    The plain language of the April 24, 2003 Contract indicates the parties' intent to

2    incorporate all of the November 3, 2001 Agreement by stating that the transfer shall be "in

3    accordance with the provisions of the November [3], 2001 [Agreement]."  (Grzymala Dec., Ex.

4    1, p. 12.)  This mutual understanding is reflected in Ex. J, p. 42, to Mr. Carton's declaration,

5    which is an (erroneous-in-amount) record of payment from Hyperion to Itec stating that a

6    payment was made "pursuant to article 3.01 of the November 3, 2001 agreement between

7    Amiga, Eyetech and Hyperion."  Itec never objected to this reference to the November 3, 2001

8    Agreement because Itec agreed with that understanding until it's nearly-100% owned company

9    (Amiga Delaware) launched the Washington litigation and ran into difficulty in this Court.

10   Here, it is clear from the Grzymala Dec, ¶¶6-8, that Itec was fully familiar with the November

11   3, 2001 Agreement at the time it agreed to incorporate its language in the April 24, 2003

12   Contract.  (Hermans Dec., ¶¶3-11.)  Itec should not be allowed now to avoid the forum

13   selection clause of the November 3, 2001 Agreement.  (Carton Dec., ¶21.)

14   

15   Mr. Grzymala has no facts upon which to base his assertion in ¶9 of his declaration that

16   the November 3, 2001 Agreement was "abandoned."  Indeed, he offers no factual support for

17   that claim outside of his legal assertion in that regard.  (Carton Dec., ¶22; Hermans Dec., ¶¶5-

18   6.)

19   

20   Hyperion did not "race" to the courthouse in Washington State in order to deprive Itec

21   of a New York forum.  Rather, it was Itec, Mr. Grzymala, Pentti Kouri and even Amiga

22   Washington ("Amino"), acting through Amiga Delaware, who launched the Washington

23   litigation.  Then, after this litigation took a "wrong turn" before this Court, this same group

24   sought to open up a two-front war against Hyperion through Itec's filing of an action in New

25   York.  In short, it is Itec who seeks to have a second bite at the apple in New York, even though

26   it was apparent from this Court's June 11, 2007 ruling denying the motion for a preliminary

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER                 - 12
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

injunction that Itec was intimately involved in the facts underlying this litigation.  (Carton Dec., ¶23.)

Contrary to Mr. Grzymala's contentions at ¶¶33-35 of his declaration, <u>Itec's</u> desire to forum shop and pursue two parallel pieces of litigation is obviously intended to create the risk of inconsistent outcomes, for Itec hopes to achieve in New York what Amiga Delaware appears unlikely to achieve in Washington, namely the transfer of OS 4.0 to Amiga Delaware.  (Carton Dec., ¶24.)

**D.    HYPERION DOES NOT DISPUTE THIS COURT'S JURISDICTION**

Finally, Itec wrongly asserts that Hyperion is disputing personal jurisdiction over it by this Court.  In fact, when this Court specifically asked Hyperion's counsel about this during the hearing on the motion for a preliminary injunction, Mr. Kinsel acknowledged that personal jurisdiction and venue exists over the parties in Seattle, Washington.  (*See* Dkt. # 37, at p. 29.)  Mr. Kinsel did state that Hyperion had asserted an affirmative defense with respect to the adequacy of service of process, but it is Hyperion's belief that it has waived that defense when it voluntarily filed suit against Itec in this forum.  In case there is any doubt on that score, Mr. Evert Carton has waived on behalf of Hyperion that affirmative defense against Amiga Delaware and submits Hyperion to the jurisdiction of the United States District Court, Western District of Washington.  (Carton Dec., ¶25.)

**III.    ARGUMENT**

**A.    STANDARD OF REVIEW ON MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Counterclaim defendant Itec cites to a recent decision of this Court regarding the standards to be applied in deciding whether specific jurisdiction exists over a party:

> Defendant SDS has moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  In response to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER                - 13 -
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1    jurisdiction over a defendant is appropriate. <u>Dole Food Co. v. Watts</u>, 303 F.3d
2    1104, 1108 (9th Cir. 2002). Where, as here, the motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to avoid dismissal. <u>Id</u>. While the plaintiff may not simply rely on the bare allegations of its Complaint, uncontroverted allegations in the Complaint are taken as true. <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004). Conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. <u>Id</u>.; <u>Dole</u>, 303 F.3d at 1108.

        In this case, the question of whether personal jurisdiction exists over SDS is governed by Washington's long-arm statute, RCW 4.28.185, or Fed. R. Civ. P. 4((k)(2), both of which are coextensive with the outer limits of federal due process. <u>Chan v. Society Expeditions, Inc.</u>, 39 F.3d 1398, 1405 (9th Cir. 1994); <u>Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.</u>, 284 F.3d 1114, 1126 (9th Cir. 2002). Thus, the Court need only determine whether jurisdiction in this District comports with due process.

        Due process requires that a non-resident defendant have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). Personal jurisdiction can be specific or general. <u>Helicopteros Naionales de Colombia v. Hall</u>, 466 U.S. 408, 414 n. 8-9 (1984). Specific jurisdiction arises where a cause of action results from a defendant's contacts with the forum state. <u>Id</u>., at 414 n. 8.

<u>Childers, d/b/a Artemis Solutions Group v. Sagem Morpho, Inc., et al.</u>, 2006 WL 3523626, at

pp. 2-3 (W.D.Wash., 12/6/2006), attached as Ex. 1 to the Declaration of Lance Gotthoffer.

        In addressing a claimant's assertion, as here, that specific (rather than general)

jurisdiction exists, this Court further explained that;

        The Ninth Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. <u>Schwarzenegger</u>, 374 F.3d at 802 (citing <u>Calder v. Jones</u>, 465 U.S. 783 (1984)); <u>Pebble Beach Co. v. Caddy</u>, 433 F.3d 1151, 1155 (9th Cir.2006).

        The burden is on the plaintiff to satisfy the first two prongs. <u>Schwarzenegger</u>, 374 F.3d at 802. If the plaintiff meets this burden, then the burden shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.*

<u>Id</u>., at pp. 3-4. As Judge Lasnik has explained:

**HYPERION'S MEMO OPPOSING ITEC'S MOTION TO DISMISS OR TRANSFER**      - 14
**Cause No: 07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

The three-prong jurisdictional analysis used in the Ninth Circuit does not allow for challenges to the underlying merits when determining the Court's jurisdiction. Once purposeful availment and but for causation is shown, jurisdiction will lie unless fairness dictates otherwise.

Rosenberg v. Seattle Art Museum, 42 F.Supp.2d at 1037. To complicate matters somewhat, the Ninth Circuit applies:

different purposeful availment tests to contract and tort cases. Consistent with the Supreme Court's holding in Burger King [Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)], merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident. In tort cases, however, jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state.

Id., 42 F.Supp.2d at 1033.

## B.    PERSONAL JURISDICTION EXISTS OVER ITEC IN THIS DISTRICT

### 1.    Hyperion's Claims Against Itec Arise from That Company's Forum-Related Business Activities

Hyperion's First Cause of Action, for Declaratory Judgment, and Fourth Cause of Action for Breach of Contract, are asserted against Itec. (Hyperion's claims against Itec are at Dkt 66.) Those claims rest upon the Ninth Circuit's application of Washington's long-arm jurisdiction statute at RCW 4.28.185(1)(a), which relates to a non-resident's "transaction of any business within this state." As explained by the Washington Court of Appeals, "[a] purposeful act, not a presently enforceable contract, is all that is required." Byron Nelson Co. v. Orchard Management Corp., 95 Wash.App. 462, 466, 975 P.2d 555 (Div. III, 1999).

In an effort to simplify the jurisdictional dispute between the parties, Hyperion submits a summary of its and Itec's competing positions. For its part, Hyperion submits that the 24 April 2003 Contract (the "2003 Contract") between it and Itec was supposed to be part of the documentation needed to allow Itec to assume Amiga Washington's position in the 3 November 2001 Agreement (the "2001 Agreement"), if all of the requirements of that 2001 Agreement, including those related to the assignment, were met. For that reason all of the provisions of the 2001 Agreement are necessary to determine the various rights and obligations

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER        - 15 -
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  of Itec and Hyperion, even if the ultimate determination is that Itec has no rights.  <u>Byron</u>

2  <u>Nelson</u>, 95 Wash.App. at 466 (a purposeful act is all that is required).  (*See* the 2001

3  Agreement and the 2003 Contract at Hermans Dec., Exs. 1 & 2, pp. 6-20; *see also* Hermans

4  Dec., ¶¶3-8, 10-11; Carton Dec., ¶¶14-15, 21.)  Importantly, Mr. William McEwen, Mr. Garry

5  Hare; Amiga Delaware itself, and counsel for Amiga Delaware asserted consistently that

6  Amiga Washington *had* assigned its rights under the 2001 Agreement to Itec, who then

7  assigned them to Amiga Delaware.  (McEwen Dec, Dkt. 4, ¶¶1, 2 & 6; McEwen Reply Dec.,

8  Dkt. 35, ¶¶1-2, 12 & 13; Carton Dec., ¶¶14-15, Ex. I (Hare's declaration); Complaint, Dkt 1,

9  ¶3; Transcript, Dkt 37, p. 35, ll. 5 to 9 (Mr. Baker).)  This necessarily makes Itec subject to

10  jurisdiction and venue in Washington because Itec, at a minimum, attempted to inject itself as a

11  party into a contract containing a clause that specified Washington as the mandatory forum.

12  By contrast, Itec presents the lone Declaration of John Grzymala, who asserts that the

13  2003 Contract is a "stand alone" document, and that that 2003 Contract "forms the sole and

14  exclusive basis for Itec's claims in this lawsuit."  (Grzymala Dec., ¶¶9 and 10.)  While Itec has

15  yet to actually assert any claims in this litigation, Hyperion presumes that Mr. Grzymala means

16  that Itec's *anticipated* claims rest solely on the 2003 Contract.  Besides pointing out that *this*

17  *motion to dismiss* is not about Itec's claims, but rather the underlying facts supporting personal

18  jurisdiction for Hyperion's claims, it is important to point out that Mr. Grzymala is quickly

19  forced to back off of his claim that the 2003 Contract is a stand-alone agreement.  Indeed, he is

20  forced to acknowledge the obvious, namely that the 2003 Contract does refer to the 2001

21  Agreement.  (<u>Id.</u>, ¶13.)  To limit the damage of that admission, Mr. Grzymala tries to assert that

22  the reference to the 2001 Agreement is only "in the context of prescribing <u>Hyperion's</u> delivery

23  obligation," but he offers no support within the language of the 2003 Contract for that supposed

24  limitation.  (<u>Id.</u>, ¶26, emphasis in original.)  As for the testimony and admissions of Mr.

25  McEwen, Amiga Delaware, Garry Hare, and their counsel Mr. Baker, Mr. Grzymala is left

26  simply to plead that they all made a mistake.  (<u>Id.</u>, ¶¶24-25.)

**HYPERION'S MEMO OPPOSING ITEC'S**
**MOTION TO DISMISS OR TRANSFER**          - 16 -
 **Cause No:  07-0631-RSM**

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

In assessing these competing claims, it is useful to examine some of the relevant contractual language.  The 2003 Contract states in relevant part:

> Hyperion confirms that for the receipt of 25,000.00 USD, Hyperion shall transfer the ownership of the Object Code, Source Code and intellectual property of OS 4.0 to Itec in accordance with the provisions of the November 1 [sic] 2001 agreement between Amiga, Hyperion and Eyetech and to the extent it can do so under existing agreements with third party developers whose work shall be integrated in OS 4.0.

(Hermans Dec., Ex. 2, p. 19.)  The 2001 Agreement says in relevant part:

> 7.06 **Governing Law.**  This Agreement shall be governed by and interpreted in accordance with the internal laws of Washington State, USA without regard to conflicts of laws principles.  The obligations set forth in this Agreement are intended to supplement and not to supersede the protections afforded Amiga under the Uniform Trade Secrets Act or similar law or laws as may be in effect from time to time within the State of Washington.

> 7.08 **Forum.**  The exclusive jurisdiction and venue of any lawsuit between the parties arising under this Agreement or out of transactions contemplated hereby or out of transactions contemplated hereby shall be the Superior Court of Washington for King County or the United States District Court for the Western District of Washington at Seattle and each of the parties hereto submits itself to the exclusive jurisdiction and venue of such court for the purposes of such lawsuit.

(Hermans Dec., Ex. 1, p. 11.)

Hyperion submits that whether this Court looks at the dispute from Hyperion's stand point or from Itec's, the result is the same under the Ninth Circuit's three part jurisdictional analysis.  Under the first prong, whether successfully or not, Itec purposefully conducted activities by which it sought to avail itself of the rights of Amiga Washington under the 2001 Agreement, which Agreement must be interpreted pursuant to the laws of this state, and which interpretation must be accomplished either in King County Superior Court or in this United States District Court.  Next, under the second prong of the analysis—and intentionally putting this in the language adopted by Mr. Grzymala—Hyperion's claims against Itec arise directly from Itec's claim that Hyperion is obligated to "deliver the OS4.0 at the same time and manner as it would have had to deliver it to Amiga Washington" under the indisputably *Washington* 2001 Agreement.  (Grzymala Dec., ¶26.)  In other words, even under Itec's limited approach,

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER          - 17
  Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

the claims arise directly from Itec's efforts to insert itself into the middle of the 2001

Agreement, with the interpretation of those "delivery obligations" requiring the parties to

invoke the benefits and protections of Washington's laws.[7]  This, then, takes us to the third

prong of the analysis, which requires Itec to prove that the exercise of personal jurisdiction

would be unreasonable.  Schwarzenegger, 374 F.3d at 802.  Under the circumstances of this

case, that is an impossible burden for Itec to meet.  Indeed, Itec has not even tried to address the

seven "reasonableness" factors set out at Dole Food, 303 F.3d at 1114.

   Itec denies that personal jurisdiction exists over it because Hyperion alleges that the

assignment of Amiga Washington's rights under the 2001 Agreement was incomplete or

otherwise invalid.  Hyperion first notes that challenges to the merits of a party's case may not

be considered when determining specific jurisdiction.  Here, Hyperion has clearly alleged

alternative causes of action that are predicated on the possibility that the Court will find that the

---

[7] For this reason if no other, it is obvious that Itec's effort to use New York law to interpret a
Washington contract is erroneous.

**HYPERION'S MEMO OPPOSING ITEC'S**
**MOTION TO DISMISS OR TRANSFER**          - 18 -
 **Cause No:  07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  assignment was valid and complete, and that is sufficient for jurisdictional purposes. (*See, e.g.,*

2  Dkt 66, ¶40(d), (e) & (f).)  <u>Rosenberg</u>, 42 F.Supp.2d at 1037.  More to the point, however,

3  parties are generally not allowed to allege facts, or to concede the presence of personal

4  jurisdiction, and then to retract those agreed facts/jurisdiction when the case goes against them.

5  <u>Griffith v. Department of Motor Vehicles</u>, 23 Wash.App. 722, 731-2, 598 P.2d 1377

6  (1979)(Naturopathic physician prohibited from withdrawing allegations in the complaint

7  admitting jurisdiction after losing his suit).  In this case, Mr. Grzymala's fellow officers and

8  directors have alleged and/or testified that an assignment of the 2001 Agreement to Itec took

9  place.  (McEwen Dec, Dkt. 4, ¶¶1, 2 & 6; McEwen Reply Dec., Dkt. 35, ¶¶1-2, 12 & 13;

10  Carton Dec., ¶¶14-15, pp. 39-41, Ex. I (Hare's declaration); Complaint, Dkt 1, ¶3; Transcript,

11  Dkt 37, p. 35, ll. 5 to 9 (Mr. Baker).)  While it is true that "Itec" strictly speaking did not make

12  that concession in this litigation, the cited evidence was submitted by individuals or entities

13  who arguably are Itec's agents, or who are otherwise in a position to establish that Itec

14  previously conceded that position in different settings.  To put it a little differently, Itec has

15  failed to meet its burden to allow Mr. Grzymala to blithely "withdraw" the evidence of Itec's

16  prior admissions provided by these other individuals and entities.

17       And, looked at in yet another way, the Declaratory Judgments Act, at RCW 7.24.020,

18  reads in relevant part as follows:

19       A person interested under a . . . written contract or other writings
         constituting a contract, or whose rights, status or other legal relations are
20       affected by a . . . contract, may have determined any question of construction or
         validity arising under the . . . contract . . . and obtain a declaration of rights,
21       status or other legal relations thereunder.

22  The Declaratory Judgment Act, in short, grants this Court authority to determine what rights

23  Itec has under the 2001 Agreement and the 2003 Contract, even if the ultimate conclusion is

24  that Itec has no such rights.  <u>Byron Nelson Co.</u>, 95 Wash.App. at 466 ("[a] purposeful act, not a

25  presently enforceable contract, is all that is required"); <u>Yuan v. Chow, et al.</u>, 96 Wash.App.

26  909, 982 P.2d 647 (Div. II, 1999)(plaintiff liable for fees to defendant who plaintiff

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER                - 19
Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

unsuccessfully argued was liable under the contract based upon an agency theory).  In sum,

even if Itec's efforts to conduct business in Washington were ultimately unsuccessful, it took

purposeful acts sufficient for personal jurisdiction under RCW 4.28.185(1)(a).

### 2.    Itec Participated in a Scheme to Fraudulently Transfer Washington Assets Away from Creditors of Amiga Washington

In its Counterclaims, culminating in the Third Cause of Action, Hyperion alleges that

Itec took part in a substantial, extended conspiracy to commit fraudulent conveyances, with

results that had unquestionable, damaging impacts on Hyperion's rights in Washington.  (See

Hyperion's Counterclaims, Dkt 66, at ¶¶ 8-13, 16-25, 30, 35, 42-57.)  Subsequent

developments in this case have only strengthened the evidence supporting the claim that Itec

engaged in the fraudulent conveyance of Amiga Washington's assets, first from Amiga

Washington to Itec, and then from Itec to KMOS/Amiga Delaware, and that those acts

damaged both Hyperion and other creditors here in Washington, where Amiga Washington's

assets were located.  (Carton Dec., ¶¶7-13, 17, Exs. A to H; Hermans Dec., ¶¶8-9.)

Personal jurisdiction for this fraudulent conveyance claim actually rests on the

contractual, tortious, and "ownership of property" provisions of RCW 4.28.185(1)(a), (b) & (c).

The interconnectedness of those three sections of Washington's long-arm statute is readily seen

in three pieces of evidence found at Exhibits A to C to Mr. Carton's declaration, which

constitute the 2003 Loan Facility Agreement between Amiga Washington and Itec, the 2003

Security Agreement between Amiga Washington and Itec, and the 2004 final "payment and

demand letter" between Itec and Amiga Washington, represented respectively by Pentti Kouri

and William McEwen.  These documents, taken in the context of Mr. McEwen's sworn

deposition testimony admitting to Amiga Washington's prior insolvency in 2002,[8] and of the

---

[8] *See, e.g.,* Declaration of William A. Kinsel, Dkt 25, Ex. A, p. 11, at dep. p. 12; p. 12, dep. 16-p. 13, dep. p. 17.

**HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER**               - 20
 **Cause No:  07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1   prior judgments entered against Amiga Washington in 2002,[9] establish a pattern whereby

2   Amiga Washington was apparently left penniless, and Itec then paid who and what it decided to

3   pay on behalf of Amiga Washington.  Mr. Kouri's letter of May 12, 2004 is particularly

4   instructive in this regard, as it provides "cover" for a $50,000 payment to Mr. McEwen on May

5   12 (see the last entry on Carton Dec., Ex. C, p. 23, reflecting the payment to Mr. McEwen, who

6   is an insider as defined by RCW 19.40.011(7)(ii)(B)), with a simultaneous threat of

7   "foreclosure" on all of Amiga Washington's assets within another 10 days (or by May 22,

8   2004), if Amiga Washington did not repay $267,159.  Considering that there could have been

9   no good faith belief in Amiga Washington's ability to repay those sums in 10 days, these

10  payments were obvious fraudulent transfers within the definition of RCW 19.40.041 and RCW

11  19.40.051.[10]  To make things worse, Itec then somehow executed on its "security interest,"

12  even though it had never perfected that interest and thus had no basis to foreclose on those

13  assets.  *See* Declaration of William A. Kinsel In Opposition to Motion to Dismiss or Transfer,

14  at Exs. A and B (showing the failure of Itec to perfect its security interest); RCW

15  62A.9A.310(a)("a financing statement must be filed to perfect all security interests. . . .")

16      When applying the contractual analysis under RCW 4.28.185(1)(a) to these

17  transactions, one immediately sees that Ex. A, p. 15, ¶20, and Ex. B, p. 19, ¶11, to Mr. Carton's

18  declaration contain choice of law and forum clauses that designate Washington, thereby easily

19  satisfying the first prong of the due process test.  The second prong is also readily satisfied

20  because, but for the fraudulent conveyances Itec consumated in Washington under these

21  contracts, the claim would not have arisen.  This, then, leaves Itec with the burden of meeting

22  the third prong of establishing unreasonableness, which it simply cannot do in this case.

23

24  _____

25  [9] Id., Ex. B, pp. 20-22.

26  [10] Exhibit C, p. 23, to Mr. Carton's declaration shows additional payments to Mr. McEwen, as
    well as payments to another corporate insider, Mr. Barrie John Moss.  (Dkt 5, ¶1.)

**HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER**          - 21
 **Cause No:  07-0631-RSM**

**LAW OFFICES OF
WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1    The expanded purposeful-direction analysis used in the tort context also readily shows

2    that the intentional tortious actions of Amiga Washington, Itec and Amiga Delaware, were all

3    expressly aimed at, and had effects in, Washington, as the assets subject to the security

4    agreement necessarily resided with its owner, Amiga Washington, in this state (Carton Dec.,

5    Ex. B, p. 17, ¶1), and the payments to insiders, etc., were delivered by Itec to Washington

6    (Carton Dec., Exs. A & C).  Itec then consummated that injury by fraudulently conveying

7    Amiga Washington's assets out of Washington and away from the latter company's creditors.

8    These creditors included Hyperion (Dkt 66, ¶20), who was required by the 2001 Agreement to

9    seek all of its remedies against Amiga Washington in Washington.  Rosenberg, 42 F.Supp.2d at

10   1036-37.  Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antismitisme, 433 F.3d 1199, 1207

11   (2006)(en banc)(the "brunt" of the harm need not be suffered by the claimant in the forum

12   state, only a "jurisdictionally sufficient amount of harm.").

13   Finally, by its express language the Security Agreement (Carton Dec., Ex. B, p. 17, ¶1)

14   "assigned" numerous assets to Itec, making it the putative owner, possessor or user of the same.

15   Mr. Garry Hare, the President and CEO of KMOS/Amiga Delaware, agrees that Itec purported

16   to be the owner of Amiga Washington assets.  (Carton Dec., Ex. I, p. 39, ¶2.)  It is this

17   possession, ownership or use by Itec that, in part and "but-for," gave rise to Hyperion's claim

18   of fraudulent conveyances.  RCW 4.28.185(1)(c).

19   In summary, then, Hyperion submits that its allegations and supporting evidence easily

20   meet the requirements of FRCP 9(b) and readily inform the counterclaim defendants the "who,

21   what, when, where and how of the misconduct charged."  (See Itec's brief at p. 18.)  Certainly,

22   those allegations and additional evidence handily demonstrate that personal jurisdiction exists

23   over Itec, and that is all that is at issue in this motion.  Rosenberg, 42 F.Supp.2d at 1037.

24   **C.    JURISDICTION EXISTS OVER ITEC UNDER THE LANHAM ACT**

25   Mr. Grzymala tries to escape this Court's original jurisdiction under the Lanham Act

26   (Hyperion's Sixth Cause of Action, Dkt 66, ¶¶67-78) by asserting that "Itec asserts no rights or

**HYPERION'S MEMO OPPOSING ITEC'S**
**MOTION TO DISMISS OR TRANSFER**          - 22
 **Cause No:  07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

claims to any of the Amiga-related trademarks." (Grzymala Dec., ¶20.)  This, of course, is not true, as can be seen in ¶1 of the Security Agreement (Carton Dec., Ex. B, p. 17).  In addition, Garry Hare directly contradicts Mr. Grzymala's assertion by stating that "Itec's acquisition included Amiga OS source code including . . . associated trademarks." (Carton Dec., ¶16, Ex. I, pp. 39-41, at ¶2.)  Finally, Mr. Grzymala contradicts himself at paragraphs 33 and 34 of his declaration, for there he acknowledges that Itec seeks to obtain on behalf of Amiga Delaware exactly what Amiga Delaware seeks, which of course includes trademark rights.  (Complaint, Dkt 1, ¶¶39-53.)  As this Court noted in its recent decision in <u>Childers, d/b/a Artemis Solutions Group v. Sagem Morpho, Inc., et al.</u>, 2006 WL 3523626, at p. 6 (W.D.Wash., 12/6/2006), "Plaintiff is the master of his own Complaint and defendants cannot characterize his action in a manner he categorically rejects."  The Court made that observation while rejecting the defendant's challenge to personal jurisdiction over it under the Lanham Act.  Itec's challenge here should be rejected for the same reasons stated in that decision.

**D.     VENUE IS PROPER IN THIS DISTRICT**

Itec's challenge to venue in this motion is not well founded, as 28 USC §1391 clearly requires that venue be proper only over one defendant, and here Hyperion (the only defendant) has conceded that venue is proper in this district.  (Carton Dec., ¶25.)  Furthermore, if personal jurisdiction exists over Itec, venue would be independently proper pursuant to §1391(c).

**E.     THE CLAIMS AGAINST ITEC ARE NOT APPROPRIATE FOR TRANSFER**

Hyperion objects to the change of venue requested by Itec for the following reasons. First, Itec bears the burden of proving that jurisdiction and proper venue exist in New York, and it cannot do so considering the mandatory forum selection clause of the 2001 Agreement that limits Hyperion's right to seek declaratory relief to this District.  <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979).  Second, if the Southern District of New York were a possibility, the Court would then need to engage in a balancing test of

HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER            - 23
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

public and private considerations.  Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir.

1985); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

Here, the only "interests" that favor New York are Itec's desire to have a second bite at the

apple, and Itec's desire to drive up Hyperion's litigation expenses.  Because neither of those

"interests" is legitimate, the motion to transfer should be denied.

### IV.    CONCLUSION

Hyperion respectfully asks this Court to deny Itec's motion to dismiss or transfer.

DATED this 26th day of November, 2007.

KINSEL LAW OFFICES, PLLC

By: /s/ William A. Kinsel
    William A. Kinsel, WSBA #18077
Attorney for Defendant Hyperion VOF
    William A. Kinsel, Esq.
    Kinsel Law Offices
    2025 First Avenue, Suite 440
    Seattle, WA  98121
    Phone:  (206) 706-8148
    Fax:     (206) 374-3201
    Email:  wak@kinsellaw.com

525p.doc

**HYPERION'S MEMO OPPOSING ITEC'S
MOTION TO DISMISS OR TRANSFER**          - 24 -
  **Cause No:  07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148