

1

**HON. RICARDO MARTINEZ**

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
8                                AT SEATTLE

9    AMIGA, INC., a Delaware corporation,

10          Plaintiff,                                CAUSE NO. CV07-0631RSM

11   v.                                               **ITEC'S REPLY MEMORANDUM OF
                                                      POINTS AND AUTHORITIES IN
12                                                    FURTHER SUPPORT OF MOTION TO
     HYPERION VOF, a Belgium corporation,             DISMISS OR, IN THE ALTERNATIVE,
13                                                    TO TRANSFER**
14          Defendant/Counterclaim Plaintiff,
                                                      NOTE ON MOTION CALENDAR:
15   v.                                               NOVEMBER 30, 2007

16   ITEC, LLC, a New York Limited Liability          **[ORAL ARGUMENT REQUESTED]**
17   Company,

18          Counterclaim Defendant.

19

20

21

22

23

24

25

26

27

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF                   CABLE, LANGENBACH
MOTION TO DISMISS OR TRANSFER                                  1000 SECOND AVENUE #3500
Case No. CV07-0631RSM                                         SEATTLE, WASHINGTON 98104-1048
                                                                    (206) 292-8800

Dockets.Justia.com

## I.    PRELIMINARY STATEMENT

Defendant/Counterclaim Plaintiff Hyperion VOF ("Hyperion") asserts that personal jurisdiction exists over Counterclaim Defendant Itec LLC ("Itec") based on four separate grounds; however, none of these purported grounds supports any kind of personal jurisdiction over Itec for purposes of Hyperion's Amended Counterclaims (the "Counterclaims").

Three of Hyperion's purported grounds relate to "specific" personal jurisdiction under Washington's long arm statute, RCW 4.28.185(1)(a), (b) and (c), based on what Hyperion describes as "the transaction of business, the commission of a tortious act, and the ownership of personal property within Washington"  Memo in Opp., Dkt 75, p. 2, n. 3.  However, (1) the Counterclaims are devoid of allegations regarding personal jurisdiction on such grounds and (2) in order to invoke Washington's long arm statute, the causes of action alleged must arise out of the defendant's acts and contacts within the state.  No matter how much Hyperion tortures the plain language of documents or tries to attribute the statements or misstatements of other persons to Itec, ***none*** of Hyperion's claims arises out of any acts or contacts of Itec in Washington.

Contrary to Hyperion's erroneous contention, and regardless of what other persons may have said, ***Itec*** has ***never*** claimed that the April 24, 2003 Itec-Hyperion Contract, memorializing Hyperion's separate, standalone purchase and sale agreement with Itec, constituted an assignment of Amiga Washington's rights and obligations under the 2001 Amiga Washington/Hyperion Agreement.  In fact the Itec-Hyperion Contract, on its face, plainly is not such an assignment.  Equally erroneous is Hyperion's contention that the Itec-Hyperion Contract "incorporate[s] all of the November 3, 2001 Agreement" between Amiga Washington and Hyperion, including specifically a forum selection provision.  (Memo in Opp., Dkt 75, p. 12, lines 1-2, 13-14)  In fact, the Itec-Hyperion Contract is entirely silent regarding forum selection and makes only a passing reference to transferring ownership of OS4.0 in accordance with

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 1
Case No. CV07-0631RSM

CABLE, LANGENBACH
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1  provisions of the 2001 Amiga Washington/Hyperion Agreement.  Accordingly, there is no basis

2  for "specific" personal jurisdiction over Itec with respect to either the declaratory judgment or

3  breach of contract Counterclaims regarding the 2001 Amiga Washington/Hyperion Agreement.

4      Similarly, Hyperion's Counterclaim Cause No. 3, a tort claim supposedly alleging a

5  fraudulent transfer by Itec to KMOS (now Amiga) fails to state a claim, much less allege a

6  tortious act in Washington.  The October 2003 Itec/KMOS Contract, upon which the claim is

7  based, did not occur in Washington.  Accordingly, there is no basis for "specific" personal

8
9  jurisdiction over Itec for this claim.

10     Hyperion's fourth purported basis for personal jurisdiction is what Hyperion mistakenly

11  describes as "original jurisdiction under the Lanham Act."  This argument reveals Hyperion's

12  total confusion between personal jurisdiction over a party and subject matter jurisdiction over a

13  cause of action.  While this Court certainly has original subject matter jurisdiction over any

14  legitimate Lanham Act claim, it does not obtain personal jurisdiction over Itec merely because

15  Lanham Act claims are included in Hyperion's pleading.  Hyperion has failed to allege any

16
17  activity by Itec in Washington to infringe or dilute Hyperion's alleged trademark rights and, thus,

18  has failed to show a basis for personal jurisdiction over Itec for these claims.

19     Any surviving Counterclaims against Itec, if not dismissed outright, should be transferred

20  to the Southern District of New York, where personal jurisdiction over Hyperion and venue both

21  exist.

22
23  **II.  THERE IS NO BASIS FOR ASSERTING PERSONAL JURISDICTION OVER ITEC**

24     Whatever Hyperion may say about how many separate grounds it believes warrant this

25  Court's exercise of personal jurisdiction over Itec, there are just two types of personal

26  jurisdiction:  general and specific. *Reebok International, Ltd. v. McLaughlin*, 49 F.3d 1387, 1391

27  (9th Cir. 1995), *cert. denie*d, 516 U.S. 908 (1995).  Neither exists over Itec in this action.

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 2
Case No. CV07-0631RSM

CABLE, LANGENBACH
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

**A.        HYPERION DOES NOT EVEN ASSERT "GENERAL" IN PERSONAM JURISDICTION OVER ITEC.**

"For a defendant to be subject to general in personam jurisdiction, it must have such continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Reebok*, 49 F.3d at 1391; *accord Rano v. SIPA Press, Inc.*, 987 F.2d 580, 587 (9th Cir. 1993). *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir.1986) (noting that factors to be considered in determining whether general jurisdiction exists are whether the defendant makes sales, solicits or engaged in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there).

Here, Hyperion does not even attempt to assert general personal jurisdiction over Itec with respect to its Counterclaims, nor could it. *See Reebok*, 49 F.3d at 1391; *Rano*, 987 F.2d at 587. Itec is a New York limited liability company. Its principal place of business at all relevant times has been in New York. It does not do business in Washington and has no offices here. Grzymala Moving Dec., Dkt 73, ¶¶ 2-3. Thus, Itec is not subject to general personal jurisdiction in this Court.

**B.        THERE IS NO BASIS FOR "SPECIFIC" PERSONAL JURISDICTION OVER ITEC IN THIS CASE**

The only alternative to general personal jurisdiction is specific personal jurisdiction, the exercise of which "must comport with the state long-arm statute, and with the constitutional requirement of due process. Because the Washington long arm statute reaches as far as the Due Process Clause, all we need analyze is whether the exercise of jurisdiction would comply with due process." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir.1995) (citations omitted). Thus, whether there is specific personal jurisdiction over Itec is determined by the following three-part test:

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 3
Case No. CV07-0631RSM

CABLE, LANGENBACH
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir.1993); *accord Reebok*, 49 F.3d at 1391.  Hyperion bears the burden of making a prima facie showing of in personam jurisdiction over Itec for *each* of its Counterclaims.  *See Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1289, n.8 (9th Cir. 1977).  Hyperion fails to do so for any of its claims.

      **1.**      **The Declaratory Judgment And Breach Of Contract Counterclaims Do Not Arise From Any Forum-Related Business Activities of Itec**

Hyperion contends that its assertion of personal jurisdiction over Itec on its causes of action for breach of the 2001 Amiga Washington/Hyperion Agreement and a declaration of rights thereunder is based on "the Ninth Circuit's application of Washington's long-arm jurisdiction statute at RCW 4.28.185(1)(a), which relates to a non-resident's 'transaction of any business within this state.'"  (Memo in Opp., Dkt 75, p. 15, lines 12-17).  As a threshold matter, Hyperion ignores the explicit limitation that personal jurisdiction based on "transaction of business within this state" arises under this long-arm provision only "as to any cause of action *arising from the doing of said acts*" – *i.e.*, arising from that specific "transaction of business within this state."  RCW 4.28.185(1) (emphasis added).

Contrary to Hyperion's contentions, Itec is not a party to, or assignee of rights or obligations under the 2001 Amiga Washington/Hyperion Agreement and, thus, had no involvement in any of the conduct alleged by Hyperion as the bases of these two causes of action.  This Court should consider only the document itself to determine its meaning and, if clear, disregard contrary assertions regarding its intent or meaning.  *See Steckman v. Hart*

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 4
Case No. CV07-0631RSM

CABLE, LANGENBACH
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1   *Brewing*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).  Itec entered into the Itec-Hyperion Contract in

2   New York, which called for Hyperion to transfer OS4.0 to Itec, which is located in New York.

3   Contrary to Hyperion's contentions, Amiga Washington is not a party to the Itec-Hyperion

4   Contract, nor is that contract an assignment by Amiga Washington of its rights under the 2001

5   Amiga Washington/Hyperion Agreement.  This is apparent on the face of the Itec-Hyperion

6   Contract itself.  Simply put, neither of these causes of action regarding the 2001 Amiga

7   Washington/Hyperion Agreement arises from any transaction of business by Itec in Washington.

8   

9          Hyperion asserts in conclusory fashion that "Itec purposefully conducted activities by

10  which it sought to avail itself of the rights of Amiga Washington under the 2001 Agreement."

11  (Memo in Opp. , Dkt 75, p. 17, lines 18-20).  However, Hyperion fails to identify or specify even

12  a single such act by Itec in Washington.  This is insufficient.  *See Pena v. Valo*, 563 F. Supp.

13  742, 747 (C.D. Cal. 1983) (holding that plaintiff failed to make even a prima facie showing that

14  the court had jurisdiction where plaintiff attempted to rely on "the conclusory allegations of his

15  complaint" in response to the allegations set forth in defendants' affidavits).

16  

17         While conceding that purported admissions by individuals and entities other than Itec

18  regarding Itec's supposed contacts with Washington are not properly attributable to Itec (Memo

19  in Opp., Dkt 75, p. 19, lines 11-14), Hyperion nevertheless inexplicably contends that Itec should

20  be bound by such statements – particularly those by Amiga, Inc. ("Amiga") and its officers (*see*

21  Memo in Opp., Dkt 75, pp. 3-4; p. 16, lines 4-11; p. 19, lines 11-14) – because, according to

22  Hyperion's fallacious logic they "arguably are Itec's agents." (Memo in Opp., Dkt 75, p. 19,

23  line 13).  Hyperion proffers no basis for making any of those purported admissions attributable to

24  or binding on Itec.  "Apparent authority of an agent can be inferred only from the acts and

25  conduct of the principal; the extent of an agent's authority cannot be established by his own acts

26  and declarations.  The burden of establishing agency rests upon the one who asserts it."  *State v.*

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 5
Case No. CV07-0631RSM

CABLE, LANGENBACH
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

*Bryant*, 146 Wn.2d 90, 103-104 (2002) (citations omitted); *see Charette v. Amer. Surety Co. of New York*, 49 Wn.2d 777, 780, 307 P.2d 252 (1957) ("[A]n agent cannot enlarge his actual authority by his own assertions or representations.  In an action against the principal, such as the instant case, the only competent evidence of an agent's apparent authority is that which is founded on some act or representation of the alleged principal.")  Furthermore, most of the purported admissions are unsupported by competent evidence, nearly all are simply incorrect or are mischaracterized by Hyperion, and none establishes any conduct by Itec in Washington out of which the breach of contract or declaratory judgment causes of action purportedly arise.

For example, contrary to Hyperion's assertion (Memo in Opp., Dkt 75, p. 3, lines 6-11), Amiga's venue allegations in paragraph 3 of its Complaint – referencing "events giving rise to the alleged claims in this action" that occurred in this judicial district – relate ***only*** to conduct in Washington by Amiga and Hyperion, ***not Itec***, which was not a party when the Complaint was filed.  The Complaint's further allegation that "the parties stipulated to jurisdiction and to venue in this judicial district," also refers only to Amiga and Hyperion – not Itec, which never obligated itself to jurisdiction or venue in this district and was not a "party" when the Complaint was filed.

Similarly, contrary to Hyperion's assertion (Memo in Opp., Dkt 75, p. 3, lines 11-14), the allegation in paragraph 4 of the Complaint that Amiga "is the successor in interest to all right, title and interest in the contracts referenced herein between Amiga, Inc. . . . a Washington corporation ("Amiga Washington") and Hyperion VOF," refers only to Amiga, Hyperion, and Amiga Washington.  ***Itec*** has never been, or claimed to be, a party or successor-in-interest to any such unspecified contracts between Amiga Washington and Hyperion.

In addition, contrary to its current assertion (Memo in Opp., Dkt 75, p. 3, lines 15-24), Hyperion is well aware that, in the rush of seeking preliminary relief, William McEwen – who is ***not*** an officer, agent or representative of Itec – was simply wrong when he asserted that in April

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 6
Case No. CV07-0631RSM

CABLE, LANGENBACH
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    2003, Amiga Washington assigned its rights under the 2001 Amiga Washington/Hyperion

2    Agreement to Itec.  Indeed Mr. McEwen's error is obvious on the face of the April 24, 2003

3    Itec/Hyperion Contract, which memorialized Hyperion's separate, standalone purchase and sale

4    agreement with Itec regarding OS4.0.  Grzymala Moving Dec., Dkt 73, ¶¶ 7-9, Ex. 1.  The plain

5    language of the Itec/Hyperion Contract provides simply that in return for $25,000 received from

6    Itec, Hyperion is obligated to transfer the OS4.0 operating system to Itec.   Amiga Washington is

7    not a party to the Itec/Hyperion Contract, nor does that contract say anything about Amiga

8    Washington assigning rights under the 2001 Amiga Washington/Hyperion Agreement.  Amiga

9    itself has recognized Mr. McEwen's error, and weeks ago requested Hyperion's consent to the

10   filing of an Amended Complaint, *inter alia*, correcting the mistake.

11

12          Likewise, contrary to Hyperion's assertion (Memo in Opp., Dkt 75, p. 4, lines 15-24),

13   Garry Hare's March 12, 2004 declaration in a separate litigation is not competent testimony

14   regarding what Itec and Hyperion intended by the Itec-Hyperion Contract.  Mr. Hare has **never**

15   been an officer, agent or representative of Itec and was not even an officer of Amiga (f/k/a

16   KMOS) on April 24, 2004, the date on the Itec-Hyperion Contract, since Amiga (KMOS) was

17   not even incorporated until October 7, 2003.  Although Mr. Hare's declaration overstates what

18   Itec acquired pursuant to the Itec-Hyperion Contract, the Itec-Hyperion Contract plainly provides

19   only for Itec to acquire OS4.0 from Hyperion, not source code of the Classic Amiga OS, OS 3.1,

20   OS 3.5, or OS 3.9 from Amiga Washington.  Thus, Itec transferred to Amiga (KMOS) in

21   October 2003 only what Itec had acquired from Hyperion pursuant to the Itec-Hyperion

22   Contract, which was all of Hyperion's rights to OS4.0.  (*See* Grzymala Reply Dec. ¶ 6).

23

24          Finally, Hyperion has seized on an obvious typographical error in the Grzymala Moving

25

26   Declaration (corrected in paragraphs 2-5 of his Reply Declaration) in order to distort the gist of

27   Itec's argument that the Itec/Hyperion Contract forms the sole and exclusive basis for

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 7
Case No. CV07-0631RSM

CABLE, LANGENBACH
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

*Hyperion's* Counterclaims against Itec in this lawsuit.  (*See* Memo in Opp., Dkt 75, p. 16, line14)[1]  The point is that without the Itec/Hyperion Contract there is no connection at all between any conduct by Itec and any allegations underlying Hyperion's declaratory judgment or breach of contract Counterclaims.  The Itec/Hyperion Contract itself, executed and to be performed in New York and Belgium, is not a jurisdictional contact between Itec and Washington, nor (as detailed in Itec's motion papers) does it incorporate any jurisdiction selection provision from the November 3, 2001 Amiga Washington/Hyperion Agreement, contrary to Hyperion's assertion (Memo in Opp., Dkt 75, p. 4, lines 4-12).

> **2.    Hyperion's Third Counterclaim, Alleging That Itec Fraudulently Conveyed Assets To KMOS, Inc., Does Not Allege A Tortious Act Within This State**
>
> > **a)    The October 2003 Stock Sale Agreement, Between New York and Delaware Entities Is Not A "Tortious Act Within Washington State."**

Hyperion's third counterclaim alleges that Itec's October 2003 Stock Purchase and Sale Agreement with KMOS, Inc. (the "Itec/KMOS Contract") violated Washington's Uniform Fraudulent Transfer Act, RCW 19.40.  (Amended Counterclaims, ¶¶ 52-54, Dkt 66)  Although not pleaded in its Counterclaims – and thus not properly before the Court on this motion, *Smith v. Coleman*, 2001 U.S. Dist. LEXIS 16584, *5, n. 1 (N.D. Cal. 2001) – Hyperion now asserts that Itec "participated in a scheme," which began with a Loan Facility Agreement in which Itec promised to loan Amiga Washington $175,000.  However, loaning money <u>to</u> a debtor is not a "transfer" under the Uniform Fraudulent Transfer Act.  RCW 19.40.011(12).  Hyperion alleges the scheme's next step was a Security Agreement that provided collateral for the antecedent debt. But a creditor is deemed to have provided reasonably equivalent value when it receives a security interest for an antecedent debt.  RCW 19.40.031.  "[W]hen a transfer is for security

---

[1]   Paragraph 10 of the Grzymala Moving Declaration should have read:  "The Itec/Hyperion Contract is the only operative agreement between Itec and Hyperion, and it forms the sole and exclusive basis for ***Hyperion's*** claims in this lawsuit."  "Itec" was inadvertently substituted for Hyperion where indicated.  *See* Grzymala Reply Dec. ¶¶ 2-5.

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 8
Case No. CV07-0631RSM

CABLE, LANGENBACH
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    only, the equity or value of the asset that exceeds the amount of the debt secured remains

2    available to unsecured creditors and thus cannot be regarded as the subject of a fraudulent

3    transfer merely because of the encumbrance resulting from an otherwise valid security transfer."

4    *Sedwick v. Gwinn*, 73 Wn.App. 879, 889, 873 P.2d 528 (1994).  According to Hyperion, the

5    scheme "culminated" in the Itec/KMOS Contract.  However, the Itec/KMOS Contract is not a

6    contact with Washington from which the fraudulent transfer counterclaim against Itec arises.

7

8        Hyperion is also wrong when it asserts that a fraudulent conveyance implicates the

9    contract and "ownership of property" subsections of Washington's long arm statute.  The

10   gravamen of a fraudulent conveyance cause of action is that the defendant committed fraud; thus,

11   it is a tort.  *Aberdeen Fed. Sav. & Loan Assoc. v. Hanson*, 58 Wn.App. 773, 776, 794 P.2d 1322

12   (1990); *Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F.Supp. 765, 770 (E.D. N.Y.

13   1995) ("A cause of action for fraudulent conveyance is a species of tort."); *Terry v. June*, 420

14   F.Supp.2d 493, 502-503 (W.D. Va. 2006).  Because it is a tort, the applicable subsection of

15   Washington's long arm statute is RCW 4.28.185(1)(b).  "To determine whether a tortious act

16   occurred in Washington, the last event necessary to make the defendant liable must have

17   occurred in Washington."  *CTVC v. Shinawatra*, 82 Wn.App. 699, 718, 919 P.2d 1243 (1996).  It

18   does not matter whether the party felt the injury in Washington State; what matters is where the

19   last event occurred.  *Lewis v. Bours*, 119 Wn.2d 667, 673, 835 P.2d 221 (1992).[2]

20

21       In *Oertel v. Bradford Trust Co.*, 33 Wn.App. 331, 655 P.2d 1165 (1982), the defendant

22   was a New York trustee for a unit investment trust.  The plaintiff purchased 70 units of the

23   investment trust, represented by a certificate of ownership signed by the trustee and sent from

24   New York to Washington.  The certificate was stolen, and with a forged endorsement was

25

---

[2]   Hyperion's argument, that Itec caused Hyperion damage in Washington State by moving assets from Washington to another state (Opposition, p. 10, lines 3-5), misstates the applicable legal standard and ignores the obvious: Hyperion is not a resident of Washington State.

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 9
Case No. CV07-0631RSM

CABLE, LANGENBACH
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1   negotiated in British Columbia.  The trustee redeemed the security by issuing a check in New

2   York, which in turn was paid by its bank in New York.  The plaintiff sued in Washington and

3   recovered a judgment.  The court of appeals reversed, finding no jurisdiction under

4   Washington's long arm statute:  "both parties agree that any conversion of Oertel's property by

5   Bradford occurred in New York.  Oertel's cause of action, if any, was complete after Bradford

6   redeemed the securities involved, issued its check, and paid that check.  None of these events

7   occurred in Washington."  33 Wn.App. 331, 337, 655 P.2d 1165 (1982).  In *Poplar Grove State*

8   *Bank v. Powers*, 218 Ill.App.3d 509, 578 N.E.2d 588 (Ill. App. Ct. 1991), the alleged fraudulent

9   conveyance was an assignment by a mother in Wisconsin to her son in Iowa of an interest in real

10  property in Illinois.  The court held that the alleged fraudulent conveyance, the assignment, was

11  entered into outside Illinois, and "[p]laintiff has not shown that [defendant] committed a tortious

12  act *within this State."*  218 Ill.App.3d 517, 578 N.E.2d at 594.

13  The Itec/KMOS Contract, the event upon which Hyperion relies in pleading a fraudulent

14  conveyance, is between a Delaware Corporation and a New York limited liability company.  The

15  agreement did not occur in Washington State.  Therefore, assuming arguendo that the

16  Itec/KMOS Contract was a fraudulent conveyance, it was not a tortious act within Washington

17  State, and no jurisdiction exists under RCW 4.28.185(1)(b).

18          **b)    Inclusion Of A Unilateral, Permissive Forum Selection Provision Is**
                   **Not Purposeful Availment**

19  Hyperion makes much of the choice of law and venue provisions in paragraphs 20 and 11

20  of the Loan Facility and Security Agreements, respectively, although Hyperion does not plead

21  either agreement as constituting a fraudulent conveyance. [3]  Hyperion dissembles.  These

---

[3]   In opposing Itec's motion to dismiss, Hyperion has not moved to amend (for a second time) and is precluded
from attempting to introduce a new cause of action.  *Daniels v. Unum Life Ins. Co. of America*, 2006 WL 3826715
*2 (N.D. Cal. 2006); *Sathianathian v. Smith Barney, Inc.*, 2004 WL 3607403 n. 13 (N.D. Cal. 2004).

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF           CABLE, LANGENBACH
MOTION TO DISMISS OR TRANSFER - 10                     1000 SECOND AVENUE #3500
Case No. CV07-0631RSM                                  SEATTLE, WASHINGTON 98104-1048
                                                       (206) 292-8800

1  provisions gave Itec alone the *option* of suing Amiga Washington in Washington State.[4]  Itec

2  could not foresee being haled into a Washington court because these provisions were unilateral

3  and permissive.  The clauses did not *require* disputes to be litigated in Washington, Itec did not

4  consent to suit in Washington, and Itec never utilized Washington as a forum.  Itec undoubtedly

5  did not consent to jurisdiction for an unrelated fraudulent conveyance claim by Hyperion, which

6  does not arise out of the Loan Facility Agreement or the Security Agreement.

**C.    THE LANHAM ACT DOES NOT CONFER PERSONAL JURISDICTION
        OVER ALL POTENTIAL DEFENDANTS NATIONWIDE**

9          Hyperion mistakenly argues that Itec is subject to *personal* jurisdiction in this District

10  simply because Hyperion has asserted a Lanham Act "Counterclaim" and this Court has

11  "*original* jurisdiction" over Lanham Act claims.  (Memo in Opp., Dkt 75, p. 2, n. 3; p. 22 line

12  24ff.)  Hyperion is confusing in personam jurisdiction and subject matter jurisdiction.  While this

13  Court certainly would have "original subject matter jurisdiction" over Hyperion's federal

14  statutory Lanham Act causes of action, 15 U.S.C. § 1121 – had Hyperion properly pled such a

15  claim – the Court still needs a separate basis for exercising personal jurisdiction over Itec.[5]

16          The Lanham Act is not like certain other federal statutes, such as RICO and ERISA,

17  which include provisions for nationwide service of process, and thus personal jurisdiction over

18  defendants nationwide, *see* 18 U.S.C. § 1965(d); *Panama v. BCCI Holdings (Luxembourg) S.A.*,

19  119 F.3d 935, 942 (11th Cir. 1997); 29 U.S.C. § 1132(e)(2); *Peay v. BellSouth Med. Assist. Plan*,

20  205 F.3d 1206, 1210 (10th Cir. 2000);.  The Lanham Act contains no such provision and, thus,

21  does not confer an independent basis for nationwide personal jurisdiction over defendants.  *See*

---

[4]   "*Borrower [Amiga Washington] agrees* that the venue of any action in connection herewith may be laid in or transferred to King County, Washington, *at the option of the Lender*."  Carton Opp. Dec., Dkt 76, Ex. A, p. 15, ¶ 20, and Carton Opp. Dec. , Dkt 76, Ex. B, p. 19, ¶ 11 (emphasis supplied).
[5]   Section 39(a) of the Lanham act, 15 U.S.C. § 1121(a), provides in relevant part (emphasis added):  "The district and territorial courts of the United States shall have *original jurisdiction* . . . of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 11
Case No. CV07-0631RSM

1  *Omni Capital Int'l, Ltd. V.Rudolf Wolff & Co.*, 484 U.S. 97, 106-07 (1987).

2      As with all of Hyperion's other Counterclaims, the Lanham Act causes of action do not

3  arise out of any conduct by Itec in Washington.  Indeed, Hyperion has not averred any conduct

4  whatsoever by Itec in Washington allegedly infringing or diluting Hyperion's purported

5  trademark rights.  Accordingly, there is no basis for exercising personal jurisdiction over Itec

6  based on the Lanham Act causes of action.

7

8  **D.      ANY SURVIVING CLAIMS AGAINST ITEC SHOULD BE TRANSFERRED
           TO NEW YORK, WHERE THERE IS JURISDICTION AND VENUE**

9      In response to Itec's alternative assertion that any surviving Counterclaims against Itec

10  should be transferred to the Southern District of New York, Hyperion disingenuously contends

11  that Itec has failed to show that there would be jurisdiction and venue over Hyperion  in that

12  District.  Since Hyperion would be the plaintiff, there is no need to demonstrate personal

13  jurisdiction over it.  As for Itec, a New York limited liability company with its principal place of

14  business in the Southern District of New York, there is general personal jurisdiction there.

15  Venue is also proper, since Itec is deemed to reside in that District and a substantial part of the

16  events giving rise to the claim occurred there.  *See* 28 U.S.C. § 1391(b)(c) and (f); Itec's Motion,

17  Dkt 71, pp. 19-23.  Accordingly, Itec's motion to dismiss or transfer should be granted.

18

19      DATED this 30th day of November, 2007.

20

21   _/s/ Lawrence R. Cock_                      _/s/ Lance Gotthoffer_
     Lawrence R. Cock, WSBA No. 20326           Lance Gotthoffer (Pro Hac Vice), NYBA No. 1088186
22   CABLE, LANGENBACH, KINERK               Jeffrey M. Tamarin (Pro Hac Vice), NYBA No. 1935071
     & BAUER, LLP                                REED SMITH LLP
23   Suite 3500, 1000 Second Avenue           599 Lexington Avenue
     Seattle, Washington 98104-1048           New York, NY 10022
24   (206) 292-8800 phone /                      Telephone:  212.521.5400 / Facsimile:  212.521.5450
     (206) 292-0494 facsimile                    lgotthoffer@reedsmith.com
25   lrc@cablelang.com                           jtamarin@reedsmith.com

26

27

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR TRANSFER - 12
Case No. CV07-0631RSM

CABLE, LANGENBACH
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1

## CERTIFICATE OF SERVICE

2

3          I hereby certify that on November 30, 2007, I electronically filed the foregoing with the

4   Clerk of the Court using the CM/ECF system which will send notification of such filing to the

5   following:

6

7          William A. Kinsel
           Law Offices of William A. Kinsel, PLLC
8          Market Place Tower
           2025 First Avenue, Suite 440
9          Seattle, WA  98121

10

11         A copy was also hand delivered on November 30, 2007.

12                                  /s/ Lawrence R. Cock
                                   Lawrence R. Cock, WSBA No. 20326
13                                 Attorney for Counterclaim Defendant ITEC, LLC
                                   CABLE, LANGENBACH, KINERK & BAUER, LLP
14                                 Suite 3500, 1000 Second Avenue Building
                                   Seattle, Washington 98104-1048
15                                 (206) 292-8800 phone
                                   (206) 292-0494 facsimile
16                                 lrc@cablelang.com

17

18

19

20

21

22

23

24

25

26

27

ITEC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF          CABLE, LANGENBACH
MOTION TO DISMISS OR TRANSFER - 13                    1000 SECOND AVENUE #3500
Case No. CV07-0631RSM                                 SEATTLE, WASHINGTON 98104-1048
                                                      (206) 292-8800