

**HON. RICARDO MARTINEZ**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMIGA, INC., a Delaware corporation,

     Plaintiff,

v.

HYPERION VOF, a Belgium corporation,

     Defendant/Counterclaim Plaintiff,

v.

ITEC, LLC, a New York Limited Liability Company,

     Counterclaim Defendant.

CAUSE NO. CV07-0631RSM

**AMENDED COMPLAINT FOR DAMAGES, SPECIFIC PERFORMANCE AND INJUNCTIVE RELIEF [PROPOSED]**

**[JURY TRIAL DEMANDED]**

Plaintiff, Amiga, Inc., ("Amiga") alleges as follows:

**NATURE OF THE ACTION**

1.     Amiga is the owner of the world famous AMIGA trademark – a household name in the computer world for over a generation. Indeed, Amiga is the owner of and successor-in-interest to all intellectual property rights long associated with the AMIGA brand computer hardware and software business, including 40 United States copyright registrations, 3 federally

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 1
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Dockets.Justia.com

1    registered trademarks, 6 pending federal trademark registrations, and 108 additional trademark
2    registrations worldwide.

3        2.        Six years ago, defendant Hyperion VOF ("Hyperion") contracted with the
4    then owner of those trademarks and other intellectual property rights, Amiga Washington, Inc. (a
5    company not affiliated with Amiga), to develop a new version of the Amiga computer operating
6    system, based upon prior works then owned by Amiga Washington.  Because time was of the
7    essence in the highly competitive computer market, integral to this agreement was Hyperion's
8    representation that it should be able to develop a fully functional, commercial salable version of
9    what was referred to as "Amiga OS 4.0" ("OS 4.0") by March 1, 2002.

10       3.        Some five years after that due date had passed, and despite the fact that it
11   has been paid 150% of the amount stipulated in its agreement with Amiga Washington relating
12   to OS 4.0, Hyperion has not delivered the operating system to anyone – not to Amiga
13   Washington and not to Amiga, which by 2004 had acquired all right, title and interest in OS 4.0.

14       4.        This is not to say that Hyperion has been inactive when it comes to OS 4.0
15   or the AMIGA name and mark.  For example, contrary to its agreement that it would use its best
16   efforts to secure favorable terms for Amiga Washington when it contracted with third parties in
17   connection with the development of OS 4.0, Hyperion in fact gave "sweetheart deals" to certain
18   third-party sub-contractor software developers with which it was closely allied, allowing them
19   now to assert bogus claims of rights in OS 4.0.  In addition, by 2003 – a full year after
20   Hyperion's projected completion date for OS 4.0 – Hyperion's failure to develop a commercially
21   salable operating system had dealt a devastating blow to Amiga Washington and is one of the
22   reasons why Amiga Washington was ultimately forced to exit the business and assign its
23   copyrights, trademarks and other intellectual property rights and assets to Amiga.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 2
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    5.    Indeed, it now appears that Hyperion engaged in a deliberate scheme

2    calculated to undermine Amiga Washington's business and financial status by hindering and

3    delaying the OS 4.0 project with the intent to hijack it after forcing Amiga Washington into

4    bankruptcy.  Although Hyperion did not succeed, with Amiga Washington on the sidelines,

5    Hyperion, which has absolutely no colorable claim to any of these trademarks, copyrights or

6    other intellectual property, has been busily holding itself out as the owner of such intellectual

7    property – not merely engaging in blatant infringement, but even purporting to license third

8    parties to use the trademarks and copyright works that Amiga and its predecessors spent many

9    years and millions of dollars developing.  And these are only the tip of a very toxic iceberg.

10   6.    It is for these and other wrongful acts by Hyperion more fully described

11   below that Amiga sues herein for breach of contract, declaratory judgment, trademark

12   infringement and dilution, false designation of origin, unfair competition, copyright

13   infringement, and indemnification, and seeks, among other things, a declaration of rights,

14   injunctive relief, specific performance, actual, consequential, enhanced, exemplary and punitive

15   damages, costs and attorneys' fees.

16   **JURISDICTION**

17   7.    This Court has jurisdiction over this action under 28 U.S.C. Section

18   1332(a)(2) (diversity jurisdiction), 28 U.S.C. Section 1331 (federal question jurisdiction); 28

19   U.S.C. Section 1338(a) (any act of Congress relating to patents, copyrights and trademarks); 28

20   U.S.C. Section 1367 (supplemental jurisdiction); and the doctrines of ancillary and pendent

21   jurisdiction.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 3
Cause No. CV07-0631RSM

## VENUE

8.    Venue is proper in this District pursuant to 28 U.S.C. Sections 1391(b) and 1400(a) because a substantial part of the events giving rise to the alleged claims in this action occurred in this judicial district and, by contract, the parties stipulated to jurisdiction and to venue in this judicial district.

## PARTIES

9.    Upon information and belief, Hyperion is a foreign entity organized under the laws of Belgium with its principal place of business at Leuven, Belgium.  Hyperion purports to be a software development company and claims to specialize in 3D graphics and the conversion of entertainment software.  Hyperion primarily engages in efforts to "port" existing computer software (primarily games) from one hardware platform to a different hardware platform.

10.    Amiga, a Delaware corporation, formerly known as KMOS, Inc., is the owner of, inter alia, 40 United States copyright registrations, 3 federally registered trademarks, 6 pending federal trademark registrations, and 108 additional trademark registrations worldwide. On August 30, 2004, while known as KMOS, Inc., Amiga acquired all tangible and intangible assets of an unrelated Washington corporation known as Amiga, Inc. ("Amiga Washington") for good and valuable consideration.  The assets so acquired by KMOS, Inc. (which thereafter changed its name to Amiga) include all copyrights, trademarks and other intellectual property then owned by Amiga Washington, whether created by Amiga Washington itself or by any predecessor-in-interest of Amiga Washington.

11.    Upon acquiring the assets of Amiga Washington in 2004, KMOS became the successor-in-interest to the intellectual property rights long associated (under the AMIGA name and trademark) with ground-breaking technological advances in computer operating

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 4
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1  systems, wired and wireless computers and devices and applications, including copyrights in the

2  operating system ("OS") that traces its lineage back to the highly acclaimed operating systems

3  for the original AMIGA computers introduced in 1985.

4      12.        On January 26, 2005, KMOS, Inc. changed its name to Amiga, Inc.

5  Accordingly, Plaintiff Amiga is referred to herein as "KMOS" with respect to the period from

6  the date of its incorporation as KMOS, Inc. until January 26, 2005 when it changed its name to

7  Amiga, Inc.  With respect to subsequent periods, it is referred to herein as "Amiga."

8

9                          **<u>BACKGROUND</u>**

10     13.        The AMIGA brand computer hardware and software business was

11  founded in the early-1980s.  From 1984 through 1998, the business was bought and sold by

12  various entities, including various subsidiaries and affiliates of Commodore International, Inc.

13  and Gateway 2000, Inc.

14     14.        In 1985, a new, multi-function and multi-purpose computer, the

15  "Amiga1000," was introduced featuring a new, powerful operating system – originally dubbed

16  "Workbench," and later referred to as the "Amiga Operating System" or "Amiga OS."  This new

17  operating system represented an enormous technological development and garnered praise in the

18  industry for its graphically rich, multi-tasking and multi-threaded system.

19     15.        In subsequent years, through various changes in ownership, Amiga's

20  predecessors-in-interest continued to upgrade the "Amiga OS" to provide even greater

21  functionality, and the AMIGA brand operating system and computers acquired a devoted

22  following of enthusiasts.  By the early-to-mid-1990s, when "Amiga OS 3.1" was released, the

23  AMIGA OS was state of the art.

24     16.        In or about late 1999, Amiga Washington (then known as Amino

25  Development Corporation) acquired the intellectual property, including copyrights and

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 5
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

trademarks, from Amiga Development LLC as well as other assets and liabilities of the business from two entities owned by and/or affiliated with Gateway 2000, Inc.  On or about September 30, 2004, Amiga Washington was placed in administrative dissolution status by the Secretary of State for the State of Washington.  All actions relevant to this complaint which were taken by Amiga Washington during the period of its administrative dissolution were permissible actions for a corporation in administrative dissolution status.   When it remedied all deficiencies pertaining to its administrative dissolution, Amiga Washington was reinstated effective July 26, 2007 under its previous name, Amino Development Corporation.  The reinstatement relates back to the date of dissolution and entitles the corporation to continue its business as if the administrative dissolution had never occurred.  The complaint will continue to refer to this Washington corporation as Amiga Washington.

17.        AMIGA OS 3.1 had been followed by the release of two additional versions, OS 3.5 and 3.9, which involved certain upgrades produced by Haage & Partner Computer, GmbH, a German company ("Haage & Partner").   As Amiga Washington increasingly focused its own resources on developing compatible, handheld, wireless and other technologies, loyal enthusiasts clamored for further updates of the Operating System. Meanwhile, disputes arose between Amiga Washington and Haage & Partner, and Amiga Washington began seeking a different developer for the next incremental version of the OS, which Amiga Washington hoped would appeal to its loyal customer base, reinvigorate the AMIGA brand and create a market for new AMIGA products.

**THE 2001 AGREEMENT**

18.        On or about November 3, 2001, Amiga Washington entered into an (OEM) License and Software Development Agreement (the "2001 Agreement") with Hyperion and Eyetech Group Ltd., a UK corporation ("Eyetech"), which are expressly identified in the

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 6
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

2001 Agreement as having partnered with each other and which are defined collectively as the "Amiga One Partners."  A true and correct copy of what Hyperion has alleged is the 2001 Agreement is attached hereto as Exhibit A.  The 2001 Agreement was drafted by a principal of Hyperion who was and is an attorney licensed to practice law in Belgium.

19.       A primary focus of the 2001 Agreement was the Amiga One Partners' development of the new version of the AMIGA computer Operating System for Power PC-based computers developed and marketed for the AMIGA platform, to be made available to consumers both as an Original Equipment Manufacturer ("OEM") version preloaded on new computer hardware sold under the AMIGA brand and also as a standalone version.  As a first step, Hyperion was tasked with quickly developing a modest, incremental version of the AMIGA operating system, based on the Source Code of "Amiga OS 3.1" and its existing upgrades, OS 3.5 and 3.9, with no more than "the minimal feature-set set out in Annex I" of the 2001 Agreement.  This initial, modest, incremental version, designated in the 2001 Agreement as "OS 4.0" was intended to appease AMIGA enthusiasts and pave the way for additional operating system improvements and upgrades in the future, as well as new product introductions, while also providing a source of revenue for Amiga Washington from royalties on sales of the OEM version of OS 4.0.

20.       Because OS 4.0 was to be only a modest, incremental update of the AMIGA operating system, pursuant to Article 2.02 of the 2001 Agreement, Hyperion undertook to use its best efforts to ensure that the modest AMIGA OS 4.0 would be ready for release within six months – *i.e.,* before March 1, 2002.

21.       The 2001 Agreement contemplated that following completion and release of OS 4.0 as a commercially saleable product, compatible with new computer hardware and

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 7
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

incorporating the minimal feature-set prescribed in Annex I, Amiga One Partners would likely develop additional, more ambitious upgraded versions of the AMIGA operating system.

22.     Accordingly, subject to performance by Hyperion, Eyetech and Amiga One Partners of their respective obligations under the 2001 Agreement, Amiga Washington granted Amiga One Partners among other things, limited licenses relating to Amiga Washington's copyrights in the Source Code of certain existing versions of its computer operating system and also granted Amiga One Partners limited licenses to use certain trademarks, as described below.  The Agreement also provided for limited distribution rights by Hyperion after the OS 4.0 was completed.

**Under The 2001 Agreement, Amiga Washington Granted Amiga One Partners
A Limited License To Create A Derivative Copyright Work**

23.     Pursuant to Article 2.01 of the 2001 Agreement, Amiga Washington granted the Amiga One Partners a non-exclusive right and license to use and modify the Source Code of "Amiga OS 3.1" and its existing upgrades to create new versions of the existing operating systems (*i.e.,* derivative works of copyright), including specifically the modest, new version of OS 4.0 based on the Source Code of OS 3.1 and its progeny.

24.     In Article 2.01 of the 2001 Agreement, Amiga Washington acknowledged that Hyperion was permitted to use third party contractors in connection with the development work; however, Article 2.06 of the 2001 Agreement obligated Hyperion to "use best efforts to secure the widest possible rights from third party contractors."

**Under The 2001 Agreement, Amiga Washington Retained Existing Copyrights
And An Option To Acquire All Rights In The Derivative Work**

25.     Article 2.06 of the 2001 Agreement expressly provided that Amiga Washington, without limitation, retained ownership of the Source Code of AMIGA OS 3.1 and its existing upgrades then in existence.  Together, Articles 2.06 and 3.01 also provided Amiga

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 8
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Washington an option to acquire from Hyperion all available rights in the Object Code, Source Code and intellectual property of OS 4.0, subject only to rights retained by third-party contractors.

26.        Specifically, Article 3.01 of the 2001 Agreement provided that "at any time but no later than six (6) months after the completion of OS 4.0," Amiga could "elect to pay Hyperion $25,000 in order to acquire the Object Code, Source Code and intellectual property of OS 4.0, pursuant to and within the limits set out in article 2.06," which provided, among other things, that "[a]t any time prior to the completion of OS 4.0 and no later than six months thereafter, and provided Amiga [Washington] makes the payment pursuant to article 3.01, Hyperion shall transfer all Source Code, interest and title in OS 4.0 to Amiga [Washington] to the extent it can do so under the agreements concluded with third party contractors."

**Under The 2001 Agreement, Amiga Washington Granted Amiga One Partners Certain Marketing And Distribution Rights And A Limited Trademark License**

27.        Pursuant to Article 2.01 of the 2001 Agreement, Amiga Washington granted the Amiga One Partners an exclusive right and license to market and distribute such new versions developed under the 2001 Agreement (designated in the 2001 Agreement as "OS 4"), including the modest OS 4.0 and any progeny, both as (a) a standalone version for Power PC ("PPC") based computer hardware that was developed and marketed for the AMIGA platform and (b) a pre-installed OEM version for the "Amiga One," a PPC computer hardware product that had been developed for the Amiga One Partners by a third party.

28.        Pursuant to Article 2.01 of the 2001 Agreement, Amiga Washington also granted the Amiga One Partners a limited right and license to use "the Amiga trademarks," solely in conjunction with the "Amiga One" computer, which would have an OEM version of one or another OS 4 upgrade preinstalled.  No AMIGA trademarks were licensed to Amiga One Partners for use in any other marketing of OS 4.0 or any other OS 4, including in connection for

use on any other computer platforms or products other than the "Amiga One" platform. Amiga Washington reserved for itself the exclusive right to market and distribute OS 4.0 and any other OS 4 versions for all other computer platforms and the exclusive right to use its trademarks and control its brand and image in connection with all other platforms and for all other software, hardware or other products.

29.    Pursuant to Article 2.03(B) of the 2001 Agreement, Amiga Washington would be due a royalty of $25.00 per unit of OS 4.0 (or any subsequent version of OS 4 that might be developed pursuant to the 2001 Agreement) preinstalled in an "Amiga One" computer. Pursuant to Article 2.03(B), this OEM version royalty would be payable by Eyetech (Hyperion's partner in Amiga One Partners) and also would be considered payment in full for the Amiga One Partners' license to use the Amiga trademarks in conjunction with the Amiga One computer, as provided in Article 2.01 of the Agreement.

30.    As consideration for the development of OS 4.0, Article 2.03(A) of the 2001 Agreement provided that no royalties would be due Amiga Washington on any licensed sales of the modest OS 4.0 as a standalone version (for Power PC based computer hardware developed and marketed for the AMIGA platform other than the "Amiga One" computer). However, for any succeeding versions of OS 4 that might be developed pursuant to the 2001 Agreement, Article 2.03(A) provided that a $20.00 per unit royalty would be due Amiga Washington, payable by Hyperion.

31.    Article 2.03 (C) also provided for computation of a possible royalty on OS 4 upgrades (as opposed to subsequent, new entire versions of OS 4), under certain circumstances.

### Itec's Bailout Of Hyperion And Loans To Amiga Washington Advance Its Acquisition Strategy And Lead To A New Agreement Or Novation

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 10
Cause No. CV07-0631RSM

32.     By early 2003, it had become clear that Amiga One Partners, and particularly its member, Hyperion, were unable to fulfill their obligations under the 2001 Agreement. Hyperion had long ago missed its March 1, 2002 "best efforts" target date for the completion of OS 4.0 pursuant to Article 2.02 of the 2001 Agreement and was now facing severe financial difficulties.

33.     In fact, Hyperion knew or should have known from the outset that it could never meet the March 1, 2002 target date. Moreover, although OS 4.0 was to have included only "the minimal feature-set set out in Annex I" of the 2001 Agreement, pursuant to Article 2.01 of the Agreement, Hyperion, at various times insisted that additional features be added into OS 4.0 . This would, among other things, have had the effect of permitting Hyperion to exploit its royalty-free license for OS 4.0 and circumvent its royalty obligations for future OS 4 versions (*e,g,*, 4.1, 4.2 and so on). Hyperion's failure to develop and deliver OS 4.0 on a timely basis denied Amiga Washington the ability to commercialize OS 4.0 and subsequent OS 4 versions, to Amiga Washington's substantial financial detriment.

### Itec Funded Amiga Washington In Anticipation Of An Ultimate Acquisition Of Amiga Washington's Rights And Rescued Hyperion From Imminent Bankruptcy In Return For Hyperion's Rights In OS 4.0

34.     In or about March 2003, Ben Hermans ("Hermans"), who was then a principal of Hyperion, informed Amiga Washington that Hyperion was in urgent need of funds to meet its financial obligations, could not proceed with the development of OS 4.0 without such funds, and was in danger of being forced into a receivership or bankruptcy which would result in its losing control of the source code to OS 4 that had been developed so far.

35.     Hermans thus pleaded with Amiga Washington to pay Hyperion in advance the $25,000 provided for in Articles 2.06 and 3.01 of the 2001 Agreement. In return for this advance payment, Amiga Washington would acquire the Object Code, Source Code and

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 11
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

intellectual property of OS 4.0 (subject only to certain potential rights of third party contractors). Pursuant to Article 2.06 of the 2001 Agreement, Amiga Washington was entitled to make that payment "any time prior to the completion of OS 4.0 and no later than six months thereafter." Because Hyperion had not completed OS 4.0, the $25,000 payment was not otherwise due.

36.    At the time when Hyperion was facing potential bankruptcy and requesting advance payment of this $25,000, Amiga Washington, by reason, *inter alia*, of Hyperion's failure to deliver OS 4.0, found itself without funds available to make an advance payment to Hyperion.  However, an unrelated entity, Itec LLC ("Itec"), was already contemplating a transaction by which Itec would, among other things, acquire all the intellectual property and other assets of Amiga Washington, giving Amiga Washington appropriate consideration.

37.    In preparation for this acquisition, Itec, a New York limited liability company in the venture capital business, had already made loans to Amiga Washington totaling approximately $50,000.

38.    In order to avoid the risk that the OS 4.0 would be tied up in bankruptcy proceedings, Itec ultimately agreed to pay the $25,000 to buy the rights to the OS 4.0 directly from Hyperion.  This would ensure that even if Hyperion went bankrupt, the ownership rights would already have been transferred to Itec, and could not go to a third party.

39.    On March 18, 2003, as a down payment for the acquisition of Hyperion's rights in OS 4.0, Bill McEwen ("McEwen"), then President and Chief Executive Officer of Amiga Washington, wire transferred to Hyperion's account the sum of $2,500, which was the amount Hermans had advised was the minimum that Hyperion needed by March 20, 2003 in order to stave off bankruptcy proceedings temporarily, leaving a balance of $22,500 remaining to be prepaid to Hyperion in connection with the acquisition of the rights to OS 4.0 from Hyperion.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 12
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

40.    On or about April 2, 2003, a principal of Itec informed Hermans that an immediate good faith payment would be sent to Hyperion representing 10% of the remaining balance of $22,500 to be paid to Hyperion for transfer to Itec of Hyperion's rights in OS 4.0, pending completion of legal documents memorializing the acquisition of Hyperion's rights in OS 4.0.

41.    On or about April 3, 2003, Itec caused an affiliated entity (Tachyon Corp.) to send a $2,250 wire transfer to Hyperion as a further good faith down payment representing 10% of the remaining balance of $22,500 to be paid to Hyperion for transfer of Hyperion's rights in OS 4.0.

42.    On or about April 23, 2003, Itec reached a general, overall agreement with Amiga Washington for the transfer and sale of all of Amiga Washington's right, title, and interest in its Operating System, including Source Code and all versions from the "Classic Amiga Operating System" through AMIGA OS 4.0 and all subsequent versions to Itec.

43.    On or about May 5, 2003, Itec caused an additional $20,000 to be wire transferred to Hyperion, which was intended to be a tender of payment in full of the remaining balance payable to Hyperion for the transfer of Hyperion's rights in OS 4.0 to Itec.

44.    Thus, by on or about May 5, 2003, Hyperion had received at least $24,750 in payments relating to OS. 4.0, at least $20,000 of which had been paid by Itec directly, the rest by third parties on its behalf and/or for its benefit, including the $2,500 wire transferred by Bill McEwen on or about March 18, 2003 (at a time when McEwen anticipated being a co-purchaser with Itec) and the $2,250 wire transferred by Itec's affiliate, Tachyon Corp., on or about April 3, 2003. That this $24,750 total was $250 less than the agreed upon $25,000 payment amount was a mathematical error, and, upon information and belief, both Itec and Hyperion believed at that

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 13
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

time that it constituted payment of the full agreed upon amount and, in any event, Hyperion received additional amounts which brought the total to $38,550, as explained in ¶¶ 81-82, *infra*.

45.        Furthermore, since payment of the $25,000 had been made to Hyperion, OS 4.0 still had not been completed, and in light of changed circumstances, it was recognized that the 2001 Agreement no longer worked, had effectively expired, and would need to be rewritten.

46.        Subsequent to May 5, 2003, Itec and Hyperion entered into a written agreement, dated as of April 24, 2003 (the "Itec-Hyperion Agreement"), which memorialized the agreement reached on that date between Hyperion and Itec, whereby Itec (with the approval of Amiga Washington) would acquire all of Hyperion's rights in the Source Code, Object Code and intellectual property of the OS 4.0.  The Itec-Hyperion Agreement acknowledged Hyperion's receipt of $25,000 and its obligation to deliver all of Hyperion's rights in OS 4.0 to Itec, stating in relevant part:

> Hyperion confirms that for the receipt of $25,000 USD, Hyperion shall transfer the ownership of the Object Code, Source Code and intellectual property of OS 4.0 to Itec in accordance with the provisions of the November 1, 2001 agreement between Amiga, Hyperion and Eyetech and to the extent it can do so under existing agreements with third party developers whose work shall be integrated in OS 4.0.

A true copy of the Itec-Hyperion Agreement is annexed hereto as Exhibit B**.**

47.        In or about March 2004, Hyperion issued a confirming invoice to Itec (dated as of December 31, 2003) for the $22,500 paid by Itec to Hyperion for Hyperion's rights in OS 4.0.  The invoice references Article 3.01 of the 2001 Agreement, and an email from Ben Hermans on behalf of Hyperion dated March 27, 2004 explains that the invoice is "for the $22,500 paid by Itec to Hyperion [in 2003]."  True copies of the invoice and the March 27, 2004 Ben Hermans email are annexed hereto as Exhibits C and D, respectively.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 14
Cause No. CV07-0631RSM

48.         Hyperion retained the payments made by or on behalf of Itec in connection with Itec's acquisition of Hyperion's rights in OS 4.0 and, upon information and belief, never advised, notified or asserted to Itec that Hyperion was still owed $250 or that Hyperion would not perform its obligation to transfer its rights in OS 4.0 to Itec unless or until it received an additional $250.

49.         When Itec thus acquired all of Hyperion's rights in the Source Code, Object Code and intellectual property of OS 4.0, Itec contemplated that if Hyperion were successful in avoiding bankruptcy, Hyperion would coordinate the third party developers with which Hyperion had contracted under the 2001 Agreement and that Itec and Hyperion would work together in a manner generally consistent with what had been contemplated by the 2001 Agreement on the distribution side, modified as necessary to take into account that Itec had become the owner of OS 4.0.

## Amiga Washington Obtained Additional Funding From Itec Secured By Amiga Washington's Intellectual Property Pursuant To A Loan Facility Agreement And Security Agreement

50.         Thereafter, Itec and Amiga Washington entered into a Loan Facility Agreement, dated as of May 22, 2003 (the "Loan Facility Agreement"), in which Itec agreed to provide a loan facility totaling $175,000 to Amiga Washington, and incorporated therein monies previously advanced totaling $75,750.  The Loan Facility Agreement, among other things, provided that Itec would provide additional loans upon request up to the $175,000 total during the period from May 22, 2003 to the due date of May 22, 2004.  A true copy of the Loan Facility Agreement is annexed hereto as Exhibit E.

51.         Paragraph 8 of the Loan Facility Agreement further provided, among other things, that all monies loaned to Amiga Washington pursuant to the Loan Facility Agreement would be "fully secured by a first security interest in all the intellectual property of Amiga

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 15
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

[Washington], including but not limited to the source code, object code and software of the so-called Amiga Content Engine, various titles of games and other titles of content owned by Amiga [Washington], as well as the name, the trademark and the brand Amiga, and the Amiga logo, as further specified in a separate <u>Security Agreement</u> between the parties."

52.      In addition, paragraph 14 of the Loan Facility Agreement provided: "If the borrower [Amiga Washington] does not pay the full amount owed on or before May 22, 2004, it is agreed that the Lender [Itec] can at its sole discretion foreclose on all the assets that secure the loan pursuant to the loan agreement and the security agreement."

53.      On or about July 3, 2003, Itec and Amiga Washington entered into a Security Agreement, in accordance with the terms of the Loan Facility Agreement.  Pursuant to paragraph 1 of the Security Agreement, Amiga Washington granted Itec a security interest in various enumerated intellectual property assets, including all of Amiga Washington's trademarks and all of its software, including all versions of the Amiga Operating System and all software copyrights and registrations.  A true copy of the Security Agreement, without exhibits, is annexed hereto as Exhibit F.

54.      Paragraph 6 of the Security Agreement further provided that upon Amiga Washington's failure to pay the full amount owed under the Loan Facility Agreement on or before May 22, 2004, "the Lender [Itec] can at its sole discretion foreclose on all the assets that secure the loan pursuant to the Loan Facility Agreement and the Security Agreement."

### KMOS (Amiga) Acquired Itec's Rights In OS 4.0

55.      Itec ultimately decided that rather than acquire the other assets of Amiga Washington in its own name, it would create a new company to do so.  Thus, on October 7, 2003, Amiga was incorporated in Delaware under the name KMOS, Inc., with the intention that

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 16
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

it would become the ultimate acquirer of all intellectual property and other assets of Amiga Washington.

56.        In furtherance of this decision, Itec and KMOS entered into a Stock Purchase and Sale Agreement of Assignment of Intellectual Property Rights.  A true copy of the final version of this agreement, dated as of October 10, 2003 (the "October 10, 2003 Itec-KMOS OS 4.0 Agreement") is annexed hereto as Exhibit G.

57.        Pursuant to the October 10, 2003 Itec-KMOS Agreement, in return for 6,999,000 shares of KMOS, Inc. stock, Itec assigned to KMOS all of Itec's rights in the Object Code, Source Code and intellectual property of what was defined in the 2001 Agreement and the Itec-Hyperion Agreement as OS 4.0 (but which is referenced in the October 10, 2003 Itec-KMOS OS 4.0 Agreement as "OS4."), which Itec had owned outright since April 2003.

58.        Itec and KMOS further agreed in the October 10, 2003 Itec-KMOS OS 4.0 Agreement that:

> All business enabled by OS4 and all possible future acquisitions of related business assets, including but not limited to the content engine, the content rights, the scripting tools, the Amiga brand name, and contracts with the Amiga development community, whether by means of purchase by cash or shares, or merger, will hence forth be effected by KMOS Inc.  It is further agreed that KMOS Inc. will raise such funding, and will hire such management, marketing and software engineering resources as is necessary to build and expand the business enabled by ownership of OS4.

## THE 2004 ARRANGEMENT

### KMOS (Amiga) Acquired Amiga Washington's Rights In All Versions Of The AMIGA Operating Systems And Entered Into A New Arrangement With Amiga One Partners

59.        In 2004, Amiga Washington agreed to sell and transfer all of its remaining right, title, and interest in its operating system (including all versions from the "Classic Amiga Operating System" through AMIGA OS 4.0 and all subsequent versions) to KMOS.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 17
Cause No. CV07-0631RSM

60.     On February 9, 2004, Bill McEwen of Amiga Washington wrote to Ben Hermans of Hyperion to confirm the status of matters in light of the sale of the OS 4.0 by Hyperion to Itec; the subsequent creation of KMOS; KMOS's acquisition of the OS 4.0 from Itec, and KMOS's anticipated acquisition of Amiga Washington's other intellectual property assets. *See* Exhibit H.  In pertinent part, under the heading "Distribution Agreement," McEwen stated:

> Here   is   my   understanding   of   what   you   have   happening:
>
> *       *       *       *
>
> You have a desire to continue a business relationship with KMOS into the future.
>
> You need to know that in the next two to three days, KMOS will be taking over all that was Amiga.  When this happens, you will no longer be negotiating with me, but with KMOS.  They already own the IP and all source   code   as   outlined   in   the   Agreement   .   .   .   .
>
> *       *       *       *
>
> As of right now, there is no contract in place for the distribution of the operating system with KMOS, the owners of the product.  So we need to get a contract in place that is beneficial to both sides, and I have been asked to work with you in getting this taken care of before they take over.
>
> *       *       *       *
>
> The $25,000.00 was paid, source code is not in hand which the contract states that it will be in hand.  The product is now owned by a third party and we need to reach an agreement by tomorrow that makes sense.

61.     Thereafter such an agreement was reached (the "2004 Arrangement"), and consistent therewith, on March 15, 2004, in a joint press release, which was drafted by McEwen after consultation with Hermans and Garry Hare, then CEO of KMOS, and which was approved by Hyperion, Amiga Washington, and KMOS, these three entities joined in the announcement that Amiga Washington had "sold the Amiga Operating System to KMOS."  The March 15, 2004 press release refers to the general, overall agreement (described in paragraph 42 above) that

had been reached by Itec and Amiga Washington on April 23, 2003 for the transfer and sale of all of Amiga Washington's right, title, and interest in its operating system.

62.    The March 15, 2004 joint press release also quotes Hare as stating:  "At Amiga's [*i.e.,* Amiga Washington's] insistence, to which we totally agreed, we will honor the terms of the November 2001, agreement with Amiga One Partners:  Hyperion VOF and Eyetech Group Ltd., in their entirety."  This statement was a reference to KMOS's intention to honor the distribution rights provided to Amiga One Partners as set forth in the 2001 Agreement, taking into account that KMOS was the owner of the OS 4.0, that Amiga Washington was out of the picture, and that Hyperion's role was as coordinator of the third-party developer-subcontractors rather than as having any claim of ownership in OS 4.0.

63.    Thus, under the 2004 Arrangement, once the OS 4.0 was completed, KMOS would provide Hyperion, as distributor, with the rights and benefits described in paragraphs 27-30 above, which Hyperion would have received from Amiga Washington had the 2001 Agreement not been abandoned by the parties and substituted with the 2004 Arrangement with KMOS.

64.    A true copy of this March 15, 2004 press release, which has been posted on Hyperion's website and remains posted there as of the date of this Amended Complaint at http://www.hyperion-entertainment.biz:8080/amiga (under 2004 press releases) is annexed hereto as Exhibit I

65.    Prior to KMOS'a termination of the relationship with Hyperion as of December 2006 described in paragraphs 86-89 below, KMOS and Hyperion operated in accordance with the 2004 Arrangement and in a manner that mirrored the essential terms of the 2001 Agreement, taking into account that KMOS was the owner of the OS 4.0, that Amiga

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 19
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Washington was out of the picture, and that Hyperion's role was as coordinator of the third-party developer-subcontractors rather than as having any claim of ownership in OS 4.0.

### Hyperion's Initial Developer Pre-Release Version Of OS 4.0

66.      In or about April 2004 Hyperion announced that an initial "Developer Pre-Release" of OS 4.0 was ready for copying for use by software developers working on creating or adapting software applications to run on OS 4.0 and limited numbers of test users.  This initial Developer Pre-Release was incomplete, unfinished, and unready for general commercial release or consumer use.

67.      In or about May 2004 Hyperion announced that the Developer Pre-release of OS 4.0 was tentatively scheduled for May 21, 2004.

68.      Neither Hyperion nor Amiga One Partners notified Amiga Washington, Itec or KMOS (Amiga) that this initial Developer Pre-Release constituted "the completion of OS 4.0" within the meaning of Articles 2.06 or 3.01 of the 2001 Agreement (or any subsequent agreement or novation containing those provisions, including the 2004 Arrangement), nor did that initial Developer Pre-Release in fact constitute "the completion of OS 4.0."  Hyperion has asserted that the distribution of copies of the initial Developer Pre-Release commenced in June 2004.

### KMOS'S ULTIMATE ACQUISITION OF AMIGA WASHINGTON'S ASSETS

### Itec's Additional Secured Loans To Amiga Washington

69.      By May 10, 2004, by mutual agreement the original $175,000 cap under the Loan Facility Agreement and Security Agreement had been raised, and Itec and persons affiliated with and/or acting on behalf of Itec had advanced, to or for the benefit of Amiga

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 20
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1  Washington and persons affiliated with and/or acting on behalf of Amiga Washington, a total of

2  $198,950, not including accrued interest.

3      70.      On or about May 12, 2004, Amiga Washington requested that Itec

4  advance an additional $50,000, which would have brought the total amount of interest and

5  principal payable by May 22, 2004 to $267,159.   A true copy of a May 12, 2004 letter

6  confirming this request is annexed hereto as Exhibit J.

7

8      71.      By agreement between Itec and KMOS, the additional $50,000 was paid

9  on May 13, 2004 by KMOS.

10  **KMOS's Acquisition Of Itec's Rights In Amiga Washington's Debt And Collateral**

11      72.      On or about May 14, 2004, Itec and KMOS entered into a Purchase and

12  Sale Agreement and Agreement of a Secured Note (the "May 14, 2004 Itec-KMOS Purchase

13  Agreement").   A true copy of this May 14, 2004 Itec-KMOS Purchase Agreement is annexed

14  hereto as Exhibit K

15      73.      Pursuant to the May 14, 2004 Itec-KMOS Purchase Agreement, KMOS

16  acquired all of Itec's rights in the Loan Facility Agreement and Security Agreement and Amiga

17

18  Washington's debt.

19      **KMOS's Acquisition Of Amiga Washington's Intellectual Property**
    **Including Operating Systems And Trademarks**
20

21      74.      As of August 30, 2004, Amiga Washington was in default of the Loan

22  Facility Agreement and Security Agreement, having failed to pay any of the amounts that were

23  due on May 22, 2004 or any amounts thereafter.

24      75.      On or about August 30, 2004, KMOS and Amiga Washington entered into

25  an Agreement on Acquisition of Software, Content, Corporate Name and Brand, Logo,

26  Trademarks, Domain Names, Patent Rights and Other Intellectual Property (the "August 30,

27  2004 KMOS-Amiga Washington Intellectual Property Acquisition Agreement").   A true copy of

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 21
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

this August 30, 2004 KMOS-Amiga Washington Intellectual Property Acquisition Agreement, without schedules, is annexed hereto as Exhibit L

76.     Pursuant to the August 30, 2004 KMOS-Amiga Washington Intellectual Property Acquisition Agreement, for good and valuable consideration, KMOS finalized and memorialized its acquisition all of Amiga Washington's right title and interest in any intellectual property of Amiga Washington, including, but not limited to, all rights in "all software, applications and services for the Amiga Operating System versions 1.0 through and including version 4.0" and "the corporate and brand name 'Amiga' the Amiga Logo, all 'Amiga' trademarks, all 'Amiga' domain names" and "all and any other tangible rights, goodwill and intellectual property of Amiga [Washington]."

77.     Pursuant to paragraph 2 of the August 30, 2004 KMOS-Amiga Washington Intellectual Property Acquisition Agreement, payment in full for KMOS's purchase consisted of "(a) Cash advances made to Amiga [Washington] under the Loan Facility Agreement, totaling Two Hundred Seventy Four Thousand Four Hundred Twenty Two Dollars (US $270,422.00) as of the effective date of this Agreement, and (b) four million (4,000,000) shares of KMOS common stock." The total value of the consideration paid by KMOS was over $2,500,000.

78.     On January 26, 2005, a Certificate of Amendment of Certificate of Incorporation was filed with the Delaware Secretary of State, changing the name of KMOS, Inc. to Amiga, Inc. A true copy of that Certificate of Amendment of Certificate of Incorporation is annexed hereto as Exhibit M

79.     Through the transactions, agreements and conduct described in paragraphs 59-65 and 69-78 above, (a) Amiga acquired, among other things, all of Amiga Washington's rights, title and interest in any and all copyrights, trademarks and other intellectual

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 22
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

property rights relating to hardware, software, software applications and operating systems including the "Classic Amiga OS" through 4.0 and all of Hyperion's rights, title and interest in OS 4.0 and (b) Amiga agreed with Hyperion individually and on behalf of Amiga One Partners to continue the development, marketing and distribution of OS 4.0 and potentially future versions of OS 4 pursuant to the terms of the 2004 Arrangement.

### Ongoing Breaches By Hyperion And Termination By Amiga

80.    Following the completion of this acquisition by Amiga, Hyperion represented to Amiga that work was continuing on the development of OS 4.0. However, Hyperion had long been disregarding various of its contractual obligations and continued to disregard those obligations.

81.    After continuing demands by Amiga that Hyperion turn over the Source Code, Object Code, intellectual property rights, interest and title to OS 4.0, and continuing failure by Hyperion to do so, Hyperion asserted for the first time, baselessly, that Amiga owed an additional $7,134. Amiga, reserving its rights, wire transferred an additional $7,200 to Hyperion on or about September 18, 2006. Nevertheless, Hyperion continued to refuse to turn over the Source Code, Object Code, intellectual property rights, interest and title to OS 4.0, this time claiming in a letter dated October 10, 2006 that another $8,850 was owed. Again reserving its rights, Amiga wire transferred another $8,850 on November 21, 2006.

82.    By November 21, 2006, Hyperion had been paid a total of at least $38,550 by and on behalf of Itec and Amiga for Hyperion's rights in OS 4.0; however, by that time it had become apparent that Hyperion was unwilling to comply with its contractual obligations and, as of that date, had breached numerous obligations to Amiga. For example, Hyperion had breached its obligations to Amiga by continuing to delay the completion and release of OS 4.0, while Hyperion attempted to pack excessive features into OS 4.0, apparently in hopes of unfairly

exploiting a royalty-free license for OS 4.0 and circumventing royalty obligations for future OS 4 versions.  There is still no complete OS 4.0 in a form suitable for commercial release or general consumer use, despite the original "best efforts" target date for release by March 1, 2002, and Hyperion has never delivered the Source Code, Object Code or other intellectual property of OS 4.0 to Amiga or its predecessors-in-interest.

83.    In addition, Hyperion had failed to turn over to Itec or Amiga the Source Code, Object Code, intellectual property rights, interest and title to OS 4.0, although Hyperion had now received far more than the prescribed $25,000 payment for that transfer pursuant to the Itec-Hyperion Agreement of April 24, 2003, the 2001 Agreement or any subsequent agreement or novation, including the 2004 Arrangement.

84.    Hyperion had also been marketing what it claimed to be OS 4.0 beyond the limited marketing and distribution licenses granted to Amiga One Partners.  These limited licenses permitted Hyperion to market OS 4.0 only as (a) a stand alone version for Power PC ("PPC") based computer hardware that was developed and marketed for the AMIGA platform and (b) a pre-installed OEM version on the "Amiga One," computer.  Instead, Hyperion's was advertising OS 4.0 on its website for use with items ranging from kiosks, set-top boxes and cellphones to servers and unspecified OEM devices on which "OS 4.0" apparently would be pre-installed.  A true copy of a printout of a page from Hyperion's website containing such advertising is annexed hereto as Exhibit N.

85.    Hyperion had also failed to use best efforts to secure the widest possible rights to all Source Code and Object Code.  Hyperion had engaged third party contractors as software developers without negotiating, safeguarding and/or ensuring that the widest possible rights could be transferred upon tender of payment to Hyperion for transfer the ownership of the Object Code, Source Code and intellectual property of OS 4.0 in accordance with the Itec-

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 24
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Hyperion Agreement and/or Articles 2.06 and 3.01 of the 2001 Agreement or any subsequent agreement or novation containing those provisions, including the 2004 Arrangement. Upon information and belief, Hyperion had entered into agreements with certain third party contractors, allowing those third party contractors to retain rights in their work on OS 4.0. In addition, upon information and belief Hyperion had otherwise impaired the ownership and access rights to portions of the Source Code and Object Code of OS 4.0.

86.    On November 21, 2006, counsel for Amiga gave formal written notice to Hyperion's Belgian counsel, including specifically Ben Hermans, who was also a principal or former principal of Hyperion, that Amiga was terminating the parties' agreement based on material breaches of terms that had been mirrored in the 2004 Arrangement. Citing Article 6.02 of the 2001 Agreement, which was mirrored in the 2004 Arrangement, the letter provided 30 days from Hyperion's receipt of the letter to cure various breaches enumerated in the letter and stated that if each and every breach were not cured by December 21, 2006 the parties' agreement would be terminated as of that date. A true copy of the November 21, 2006 letter is annexed hereto as Exhibit O.

87.    The ongoing breaches by Hyperion referenced in the November 21, 2006 letter, none of which has been cured to date, include the following:

(a)    Hyperion had failed to use best efforts to ensure that AMIGA OS 4.0 was complete and ready for release before March 2, 2002.

(b)    Hyperion had failed ever to complete and release or facilitate the completion of OS 4.0 in a form for release suitable for commercial release.

(c)    Hyperion had failed to turn over the source code, object code, intellectual property rights, interest and title in OS 4.0 pursuant to the Itec-

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 25
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Hyperion Agreement of April 24, 2004 (the rights to which Amiga had subsequently acquired, as Hyperion well knew).

(d)     Hyperion had been marketing "OS 4.0" beyond the limited marketing and distribution licenses granted to Amiga One Partners, which permitted Hyperion to market OS 4.0 only as a stand alone version for PPC based computer hardware for the AMIGA platform and as a pre-installed OEM version on the "Amiga One," computer. Instead, Hyperion's website was advertising "OS 4.0" for use with various items ranging from kiosks, set-top boxes and cellphones to servers and unidentified OEM devices.

(e)     Hyperion had also failed to use best efforts to secure the widest possible rights to all Source Code and Object Code of OS 4.0 by engaging third party contractors as software developers without ensuring that the widest possible rights could be transferred, and Hyperion had otherwise caused or allowed the ownership and access rights to portions of the Source Code and Object Code to be impaired.

88.     The November 21, 2006 letter also made a formal demand for mediation regarding each of the enumerated breaches by Hyperion in accordance with Article 7.07 of the 2001 Agreement which was mirrored in the 2004 Arrangement. Hyperion failed and refused to mediate in further breach of the parties' agreement.

89.     Upon Hyperion's failure to cure the breaches enumerated in the November 21, 2006 letter by December 21, 2006, the 2004 Arrangement terminated along with any and all licenses granted by Amiga or its predecessors-in-interest that were exercisable by Hyperion individually or as a member of Amiga One Partners, subject only to certain provisions

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 26
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

which survived termination, *i.e.,* Articles IV, V, VI and VII of the 2001 Agreement (which were mirrored in the 2004 Arrangement), as specified in Article 6.03 of the 2001 Agreement (which was mirrored in the 2004 Arrangement).

90.     Thereafter, on or about December 24, 2006, Hyperion purported to publicly announce "the immediate availability (for registered AmigaOne customers) of Amiga OS 4.0, The Final Update" and asserted for the first time that "Amiga OS 4.0" had been "[o]riginally released in May of 2004."  A copy of this purported announcement is posted on Hyperion's website at www.hyperion-entertainment.biz:8080/amiga, and a print-out is annexed hereto as Exhibit P. However, this purported "Final Update" is merely the latest in a series of updates of the April 2004 initial Developer Pre-release of OS 4.0, still was and is incomplete, unfinished, and unready for general commercial release or consumer use, and therefore does not constitute "the completion of OS 4.0" required by Articles 2.06 and 3.01 of the 2001 Agreement (or any subsequent agreement or novation containing those provisions, including the 2004 Arrangement).

91.     Neither Hyperion, nor Amiga One Partners notified Amiga Washington, Itec or KMOS (Amiga) that this "Final Update" of the Developer Pre-Release constituted "the completion of OS 4.0" within the meaning of Articles 2.06 and 3.01 of the 2001 Agreement (or any subsequent agreement or novation containing those provisions, including the 2004 Arrangement), nor does that "Final Update" of the Developer Pre-Release in fact constitute "the completion of OS 4.0" within the meaning of these provisions of such Agreements.

**HYPERION'S CONTINUING POST-TERMINATION WRONGFUL CONDUCT**

92.     Despite the termination of any and all licenses for Hyperion to use any copyrights in any version of the AMIGA Operating System or any AMIGA formative trademarks or any other trademarks owned by Amiga, Hyperion nevertheless continued to use

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 27
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

those copyrights and trademarks without authorization and in violation of Amiga's rights. For example, to date, Hyperion continues to advertise, offer for sale and may be selling and distributing what it purports to be OS 4.0 for a wide variety of platforms and products using various AMIGA formative and related trademarks belonging to Amiga.

93.        On or about March 25, 2007, Hyperion announced, purportedly on behalf of itself and ACube Systems Srl., an Italian entity ("ACube"), that these two companies had entered into a "strategic partnership" and that ACube would be acting as "a worldwide distributor of Hyperion's Amiga 4.0 operating system for a range of PPC hardware platforms including Amiga One (MicroA1, SE/XE) and Classic Amiga."

94.        Neither the 2001 Agreement, nor any subsequent agreement or novation gave Hyperion or Amiga One Partners any unilateral right to sublicense any rights to any third party including ACube, to act as a distributor of OS 4.0 or to use any of Amiga's trademarks.

95.        Amiga has not consented to or licensed such use of Amiga's intellectual property rights, including copyrights in OS 4.0 and AMIGA formative or other trademarks.

96.        By purporting to enter into a "strategic partnership" with ACube for worldwide distribution of OS 4.0 "for a range of PPC hardware platforms" without Amiga's consent or license, Hyperion has compounded its breaches of the 2001 Agreement or any subsequent agreement or novation, including the 2004 Arrangement and is directly, contributorily and by inducement (a) infringing Amiga's copyright, (b) infringing and diluting Amiga's trademarks and (c) engaging in unfair competition under federal and state law.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract, 2004 Arrangement)

97.        Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 28
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

98.        Amiga has performed all conditions, covenants and promises required to be performed by it in accordance with the terms and conditions of all relevant agreements with Hyperion and Amiga One Partners, except as to those conditions which have been excused.

99.        Hyperion has materially breached its obligations under the 2004 Arrangement  by reason of Hyperion's foregoing acts and omissions and other past and present acts and omissions, including but not limited to:  (a) Hyperion's failure and refusal to relinquish its rights in the Source Code, Object Code and intellectual property of AMIGA OS 4.0 despite timely payment and demand; (b) Hyperion's ongoing delay of the completion and release of OS 4.0,  despite  the  original  "best  efforts"  target  date  for  release  by  March  1,  2002; (c) Hyperion's failure to complete and release OS 4.0 in a form suitable for commercial release or general consumer use OS 4.0 at all during the license term; (d) Hyperion's development and marketing of "Amiga OS 4" and OS 4.0 for sales outside the licensed market, platform and term; and (e) failure  to  secure  the  widest  possible  rights  to  the  Source  Code,  Object  Code  and intellectual property of OS 4.0, and specifically all rights necessary to effectuate the full and complete purpose of the 2004 Arrangement.

100.        As  a  consequence  of  these  breaches  by  Hyperion,  Amiga  has  been deprived of having the next generation of the AMIGA Operating System available for release to consumers.  It has lost enormous business opportunities, including the opportunity to create marketing "buzz" and to pave the way for additional Operating System improvements, and product introductions.  It has also lost a source of revenue from royalties on OEM sales of OS 4.0 and additional royalties from sales of future versions.

101.        The  damages  suffered  by  Amiga  were  foreseeable  and  within  the contemplation and anticipation of Hyperion when it entered into the 2004 Arrangement.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 29
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

102.    Hyperion's material breaches of the 2004 Arrangement have irreparably injured Amiga, and, unless enjoined, will continue to do so.  Damages alone are inadequate to compensate Amiga for Hyperion's wrongful conduct, and Amiga is entitled to injunctive relief. Among other things, Hyperion should be ordered to provide to Amiga all of Hyperion's rights in the Source Code, Object Code and intellectual property of OS 4.0 including any rights that Hyperion may have under any agreements with third-party developers.  In addition, Hyperion should be enjoined from continuing to develop and market "Amiga OS 4" and OS 4.0 and from interfering with Amiga's development or use of "Amiga OS 4" and OS 4.0.

103.    In addition, and/or in the alternative, as a direct and proximate result of Hyperion's breaches of the 2004 Arrangement, Amiga has incurred extensive monetary damages in an amount to be proven at the time of trial but in all events in excess of $75,000, exclusive of interest and costs.  Pursuant to the 2004 Arrangement, Amiga seeks an award of its reasonable attorneys and expert witness costs, fees and expenses.

WHEREFORE, Amiga prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF
(Breach of Contract, 2001 Agreement)

104.    Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

105.    In the alternative, if this Court were to find that KMOS did not, with the approval and/or acquiescence of Hyperion (acting individually and/or on behalf of Amiga One Partners) enter into a new, substituted agreement with Hyperion and/or Amiga One Partners, or a novation of the 2001 Agreement, then this Court should find that KMOS became Amiga Washington's successor-in-interest under the 2001 Agreement by assignment or otherwise, with the approval,

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 30
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

consent, and/or acquiescence of Hyperion (individually and/or on behalf of Amiga One Partners) and that Hyperion and Amiga One Partners are estopped from asserting otherwise.

106.        In addition, Amiga and its predecessors-in-interest have performed all covenants and promises required to be performed by them in accordance with the terms and conditions of all relevant agreements, except as to those conditions which have been excused.

107.        Hyperion has materially breached its obligations under the 2001 Agreement by reason of Hyperion's foregoing acts and omissions and other past and present acts and omissions, including but not limited to (a) Hyperion's failure and refusal to relinquish its rights in the Source Code, Object Code and intellectual property of AMIGA OS 4.0 despite timely payment and demand; (b) Hyperion's failure to exercise its best efforts to ensure that OS 4.0 was ready for release before March 1, 2002; (c) Hyperion's failure to complete and release OS 4.0 in a form suitable for commercial release or general consumer use OS 4.0 at all during the license term; (d) Hyperion's development and marketing of "Amiga OS 4" and OS 4.0 for sales outside the licensed market, platform and term; and (e) failure to secure the widest possible rights to the Source Code, Object Code and intellectual property of OS 4.0, and specifically all rights necessary to effectuate the full and complete purpose of the 2001 Agreement.

108.        As a consequence of these breaches by Hyperion, Amiga has been deprived of having the next generation of the AMIGA Operating System available for release to consumers.  It has lost enormous business opportunities, including the opportunity to create marketing "buzz" and to pave the way for additional Operating System improvements, and product introductions.  It has also lost a source of revenue from royalties on OEM sales of OS 4.0 and additional royalties from sales of future versions.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 31
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

109.        The damages suffered by Amiga were foreseeable and within the contemplation and anticipation of Hyperion when it entered into the 2001 Agreement.

110.        Hyperion's material breaches of the 2001 Agreement have irreparably injured and, unless enjoined, will continue to irreparably injure, Amiga.  Damages alone are inadequate to compensate Amiga for Hyperion's wrongful conduct, and Amiga is entitled to injunctive relief.  Among other things, Hyperion should be ordered to provide to Amiga all of Hyperion's rights in the Source Code, Object Code and intellectual property of OS 4.0 including any rights that Hyperion may have under any agreements with third-party developers.   In addition, Hyperion should be enjoined from continuing to develop and market "Amiga OS 4" and OS 4.0 and from interfering with Amiga's development or use of "Amiga OS 4" and OS 4.0.

111.        In addition, and/or in the alternative, as a direct and proximate result of Hyperion's breaches of the 2001 Agreement, Amiga has incurred extensive monetary damages in an amount to be proven at the time of trial but in all events far in excess of $75,000, exclusive of interest and costs.  Pursuant to the 2001 Agreement, Amiga seeks an award of its reasonable attorneys and expert witness costs, fees and expenses.

WHEREFORE, Amiga prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF
(Declaratory Judgment Relating to 2004 Arrangement)

112.        Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

113.        An actual controversy has arisen and now exists between Amiga and Hyperion concerning their respective rights in that Amiga contends that (a) Amiga has performed all conditions, covenants and promises required to be performed by it in accordance with the terms and conditions of the 2004 Arrangement, except as to those conditions which have

been excused, (b) Hyperion committed at least one or more material breaches of the 2004 Arrangement that Hyperion failed to cure in a timely manner, (c) Amiga properly terminated the 2004 Arrangement, (d) except as to those obligations and rights that survive termination of the 2004 Arrangement, the 2004 Arrangement is terminated; and (e) Amiga is the owner, subject to any valid third-party claims or rights, of all intellectual property rights in AMIGA OS 3.1, and any and all of Hyperion's rights in any derivative works developed and paid for under the 2004 Arrangement, and the Itec-Hyperion Agreement including the Object Code, Source Code and intellectual property of "Amiga OS 4" and OS 4.0.

114.    Upon information and belief, Hyperion contests each of the allegations contained in the immediately preceding paragraph.

115.        Amiga seeks a judicial declaration to the effect of each of Amiga's contentions in paragraph 113, above.

WHEREFORE, Amiga prays for relief as set forth below.

### FOURTH CLAIM FOR RELIEF
(Declaratory Judgment Relating to 2001 Agreement)

116.    Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

117.    In the alternative, if this Court were to find that KMOS did not, with the approval and/or acquiescence of Hyperion (acting individually and/or on behalf of Amiga One Partners) enter into a new, substituted agreement with Hyperion and/or Amiga One Partners, or a novation of the 2001 Agreement, then this Court should find that KMOS became Amiga Washington's successor-in-interest under the 201 Agreement by assignment or otherwise, with the approval, consent, and/or acquiescence of Hyperion (individually and/or on behalf of Amiga One Partners) and that Hyperion and Amiga One Partners are estopped from asserting otherwise.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 33
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

118.    In that case, an actual controversy has arisen and now exists between Amiga and Hyperion concerning their respective rights in that Amiga contends that (a) Amiga has performed all conditions, covenants and promises required to be performed by it in accordance with the terms and conditions of the 2001 Agreement, except as to those conditions which have been excused, (b) Hyperion committed at least one or more material breaches of the 2001 Agreement that Hyperion failed to cure in a timely manner, (c) Amiga properly terminated the 2001 Agreement, (d) except as to those obligations and rights that survive termination of the 2001 Agreement, the 2001 Agreement is terminated; and (e) Amiga is the owner, subject to any valid third-party claims or rights, of all intellectual property rights in AMIGA OS 3.1, and any and all of Hyperion's rights in any derivative works developed and paid for under the 2001 Agreement, and the Itec-Hyperion Agreement including the Object Code, Source Code and intellectual property of "Amiga OS 4" and OS 4.0.

119.    Upon information and belief, Hyperion contests each of the allegations contained in the immediately preceding paragraph.

120.    Amiga seeks a judicial declaration to the effect of each of Amiga's contentions in paragraph 118, above.

WHEREFORE, Amiga prays for relief as set forth below.

**FIFTH CLAIM FOR RELIEF**
(Trademark Infringement –15 U.S.C. § 1114)

121.    Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

122.    Amiga (successor-in-interest to the initial registrant, Commodore-Amiga, Inc.), to the exclusion of all third parties, owns a federal registration for the mark AMIGA in the United States, registered in the United States Patent and Trademark Office ("USPTO") under

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 34
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Registration No. 1,401,045 for computers, computer disk drives, RAM expansion cartridges, computer monitors and computer modems, in Class 9. This registration for the AMIGA mark, which confers nationwide rights to the mark in connection with the listed goods in Class 9, was issued on July 15, 1985, is valid and subsisting, unrevoked, and uncancelled, has achieved incontestable status pursuant to 15 U.S.C. § 1065 and was timely renewed on September 26, 2006. Through a series of assignments, this registration has come to be owned currently by Amiga. A true and correct copy of the Certificate of Registration together with a true and correct copy of the Trademark Assignment Abstract of Title for this Registration from the files of the USPTO is attached hereto as Exhibit Q.

123. Amiga (successor-in-interest to the initial registrant, Amiga Development LLC, to the exclusion of all third parties, owns a federal registration for the mark POWERED BY AMIGA & "Boing Ball" Logo Design in the United States, registered in the USPTO under Registration No. 2,369,059 for computers, computer peripherals, and computer operating systems, in Class 9. This registration for the POWERED BY AMIGA & "Boing Ball" Logo Design mark, which confers nationwide rights to the mark in connection with the goods listed in Class 9, was issued on July 18, 2000, is valid, subsisting, unrevoked, uncancelled, and has achieved incontestable status pursuant to 15 U.S.C. § 1065. Through a series of assignments, this registration has come to be owned currently by Amiga. A true and correct copy of the Certificate of Registration together with a true and correct copy of the Trademark Assignment Abstract of Title for this Registration from the files of the USPTO is attached hereto as Exhibit R.

124. Amiga (successor-in-interest to the initial registrant, Amiga Washington), to the exclusion of all third parties, owns a federal registration for the mark AMIGA in the United States, registered in the USPTO under Registration No. 2,802,748 for computer software

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 35
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

used to facilitate development of software applications capable of running on multiple platforms and other electronic devices and for operating system software for personal computers and other electronic devices, in Class 9. This registration for the AMIGA mark, which confers nationwide rights to the mark in connection with the listed goods in Class 9, was issued on January 6, 2004, is valid and subsisting, unrevoked and uncancelled. Through a series of assignments, this registration has come to be owned currently by Amiga, Inc. A true and correct copy of the Certificate of Registration together with a true and correct copy of the Trademark Assignment Abstract of Title for this Registration from the files of the USPTO is attached hereto as Exhibit S.

125.    Amiga is the owner of a pending federal application for the mark AMIGA (stylized), filed with the USPTO on July 28, 2006 under Application Serial No. 78/940,426 for various goods and services in Classes 9, 16, 35, 38, and 42, including numerous computer and software related goods and services. The USPTO has already published this application for opposition. A true and correct copy of the Trademark Electronic Search System records from the USPTO website for this application is attached hereto as Exhibit T.

126.    Amiga is the owner of a pending federal application for the mark "Boing Ball" Logo Design, filed with the USPTO on July 28, 2006 under Application Serial No. 78/940,434 for various goods and services in Classes 9, 16, 35, 38, and 42, including numerous computer and software related goods and services. The USPTO has already published this application for opposition. A true and correct copy of the Trademark Electronic Search System records from the USPTO website for this application is attached hereto as Exhibit U.

127.    Amiga and its predecessors-in-interest have expended substantial time, effort and money in the marketing and promotion of computer software and hardware products under each of Amiga's famous trademarks described above. Amiga and its predecessors-in-

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 36
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

interest have continually used these marks on and in connection with the promotion advertising and marketing of the goods associated with these marks and the marks represent substantial goodwill. As a result of this longstanding use and promotion, Amiga's marks have achieved broad national recognition as identifying Amiga as the exclusive source of high quality computer software and hardware products.

128.    Upon information and belief, Hyperion has produced, promoted, marketed and offered for sale, and is still producing, promoting, marketing and offering for sale, software products bearing Amiga's trademarks, both beyond the scope of its licenses under the 2001 Agreement or any subsequent agreement or novation, including the 2004 Arrangement when such agreements were in effect and after Amiga terminated all licenses to produce, promote, market and sell goods under the Amiga trademarks. Hyperion's use of identical trademarks to promote, market and sell certain of their computer software products in interstate commerce is likely to confuse consumers and actually dilute the distinctive quality of the Amiga's famous trademarks. Amiga is further informed and believes and thereon alleges that Hyperion has produced, promoted, marketed and distributed, and, on information and belief, continues, to produce, promote, market and distribute computer software products bearing Amiga's trademarks in interstate commerce that are directly competitive with, or at least highly related to, Amiga's computer software and hardware products. Moreover, under the recently discovered "strategic partnership" between Hyperion and ACube, Hyperion purports to grant ACube rights to distribute OS 4.0 on a worldwide basis for "a range of PPC hardware platforms" under Amiga's trademarks.

129.    Amiga has not consented to Hyperion's use of the Amiga's trademarks beyond the scope of the licenses granted in the Agreement, nor at all following Amiga's termination of the Agreement. Amiga has not sponsored, endorsed, or approved the goods

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 37
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    offered by Hyperion.  Hyperion's actions have caused and threaten to continue to cause

2    irreparable harm to Amiga.

3        130.    Hyperion's activities complained of herein constitute unauthorized use in

4    commerce of a name and mark confusingly similar or virtually identical to Amiga's federally

5    registered AMIGA and/or POWERED BY AMIGA marks, in connection with the advertising,

6    promotion, marketing, offering for sale, and potentially the actual sale, of computer software

7    products, which is likely to cause confusion and mistake and deceive members of the public and

8    trade as to the origin, sponsorship and affiliation of Hyperion's products and business, in

9    violation of 15 U.S.C. § 1114.

10

11       131.    In addition, through its "strategic partnership" with ACube for ACube to act as a

12   worldwide distributor of OS 4.0 Hyperion is directly causing, encouraging and assisting ACube's

13   unauthorized use of Amiga's registered trademarks and is infringing, directly, contributorily or

14   by inducement, Amiga's registered trademarks in violation of 15 U.S.C. § 1114.

15

16       132.    Amiga is informed and believes and thereon alleges that the foregoing actions of

17   Hyperion have been knowing, deliberate, willful, and in utter disregard of Amiga's rights and

18   with knowledge of Amiga's federally registered trademarks.

19       133.    Hyperion's conduct has deceived and unless restrained and enjoined by this Court

20   will continue to deceive the public, including consumers, and has injured and unless restrained

21   and enjoined will continue to injure Amiga and the public, including consumers, causing

22   damages to Amiga in an amount to be determined at trial and other irreparable injury to Amiga's

23   trademarks, business reputation and goodwill.

24

25       134.    Amiga has no adequate remedy at law to compensate it fully for the damages that

26   have been caused and which will continue to be caused by Hyperion's unlawful acts, unless they

27   are enjoined by this Court.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 38
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

135.    Hyperion's continuing infringement of Amiga's federally registered AMIGA and/or POWERED BY AMIGA marks, directly, contributorily or by inducement, is knowing, intentional, malicious, fraudulent, deliberate, willful, wanton, reckless and egregious and is being carried out with the intent to cause confusion, mistake or deception.

136.    Hyperion's acts of infringement are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

WHEREFORE, Amiga prays for relief as set forth below.

### SIXTH CLAIM FOR RELIEF
(Trademark Dilution – Federal Law)

137.    Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

138.    By virtue of the inherent distinctiveness of Amiga's federally registered AMIGA and/or POWERED BY AMIGA marks, as well as its "AMIGA" and stylized "AMIGA" word marks and "Boing Ball" logo design, the extent and duration of the use of all of these marks by Amiga and/or its predecessors-in-interest, the geographic scope and extent of advertising and sales by Amiga and/or its predecessors-in-interest, the media publicity and exposure of the marks, and their consumer recognition, all of these AMIGA formative and related marks are famous and became famous prior to Hyperion's adoption and first unauthorized use of substantially similar and/or identical marks.

139.    Hyperion's commercial use in commerce of marks that are substantially similar or identical to Amiga's AMIGA formative and related marks causes dilution of the distinctive quality of Amiga's AMIGA formative and related marks.  Said use has also tarnished and likely will continue to tarnish the reputation of Amiga and its AMIGA formative and related marks in the minds of consumers by linking the marks to products of inferior or unknown quality,

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 39
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

including Developer Pre-releases that are incomplete, unfinished, and unready for general commercial release or consumer use.

140.    Hyperion's aforesaid use marks that are substantially similar or identical to Plaintiff's AMIGA formative and related marks violates the dilution laws of the United States, 15 U.S.C. § 1125(c).

141.    In addition, through its "strategic partnership" with ACube for ACube to act as a worldwide distributor of OS 4.0 Hyperion is directly causing, encouraging and assisting ACube's unauthorized use of Plaintiff's AMIGA formative and related marks and is diluting these marks, directly, contributorily or by inducement, in violation of 15 U.S.C. § 1125(c).

142.    Hyperion's conduct has deceived and unless restrained and enjoined by this Court will continue to deceive the public, including consumers, and has injured and unless restrained and enjoined will continue to injure Plaintiff and the public, including consumers, causing damages to Amiga in an amount to be determined at trial and other irreparable injury to Amiga's trademarks, business reputation and goodwill.

143.    Amiga has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Hyperion's unlawful acts, unless they are enjoined by this Court.

144.    Hyperion's continuing dilution of Amiga's AMIGA formative and related marks is knowing, intentional, malicious, fraudulent, deliberate, willful, wanton, reckless and egregious and is being carried out with the intent to cause confusion, mistake or deception.

145.    Hyperion's acts of dilution are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

WHEREFORE, Amiga prays for relief as set forth below.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 40
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

**SEVENTH CLAIM FOR RELIEF**
(False Designation of Origin, 15 U.S.C. § 1125(a))

146.    Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

147.    Hyperion's use of Amiga's "AMIGA" and stylized "AMIGA" word marks and "Boing Ball" logo design to promote computer software products outside the licensed market, platform or term constitutes unfair competition, passing off and false designation of the origin as to the goods and services made available by Hyperion and false and misleading representations in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).  Upon information and belief, Hyperion continues to falsely designate the origin of such products and does so with actual knowledge of these Amiga marks.

148.    In addition, through its "strategic partnership with ACube for ACube to act as a worldwide distributor of OS 4.0 Hyperion is directly causing, encouraging and assisting ACube's unauthorized use of Amiga's "AMIGA" and stylized "AMIGA" word marks and "Boing Ball" logo design and is diluting these marks, directly, contributorily or by inducement, in violation of 15 U.S.C. § 1125(a).

149.    Amiga is informed and believes and thereon alleges that the foregoing actions of Hyperion have been knowing, deliberate, willful, and in utter disregard of Amiga's rights.

150.    Hyperion's conduct has deceived and unless restrained and enjoined by this Court will continue to deceive the public, including consumers, and has injured and unless restrained and enjoined will continue to injure Amiga and the public, including consumers, causing damages to Amiga in an amount to be determined at trial and other irreparable injury to Amiga's trademarks, business reputation and goodwill.

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

151.    Amiga has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Hyperion's unlawful acts, unless they are enjoined by this Court.

152.    Hyperion's continuing unfair competition relating to the Amiga's "AMIGA" and stylized "AMIGA" word marks and "Boing Ball" logo design, directly, contributorily or by inducement, is knowing, intentional, malicious, fraudulent, deliberate, willful, wanton, reckless and egregious and is being carried out with the intent to cause confusion, mistake or deception.

153.    Hyperion's acts of unfair competition, passing off, false designation of origin and deception are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a)

WHEREFORE, Amiga prays for relief as set forth below.

## EIGHTH CLAIM FOR RELIEF
(Unfair Competition – Rev. Code Wash Section 19.86.20)

154.    Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

155.    By producing promoting, marketing and offering for sale software products bearing Amiga's trademarks, beyond the scope of its licenses and after the licenses had been terminated, and to the extent that it continues to do so, Hyperion is in competition with Amiga in the market for software products.

156.    Hyperion's wrongful appropriation and use of Amiga's trademarks is an unfair method of competition and/or an unfair or deceptive act or practice with the capacity to mislead people of ordinary caution into believing that they are dealing with one concern, Amiga, when in fact they are dealing with another.

157.    Hyperion's acts perpetuate a fraud on the public, misappropriate benefits belonging to Amiga, and are contrary to the ethical standards of business.  Hyperion's acts are an unfair method of competition and/or an unfair or deceptive act or practice.

158.    Given the substantial market for software products in Washington, Hyperion's wrongful acts have the capacity to deceive a substantial portion of the public.

159.    Hyperion's acts occurred in the course of trade and commerce, and took place or caused injury, in part, within the State of Washington.

160.    Hyperion's acts affect the public interest, because, as one example, the acts are likely to confuse and mislead the public into thinking that they are dealing with one concern when they are in fact dealing with another.

161.    The harm and potential harm to Amiga and the general public from Hyperion's conduct far outweighs the utility of such conduct.

162.    Hyperion's wrongful acts have proximately caused and will continue to cause injury to Amiga's business reputation, goodwill, and ability to sell its own products.

163.    Hyperion's wrongful acts constitute an unfair or deceptive act or practice and/or an unfair method of competition within the meaning of RCW 19.86.020.

164.    Pursuant to Section 19.86.020, injunctive relief is necessary to prevent Hyperion from engaging in the unlawful, unfair and fraudulent business acts and practices alleged herein. Hyperion is now engaging in and will continue to engage in the above-described acts and practices unless enjoined.  Amiga has been and will continue to be irreparably harmed by Hyperion's acts and practices.  Amiga has no adequate remedy at law.

165.    Pursuant to RCW 19.86.095, Amiga has served the Attorney General of the State of Washington with the initial Complaint in this action.

WHEREFORE, Amiga prays for relief as set forth below.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 43
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

## NINTH CLAIM FOR RELIEF
(Copyright Infringement, 17 U.S.C. § 101, *et seq.*)

166.     Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

167.     Amiga is the owner of all right, title and interest, including all copyrights, in and to the "AMIGA Operating System (OS) and software Version 3.1," also referred to as "Amiga OS 3.1," including all Source Code and Object Code relating thereto (the "Work").

168.     The Work contains wholly original material and constitutes copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, as amended (the "Copyright Act").

169.     The Work is the subject of a Certificate of Copyright Registration issued by the Register of Copyrights and effective as of April 27, 2007, bearing registration number TX-6-587-397.  A true copy of this Certificate of Copyright Registration is annexed hereto as Exhibit V.

170.     Amiga has complied in all respects with the Copyright Act and all other laws covering copyright and has secured the exclusive rights and privileges under the copyright in and to the Work.

171.     Hyperion has infringed, and will likely continue to further infringe, Amiga's rights in and to the Work by, among other things, manufacturing, selling, offering for sale or otherwise distributing goods incorporating unauthorized copies of the Work and creating, selling and distributing unauthorized derivative works.

172.     In particular, upon information and belief, Hyperion has, without authorization, manufactured, offered for sale, sold, and otherwise distributed copies of a Developer Pre-Release

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 44
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

of "Amiga OS 4.0," as well as updates available for download from Hyperion's website via the Internet, including what Hyperion now contends is the "Final Update" of OS 4.0.

173.    Upon information and belief, the Developer Pre-Release and all updates, including the so-called "Final Update" and any and all versions of "Amiga OS 4.0" are derivative works of the Work and incorporate and are based and built upon all or parts of the Work.

174.    In addition, through its "strategic partnership" with ACube for ACube to act as a worldwide distributor of OS 4.0, Hyperion is causing, encouraging and assisting ACube's unauthorized use and distribution of unauthorized derivative works based on the Work and is infringing directly, contributorily or by inducement, Amiga's exclusive rights in the Work under the Copyright Act.

175.    This wrongful conduct by Hyperion violates Amiga's exclusive rights under Section 106 of the Copyright Act (17 U.S.C. §106) to use, reproduce, distribute, and prepare derivative works based on the Work.

176.    Amiga has notified Hyperion that its unauthorized use of the Work and "strategic partnership" with ACube are unlawful and has directed Hyperion to cease and desist its infringing activities, but Hyperion has refused to cease and desist.

177.    Hyperion's infringement of Amiga's rights in and to the Work, including the copyright in and to the Work, directly, contributorily or by inducement, has been and continues to be knowing, willful and egregious and constitutes intentional or reckless disregard of Amiga's rights as copyright holder in and to the Work.

178.    Hyperion's wrongful conduct has caused and is continuing to cause Amiga to suffer monetary damages in an amount to be determined at trial.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 45
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

179.    In addition, Hyperion's wrongful conduct is causing Amiga immediate and irreparable injury and will continue to cause Amiga irreparable injury and unfairly benefit Hyperion unless enjoined by this Court.

180.    Amiga has no adequate remedy at law.

WHEREFORE, Amiga prays for relief as set forth below.

## TENTH CLAIM FOR RELIEF

(Indemnification)

Amiga repeats and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

181.    Article 4.03 of the 2001 Agreement, which was mirrored in the 2004 Arrangement provides as follows:

> 4.03 **Indemnification**.    Hyperion shall indemnify and hold Amiga harmless from and against all claims, suits, demands, actions, judgments, penalties, damages, costs and expenses (including attorney's fees and costs), losses or liabilities of any kind arising from a claim that OS 4.0 or any other version of the Classic Amiga OS developed pursuant to this Agreement infringes a patent, copyright or other intellectual property right of any other person anywhere in the world.

182.    Furthermore, Article 6.03 of the 2001 Agreement (which was mirrored in the 2004 Arrangement) provides, among other things, that Article 4.03 remains in effect, regardless of any termination of such agreement for material breach pursuant to Article 6.02 of the 2001 Agreement (which was mirrored in the 2004 Arrangement), as follows:

> 6.03 **Consequences of Termination**.    In the event this Agreement is terminated in accordance with article 6.02 hereof ["Termination for Material Breach"], this Agreement shall remain in force with respect to the parties other than the party found in material  breach of this Agreement pursuant to article 6.02 hereof.  Articles IV, V, VI and VII shall in any event survive termination of this Agreement.

183.    Upon information and belief, a legal proceeding has been commenced in Belgium by Messrs. Thomas Frieden, Hans-Joerg Frieden and Andrea Vallinotto, as "petitioners," against

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 46
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Hyperion and Amiga, as "summoned parties" (the "Belgian Proceeding"), alleging, among other things that the "petitioners" hold copyrights in portions of the AMIGA OS 4.0 that Hyperion purports to have developed pursuant to agreements with Amiga and that "the summoned parties [Hyperion and Amiga] make claims on the software developed by the petitioners that go further than the restricted rights granted them on the basis of the respective agreements between the first summoned party [Hyperion] and the petitioners."  A copy of an English translation of a "Summons as in Summary Proceedings" in the Belgian Proceeding dated May 24, 2007 as well as a Dutch language version are annexed hereto as Exhibit W.

184.    Amiga denies any wrongdoing or liability in connection with matters alleged in the Belgian Proceeding.

185.    The indemnification provision in Article 4.03 of the 2001 Agreement, as mirrored in the 2004 Arrangement, was in full force and effect as of the date on which Belgian Proceeding was commenced.

186.    Amiga has demanded that Hyperion indemnify and hold Amiga harmless from and against all claims, suits, demands, actions, judgments, penalties, damages, costs and expenses (including attorney's fees and costs), losses or liabilities of any kind arising from the claims asserted in the Belgian Proceeding.

187.    By letter dated July 1, 2007, Hyperion purported to reject Amiga's demand for indemnification.

188.    In connection with defending the Belgian proceeding, Amiga has incurred and continues to incur obligations to pay substantial, necessary legal expenses in an amount to be determined at trial.

189.    If a judgment is rendered in favor of the "petitioners" in the Belgian Proceeding and against Amiga by virtue of the matters alleged by the "petitioners" in the Belgian

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 47
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Proceeding, Amiga will be entitled, by virtue of the agreement to indemnify described above, to indemnification and judgment against Hyperion for the full amount of any judgment, including costs, disbursements and interest, if any, plus the expenses incurred by Amiga in defense of the Belgian Proceeding, including attorneys' fees.

190.    The failure of Hyperion to comply with its indemnification obligations to Amiga has caused and will cause Amiga to be put to great expense and financial loss unless this Court, by its declaratory judgment, declares the rights of Amiga with respect to its right to indemnification by Hyperion.

WHEREFORE, Amiga prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Amiga prays for relief as follows:

1.    That judgment be entered in favor of Amiga and against Hyperion on all claims; and

2.    For an Order declaring that (a) Amiga has performed all conditions, covenants and promises required to be performed by it in accordance with the terms and conditions of the 2004 Agreement, except as to those conditions which have been excused, (b) Hyperion committed at least one or more material breaches of the 2004 Agreement that Hyperion failed to cure in a timely manner, (c) Amiga properly terminated the 2004 Agreement, (d) except as to those obligations and rights that survive termination of the 2004 Agreement, the 2004 Agreement is terminated; and (e) Amiga is the owner, subject to any valid rights or claims of third parties, of all intellectual property rights in AMIGA OS 3.1, and any and all of Hyperion's rights in any derivative works developed and paid for under the 2004 Agreement and the Itec-Hyperion Agreement including the Object Code, Source Code and intellectual property of "Amiga OS 4" and OS 4.0; and

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 48
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

3.    For an order, in the alternative to the immediately preceding paragraph, declaring that (a) Amiga has performed all conditions, covenants and promises required to be performed by it in accordance with the terms and conditions of the 2001 Agreement, except as to those conditions which have been excused, (b) Hyperion committed at least one or more material breaches of the 2001 Agreement that Hyperion failed to cure in a timely manner, (c) Amiga properly terminated the 2001 Agreement, (d) except as to those obligations and rights that survive termination of the 2001 Agreement, the 2001 Agreement is terminated; and (e) Amiga is the sole owner, subject to any valid rights or claims of third parties, of all intellectual property rights in AMIGA OS 3.1, and any and all of Hyperion's rights in any derivative works developed and paid for under the 2001 Agreement and the Itec-Hyperion Agreement including the Object Code, Source Code and intellectual property of "Amiga OS 4" and OS 4.0; and

4.    For an Order directing Hyperion to convey forthwith to Amiga the Source Code, Object Code and intellectual property of AMIGA OS 4.0 and all of Hyperion's rights therein and remedy any impairment of such rights caused or permitted by Hyperion; and

5.    For an Order temporarily restraining and preliminarily and permanently enjoining Hyperion, its officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Hyperion, from using, modifying, licensing, advertising, marketing, distributing or selling, directly or indirectly, the whole or any part of the Work comprising the "AMIGA Operating System (OS) and software Version 3.1," including all Source Code and Object Code relating thereto, and specifically enjoining them from using, modifying, licensing, advertising, marketing, distributing or selling, directly or indirectly, in whole or in part Amiga OS 4.0 and its Source Code and Object Code; and

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 49
Cause No. CV07-0631RSM

6.      For an Order temporarily restraining and preliminarily and permanently enjoining Hyperion, its officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Hyperion, from using any trademark belonging to Amiga, including but not limited to Amiga's federally registered AMIGA and/or POWERED BY AMIGA marks, and/or its "AMIGA" and stylized "AMIGA" word marks and/or "Boing Ball" logo design, and/or any mark, word or name or design confusingly similar to any such marks, words, names or designs; and

7.      For an Order compelling Hyperion, its officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Hyperion, to destroy and/or deliver to Amiga for destruction all unauthorized items in their possession, custody or control bearing Amiga's federally registered AMIGA and/or POWERED BY AMIGA marks, and/or its "AMIGA" and stylized "AMIGA" word marks and/or "Boing Ball" logo design, and/or any mark, word or name or design confusingly similar to any such marks, words, names or designs; and

8.      For an Order compelling Hyperion, its officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Hyperion, to deliver to Amiga all items containing or comprising, in whole or in part (a) the Work comprising the "AMIGA Operating System (OS) and software Version 3.1," or any Source Code or Object Code relating thereto, or (b) Amiga OS 4.0 or its Source Code or Object Code; and

9.      For an Order temporarily restraining and preliminarily and permanently enjoining Hyperion, its officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Hyperion, from engaging in the unlawful, unfair and fraudulent business acts and practices described herein; and

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

10.    For an accounting of all profits received by Hyperion from the sale of any products using in whole or in part (a) the Work comprising the "AMIGA Operating System (OS) and software Version 3.1," including all Source Code and Object Code relating thereto, or (b) Amiga OS 4.0 and its Source Code and Object Code; or (c) Amiga's federally registered AMIGA and/or POWERED BY AMIGA marks, and/or its "AMIGA" and stylized "AMIGA" word marks and/or "Boing Ball" logo design, and/or any mark, word or name or design confusingly similar to any such marks, words, names or designs; and

11.    For actual and consequential damages in an amount to be determined at trial; and

12.    For a trebling of Amiga's damages recovery, pursuant to Lanham Act § 35 (15 U.S.C. § 1117), as a result of willful and intentional violations by Hyperion; and

13.    For enhanced exemplary and punitive damages on the basis of Hyperion's willful, intentional and egregious conduct; and

14.    For an award of Amiga's reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to Lanham Act § 35 (15 U.S.C. § 1117), as well as its disbursements.

15.    For Amiga's reasonable attorneys and experts' fees and costs as provided by the Agreement or otherwise available by statute; and

16.    For pre-judgment interest according to proof; and

17.    For an Order declaring that Amiga is entitled to have Hyperion indemnify and hold Amiga harmless from and against all claims, suits, demands, actions, judgments, penalties, damages, costs and expenses (including attorney's fees and costs), losses or liabilities of any kind arising from the claims asserted in the Belgian Proceeding described above; and

18.    For such other relief as the Court deems just and proper.

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 51
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

DATED this the ___ day of December 2007.

_____
Lawrence R. Cock, WSBA No. 20326
lrc@cablelang.com
Cable, Langenbach, Kinerk & Bauer, LLP
1000 Second Avenue
Suite 3500
Seattle, WA  98104
Telephone:  (206) 292-8800
Facsimile:  (206) 292-0494


_____
Lance Gotthoffer (Pro Hac Vice)
Jeffrey M. Tamarin [[(Pro Hac Vice – pending??]]
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone:     212.521.5400
Facsimile:     212.521.5450


_____
Kenneth J. Philpot (Pro Hac Vice)
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922
**Mailing Address:**
P.O. Box 7936
San Francisco, CA  94120-7936
Telephone:     415.543.8700
Facsimile:     415.391.8269
***Attorneys for Plaintiff Amiga, Inc.***

**[CONFORM SIGNATURE BLOCKS TO RULES]**

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 52
Cause No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE #3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Amiga, Inc. hereby

3 demands a jury trial on all issues triable by a jury.

4          DATED this the ___ day of September 2007.

5

6                                    _____
                                     Lawrence R. Cock, WSBA No. 20326
7                                    lrc@cablelang.com
                                     Cable, Langenbach, Kinerk & Bauer, LLP
8                                    1000 Second Avenue
                                     Suite 3500
9                                    Seattle, WA  98104
                                     Telephone:  (206) 292-8800
10                                   Facsimile:  (206) 292-0494

11                                   _____
                                     Lance Gotthoffer (Pro Hac Vice)
12                                   Jeffrey M. Tamarin [[(Pro Hac Vice – pending??]]
                                     REED SMITH LLP
13                                   599 Lexington Avenue
                                     New York, NY 10022
14                                   Telephone:     212.521.5400
                                     Facsimile:     212.521.5450
15

16                                   _____
                                     Kenneth J. Philpot (Pro Hac Vice)
17                                   REED SMITH LLP
                                     Two Embarcadero Center, Suite 2000
18                                   San Francisco, CA  94111-3922
                                     **Mailing Address:**
19                                   P.O. Box 7936
                                     San Francisco, CA  94120-7936
20                                   Telephone:     415.543.8700
                                     Facsimile:     415.391.8269
21
                                     ***Attorneys for Plaintiff Amiga, Inc.***
22

23                                        **[CONFORM SIGNATURE BLOCKS TO RULES]**

24

25

26

27

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 53
Cause No. CV07-0631RSM

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

William A. Kinsel
Law Offices of William A. Kinsel, PLLC
Market Place Tower
2025 First Avenue, Suite 440
Seattle, WA 98121

A copy was also served by hand delivery on December 12, 2007.

  /s/    Lawrence R. Cock
Lawrence R. Cock, WSBA No. 20326
Attorney for Plaintiff Amiga, Inc.
CABLE, LANGENBACH, KINERK & BAUER, LLP
Suite 3500, 1000 Second Avenue Building
Seattle, Washington 98104-1048
(206) 292-8800 phone
(206) 292-0494 facsimile
lrc@cablelang.com

AMENDED COMPLAINT FOR DAMAGES, SPECIFIC
PERFORMANCE AND INJUNCTIVE RELIEF - 54
Cause No. CV07-0631RSM