1

HONORABLE RICARDO S. MARTINEZ

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10   AMIGA, INC., a Delaware corporation,

                                           No.  07-0631-RSM
                            Plaintiff,

11                                         **HYPERION'S MEMORANDUM IN
                                           OPPOSITION TO AMIGA**
         v.                                **DELAWARE'S MOTION FOR LEAVE**

12                                         **TO AMEND ITS COMPLAINT**

     HYPERION VOF, a Belgium corporation,

13                                         **Note on Motion Calendar: Friday, 12/21/07**
                            Defendant.

14   HYPERION VOF, a Belgian General

15   Partnership,

16                        Counterclaim Plaintiff,

17       v.

18   ITEC, LLC, a New York Limited Liability
     Company,

19
                         Counterclaim Defendant.

20

21                          **I.     INTRODUCTION**

22       COMES NOW defendant Hyperion VOF and opposes Amiga Delaware's Motion for

23   Leave to Amend the Complaint.  Hyperion opposes Amiga Delaware's motion because that

24   motion and proposed amended complaint are based on a factually-unsubstantiated effort by

25   plaintiff to contradict its prior sworn testimony and admissions of records.  Amiga Delaware's

26

     **MEMORANDUM IN OPPOSITION TO**              **LAW OFFICES OF**
     **AMIGA DELAWARE'S MOTION TO AMEND**    **WILLIAM A. KINSEL, PLLC**
      Cause No:  07-0631-RSM           - 1      MARKET PLACE TOWER
                                             2025 First Avenue, Suite 440
                                            SEATTLE, WASHINGTON 98121
                                                  (206) 706-8148

Dockets.Justia.com

motion therefore should be denied because plaintiff's effort to change its position is prejudicial

to Hyperion, because the proposed amendment is futile (contradictions of sworn testimony

being impermissible), or because the proposed amended complaint is presented in bad faith.

## II.    FACTS

**A.    AMIGA DELAWARE IS ATTEMPTING TO CONTROVERT ITS OWN SWORN TESTIMONY AND ADMISSIONS**

Amiga Delaware's motion for permission to amend is based upon the assumption that it

can change its sworn testimony and admissions whenever it likes.  *See* Amiga Delaware's

Motion for Leave to Amend its Complaint at p. 3, ll. 9 to 21, where it attempts without

evidentiary support to withdraw its testimony that the 3 November 2001 Agreement was first

assigned from Amiga Washington to Itec, and then from Itec to Amiga Delaware.

Those prior admissions of record began with Amiga Delaware's complaint, which reads

as follows at paragraph 3:

> Venue is proper in this District pursuant to 28 U.S.C. Sections
> 1391(b) and 1400(a) because a substantial part of the events giving rise
> to the alleged claims in this action occurred in this judicial district and,
> by contract, the parties stipulated to jurisdiction and to venue in this
> judicial district.

(Complaint, Dkt. #1.)  In other words, by stating that it was a party to the Agreement, Amiga

Delaware was asserting that it had assumed Amiga Washington's position therein via an

assignment.  This is confirmed in paragraph 4 of the present Complaint, where Amiga

Delaware alleges that it "is the successor in interest to all rights, title and interest in the

contracts referenced herein between Amiga, Inc. formerly a Washington corporation ("Amiga

Washington") and Hyperion VOF."  Id.

Bill McEwen was the President and CEO of Amiga Washington, and he is the Acting

President of Amiga Delaware.  Mr. McEwen affirmatively stated that he had personal

knowledge of, and was competent to testify regarding, all matters stated in his declarations.

**MEMORANDUM IN OPPOSITION TO
AMIGA DELAWARE'S MOTION TO AMEND**
 **Cause No:  07-0631-RSM**                                                 - 2 -

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1    (McEwen Dec, Dkt. 4, ¶¶1,2 & 6; McEwen Reply Dec., Dkt. 35, ¶¶1-2.)  In the reply

2    declaration he submitted in conjunction with the motion for preliminary injunction (Dkt # 35),

3    Mr. McEwen made the position of his current and former companies absolutely clear:

4              12.    In April 2003, Amiga Washington assigned its rights under the
5         [November 3, 2001] Agreement to Itec. . . .

6              13.    In October 2003, Itec then assigned its rights to the Object Code,
      Source Code and Intellectual Property to OS 4 under the [November 3, 2001]
7         Agreement to KMOS, Inc.

8    (McEwen Reply Dec., Dkt 35.)  Furthermore, during oral argument on Amiga Delaware's

9    motion for preliminary injunction, counsel for Amiga Delaware confirmed his client's position

10   that these assignments took place.  (Transcript, Dkt 37, p. 35, ll. 5-9 (Mr. Baker).)[1]

11        Additional evidence of Itec's attempt to assume Amiga Washington's place in the 3

12   November 2001 Agreement via an assignment is found in a declaration filed by Mr. Garry Hare

13   in an action previously pending before Judge Lasnik.  Garry Hare was the President and CEO

14   of KMOS/Amiga Delaware.  (Declaration of Evert Carton, Dkt. 76, ¶14, Ex. I, p. 39,

15   hereinafter "Carton Dec., Dkt. 76.")  As Mr. Hare stated in his declaration dated March 12,

16   2004:  "On April 24, 2003, Itec . . . acquired all rights and ownership to Amiga [Washington's]

17   Operating System ("Amiga OS").  Itec's acquisition included Amiga OS source code,

18   including, but not limited to, the Classic Amiga OS, OS 3.1, OS 3.5, OS 3.9, OS 4.0 (not yet

19   commercially available) and all subsequent versions of this source code and associated

20   trademarks."  (Hare Dec, attached to Carton Dec., Dkt. 76, as Ex. I, pp. 39-41, at ¶2.)  Thus, it

21   is clear that Mr. Hare understood that Itec had assumed Amiga Washington's rights under the

22   November 3, 2001 Agreement, and that that Agreement had not been "abandoned."  (Carton

23   Dec., Dkt. 76, ¶14.)

24

25   _____

26   [1] The reporter erroneously spelled "Eyetech" instead of "Itec" in this portion of the transcript.

MEMORANDUM IN OPPOSITION TO
AMIGA DELAWARE'S MOTION TO AMEND              - 3 -
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1       Next, Mr. Hare testifies that in an October 10, 2003 agreement between Itec and

2  KMOS, KMOS "acquired all of Itec's interest in Amiga's Amiga OS family of products," and

3  that as a part of that agreement "KMOS specifically agreed to honor the terms of [the]

4  November 3, 2001 [Agreement]."  (Carton Dec., Dkt. 76, Ex. I, p. 41, ¶¶4-5.)  In other words,

5  Itec must have considered itself a party to an <u>existing</u> 3 November 2001 Agreement, as KMOS

6  subsequently believed that it was bound by all of the requirements of that Agreement through

7  its acquisition of the same from Itec.  (Carton Dec., Dkt. 76, ¶15.)

8       It is certainly true that Hyperion has denied—and continues to deny—the effectiveness

9  of the alleged assignments from Amiga Washington to Itec, and then from Itec to Amiga

10  Delaware.  This does not change the fact, however, that Amiga Delaware submitted sworn

11  evidence to support the position that such assignments took place.  Furthermore, Amiga

12  Delaware presents no new evidence, in the form of affidavit, declaration or otherwise, to

13  support its attempt to change its prior sworn testimony on the subject.  Thus, the issue

14  presented to the Court based on Amiga Delaware's sworn testimony and admission is whether

15  the alleged assignments were effective given the terms of the 3 November 2001 Agreement.

**B.    THERE IS NO EVIDENCE OF 'ABANDONMENT'**

17       On page 3, ll. 19 to 21 of its motion, Amiga Delaware blithely asserts that "Itec did *not*

18  thereby take assignment of the 2001 Agreement, which for all practical purposes was

19  abandoned by the parties thereto, as described in the proposed Amended Complaint."  As

20  demonstrated in the preceding Fact section, there is substantial evidence that Amiga

21  Washington had no intention of abandoning the 3 November 2001 Agreement.  By contrast,

22  Amiga Delaware provides no testimony (admissible or otherwise), or any documentary

23  evidence for that matter, to support the allegation of abandonment by each of the parties to that

24  Agreement (i.e., Eyetech, Amiga Washington and Hyperion).  Rather, Amiga Delaware simply

MEMORANDUM IN OPPOSITION TO
AMIGA DELAWARE'S MOTION TO AMEND        - 4 -
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

asserts the same in a most inadequate manner in paragraph 63 of the proposed Amended Complaint.

**C.    AS A MATTER OF LAW, ITEC AND THUS AMIGA DELAWARE WAS NOT A SECURED CREDITOR**

Contrary to the allegations in paragraphs 50 to 58 of the proposed Amended Complaint, Itec failed to perfect its security interest in the goods or assets of Amiga Washington. (Declaration of William A. Kinsel In Opposition to Amiga Delaware's Motion for Leave to Amend Its Complaint, ¶¶2-3 & Exs. A & B (hereinafter Kinsel Dec.).)

### III.    ARGUMENT

**A.    STANDARD OF REVIEW ON MOTIONS TO AMEND**

As a general matter motions to amend under FRCP 15(a) should be freely granted. Such motions are not automatically granted, however, and if such a motion is denied, the appellate court reviews the decision for an abuse of discretion. Hurn v. Retirement Fund Trust, 648 F.2d 1252, 1254 (9th Cir. 1981).

> "The district court must . . . exercise its discretion, and a denial without stated reasons, where the reasons are not readily apparent, constitutes an abuse of discretion." [Hurn, at 1254.]; *accord* Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2 222 (1962). Although leave to amend should be freely granted, Fed.R.Civ.P. 15(a), leave may be denied for reasons such as undue delay, bad faith motive, futility of amendment, or prejudice to the opposing party. Hurn, 648 F.2d at 1254.

Sorosky v. Burroughs Corp., 826 F.2d 794, 804-5 (9th Cir. 1987). In addition:

> Although the standard for allowing a party to amend a pleading is a liberal one, a party seeking to amend a pleading must show at least a minimum of factual support for the amendment.

Pacific Topsoils, Inc. v. United Wood Products Company, 2005 WL 1221831, p. 2 (USDC, WD Wash, J. Coughenour, 2005)(denying the motion on grounds of bad faith), found at Kinsel Dec., Exhibit C. Put differently, a "bald assertion" is not sufficient. In re Phenylpropanolamine (PPA) Products Liability Litigation, 2005 WL 3087855, at p. 3 (USDC, W.D.Wash., 2005, J. Rothstein), found at Kinsel Dec. Exhibit D.

**MEMORANDUM IN OPPOSITION TO AMIGA DELAWARE'S MOTION TO AMEND**
Cause No: 07-0631-RSM
- 5 -

**LAW OFFICES OF
WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Finally, even though Amiga Delaware has "merely" presented a motion to amend, it must still comply with FRCP 7(b) and state its grounds for amendment "with particularity." Waters v. Weyerhaeuser Mortgage Company, 582 F.2d 503, 507 (9th Cir. 1978). Given the fact that Amiga Delaware's proposed Amended Complaint expands from twenty-one to fifty-three pages, and includes substantially more exhibits,[2] Hyperion submits that Amiga Delaware has failed to meet this obligation.

**B.    HYPERION WOULD BE IMPROPERLY PREJUDICED BY THE PROPOSED AMENDED COMPLAINT**

If plaintiff is successful, Hyperion would be improperly prejudiced by Amiga Delaware's effort to change its sworn testimony regarding the factual basis for plaintiff's asserted rights under the November 3, 2001 Agreement. Indeed, a similar effort by a plaintiff to change its position through the vehicle of an Amended Complaint was denied by the United States District Court for the District of Nevada, and that denial was affirmed by the Ninth Circuit Court of Appeals:

> In the original complaint it was conceded that the contract was consummated on July 27, 1972. The amendment sought to allege the existence of a prior contractual relationship. To permit the amendment would allow the plaintiffs to litigate an issue they had earlier conceded, to the prejudice of the rights of the defendants. The undue delay and obvious prejudice to the defendants if the amendment were allowed convince us that there was no abuse of discretion in denying the second motion for leave to amend.

Waters v. Weyerhaeuser Mortgage, 582 F.2d at 507. In the case at bar, the "obvious prejudice" to Hyperion that would result from Amiga Delaware's stratagem should be rejected, and the motion to amend should be denied.

---

[2] For instance, Exhibit K to the proposed Amended Complaint, pp. 104-106, is an unsigned contract. Since ¶72 of the Amended Complaint presents that contract as a critical link in the ownership chain now asserted by Amiga Delaware, plaintiff has failed to explain why its proposed amendments are not futile.

MEMORANDUM IN OPPOSITION TO
AMIGA DELAWARE'S MOTION TO AMEND          - 6 -
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1    **C.      AMIGA DELAWARE CANNOT CONTRADICT ITS SWORN TESTIMONY**

2          As discussed in the Facts section above, Amiga Delaware actually presents <u>no</u>

3    testimony or other evidence to try to establish, for instance, that Mr. Bill McEwen was

4    incorrect when he testified that it is the position of both Amiga Washington and Amiga

5    Delaware that the 3 November 2001 Agreement had been assigned by Amiga Washington to

6    Itec, and then from Itec to Amiga Delaware.  There is, therefore, nothing but bald assertion to

7    support the request for permission to file an amended complaint, and it should be rejected.

8          However, even if Mr. McEwen had submitted a declaration that tried to explain away

9    both his prior testimony and the prior admission of record of counsel for Amiga Delaware, the

10   motion still must be denied under Ninth Circuit case law.  For instance, it is widely accepted

11   that a party's effort to contradict its prior sworn testimony in order to avoid summary judgment

12   dismissal will not be allowed:

13          A party cannot create a genuine issue of material fact to survive summary
            judgment by contradicting his earlier version of the facts.  [Cite omitted.]  A party
14          is normally bound by its stipulation of facts.

15   <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 419 n.2 (9th Cir. 2001).  The Ninth Circuit

16   explained this general principle in more detail in an earlier decision:

17          The general rule in the Ninth Circuit is that a party cannot create an issue of fact
            by an affidavit contradicting his prior deposition testimony.  [Cites omitted.]  "[I]f
18          a party who has been examined at length on deposition could raise an issue of fact
            simply by submitting an affidavit contradicting his own prior testimony, this
19          would greatly diminish the utility of summary judgment as a procedure for
            screening out sham issues of fact."  [Cites omitted.]
20
            Other circuits, however, have urged caution in applying this rule.   In <u>Kennett-</u>
21   <u>Murray Corp. v. Bone</u>, 622 F.2 887 (5th Cir. 1980), the Fifth Circuit stated:

22          The gravamen of the *Perma Research-Radobenko* line of cases is the
            reviewing court's determination that the issue raised by the contradictory
23          affidavit constituted a sham.  Certainly, every discrepancy contained in
            an affidavit does not justify a district court's refusal to give credence to
24          such evidence....  In light of the jury's role in resolving questions of
            credibility, a district court should not reject the content of an affidavit
25          even if it is at odds with statements made in an earlier deposition. . . .

26

MEMORANDUM IN OPPOSITION TO
AMIGA DELAWARE'S MOTION TO AMEND                    - 7 -
 Cause No:  07-0631-RSM

**LAW OFFICES OF
WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

> We conclude that the *Foster-Radobenko* rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony. Rather, the *Radobenko* court was concerned with "sham" testimony that flatly contradicts earlier testimony in an attempt to "create" an issue of fact and avoid summary judgment. Therefore, before applying the *Radobenko* sanction, the district court must make a factual determination that the contradiction was actually a "sham."

Kennedy v. Allied Mutual Insurance Co., 952 F.2d 262, 266-7 (9th Cir. 1991).

While the above cases deal with the summary judgment setting, there is no sound public policy reason why sworn testimony provided in support of a party's motion for a preliminary injunction should be dealt with any differently. This is especially the case when all of the parties to this suit know full well that that prior testimony and admission will form part of the basis for a summary judgment motion that will be filed by Hyperion.

In sum, the first conclusion to be drawn here is that the *Foster-Radobenko* rule applies in this case. Second, the Court should conclude that the proffered amendments are mere shams, for Amiga Delaware has failed completely to provide any actual evidence to support its bald assertion that there was no assignment of the 3 November 2001 Agreement, and that instead that Agreement had been "abandoned" by Eyetech, Amiga Washington and Hyperion. Finally, and based on this conclusion that Amiga Delaware's change in position is a mere sham, the court should deny the motion to amend on the basis of bad faith.

## D.    CAUSES OF ACTION #S 1 & 3 OF THE PROPOSED AMENDED COMPLAINT ARE FUTILE

A motion to amend should also be denied when the proposed amended complaint would be futile. Sorosky v. Burroughs Corp., 826 F.2d 794, 804-5 (9th Cir. 1987). In the case at bar, at least the proposed new causes of action numbered 1 and 3, found attached to Mr. Cock's declaration at ¶¶97-103 and ¶¶112-115, rely on some mysterious creation called a "2004 Arrangement." This "2004 Arrangement" is the thing that Amiga Delaware has devised to take the place of the 3 November 2001 Agreement. Remarkably enough, Amiga Delaware contends

MEMORANDUM IN OPPOSITION TO
AMIGA DELAWARE'S MOTION TO AMEND          - 8 -
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1 that this "2004 Arrangement" contains all of the same clauses as the 3 November 2001

2 Agreement. (*See, e.g.,* the proposed Amended Complaint at ¶¶88, 89.)

3       If this is the case, however, how does Amiga Delaware explain away the assignment

4 and subcontract requirements of §7.12 of the 2001 Agreement and this hypothesized "2004

5 Arrangement"? (*See* the proposed Amended Complaint at p. 61 for the relevant section of the 3

6 November 2001 Agreement.) Simply stated, Amiga Delaware provides no factual or legal

7 explanation for how the rights under the 2001 Agreement could be transferred to it without

8 compliance with that §7.12. Having failed to provide that explanation, and being prohibited

9 from changing its prior sworn testimony and admissions, the proposed amendment is futile.

10       Another example of futility relates to Amiga Delaware's claim that the 3 November

11 2001 Agreement was "abandoned." (*See* ¶63 of the proposed Amended Complaint.)

12 Noticeably absent from Amiga Delaware's motion papers is any discussion of the legal

13 requirements that must be met to establish such an abandonment. When one examines those

14 requirements, however, the absence of that discussion is no longer surprising because Amiga

15 Delaware cannot satisfy them:

16     Abandonment involves a mixed question of law and fact. <u>Martinson v. Publishers</u>

17 <u>Forest Products Co.</u>, 11 Wash.App. 42, 49, 521 P.2d 233 (1974). As stated in *Martinson:*

18         Conceptual difficulties arise from the terms employed to describe the action

19         taken by the parties to terminate performance under a contract.  The occurrence of the action is described as the occurrence of a fact;  yet the finding of abandonment gives rise to a legal conclusion and result.  The

20         classification of abandonment as a finding of fact or a conclusion of law has little impact, but realizing the existence of mutual intent to discontinue

21         performance is dispositive.

22     [Cite omitted.] As noted above, abandonment is premised upon the concept of mutual rescission of the contract as evidenced by the conduct, as opposed to

23     words, of the parties. [Cite omitted.] In an agreement of rescission, all parties to the contract must assent to its rescission and there must be a meeting of the minds.

24     [Cite omitted.] Accordingly, the primary element to be established is an actual intent to relinquish or part with the right or rights claimed to be abandoned. [Cite

25     omitted.]

26

MEMORANDUM IN OPPOSITION TO
AMIGA DELAWARE'S MOTION TO AMEND      - 9 -
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1

In the context of abandonment, the intent to rescind is derived from the objective conduct of the parties.  [Cite omitted.]

2

Schoneman v. Wilson, 56 Wash.App. 776, 784-5, 785 P.2d 845 (1990).  Stated most simply for

3

purposes of establishing futility, Amiga Delaware has completely failed to plead any actions or

4

intent that would establish an intent to discontinue the 3 November 2001 Agreement by

5

Eyetech .  (*See, e.g.,* proposed Amended Complaint at ¶61, which alleges no activity by

6

Eyetech that could be deemed abandonment.)  Having failed to pled the required facts related to

7

all relevant contracting parties, and having failed to provide any evidence to support such an

8

allegation if one had in fact been made, the proposed Amended Complaint is futile.[3]

9

10

Another example of the futility of the proposed Amended Complaint relates to the

11

alleged secured-creditor status possessed by Itec over Amiga Washington, which status Itec

12

allegedly transferred to Amiga Delaware through an unsigned contract.  (*See* proposed

13

Amended Complaint, at ¶¶53, 56, 69, 72 and 73 regarding the alleged secured creditor status,

14

and Exhibit K, pp. 104-106, for the unsigned contract "transferring" the same to Amiga

15

Delaware.  *See also* Kinsel Dec., ¶¶2-3 and Ex. A (showing the failure of Itec to perfect its

16

security interest).)  Because a financing statement must be filed to perfect security interests

17

under RCW 62A.9A.310(a), Amiga Delaware's claim to own all of Amiga Washington's assets

18

through "foreclosure" or otherwise must fail.

19

**E.     IF THE COURT GRANTS THE MOTION TO AMEND, HYPERION REQUESTS AT LEAST 30 DAYS IN WHICH TO PREPARE ITS AMENDED ANSWER AND AMENDED COUNTERCLAIMS**

20

21

If the Court overrules Hyperion's objections to the proposed Amended Complaint and

22

allows Amiga Delaware to file and serve the same, then Hyperion requests additional time in

23

which to prepare its Answer and Affirmative Defenses.  Hyperion further requests permission

24

to add to the scope of its counterclaims to reflect the fact that Amiga Delaware is expanding its

25

26

---

[3] To remove any potential ambiguity, it is Hyperion's position that the evidence establishes that none of the parties to the 3 November 2001 Agreement intended to abandon that contract.

MEMORANDUM IN OPPOSITION TO
AMIGA DELAWARE'S MOTION TO AMEND              - 10
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1    claims, without much discussion in its motion to justify the same.  For instance, proposed

2    Causes of Action #s 9 (alleged copyright violation) and 10 (indemnification) are entirely new.

3    Defendant needs an opportunity to review those claims and, if appropriate, add its own

4    counterclaims to, for instance, cancel the copyright registration and seek indemnification in its

5    own right.  Hyperion accordingly requests at least 30 days from the date of service in which to

6    file its Answer and Affirmative Defenses to the Amended Complaint, and in which to file its

7    Amended Counterclaims.

8         Finally, the Court should be aware that Hyperion currently has pending before the

9    Honorable Richard A. Jones a motion to consolidate a case titled Hyperion VOF v. Amino

10   Development Corporation, previously known as Amiga Washington, USDC Cause #07-1761

11   RAJ.  That motion is noted for hearing on December 28, 2007.  The case itself arose from the

12   fact that Amiga Washington resurrected its corporate status in Washington and changed its

13   name to Amino just prior to the six-year anniversary of the November 3, 2001 Agreement.

14   Because of a concern that a motion to amend the counterclaims to add Amiga Washington

15   could not be completed before the statute of limitations would run, Hyperion commenced a

16   separate suit.  While the Civil Cover Sheet noted that that matter was related to the case at bar,

17   the case was for some reason not assigned to this Court, which explains the current motion to

18   consolidate pending before Judge Jones.  Hyperion mentions these proceedings in conjunction

19   with this opposition because the joinder of Amiga Washington to this case could result in yet

20   further amendments to Amiga Delaware's pleading.  If so, it might be more efficient to stay the

21   filing of the proposed Amended Complaint until the joinder of Amiga Washington is resolved.

22   ///

23   ///

24   ///

25   ///

26

MEMORANDUM IN OPPOSITION TO
AMIGA DELAWARE'S MOTION TO AMEND                - 11 -
 Cause No:  07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1

## IV.   CONCLUSION

2      For all of the above reasons, Hyperion respectfully asks this Court to deny Amiga

3  Delaware's Motion to Amend.

4      DATED this 18th day of December, 2007.

5                                              KINSEL LAW OFFICES, PLLC

6                                              By: /s/ William A. Kinsel
7                                                    William A. Kinsel, WSBA #18077
                                               Attorney for Defendant Hyperion VOF
8                                                    William A. Kinsel, Esq.
                                                 Kinsel Law Offices
9                                                 2025 First Avenue, Suite 440
                                                 Seattle, WA  98121
10                                                Phone:  (206) 706-8148
                                                 Fax:      (206) 374-3201
11                                                Email:  wak@kinsellaw.com
    527p.doc
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**MEMORANDUM IN OPPOSITION TO**
**AMIGA DELAWARE'S MOTION TO AMEND**                - 12 -
  **Cause No:  07-0631-RSM**

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148