1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT
9           WESTERN DISTRICT OF WASHINGTON AT SEATTLE

10   AMIGA, INC., a Delaware corporation,

11                          Plaintiffs,                 No. 07-0631-RSM

12        v.                                            **DECLARATION OF WILLIAM A.
                                                        KINSEL IN OPPOSITION TO AMIGA
13   HYPERION VOF, a Belgian corporation,               DELAWARE'S MOTION TO QUASH
                                                        SUBPOENA TO CAIRNCROSS &
14                          Defendant.                  HEMPELMANN**

15   HYPERION VOF, a Belgian General                    **Note on Motion Calendar: 1/11/08**
     Partnership,
16
                            Counterclaim Plaintiff,
17
          v.
18
     ITEC, LLC, a New York Limited Liability
19   Company,

20                          Counterclaim Defendant.

21

22        William A. Kinsel, under penalty of perjury, declares and states as follows:

23        1.       I am counsel for defendant/counterclaim plaintiff Hyperion VOF.  I am over the

24   age of 18.  I have personal knowledge of the matters stated herein and am competent to testify.

25

26

DECLARATION OF WILLIAM A. KINSEL                        LAW OFFICES OF
IN OPPOSITION TO AMIGA DELAWARE'S               WILLIAM A. KINSEL, PLLC
MOTION TO QUASH SUBPOENA - 1                          MARKET PLACE TOWER
                                                    2025 First Avenue, Suite 440
                                                  SEATTLE, WASHINGTON 98121
                                                          (206) 706-8148

Dockets.Justia.com

2.    Hyperion's subpoena duces tecum and its accompanying cover letter are attached hereto as Exhibit 1. In my cover letter I volunteered to review responsive materials at the deponent's offices before it spent time making unnecessary copies. I specifically asked the Cairncross & Hempelmann firm to call me. (Ex. 1, p. 1.) I never received such a call. If Cairncross & Hempelmann had done so and expressed concerns about the subpoena, I would have agreed to a request for additional time in which to respond to the subpoena, and I would have informed the firm that it should feel free to assert the attorney/client privilege with respect to its billing records.

3.    Attached hereto as Exhibit 2 is the first page of the docket for Thendic Electronics v. Amiga, C03-03RSL. That docket discloses that Cairncross & Hempelmann represented Amiga Washington. I have searched the federal court's Pacer system and have found no other federal lawsuit in which Cairncross & Hempelmann represented Amiga Washington. While I have discovered other judgments entered against Amiga Washington in King County Superior Court, all of those were default judgments where Amiga Washington had no disclosed legal representation.

4.    Based on the above investigation, it appears that Cairncross & Hempelmann represented Amiga Washington in only one lawsuit, and it is a lawsuit which is demonstrably relevant to the question of Amiga Washington's solvency. For instance, while discovery materials are not filed with the court, Cairncross & Hempelmann should have ready access to the discovery materials exchanged in that case. Furthermore, because Cairncross & Hempelmann should have already segregated the privileged materials from the produced discovery in the *Thendic* litigation, there is no reason to expect that Cairncross & Hempelmann would have to repeat that effort now.

DECLARATION OF WILLIAM A. KINSEL
IN OPPOSITION TO AMIGA DELAWARE'S
MOTION TO QUASH SUBPOENA - 2

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

5.      Attached hereto as Exhibit 3 is a true and accurate copy of the Washington Corporations – Registration Data Search for Amiga Washington, which was run on May 4, 2007. It shows that Amiga Washington was active from September 30, 1999 to September 30, 2004, and that at least at the end of that period Cairncross & Hempelmann was that company's registered agent.

6.      True and accurate copies of the "Loan Facility Agreement" dated May 22, 2003 between Amiga Washington and Itec, and the "Agreement on Acquisition of Software, Content, Corporate Name and Brand, Logo, Trademarks, Domain Names, Patent Rights and Other Intellectual Property" dated August 30, 2004, which documents were obtained from Amiga Delaware in this case, are attached hereto as Exhibits 4 and 5

7.      Attached hereto as Exhibit 6 is a true and accurate copy of an "Acknowledgment of Information Search" that I obtained from the Washington Department of Licensing on July 19, 2007. Exhibit 6 provides a listing of all financing statements and liens for Amiga, Inc. The only secured party listed is the law firm of Cairncross & Hempelmann.

8.      The secured party search I conducted, as recorded on Exhibit 6, was on the company that is referred to in this litigation as Amiga Washington. This is confirmed by Exhibit 6, which lists the debtor's UBI number as 601983734, and Exhibit 3, which is a true and accurate copy of a Registration Data Search page on Amiga Washington obtained on May 4, 2007. As can be seen from Exhibit 3, Amiga Washington's UBI number is also listed there as 601983734.

9.      Cairncross & Hempelmann was removed as the registered agent of Amiga Washington once that company was revived in the summer of 2007. This can be seen from

DECLARATION OF WILLIAM A. KINSEL
IN OPPOSITION TO AMIGA DELAWARE'S
MOTION TO QUASH SUBPOENA - 3

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1 | Exhibits 7 and 8 hereto, which are true and accurate copies of Registration Data Searches run

2 | on Amiga Washington on August 29 and October 11, 2007.

3 |     10.    Again, Amiga Washington was dissolved on September 30, 2004, and was

4 | inactive for many years thereafter. There is no reason to believe that a moribund Amiga

5 | Washington took independent care of its documents, and certainly in its moving papers

6 | Amiga Delaware has not asserted that it has possession of those materials. Because of this,

7 | there is good reason to believe that Cairncross & Hempelmann may be the only entity in

8 | possession of many of the documents subject to Hyperion's subpoena.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.**

_January 8, 2008_
Date

_William A. Kinsel_
William A. Kinsel

_Seattle, WA_
Place

530p.doc

DECLARATION OF WILLIAM A. KINSEL
IN OPPOSITION TO AMIGA DELAWARE'S
MOTION TO QUASH SUBPOENA - 4

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

# KINSEL LAW OFFICES, PLLC

MARKET PLACE TOWER
2025 FIRST AVENUE, SUITE 440
SEATTLE, WASHINGTON 98121

WILLIAM A. KINSEL
ADMITTED IN:
WASHINGTON & OREGON

December 14, 2007

TEL (206) 706-8148
FAX (206) 374-3201

wak@KinselLaw.com

VIA HAND DELIVERY

COPY RECEIVED

DEC 2 1 2007

CAIRNCROSS & HEMPELMANN

Scott T. Bell
Cairncross & Hempelmann PS
524 Second Avenue, Suite 500
Seattle, WA 98104-2323

Re:    **Amiga, Inc., a Delaware Corp. v. Hyperion VOF v. Itec LLC**
       **Subpoena Duces Tecum**

Dear Mr. Bell:

Enclosed you will find a subpoena duces tecum directed to your firm for the production of all documents, not privileged, related to Amiga, Inc., *a Washington corporation*, which is also known as Amino Development Corporation.

Your firm was for a period of time the registered agent for this Washington entity, and I believe that you were their counsel. Depending on the quantity of responsive materials, I may simply want to come review the documents in your offices before they are produced, so please call me before you go to any copying expense.

Thank you in advance for your anticipated cooperation.

Very truly yours,

KINSEL LAW OFFICES

William A. Kinsel

Enclosure

cc:    Hyperion VOF
       Lawrence Cock, counsel for Amiga Delaware

121407c1

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

WESTERN _____ DISTRICT OF _____ WASHINGTON

AMIGA, INC., a Delaware corporation,

V.

**SUBPOENA IN A CIVIL CASE**

HYPERION VOF, a Belgian General Partnership,

Case Number:[1]  07-0631

**COPY RECEIVED**

DEC 2 1 2007

CAIRNCROSS & HEMPELMANN

TO:  CAIRNCROSS & HEMPELMANN PS
Attn:  Scott T. Bell, Registered Agent
524 Second Avenue, Suite 500
Seattle, WA 98104-2323

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

All documents, not privileged, related to Amiga, Inc., a Washington Corporation, a/k/a Amino Development Corporation

| PLACE    Law Offices of William A. Kinsel, 2025 First Avenue, Suite 440, Seattle, WA  98121 | DATE AND TIME *Friday, January 4, 2008 at 1:30 PM* |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *William A. Kinsel*    Attorney for Hyperion VOF | 12/14/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
William A. Kinsel, Kinsel Law Offices, 2025 First Avenue, Suite 440, Seattle, WA  98121        Phone:  (206) 706-8148

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

Exhibit 1, Page 6

AO88  (Rev. 12/06, Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

COPY RECEIVED

DEC 2 1 2007

CAIRNCROSS & HEMPELMANN

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
   (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
   (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
   (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
   (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

CLOSED

# U.S. District Court
## United States District Court for the Western District of Washington (Seattle)
### CIVIL DOCKET FOR CASE #: 2:03-cv-00003-RSL

Thendic Electronics, et al v. Amiga Inc
Assigned to: Hon Robert S. Lasnik
Demand: $0
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 01/02/2003
Date Terminated: 02/20/2004
Jury Demand: None
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

### Plaintiff

**Thendic Electronics Components**
*a foreign corporation*

represented by **Richard John Hughes**
HUGHES GROUP
825 CLEVELAND AVENUE
MT VERNON, WA 98273
360-348-0481
Email: rhughes@isomedia.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Genesi Sarl**
*a foreign corporation located in Paris,*
*France*

represented by **Richard John Hughes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**Amiga Inc**
*a corporation in the state of*
*Washington*

represented by **Diana S Shukis**
CAIRNCROSS & HEMPELMANN
524 2ND AVE
STE 500
SEATTLE, WA 98104-2323
206-587-0700
Fax: FAX 587-2308
Email: dshukis@cairncross.com
*TERMINATED: 10/03/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen P VanDerhoef**
CAIRNCROSS & HEMPELMANN
524 2ND AVE
STE 500
SEATTLE, WA 98104-2323
206-587-0700
Fax: FAX 587-2308
Email: svanderhoef@cairncross.com

Exhibit 2, Page 8

Corporations: Registration Detail

Page 1 of 2



CORPOR

HOME

Corporations Menu

» Print Page

Enter Keywords          Se

## Corporations Division - Registration Data Search

**AMIGA, INC.**

| | |
|---|---|
| UBI Number | 601983734 |
| Category | Regular Corporation |
| Profit/Nonprofit | Profit |
| Active/Inactive | Inactive |
| State of Incorporation | WA |
| Date of Incorporation | 09/30/1999 |
| License Expiration Date | 09/30/2004 |

**Registered Agent Information**

| | |
|---|---|
| Agent Name | CAIRNCROSS & HEMPELMANN PS |
| Address | 524 SECOND AVE #500 |
| City | SEATTLE |
| State | WA |
| ZIP | 981042323 |

**Special Address Information**

| | |
|---|---|
| Address | |
| City | |
| State | |
| Zip | |

« Return to Search List

**Disclaimer**
Information in the Secretary of State's Online Corporations Database is updated Monday through Friday by 5:0
Pacific Standard Time (state holidays excluded). Neither the State of Washington nor any agency, officer, or er

## LOAN FACILITY AGREEMENT

This agreement made on May 22, 2003 is between Itec LLC (Lender) located at 102 Prince Street, New York, NY 10012 and Amiga Inc. (Borrower) located at 24403 256th Avenue SE, P.O. Box 887 Ravensdale, WA 98051.

Whereas Amiga Inc. has been unable to secure funding necessary to continue operating as a viable business,

Whereas the management of Amiga believes that it will be able to arrange required funding within a period of at most one year.

Whereas Amiga Inc. will require immediate and on going funding to keep itself 'afloat' while finding a permanent funding solution or restructuring of its business.

Whereas Amiga Inc. has significant unsecured debts, including salaries owed to employees, which the company is unable to pay unless it has the time and money to raise the required funding.

Whereas Itec LLC is a venture capital company familiar with the business area and field of software technology of Amiga Inc., and is in the business of providing bridge funding to start up companies, including companies in financial distress.

Whereas Itec LLC has to date loaned 75,750 dollars to Amiga Inc. to help keep the company 'afloat'.

Now, therefore, it is agreed that Itec LLC will provide a loan facility of 175,000 US dollars to Amiga Inc. including the monies already advanced (75,750 dollars) which hereby become part of this loan facility agreement. The additional loans will be provided in such amounts and at such times as requested by Mr. William McEwen, the CEO of Amiga Inc. up to the total amount of $175,000 during the period from May 22, 2003 to the due date of May 22, 2004.

1. <u>Transfer of Funds.</u> Itec LLC will make funds available in installments at the request of Mr. McEwen and in such amounts and to such accounts as requested by him, up to the total amount of 175,000 dollars. The amount transferred is added to the outstanding loan balance, and the accrued interest on the transferred money is added to the outstanding accrued interest balance.

2. <u>Interest</u>. All the monies loaned by Itec LLC to Amiga Inc. pursuant to this agreement will be paid back with an accrued interest at an annual rate of 12 percent. All computations of interest shall be made on the basis of a year of 365 days for the actual number of days (including the first day, not excluding the last day) from the day Itec LLC has transferred an installment of the loan to an account designated by Mr. William McEwen to the due date of May 22, 2004.

3. <u>Payment.</u>  The outstanding loan balance and the outstanding interest balance become due and are payable in full on May 22, 2004.

4. <u>Prepayment</u>.  Borrower may prepay its obligations under this agreement in full or in part at any time or from time to time without premium or penalty.

5. <u>**Attorneys Fees, and Other Costs and Expenses**</u>.  Borrower agrees to pay all costs and expenses which the Lender may incur by reason of any failure to pay sums evidenced hereby when due, including, without limitation, reasonable attorneys fees with respect to legal services relating thereto and to a determination of any right or remedies of the Lender under this Agreement, and reasonable attorneys fees relating to any actions or proceedings which the Lender may institute or in which the Lender may appear or participate and in any reviews of and appeals therefrom, and the reasonable costs of searching records and determining rights in or title to or liens upon any collateral, and all such sums shall be secured hereby.  Any judgment recovered by the Lender hereon shall bear interest at the rate set forth herein, but not to exceed the highest rate then permitted by law.

6. <u>**The Use of Proceeds**</u>.  It is agreed that the use of the loan proceeds is solely at the discretion of Mr. William McEwen for such purposes as he determines are necessary to keep Amiga Inc. 'afloat', including payments to himself as the sole officer of the company.

7. <u>**Indemnification with Respect to Use of Proceeds**</u>.  It is further agreed that Amiga Inc. and Mr. William McEwen indemnify and hold harmless the lender with respect to any claims or disputes that may arise with respect to the use of the loaned funds.

8. <u>Security</u>.  All the monies loaned to the borrower pursuant to this loan agreement will be fully secured by a first security interest in all the intellectual property of Amiga Inc, including but not limited to the source code, object code and software of the so-called Amiga Content Engine, various titles of games and other titles of content owned by Amiga Inc, as well as the name, the trademark and the brand Amiga, and the Amiga logo, as further specified in a separate <u>Security Agreement</u> between the two parties.

9. <u>**Default on the Security Agreement**</u>.  The occurrence of any of the following shall constitute an "Event of Default Under the Security Agreement".

   (a) the breach of any material condition or obligation under the Security Agreement and the continuation of such breach for 30 days after receipt of notice thereof; or
   (b) the filing of a petition by or against the Borrower under any provision of the Bankruptcy Reform Act, Title 11 of the United States Code, as

foreclose on all the assets that secure the loan pursuant to the loan agreement and the security agreement.

15. **Penalty Interest**. If the loan is not fully paid with interest on May 22, 2004, it is agreed that the amount owed, including accrued interest as of May 22, 2004 accrues interest at a penalty rate of 16 percent annual to be computed daily (based on a year of 365 days) until such time that the lender has obtained a free and clear title to all the assets that secure its loan to the borrower.

16. **Maximum Interest**. Notwithstanding any other provisions of this Note, interest, fees and charges payable by reason of the indebtedness evidenced hereby shall not exceed the maximum, if any, permitted by governing law.

17. **Indemnification**. It is recognized that in making the loan agreement, the lender relies on warrants and representations of the borrower and Mr. McEwen with respect to all issues relevant to the loan agreement and the security agreement, including but not limited to his stated authority to enter such agreements on behalf of Amiga Inc., and Mr. McEwen explicately indemnifies and holds harmless Itec LLC and Dr. Pentti Kouri against any claims or disputes concerning the loan agreement, the security agreement, the use of the loan proceeds, or, in case of failure by the borrower to pay the loan back in full with interest on May 22, 2004, the foreclosure on the assets of Amiga Inc. by the lender.

18. **Transferability**. It is further agreed that Itec LLC may, at its sole discretion, freely transfer or sell the loan to another entity with all the terms, conditions and provisions of the loan agreement and the security agreement remaining in full force and enforcible by the entity to which Itec LLC has transferred or sold the loan, the loan agreement and the security agreement.

19. **Other**. It is further agreed that the loan agreement and the security agreement are not affected and remain in full force, if Itec LLC enters other agreements with Amiga Inc., or any other party or contractor affiliated with Amiga Inc., and that any assistance by Itec LLC to suggest and help to secure permanent funding for Amiga Inc. cannot and is not construed as changing or modifying this loan facility agreement or the security agreement in any way or form in any of its provisions.

20. **Applicable Law**. This Agreement is made with reference to and is to be construed in accordance with the laws of the State of Washington, without regard to that state's choice of law rules. Borrower agrees that the venue of any action in connection herewith may be laid in or transferred to King County, Washington, at the option of the Lender.

NOTICE; ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING

amended or recodified from time to time, or under any similar law relating to bankruptcy, insolvency or other relief for debtors; or appointment of a receiver, trustee, custodian or liquidator of or for all or any part of the assets or property of the Borrower or the making of a general assignment for the benefit of creditors by the Borrower.

10. **Remedies on Borrower Default on the Security Agreement**. After an Event of Default, the interest rate on all amounts due and owing shall be 16% per annum. Upon the occurrence of any Event of Default, the Lender, at its option, May (a) by notice to the Borrower, declare the unpaid principal amount of this Note, all interest accrued and unpaid hereon and all other amounts payable hereunder to be immediately due and payable, whereupon the unpaid principal amount of this Note, all such interest and all such other amounts shall become immediately due and payable, without presentment, demand, protest or further notice of any kind, provided that if an Event of Default shall occur, the result which would otherwise occur only upon giving of notice by the Lender to the Borrower as specified above shall occur automatically, without the giving of any such notice; and (b) whether or not the actions referred to in clause (i) have been taken, exercise any or all of the Lender's rights and remedies available to the Lender under the Security Agreement and applicable law.

11. **Total Loan Amount**. If the amount advanced by the lender to the borrower is less than 175,000 dollars, the security agreement applies to the amount actually advanced, and all the other terms and conditions of the loan agreement remain in force as specified in this agreement.

   If, at the request of the borrower, and at the sole discretion of the lender, the amount of monies actually advanced is in excess of 175,000 dollars, the terms and conditions of this loan agreement as well as the security agreement apply in every respect, except for the amount of the loan, to such higher amount.

12. **Notice of Payment**. The lender will provide a full accounting of all monies advanced to the borrower by means of transfers to accounts designated by Mr. McEwen on behalf of the borrower, subject to this loan agreement with accrued interest on each installment, as well as a computation of the total amount to be paid on May 22, 2004 on or about May 15, 2004. Such accounting will be provided by e-mail, which is accepted by the borrower to be sufficient, and by registered mail.

13. **Sufficiency of Notice**. The sending of the accounting information is agreed to be sufficient and complete notification by the lender that all the monies owed with interest, in the total amount provided by the lender, are due and are to be fully paid no later than May 22, 2004.

14. **Default on Loan Payment**. If the borrower does not pay the full amount owed on or before May 22, 2004, it is agreed that the Lender can at its sole discretion

foreclose on all the assets that secure the loan pursuant to the loan agreement and the security agreement.

15. **Penalty Interest**. If the loan is not fully paid with interest on May 22, 2004, it is agreed that the amount owed, including accrued interest as of May 22, 2004 accrues interest at a penalty rate of 16 percent annual to be computed daily (based on a year of 365 days) until such time that the lender has obtained a free and clear title to all the assets that secure its loan to the borrower.

16. **Maximum Interest**. Notwithstanding any other provisions of this Note, interest, fees and charges payable by reason of the indebtedness evidenced hereby shall not exceed the maximum, if any, permitted by governing law.

17. **Indemnification**. It is recognized that in making the loan agreement, the lender relies on warrants and representations of the borrower and Mr. McEwen with respect to all issues relevant to the loan agreement and the security agreement, including but not limited to his stated authority to enter such agreements on behalf of Amiga Inc., and Mr. McEwen explicately indemnifies and holds harmless Itec LLC and Dr. Pentti Kouri against any claims or disputes concerning the loan agreement, the security agreement, the use of the loan proceeds, or, in case of failure by the borrower to pay the loan back in full with interest on May 22, 2004, the foreclosure on the assets of Amiga Inc. by the lender.

18. **Transferability**. It is further agreed that Itec LLC may, at its sole discretion, freely transfer or sell the loan to another entity with all the terms, conditions and provisions of the loan agreement and the security agreement remaining in full force and enforcible by the entity to which Itec LLC has transferred or sold the loan, the loan agreement and the security agreement.

19. **Other**. It is further agreed that the loan agreement and the security agreement are not affected and remain in full force, if Itec LLC enters other agreements with Amiga Inc., or any other party or contractor affiliated with Amiga Inc., and that any assistance by Itec LLC to suggest and help to secure permanent funding for Amiga Inc. cannot and is not construed as changing or modifying this loan facility agreement or the security agreement in any way or form in any of its provisions.

20. **Applicable Law**. This Agreement is made with reference to and is to be construed in accordance with the laws of the State of Washington, without regard to that state's choice of law rules. Borrower agrees that the venue of any action in connection herewith may be laid in or transferred to King County, Washington, at the option of the Lender.

NOTICE; ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING

REPAYMENT OF DEBT ARE NOT TO BE ENFROCEABLE UNDER WASHINGTON LAW.


Lender:                                    Borrower:

Itec LLC                                   Amiga Inc.



Dr. Pentti Kouri, Managing Member          Bill McEwen, President

FROM :GARRY HARE          FAX NO. :4154592448          Sep. 28 20

## AGREEMENT ON ACQUISITION OF SOFTWARE, CONTENT, CORPORATE NAME AND BRAND, LOGO, TRADEMARKS, DOMAIN NAMES, PATENT RIGHTS AND OTHER INTELLECTUAL PROPERTY ("AGREEMENT")
### AUGUST 30, 2004

This Agreement is made on the 30th day of August 2004 by and between **KMOS** Inc. a Delaware corporation ("KMOS") with its address at 225 Foster Avenue, Kentfield, CA 94904 and **Amiga Inc.**, a Washington corporation ("Amiga") with its address at 24403 256th Avenue SE, P.O. Box 887, Ravensdale, WA 98051.

### Recitals

A.  Amiga is in default of a Loan Facility Agreement between it and Itec LLC dated May 11, 2003 and a related Security Agreement between the same parties dated July 3, 2003.

B.  KMOS, Inc. has subsequently acquired all right, title and interest of Itec LLC under said Loan Facility Agreement and Security Agreement, as a result of which KMOS now has the right and to foreclose on all intellectual property of Amiga pursuant to said Loan Facility Agreement and Security Agreement.

C.  Amiga has been unable to obtain funding to continue the business of Amiga, and Amiga at present has no money to meet its obligations or to pay for additional legal expenses, including legal expenses of bankruptcy.

D.  KMOS and Amiga have agreed to resolve the issue of Amiga's default, as hereinafter set forth, in a manner that is fair to other secured and senior creditors of Amiga including the employees of Amiga.

### Agreement

1.  **Assignment of Assets.** For good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Amiga hereby transfers and assigns to KMOS all of Amiga's right, title and interest in the following assets:

(a) all rights to and revenue accruing to the intellectual property of Amiga Inc., including but not limited to all software, applications and services for the Amiga Operating System versions 1.0 through and including version 4.0, as well as AmigaDE products and services, including the Amiga Anywhere Content Engine (AACE), Amiga Anywhere and associated services within the DE family of products (listed in Schedule I);

Exhibit 5, Page 16

(b) all titles of content, including but not limited to the AmigaDE applications/games (listed in Schedule II);

(c) ownership and all rights to the corporate and brand name "Amiga" the Amiga Logo, all "Amiga" trademarks, all "Amiga" domain names;

(d) all rights pursuant to agreements with Amiga developers, and licensees;

(e) all rights pursuant to the "Non-Exclusive Patent License Agreement" dated December 1999 between Amiga Development LLC, a wholly-owned subsidiary of Gateway, Inc. and Amino Development Corporation, now called Amiga Inc.; and

(f) all and any other tangible rights, goodwill and intellectual property of Amiga,

2.  **Payment.** It is agreed by the two parties that payment in full for the purchase of all the Intellectual Property per this Agreement consists of (a) Cash advances made to Amiga, under the Loan Facility Agreement, totaling Two Hundred Seventy Four Thousand Four Hundred Twenty Two Dollars (US $270,422.00) as of the effective date of this Agreement, and (b) four million (4,000,000) shares of KMOS common stock.

3.  **Delivery of Documentation and Assignments.** Amiga agrees to deliver to KMOS no later than September 2, 2004 physical documentation of all Amiga software including but not limited to the Amiga Operating System, and the AmigaDE and related software, as well as all content hereby assigned and duly executed and notarized assignment forms in the form attached hereto.

4.  **Use of Amiga Name, Brand, Logo, Trademarks and Domain Names.** Amiga agrees that no later than September 2, 2004, Amiga Inc. will change its name to one not including the word "Amiga", that it will cease to use the Amiga name or the Amiga Logo in any of its activities, products, websites or corporate entities and documents, and that it will ensure that no affiliated entities (including but not limited to those referenced in Subsection 1 (e) continue to use the Amiga name in any way.

5.  **Revenue from Existing Amiga Contracts and Licensees.** Amiga agrees that, effective immediately upon the signing of this Agreement, any and all revenue to Amiga from existing contracts and licenses including, for the use of the Amiga name, Logo's, Trademarks, Content, AmigaDE content and services, as well as associated Amiga Operating System revenues including but not limited to the contract between Amiga and Hyperion BV and Eyetech Ltd., will belong to and will be paid directly to KMOS. Amiga agrees immediately to notify all entities or persons owing such contract payments, in

FROM :OFFRY HERE                FAX NO. :4154592440            Sep. 08 2004 09:16AM  P3

writing, of this assignment and to direct that all future payments be made directly to KMOS. Copies of such notices shall be sent to KMOS.

6.  **Representations and Warranties by Amiga.** Amiga represents and warrants to KMOS as follows:

    (a) Authority of Amiga. Amiga has full power and authority to enter in this Agreement and to consummate the transactions contemplated herein and therein. This Agreement has been duly executed and delivered by Amiga and is or upon execution will be a valid and legally binding obligation of Amiga in accordance with its terms. Neither the execution of this Agreement nor the consummation of the transactions contemplated herein or therein will constitute or cause a breach or violation of a covenant or obligation binding upon Amiga or affecting assets hereby assigned.

    (b) Title to Assets. Amiga has complete and unrestricted power to sell, assign and deliver to KMOS unencumbered marketable title to the assets hereby assigned by Amiga.

    (c) Satisfaction of Amiga Obligations. Amiga's entering in this Agreement with KMOS will enable it to meet its obligations to other secured and senior creditors and employees.

7.  **Representations and Warranties by KMOS.** KMOS represent and warrant to Amiga that KMOS has full power to enter into this Agreement and to consummate the transactions contemplated herein, and neither the execution of this Agreement nor the consummation of the transactions contemplated herein will constitute or cause a breach or violation of any covenant or obligation binding upon KMOS.

8.  **Indemnification.** Amiga hereby indemnifies and holds KMOS harmless against and with respect to any claim, liability, obligation, loss, damage, assessment, judgment, cost or expense (including, without limitation, reasonable attorneys' fees and costs and expenses reasonably incurred in investigating, preparing, defending against or prosecuting said litigation or claim, action, suit, demand, arbitration proceeding or other proceeding), of any kind or character, arising out of or in any manner incident, relating or attributable to: (i) any material inaccuracy in a representation or any breach of a warranty of Amiga contained in this Agreement or otherwise made or given in connection with this Agreement, (ii) any failure by Amiga substantially to perform or observe, or to have substantially performed or observed, in full, any covenant, agreement or condition to be performed or observed by it under this Agreement or under any certificate or other document or agreement executed by Amiga in connection with this Agreement or (iii) the reliance by KMOS on other information furnished by Amiga.

FROM :GARRY HARE                    FAX NO. :4154592448                Sep. 28 22

9.  **General Provisions.**

(a) <u>Governing Law</u>. This Agreement shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of California.

(b) <u>Successors and Assigns</u>. All of the terms and provisions of this Agreement by or for the benefit of the parties shall be binding upon and inure to the benefit of their successors, assigns, heirs and personal representatives.

(c) <u>Counterparts</u>. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed original but all of which together shall constitute one and the same Agreement.

(d) <u>Notices</u>. All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been duly given (except as may otherwise be specifically provided herein to the contrary) if delivered by hand and receipted for by the party to whom said notice or other communication shall have been directed or mailed by certified or registered mail with postage prepaid.

(e) <u>Attorneys Fees</u>. All legal fees charged by the parties' respective counsel in reviewing such draft documents shall be borne by the party having engaged such counsel. In the event that litigation is thereafter commenced to interpret or enforce this Agreement, the prevailing party herein shall be entitled to recover its costs of suit, including reasonable attorney's fees.

(f) <u>Satisfaction of Claims</u>. KMOS agrees that Amiga's full performance under this Agreement shall constitute a satisfaction of Amiga's rights and claims under said Loan Facility Agreement and Security Agreement.

In witness whereof, the parties have executed this Agreement as of the effective date hereinabove set forth.

*For KMOS, Inc.*                                    *For Amiga, Inc.*


Garry Hare, CEO                                    Bill McEwen, CEO

Exhibit 5, Page 19

## AmigaDE Technology Inventory

The AmigaDE (Digital Environment) is a set of technologies which aim to provide a total content solution which provides the following services to a customer;

1. A growing set of high quality entertainment, productivity and communications content provided by over 3000 registered developers.
2. A hardware agnostic runtime environment
3. An end user environment that can be customised, skinned, branded and themed.

## AmigaDE products

1. AmigaDE Software Development Kit (SDK)
2. AACE Player
3. Gamecards
4. Host Dressed Standalone Packages
5. Over 30 third party pieces of content
6. A set of internally developed productivity, communication and entertainment applications

## AmigaDE Inventory

1. Deployer (multi target runtime environment builder)
   a. Windows
   b. Linux
   c. PocketPC
   d. Smartphone
2. Packager - content packager
3. CASS (Core Amiga Services Set)
   a. Shipping service
      i. Trailers
      ii. Packages
   b. Content service
   c. Organisation service
      i. Pluggable Patterns
   d. Semantic service
      i. Description Sets
      ii. Collections
      iii. Vocabularies
   e. Activity service
   f. Storage service
   g. AmiDB inverted list database
4. D2 (Configurable User content centric environment)
5. Ami2D
   a. Scaling service
   b. Sprites and Bobs service
   c. Prism – reconfigurable user environment
   d. Pix font service
   e. Matrix Transformation service

6. Bones – GUI toolkit
7. RPAs – Reactive Presentation Agents
8. Applications
   a. MP3 player
   b. Media player
   c. PhotoViewer
   d. Calculator

Inventory currently in development

1. Organiser
   a. Contacts
   b. Diary
   c. NoteTaker
2. All Format Communication Client
   a. AudioPhone
   b. VideoPhone
   c. XMS
   d. Instant Messaging
   e. Email
   f. Message Manager
3. MediaManager
   a. Audio
   b. Video
   c. Picture
   d. Broadcast
   e. Librarian

FROM : GARRY HARE                    FAX NO. : 4154502440                    Sep.  28 28

## ASSIGNMENT OF CORPORATE NAME AND BRAND "AMIGA" AND AMIG

WHEREAS, Amiga Inc., a corporation organized under the laws of the State of Washington, United States of America, with its principal place of business at 24403 256th Avenue SE, P.O. Box 887, Ravensdale, WA 98051, owns and uses and has used the name "Amiga" as its corporate names of various subsidiaries, as well as a brand and name of products, and has licensed the same to third parties to be used in their products (such as Amiga One).

WHEREAS, Amiga Inc. owns and uses the Amiga Logo in products, websites, and various corporate documents.

WHEREAS, KMOS Inc., 225 Foster Avenue, Kentfield, CA 94904, wishes to acquire all rights, title and interest to the corporate name and brand "Amiga" and the Amiga Logo together with the goodwill symbolized by the same.

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Amiga Inc., hereby assigns to KMOS Inc. all rights, title and interest in and to the corporate name and brand "Amiga" and the Amiga Logo, together with the goodwill associated with the same.

FURTHER, it is agreed that
    (i)      Amiga Inc. will change its corporate name and the names of all subsidiaries and/or affiliates using the name and will no longer use the name "Amiga" in any way whatsoever effective immediately with the signing of this assignment.
    (ii)    Amiga Inc. will not use the brand "Amiga" in any new software or hardware products.
    (iii)   Amiga Inc. will no longer use the Amiga Logo in any new software or hardware products, websites or corporate documents.
    (iv)   Amiga Inc. will assign to KMOS Inc. all licensing agreements with third parties with respect to the use of the "Amiga" brand.

AMIGA Inc.

By

Bill McEwen

President

FROM :GARRY HARE                    FAX NO. :4154592440              Sep. 09 20

STATE OF WASHINGTON

KING COUNTY

Bill McEwen, hereby duly sworn, acknowledges that he is the President of Amiga Inc and has
authority to execute this assignment on behalf of Amiga Inc.

Subscribed and sworn to before me this ___30th___ day of

__August 2004__ .

Stephanie M Strickland

Notary Public in and for the State of Washington

My commission expires: Feb. 20, 2008

Exhibit 5, Page 23

FROM :GARRY HARE                    FAX NO. :4154532440              Sep. 08 20

## ASSIGNMENT OF TRADEMARKS

WHEREAS, Amiga Inc., a corporation organized under the laws of the State of Washington, United States of America, with its principal place of business at 24403 256th Avenue SE, P.O. Box 887, Ravensdale, WA 98051, has used and is using the trademarks set forth in the attached Exhibit A and all common law marks directly related to the business of Amiga Inc. and Amiga International, Inc (collectively referred to as the "Amiga Marks");

WHEREAS, KMOS Inc., 225 Foster Avenue, Kentfield, CA 94904, wishes to acquire all rights, title and interest Amiga Inc., has in and to the Amiga Inc., together with the goodwill symbolized by the Amiga Marks;

WHEREAS, Amiga Inc. is willing to assign the Amiga Marks subject to a non-exclusive license to use the Amiga Marks as specifically set forth in the Trademark License Agreement between Amiga Inc. and Amino Development Corporation,

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Amiga Inc., hereby assigns to KMOS Inc., all rights, title and interest in and to the Amiga Marks, together with the goodwill of the business associated with the Amiga Marks. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

AMIGA Inc.

By: _____

Bill McEwen
President

Exhibit 5, Page 24

STATE OF WASHINGTON

KING COUNTY

Bill McEwen, hereby duly sworn, acknowledges that he is the President of Amiga Inc., and has authority to execute this assignment on behalf of Amiga Inc.

Subscribed and sworn to before me this _____30th_____ day of
August 2004 .

Stephanie M Strickland

Notary Public in and for the State of Washington

My commission expires: Feb. 20, 2008

FROM :GERRY HART                    FAX NO. :4154592440                    Sep. 08 200

## ASSIGNMENT OF DOMAIN NAMES

WHEREAS, Amiga Inc., a corporation organized under the laws of the State of Washington, United States of America, with its principal place of business at 24443 256th Avenue SE, P.O. Box 887, Ravensdale, WA 98051, has used and is using the Internet domain names set forth in the attached Exhibit A, hereinafter referred to as the "Amiga Domain Names;" and

WHEREAS, KMOS Inc., 225 Foster Avenue, Kentfield, CA 94904, wishes to acquire all rights, title and interest Amiga Inc., has in and to the Amiga Domain Names, together with the goodwill symbolized by the Amiga Domain Names,

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Amiga Inc., hereby assigns to KMOS Inc. all rights, title and interest in and to the Amiga Domain Names, together with the goodwill of the business associated with the Amiga Domain Names and all content owned by Amiga Inc. on the internet domains referenced by the Amiga Domain Names.

AMIGA Inc.

By: _____

Bill McEwen

President

Exhibit 5, Page 26

FROM : GARRY HARE                    FAX NO. : 4154592440           Sep. 08 2004 09:18AM P12

STATE OF WASHINGTON

KING COUNTY

Bill McEwen, hereby duly sworn, acknowledges that he is the President of Amiga Inc., and
has authority to execute this assignment on behalf of Amiga Inc.

Subscribed and sworn to before me this 30th day of August 2004.

Notary Public in and for the State of Washington

My commission expires: Feb. 20, 2008

Acknowledgment Version(UCCCommon 1.41.6)                                    Page 1 of 1

## Acknowledgment of Information Search

| File Search Number | 2007-200-4392-3S |
|---|---|
| Search On | Amiga, Inc |
| | Search Type: All |
| | Result Type: Listing |
| | Include Lapsed: Yes |
| Certified Through Date | 07/18/2007 |
| Fee Amount ($US) | 15.00 |

### Initial Financing Statement

| File Number | 2002-276-5672-5 |
|---|---|
| File Date/Time | 10/03/2002 |
| Lapse Date | 10/03/2007 |
| Debtor | Amiga, Inc. |
| | P. O. Box 887 |
| | Snoqualmie  WA 98065 USA |
| | Organizational Type: C Corporation |
| | Jurisdiction: Washington |
| | Organizational ID: 601 983 734 |
| Secured Party | Cairncross & Hempelmann, P.S. |
| | 524 Second Avenue, Suite 500 |
| | Seattle  WA 98104-2323 USA |

The above listing is a record of all financing statements and liens for the specific name requested and which are currently on file in the Department of Licensing as of the certified through date. The Department of Licensing hereby disclaims responsibility in this record search and certification other than the name specified in your request for information.

*Elizabeth A. Luce*                                                    7/19/2007

Elizabeth Luce, Director, Department of Licensing

**Exhibit 6, Page 28**

Corporations: Registration Detail

Page 1 of 2



CORPOR

HOME

Corporations Menu

» Print Page

Enter Keywords                Se

## Corporations Division - Registration Data Search

### AMINO DEVELOPMENT CORPORATION

| | |
|---|---|
| UBI Number | 601983734 |
| Category | Regular Corporation |
| Profit/Nonprofit | Profit |
| Active/Inactive | Active |
| State of Incorporation | WA |
| Date of Incorporation | 09/30/1999 |
| License Expiration Date | 09/30/2008 |

#### Registered Agent Information

| | |
|---|---|
| Agent Name | CAIRNCROSS & HEMPELMANN PS |
| Address | 524 SECOND AVE #500 |
| City | SEATTLE |
| State | WA |
| ZIP | 981042323 |

#### Special Address Information

| | |
|---|---|
| Address | |
| City | |
| State | |
| Zip | |

« Return to Search List

**Exhibit 7, Page 29**

**Disclaimer**
Information in the Secretary of State's Online Corporations Database is updated Monday through Friday by 5:0
Pacific Standard Time (state holidays excluded). Neither the State of Washington nor any agency, officer, or er

Corporations: Registration Detail

Page 1 of 2



Enter Keywords

## Corporations

⚙ CORPORATIONS MENU

## Corporations Division - Registration Data Search

### AMINO DEVELOPMENT CORPORATION

| | |
|---|---|
| UBI Number | 601983734 |
| Category | Regular Corporation |
| Profit/Nonprofit | Profit |
| Active/Inactive | Active |
| State of Incorporation | WA |
| Date of Incorporation | 09/30/1999 |
| License Expiration Date | 09/30/2008 |

**Registered Agent Information**
Agent Name
Address
City
State
ZIP

**Special Address Information**
Address
City
State
Zip

« Return to Search List

**Exhibit 8, Page 30**

**Disclaimer**
Information in the Secretary of State's Online Corporations Database is updated Monday through Frida