1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT
9                   WESTERN DISTRICT OF WASHINGTON AT SEATTLE

10   AMIGA, INC., a Delaware corporation,

11                          Plaintiffs,            No.  07-0631-RSM

12         v.                                      **HYPERION'S ANSWER TO THE**
                                                   **AMENDED COMPLAINT,**
13   HYPERION VOF, a Belgium corporation,          **AFFIRMATIVE DEFENSES AND**
                                                   **COUNTERCLAIMS**
14                          Defendant.

15

16         COMES NOW defendant Hyperion VOF and, for its Answer to the Amended

17   Complaint, Affirmative Defenses and Counterclaims against Amiga, Inc., a Delaware

18   Corporation ("Amiga Delaware"), responds as follows:

19                                    **ANSWER**

20         *Objection to Amiga Delaware's prefatory sentence:*  Amiga Delaware begins its

21   Amended Complaint with the following sentence:  "Plaintiff Amiga, Inc. ("Amiga") alleges

22   as follows:"  This sentence, defining Amiga Delaware to be "Amiga" for essentially all

23   intents and purposes, is fundamentally flawed both as a matter of fact and law.  For instance,

24   the allegations of the complaint repeatedly assert that Amiga Delaware, as "Amiga,"

25   performed acts that occurred before it came into existence, which of course is impossible.

26   In so doing, Amiga Delaware attempts to claim rights to which it is not entitled.  Hyperion

**HYPERION'S ANSWER TO AMENDED COMPLAINT,**
**AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** - 1

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  objects to this stratagem and, accordingly, strictly construes the allegations of the Amended

2  Complaint in responding thereto.

3  *Objection to Amiga Delaware's Numerous Allegations Made Without Factual*

4  *Foundation and/or in Contradiction to Prior, Sworn Testimony:*  Hyperion observes that

5  Amiga Delaware's Amended Complaint is replete with allegations that are made without

6  proper factual foundation (e.g., speculative hearsay) and which, in some instances,

7  contradict sworn testimony previously presented to this Court in this matter, and previously

8  presented in other cases like Thendic Electronics Components and Genesi Sarl v. Amiga

9  Inc., a Washington Corp., (USDC, WDWA 03-00003 (Lasnik).)  Hyperion further observes

10  that the exhibits attached to the Amended Complaint are likewise contradictory or

11  inconsistent.  *Compare, for instance,* Exhibit G to the Amended Complaint, where on

12  October 10, 2003, Itec supposedly assigned AmigaOS 4.0 either to KMOS or MKOS, to

13  Exhibit L, where on August 30, 2004, Amiga Washington represented that it owned, and

14  then claims to assign, AmigaOS 4.0 to KMOS.

15  The record is further complicated and contradicted by a comparison of Exhibit G

16  (the document dated October 10, 2003, involving both MKOS or KMOS) to the comparable

17  yet different contract dated October 7, 2003, and attached as Exhibit B to the Declaration of

18  William McEwen in Support of Plaintiff Amiga [Delaware's] Reply to Hyperion's

19  Opposition to Amiga's Motion for Preliminary Injunction."  Quite simply, with whom was

20  Amiga Washington supposedly dealing?  MKOS or KMOS?  Hyperion accordingly asserts a

21  general denial of all allegations made by Amiga Delaware that contradict that prior, sworn

22  testimony, and/or that are made without proper factual or documentary foundation to fairly

23  present the issues for admission or denial in these formal pleadings.  Hyperion further states

24  that all of its responses hereto are presented within the context of the numerous declarations

25  that have already been submitted by or on its behalf in this case.  Hyperion, unlike Amiga

26  Delaware, does not seek to recant the testimony previously submitted.

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1     1.     Denied.

2     2.     Hyperion admits that it, Eyetech Group Ltd. ("Eyetech"), and Amiga Inc., a Washington corporation ("Amiga Washington"), entered into an OEM License and Software Development Agreement(hereinafter the "Agreement"), which Agreement was dated November 3, 2001.  Hyperion states that that Agreement speaks for itself.  Further, this paragraph presents a good example of Amiga Delaware's effort to overreach through this pleading.  For instance, Amiga Delaware claims that six years ago Hyperion contracted with Amiga Washington, and that Amiga Washington was the "then owner of those trademarks and other intellectual property rights" referenced in paragraph 1.  Many of the supposed trademark applications/registrations referenced in paragraph 1 did not even exist six years ago, however, and Amiga Delaware has failed to establish that Amiga Washington was the owner of those rights that did exist at that time.  There is, therefore, no basis for that allegation.  Hyperion accordingly denies Amiga Delaware's interpretations of the Agreement and the remaining allegations contained within this paragraph.

3.     Denied.

4.     Denied.

5.     Denied.

6.     Denied.

7.     Hyperion admits that the Court has jurisdiction over the parties to this matter. Hyperion denies that the Court has jurisdiction over all of the entities that Amiga Delaware is attempting to reach through this suit, e.g., subcontractors of Hyperion.  Furthermore, depending on the disposition of the various claims in this matter, the Court may or may not have supplemental, ancillary or pendent jurisdiction.

8.     Hyperion admits that venue is proper pursuant to the contract between Amiga Washington, Hyperion and Eyetech dated November 3, 2001 (hereinafter the "Agreement").

HYPERION'S ANSWER TO AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS - 3

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

Hyperion denies that a substantial part of the events giving rise to the alleged claims in this action occurred in Washington.

9. Hyperion admits that Hyperion VOF, d/b/a Hyperion Entertainment VOF (hereinafter "Hyperion"), is a Belgian Vennootschap Onder Firma, located at Terninckgang 1, B-2000, Antwerpen, Belgium. A "Vennootschap Onder Firma" is a legal entity with no direct corollary under Washington law, having certain characteristics that are comparable to both corporations and general partnerships. Hyperion denies Amiga Delaware's limited characterization of Hyperion's business. The company specializes in 3D graphics and 3D driver development, firmware development for embedded systems, IT consulting and the conversion of high quality entertainment software from Windows to niche platforms including Amiga, Linux (x86,PPC) and MacOS.

10. Denied.

11. Denied.

12. Hyperion denies Amiga Delaware's allegations regarding the asserted name change for lack of personal knowledge as to the continuity of the entities involved.

13. Amiga Delaware's generalized statements are not relevant to the current dispute. Furthermore, Amiga Delaware and its staff are not in a position to have personal knowledge of the matters contained herein. Hyperion therefore declines to admit or deny the same and, instead, puts Amiga Delaware to its proof.

14. Amiga Delaware's generalized statements are not relevant to the current dispute. Furthermore, Amiga Delaware and its staff are not in a position to have personal knowledge of the matters contained herein. Hyperion therefore declines to admit or deny the same and, instead, puts Amiga Delaware to its proof.

15. Hyperion denies that the referenced, unidentified entities are Amiga Delaware's predecessors-in-interest. Further, Amiga Delaware's generalized statements are not relevant to

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

the current dispute, and Amiga Delaware and its staff are not in a position to have personal knowledge of the matters contained herein. Hyperion therefore declines to admit or deny the same and, instead, puts Amiga Delaware to its proof.

16.     Amiga Delaware, its staff and Hyperion are not in a position to have personal knowledge of all of the matters contained in sentence one of this paragraph, nor has it produced any documentation to support the allegation. Hyperion therefore declines to admit or deny the same and, instead, puts Amiga Delaware to its proof. With respect to the remainder of this paragraph, Hyperion agrees that Amiga Washington was administratively dissolved. The remaining allegations of the paragraph either call for legal conclusions or constitute legal assertions that that another entity, namely Amiga Washington, acted in permissible or appropriate manners. These remaining allegations are denied.

17.     Amiga Delaware, its staff, and Hyperion are not in a position to have personal knowledge of all of the matters contained herein. Hyperion therefore declines to admit or deny the allegations of this paragraph and, instead, puts Amiga Delaware to its proof.

18.     Hyperion admits that Exhibit A to the Amended Complaint is a true and accurate copy of the (OEM) License and Software Development Agreement dated 3 November 2001 between Amiga Washington, Hyperion VOF and Eyetech Group Ltd. That document speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof. Hyperion specifically alleges that each of the contracting parties actively participated in the negotiation of the terms of the Agreement and that no single entity or person was the "draftsman" thereof. Hyperion further specifically alleges that there is no separate legal entity known as the "Amiga One Partners."

19.     The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

20.     The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.  Hyperion denies Amiga Delaware's factual allegations and specifically alleges that Amiga Washington breached numerous representations and warranties of the Agreement by failing to deliver code that was required by the Agreement to be delivered to Hyperion.

21.     The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.

22.     The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.  Hyperion again specifically alleges that Amiga Washington breached the representations and warranties made by it in the Agreement and failed to perform as it was required to perform under that contract.

23.     The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.  Hyperion further denies the implications and arguments contained within the subheading that precedes this paragraph.

24.     The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.

25.     The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.  Hyperion further denies the implications and arguments contained within the subheading that precedes this paragraph.

26.     The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.  Hyperion specifically denies that the required $25,000 payment was made.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

27. The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof. Hyperion further denies the implications and arguments contained within the subheading that precedes this paragraph.

28. The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.

29. The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.

30. The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.

31. The Agreement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.

32. Hyperion denies the allegations of this paragraph and the implications of the subtitle that precede it.

33. Denied.

34. Hyperion denies the allegations of this paragraph and the implications of the subtitle that precede it.

35. Denied.

36. Denied.

37. Denied for lack of personal knowledge.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

43.     Denied.

44.     Denied.

45.     Denied.

46.     Hyperion admits that Exhibit B to the Amended Complaint is a true and accurate copy of an agreement dated 24 April 2003 between Hyperion VOF and Itec LLC.  That document speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.  Hyperion specifically denies that Exhibit B constitutes an acknowledgment that a payment of $25,000 had in fact been made.  In fact, Exhibit B states exactly the opposite, namely, that there existed a future, unsatisfied obligation to make a payment of $25,000, which payment was never made.

47.     Hyperion admits that Exhibit C to the Amended Complaint is a true and accurate copy of an invoice dated 31 December 2003, which invoice mistakenly states that a payment of $22,500 had been made when, in fact, only $22,250 had been paid.  This document speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations thereof.  Hyperion admits that Exhibit D hereto is a single-paged document bearing the word "REDACTED" at the top and an "original message" from Ben Hermans to Garry Hare and Penti Kouri.  Exhibit D is, accordingly, incomplete.  To the extent that Exhibit D does contain an original email message, Hyperion states that it speaks for itself and that it quite evidently does not speak to all of the details that Amiga Delaware would like to attribute to it.  Accordingly, Hyperion denies Amiga Delaware's allegations and interpretations thereof.

48.     While Hyperion admits retaining the payment made directly by Itec, Hyperion denies the remaining allegations of this paragraph.

49.     Denied.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

50.     Hyperion admits that there is a document designated Exhibit E to the Amended Complaint.  Hyperion has no knowledge as to the authenticity, accuracy or completeness of Exhibit E and, accordingly, denies the same, along with all allegations, implications and interpretations thereof offered by Amiga Delaware.  Hyperion further denies the implications of the subtitle that precedes this paragraph.

51.     Denied.  See response to paragraph 50.

52.     Denied.  See response to paragraph 50.

53.     Hyperion admits that there is a document designated Exhibit F to the Amended Complaint.  However, Amiga Delaware itself admits that that Exhibit F is incomplete by its own terms.  Further, Hyperion has no knowledge as to the authenticity or accuracy of those portions of Exhibit F that are attached to the Amended Complaint.  Hyperion, accordingly, denies the authenticity, completeness and accuracy of Exhibit F, along with all allegations, implications and interpretations thereof offered by Amiga Delaware.

54.     Denied.  See response to paragraph 53.

55.     Denied for lack of knowledge.  Hyperion further observes that Amiga Delaware has provided no foundation for its numerous allegations and implications of the intent of nonparties, and of the various business choices supposedly available to them.  Finally, Hyperion denies the implications of the subtitle that precedes this paragraph.

56.     Hyperion admits that there is a document designated Exhibit G to the Amended Complaint.  However, an examination of its content shows that, on its face, it is incomplete.  In addition, it is questionable that the items that are attached to that Exhibit G are in fact two of the documents that are referenced therein.  Finally, Exhibit G is a different document than that identified by Mr. William McEwen as the "Stock Purchase and Sale Agreement and Agreement of Assignment of Intellectual Property Rights" between Itec and KMOS.  See Exhibit B to the

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

Declaration of William McEwen In Support of Plaintiff Amiga [Delaware's] Reply to Hyperion's Opposition to Amiga's Motion for Preliminary Injunction In sum, Hyperion has no knowledge as to the authenticity or accuracy of those portions of Exhibit G that are attached to the Amended Complaint, and the entirety of said exhibit is at a minimum incomplete. Hyperion accordingly denies the authenticity, completeness and accuracy of Exhibit G, along with all allegations, implications and interpretations thereof offered by Amiga Delaware.

57.     Denied. See response to paragraph 56.

58.     Denied. See response to paragraph 56.

59.     Denied. Hyperion further denies the implications and arguments contained within the subheading that precedes this paragraph.

60.     The allegations of paragraph 60 are based on a document, attached as Exhibit H, which quite evidently has been redacted in part, even though it does not say so. The statements that Exhibit H does contain, and which are parroted in paragraph 60 itself, are furthermore the self-serving statements of Mr. Bill McEwen, and they are denied. Finally, the recipient of Exhibit H, Mr. Ben Hermans, had as a matter of public record left Hyperion and was no longer a principal or shareholder of the company at the time Mr. McEwen sent his email.

61.     Denied. There is no such thing as a "2004 Arrangement."

62.     The March 15, 2004 press release speaks for itself. Hyperion denies Amiga Delaware's allegations and interpretations of the same.

63.     Denied.

64.     Hyperion admits that portions of a March 15, 2004, announcement taken from its website are attached hereto as Exhibit I.

65.     Denied.

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

66.     Hyperion admits that on April 16, 2004, it made an announcement related to AmigaOS 4.0.  That announcement speaks for itself, and Hyperion denies Amiga Delaware's allegations and interpretations related thereto.  With respect to the last sentence of this paragraph, Hyperion refers Amiga Delaware to the Second Declaration of Hans-Jörg Frieden in Opposition to Amiga Delaware's Motion for Preliminary Injunction, along with the other declarations filed in conjunction with that opposition, for an accurate discussion of the events that are briefly and inaccurately described in the last sentence of ¶66 of the Amended Complaint.

67.     Hyperion admits that on May 13, 2004 it issued an announcement relating to the Developer Pre-release of AmigaOS 4.0.  That announcement speaks for itself, and Hyperion denies any allegations or interpretations offered by Amiga Delaware that differ from the same.

68.     Denied.

69.     Denied for lack of knowledge.  Hyperion further denies the allegations and implications of the unnumbered subheading preceding this paragraph.

70.     Hyperion admits that a document marked Exhibit J is attached to the Amended Complaint.  Hyperion, however, lacks knowledge as to the completeness, accuracy and authenticity of said document, and as to the accuracy of the underlying allegations.  Indeed, if one believes Exhibit J, then the allegations of this paragraph are incorrect because the schedule of alleged loans shows numerous "loans" were made by entities other than Itec, and that numerous recipients of said "loans" were not Amiga Washington.  Accordingly, this paragraph is denied.

71.     Denied.  See response to paragraph 70.

72.     Denied.  The document attached as Exhibit K is unsigned.  Hyperion further denies the allegations and implications of the unnumbered subheading preceding this paragraph.

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

73.     Denied.

74.     Denied for lack of knowledge.  Hyperion further denies the allegations and implications of the unnumbered subheading preceding this paragraph.

75.     Hyperion admits that a document marked Exhibit L is attached to the Amended Complaint.  Hyperion, however, lacks knowledge as to the completeness, accuracy and authenticity of said document, and as to the accuracy of the underlying allegations.  This paragraph is accordingly denied.

76.     Denied.  See response to paragraph 75.

77.     Denied.  See response to paragraph 75.

78.     Hyperion admits that a document marked Exhibit M is attached to the Amended Complaint and that it purports to be a copy of a certificate of name change.  Hyperion, however, lacks the personal knowledge needed to admit or deny the completeness, accuracy and authenticity of said document.

79.     Denied.

80.     Denied.  Hyperion further denies the allegations and implications of the unnumbered subheading preceding this paragraph.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Hyperion generally denies this paragraph.  With respect to Exhibit N, Hyperion states that the excerpts from its website speak for themselves.  Amiga Delaware's allegations and implications based on the same are denied.

85.     Denied.

HYPERION'S ANSWER TO AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS - 12

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

86.     Hyperion admits that there is an Exhibit O to the Amended Complaint and that it consists of a letter dated November 21, 2006 plus attachments.  Hyperion denies the accuracy and correctness of the factual allegations, legal conclusions, and alleged rights asserted by Amiga Delaware within that letter.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Hyperion admits that Exhibit P to the Amended Complaint is a copy of a 24 December 2006 announcement released by Hyperion, and that that announcement speaks for itself.  All other allegations of this complaint are denied.

91.     Denied.

92.     Denied.  Hyperion further denies the allegations and implications of the unnumbered subheading preceding this paragraph.

93.     Hyperion admits that it issued an announcement on March 25, 2007, related to itself and ACube Systems Srl.  That document speaks for itself.  Hyperion denies all allegations and implications made by Amiga Delaware related to that announcement which differ from the same.

94.     Denied.

95.     Because Amiga Delaware has no rights under the 3 November 2001 Agreement, etc., Hyperion agrees that Amiga Delaware has not issued any valid consents or licenses related to the same.  Because Hyperion understands Amiga Delaware to be asserting such rights, however, Hyperion denies the factual grounds, legal arguments and other implications made in this paragraph.

96.     Denied.

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

**FIRST CLAIM FOR RELIEF (2004 "ARRANGEMENT")**

97.     Hyperion realleges each and every answer to the foregoing paragraphs as if fully set forth herein.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

**SECOND CLAIM FOR RELIEF (2001 AGREEMENT)**

104.    Hyperion realleges each and every answer to the foregoing paragraphs as if fully set forth herein.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

**THIRD CLAIM FOR RELIEF (DECLARATORY JUDGMENT RE THE 2004 "ARRANGMENT")**

112.    Hyperion realleges each and every answer to the foregoing paragraphs as if fully set forth herein.

113.    Denied.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

114.     Hyperion admits that it contests each of the allegations in the preceding, including the assertion that a "2004 Arrangement" exists sufficient to support a claim for declaratory judgment.

115.     Hyperion denies that Amiga Delaware is entitled to any relief whatsoever under this cause of action.

### FOURTH CLAIM FOR RELIEF

116.     Hyperion realleges each and every answer to the foregoing paragraphs as if fully set forth herein.

117.     Denied.

118.     Denied.

119.     Admitted.

120.     Hyperion admits that Amiga Delaware seeks a judicial declaration regarding Amiga Delaware's erroneous allegations in paragraph 118.

### FIFTH CAUSE OF ACTION (TRADEMARK INFRINGEMENT)

121.     Hyperion realleges each and every answer to the foregoing paragraphs as if fully set forth herein.

122.     Denied.  With respect to Exhibit Q, Hyperion admits that documentation bearing the title "USPTO Assignments on the Web" are attached to the Amended Complaint, that those documents reveal "corrective" documentation being filed by Amiga Delaware as late as June 27, 2007, after this litigation commenced, that that exhibit (see, e.g., the last page of Exhibit Q) further declares that KMOS is a California corporation, rather than the Delaware corporation Amiga Delaware claims to be a successor of, and that all-in-all, said exhibit fails to prove Amiga Delaware's allegations.  Hyperion has, furthermore, filed an action with the USPTO challenging Amiga Delaware's asserted trademark rights under opposition number 91181145.

**HYPERION'S ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** - 15

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

123.     Denied.  See response to paragraph 122.  The document marked Exhibit R and found attached to the Amended Complaint has defects similar to those discussed in regard to Exhibit Q.  Exhibit R similarly fails to prove Amiga Delaware's allegations.

124.     Denied.  See response to paragraph 122.  The document marked Exhibit S and found attached to the Amended Complaint has defects similar to those discussed in regard to Exhibits Q and R.  Exhibit S similarly fails to prove Amiga Delaware's allegations.

125.     The trademark application referenced in Exhibit T is the subject of Hyperion's Trademark opposition number 91181145.  Hyperion denies Amiga Delaware's rights to the same.

126.     The trademark application referenced in Exhibit U is the subject of Hyperion's Trademark opposition number 91181145.  Hyperion denies Amiga Delaware's rights to the same.

127.     Denied.

128.     Denied.

129.     Hyperion denies that Amiga Delaware has a valid basis upon which to assert the legal rights alleged in this paragraph.  Hyperion accordingly denies the allegations of the paragraph.

130.     Denied.

131.     Denied.

132.     Denied.

133.     Denied.

134.     Denied.

135.     Denied.

136.     Denied.

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

## SIXTH CAUSE OF ACTION (TRADEMARK DILUTION)

137.    Hyperion realleges each and every answer to the foregoing paragraphs as if fully set forth herein.

138.    Denied.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Denied.

143.    Denied.

144.    Denied.

145.    Denied.

## SEVENTH CAUSE OF ACTION (FALSE DESIGNATION)

146.    Hyperion realleges each and every answer to the foregoing paragraphs as if fully set forth herein.

147.    Denied.

148.    Denied.

149.    Denied.

150.    Denied.

151.    Denied.

152.    Denied.

153.    Denied.

## EIGHTH CAUSE OF ACTION (UNFAIR COMPETITION, RCW 19.86.020)

154.    Hyperion realleges each and every answer to the foregoing paragraphs as if fully set forth herein.

155.    Denied.

156.    Denied.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1      157.    Denied.

2      158.    Denied.

3      159.    Denied.

4      160.    Denied.

5      161.    Denied.

6      162.    Denied.

7      163.    Denied.

8      164.    Denied.

9      165.    Denied for lack of knowledge.

10           **NINTH CAUSE OF ACTION (COPYRIGHT INFRINGEMENT)**

11      166.    Hyperion realleges each and every answer to the foregoing paragraphs as if fully

12 set forth herein.

13      167.    Denied.

14      168.    Denied.

15      169.    Hyperion admits that a document is attached to the Amended Complaint as

16 Exhibit V, but denies that that document gives Amiga Delaware valid copyrights in the stated

17 work.

18      170.    Denied.

19      171.    Denied.

20      172.    Denied.

21      173.    Denied.

22      174.    Denied.

23      175.    Denied.

24      176.    Hyperion admits that Amiga Delaware has sent if various notices but denies that

25 Amiga Delaware has the legal rights it claims to possess.

26      177.    Denied.

**HYPERION'S ANSWER TO AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** - 18

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1   178.   Denied.

2   179.   Denied.

3   180.   Denied.

### TENTH CLAIM FOR RELIEF (INDEMNIFICATION)

Hyperion realleges each and every answer to the foregoing paragraphs as if fully set forth herein.

7   181.   Denied.

8   182.   Denied.

9   183.   Hyperion admits that there is a legal proceeding pending in Belgium in which both Hyperion and Amiga Delaware are summoned parties. Hyperion further admits that attached as Exhibit W to the Amended Complaint is a Dutch language version of a Summons as in Summary Proceedings, and what purports to be an English language translation of the same. Hyperion alleges that the legal documents filed in that Belgian proceeding speak for themselves, and that Amiga Delaware's allegations and interpretation of the same are denied to the extent that they differ from those original documents.

16   184.   This paragraph does not require a response from Hyperion.

17   185.   Denied.

18   186.   Hyperion denies that Amiga Delaware is entitled to any rights of indemnity.

19   187.   Hyperion admits that it denies Amiga Delaware's alleged rights of indemnity.

20   188.   Denied for lack of knowledge.

21   189.   Denied.

22   190.   Denied.

### AMIGA DELAWARE'S PRAYER FOR RELIEF

Wherefore, the entirety of Amiga Delaware's Prayer for Relief should be denied and dismissed with prejudice.

26

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

# AFFIRMATIVE DEFENSES

For its affirmative defenses to Amiga Delaware's Amended Complaint, Hyperion alleges the following Affirmative Defenses:

1. Hyperion and Eyetech have an exclusive, perpetual, world-wide and royalty free right and license to develop, use, modify and market the Software and OS 4 under the "Amiga OS" trademark pursuant to Section 2.07 of the Agreement.

2. Hyperion and Eyetech have an exclusive, perpetual, worldwide right and license to develop, use, modify and market the Software and OS 4 under the "Amiga OS" trademark pursuant to Section 2.08 of the Agreement.

3. Hyperion possesses all ownership and title in the enhancements of and additions to the Software pursuant to the terms of Section 3.01 of the Agreement.

4. Amiga Delaware has no rights under the Agreement because the requirements of Section 7.12 of the Agreement were not met.

5. Amiga Delaware has no rights pursuant to the self-executing terms of Section 2.07 the Agreement because Amiga Washington was insolvent before the purported transfer of rights to Itec LLC.

6. If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-interest to Amiga Washington; then Amiga Delaware and/or its predecessors-in-interest failed to comply with the obligations of the Agreement to pay Hyperion $25,000, and to release a substantially new version of the Classic Amiga OS for the Target Hardware, by June 27, 2005. (See, for instance, Sections 2.06, 2.08, and 3.01 of the Agreement.) Amiga Delaware therefore is not entitled to the relief it seeks in this suit.

7. If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-interest to Amiga Washington, then Amiga Delaware and/or its predecessors-in-interest breached their warranties and obligations under the Agreement. See, e.g., Sections 4.01, 4.02 and 4.06.

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

8.     If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-interest to Amiga Washington, then Amiga Delaware is estopped from denying that it and/or its predecessors-in-interest agreed with Eyetech to modifications in the PPC hardware developed and/or provided for "Amiga One" under the Agreement.

9.     If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-interest to Amiga Washington, then Amiga Delaware and/or its predecessors-in-interest failed to provide consideration for that which they seek in this suit.

10.     Amiga Delaware lacks the capacity and right to sue under the Agreement, and under the other causes of action asserted in its complaint.

11.     To the extent not subject to the claims of its subcontractors, Hyperion claims title to the Software, code and intellectual property sought by Amiga Delaware in this lawsuit.

12.     Amiga Delaware has failed to name a necessary party to this action, to wit, Eyetech Group Ltd.  See FRCP 19.

13.     Amiga Delaware has failed to state a claim upon which relief can be granted.

14.     The laws of Belgium, Germany, the UK and the European Union apply to certain aspects of this case, e.g., the obligations of Hyperion to, and the rights of, defendant's subcontractors to the Software, Code and intellectual property at issue, in as much as those rights are determined by contractual agreements different than the 3 November 2001 Agreement.  This Court lacks personal and subject matter jurisdiction to rule on those matters.

15.     This Court lacks personal and subject matter jurisdiction to rule on the copyright and trademark rights that exist within the European Union, to the extent that those rights arise independently of the 3 November 2001 Agreement, and/or to the extent that those rights accrue or belong to entities that are not parties to this suit..

16.     Amiga Delaware has failed to serve process upon this Defendant in the manner and form required by the applicable law.

**LAW OFFICES OF
WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

17. If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-interest to Amiga Washington, then Amiga Delaware's claims are barred by laches.

18. If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-interest to Amiga Washington, then Amiga Delaware and/or its predecessors-in-interest failed to perform conditions precedent to these claims. See, e.g., Sections 2.06, 2.07, 2.08, 3.01, 3.02, 4.01, 4.02, 4.06, and 7.12.

19. If the Court ultimately finds that Amiga Delaware is the legitimate successor-in-interest to Amiga Washington, then Amiga Delaware ratified actions about which it now complains.

20. The transactions on which Amiga Delaware's lawsuit is based was beyond the express or implied powers of Amiga Washington because Amiga Washington was insolvent at the time it purportedly transferred, for inadequate consideration, its interests under the Agreement, its interests in its trademarks, and it interests in other assets.

21. Amiga Delaware's claims are barred by its unclean hands.

22. Amiga Delaware's claims are barred because it obtained the rights its now claims to own through a series of fraudulent conveyances conducted with the assets of Amiga Washington and the aid of other entities that are not parties to this suit.

23. Amiga Delaware's claims are barred because it obtained the rights its now claims to own through a series of fraudulent conveyances conducted with the assets of Amiga Washington and the aid of other entities that are not parties to this suit, which entities are affiliated and/or under the common control of the same entities and individuals such as Penti Kouri and Bill McEwen.

24. Amiga Delaware has failed to prove its right and title to any of the Amiga trademarks.

25. Amiga Delaware's alleged trademark rights are currently being challenged before the United States Patent and Trademark Office by Hyperion under opposition number

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

91181145. Amiga Delaware's trademark rights are further in dispute in a matter involving a company named Cloanto Italia srl, which is pending under opposition number 91175664.

26. Amiga Delaware has failed to prove that it is merely a renamed KMOS, or that it acquired the rights and title of KMOS in some other legal and proper manner.

27. Amiga Delaware has failed to prove that KMOS acquired the rights and title of Itec LLC in a legal and proper manner.

28. Amiga Delaware has failed to prove that Itec LLC acquired the rights and title of Amiga Washington in a legal and proper manner.

## COUNTERCLAIMS

COMES NOW Hyperion VOF, and for its counterclaims against Amiga Delaware, alleges as follows:

### JURISDICTION

1. This Court has jurisdiction over this action under 28 U.S.C. §1332(a)(2), 28 U.S.C. §1331 (federal question jurisdiction); 28 U.S.C. §1338(a)(any act of Congress relating to patents, copyrights and trademarks); 28 U.S.C. §1367 (ancillary jurisdiction), and the doctrines of ancillary and pendent jurisdiction. The amount in controversy exceeds a sum or value of $75,000, exclusive of interest and costs.

### VENUE

2. Venue is proper in this District because defendant Hyperion VOF stipulated to jurisdiction and venue in this District in an (OEM) License and Software Development Agreement dated November 3, 2001 (the "Agreement") with Amiga, Inc., a Washington Corporation ("Amiga Washington"), and Eyetech Group Ltd. ("Eyetech"), and because plaintiff Amiga, Inc., a Delaware corporation ("Amiga Delaware") is asserting that it succeeded to the rights of Amiga Washington under that Agreement. Amiga Delaware has, furthermore, consented to this Court's personal jurisdiction and venue in this district by commencing this action here.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

## PARTIES

3.     Plaintiff Amiga Delaware purports to be a Delaware corporation.

4.     Hyperion VOF, d/b/a Hyperion Entertainment VOF ("Hyperion"), is a Belgian Vennootschap Onder Firma, located at Terninckgang 1, B-2000, Antwerpen, Belgium.  A "Vennootschap Onder Firma" is a legal entity with no direct corollary under Washington law, having certain characteristics that are comparable to both corporations and general partnerships.

## FACTS

5.     Hyperion is a party to the Agreement.

6.     Amiga Delaware did not exist on November 3, 2001.

7.     Amiga Washington was insolvent no later than the end of July 2002 up through and including April 24, 2003.

8.     Upon Amiga Washington's insolvency, the self-executing provision in §2.07 of the Agreement transferred to Hyperion and Eyetech "an exclusive, perpetual, world-wide and royalty free right and license to develop (at their sole expense), use, modify and market the Software and OS 4 under the 'Amiga OS' trademark."

9.     Amiga Washington remained insolvent from April 24, 2003 through the date of its administrative dissolution by the State of Washington on September 30, 2004.

10.     Amiga Washington, its representatives, Itec LLC, and its representatives, failed to inform Hyperion on or before April 24, 2003, that Amiga Washington was insolvent.

11.     Hyperion did not know, on or before April 24, 2003, that Amiga Washington was insolvent.

12.     On April 24, 2003, Hyperion and Itec LLC ("Itec") entered into an agreement that purported to relate to Amiga Washington's rights under the Agreement.  This contract is hereinafter referred to as the "Itec Contract."

13.     Amiga Washington did not give is prior written consent to the Itec Contract.

14.     Eyetech did not give its prior written consent to the Itec Contract.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

15.     On information and belief, a common core of major investors, shareholders, officers and directors were directly involved in the affairs of Amiga Washington and Itec on and prior to April 24, 2003.  This common core of individuals included Mr. William McEwen, Mr. Barrie Jon Moss and Mr. Pentti Kouri.  Itec, and this common core of major investors, shareholders, officers and directors were therefore "insiders" of Amiga Washington within the meaning of RCW 19.40.011.

16.     At the time of the Itec Contract, Itec and the other insiders of Amiga Washington knew that Amiga Washington was insolvent.

17.     On information and belief, on, before and after April 24, 2003, Itec failed to give Amiga Washington a reasonably equivalent value for Amiga Washington's contractual rights that were purportedly transferred in the Itec Contract.

18.     On information and belief, Itec and the other insiders of Amiga Washington acted in bad faith when Itec entered into the Itec Contract.

19.     At the time of the Itec Contract, Hyperion was a creditor of Amiga Washington because, for instance, Amiga Washington had breached its warranties in Article IV of the Agreement, to the substantial damage of Hyperion.

20.     On information and belief, the purported transfer to Itec in the Itec Contract of Amiga Washington's rights under the Agreement, if any such rights existed following Amiga Washington's insolvency, was made by Itec and its insiders with the actual intent to hinder, delay or defraud creditors of Amiga Washington.

21.     Because of §2.07 of the Agreement, and because of the failure of Itec to obtain prior written consent as required by §7.12 of the Agreement, the Itec Contract is invalid, void and otherwise unenforceable.

22.     Attached as Exhibit B to the Declaration of William McEwen In Support of Plaintiff Amiga [Delaware's] Reply to Hyperion's Opposition to Amiga's Motion for Preliminary Injunction is what Mr. McEwen purports to be a true and accurate copy of a "Stock

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

Purchase and Sale Agreement and Agreement of Assignment of Intellectual Property Rights"
dated October 7, 2003 between Itec and KMOS.  By contrast, Amiga Delaware has attached as
Exhibit G to the Amended Complaint a different yet similar agreement dated October 10, 2003,
which document Amiga Delaware now claims is the effective agreement between KMOS and
Itec.  Amiga Delaware makes this claim despite the fact that Exhibit G makes repeated
references to a corporation referred to as MKOS Inc., rather than KMOS, and further, despite
the fact that MKOS Inc. has only 1,000 shares outstanding stock as compared to the 8,000,000
shares outstanding for KMOS.  For purposes of convenience, both of those contracts are
hereinafter referred to as the "Itec/KMOS Contract," even though subsequent discovery may
prove that MKOS Inc. and KMOS Inc. are truly separate legal entities.  If the latter eventually
proves to be the case, then Hyperion reserves its right to amend its pleadings to clarify its
counterclaims, if needed.

23.     By the explicit admissions of the Itec/KMOS Contract, the insiders of Itec were
the insiders of KMOS.  By necessary implication, then, the insiders of KMOS were and are
insiders of Amiga Washington, which prevents KMOS, now purportedly known as Amiga
Delaware, from being a good faith purchaser of the assets of Amiga Washington under the
terms of RCW 19.40.081.  On information and belief, the Itec Contract, and the Itec/KMOS
Contract were merely part of an elaborate scheme to hinder, delay or defraud the creditors of
Amiga Washington.

24.     KMOS failed to obtain the prior written consent of Hyperion and Eyetech to the
Itec/KMOS Contract as required by §7.12 of the Agreement.  The Itec/KMOS Contract is
therefore invalid, void and otherwise unenforceable.

25.     Attached as Exhibit G to the Declaration of William McEwen In Support of
Plaintiff Amiga [Delaware's] Reply to Hyperion's Opposition to Amiga's Motion for
Preliminary Injunction is what purports to be a cover page of a certified copy of the original
Agreement on Acquisition and Assignment of Trademarks between Assignor Amiga, Inc.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

[Amiga Washington] and the Assignee, KMOS, Inc. (Hereinafter the "Amiga Washington/KMOS Contract".) This Exhibit G purports to claim that the Amiga Washington/KMOS Contract was signed on August 30, 2004, or just one month before Amiga Washington was administratively dissolved by the State of Washington. However, the certification itself was not signed until September 5, 2006, or more than two years later.

26.     On information and belief, based on the physical appearance of Exhibit G to Mr. McEwen's Reply Declaration, the Amiga Washington/KMOS Contract was not signed before Amiga Washington was administratively dissolved, making said contract invalid, void and otherwise unenforceable. This, in turn, makes KMOS' assertion of its rights to the "Amiga" trademarks invalid, at least as those asserted rights conflict with the rights held by Hyperion pursuant to the Agreement.

27.     The insiders of KMOS are the insiders of Amiga Washington. KMOS and its insiders knew that Amiga Washington was insolvent on August 30, 2004, assuming that that was in fact when the Amiga Washington/KMOS Contract was signed. KMOS, therefore, acted in bad faith when it entered into that contract with the actual intent to hinder, delay and defraud creditors of Amiga Washington, including Hyperion. Furthermore, on information and belief, KMOS failed to provide reasonably equivalent value for the "intellectual properties," including the "Amiga" trademarks, that are allegedly covered by the Amiga Washington/KMOS Contract.

28.     Hyperion completed AmigaOS 4.0 as required by Annex I of the Agreement no later than December 27, 2004. To the extent that Amiga Delaware had or has any rights under the Agreement, Hyperion gave timely notice of this completion in a joint press release issued with KMOS in 2004, and separately via email.

29.     By June 27, 2005, neither Amiga Washington nor any of its purported successors-in-interest had paid to Hyperion the $25,000 required by §§3.01 and 2.06 of the Agreement.

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

30. By June 27, 2005, neither Amiga Washington nor any of its purported successors-in-interest had issued a substantially new version of the Classic Amiga OS for the Target Hardware.

31. Amiga Delaware alleges that it is KMOS, Inc., and that KMOS merely changed its name to Amiga Delaware. Based on the failure of Amiga Delaware to produce documentation supporting this allegation in its reply in support of its motion for preliminary injunction, Hyperion alleges that the facts support the conclusion that there was yet another corporate entity change between KMOS, Inc. and Amiga Delaware. (*See., e.g.,* the last page of Exhibit R to the Amended Complaint, which indicates that there was or is a California corporation known as KMOS Inc.)

32. If there was another entity change between KMOS, Inc. and Amiga Delaware, then Hyperion alleges that the insiders of Amiga Delaware were the insiders of KMOS, Inc., Itec LLC and Amiga Washington, that Amiga Delaware failed to obtain the prior written consent required by §7.12 of the Agreement, and that that transfer was yet another link in the effort to hinder, delay and defraud the creditors of Amiga Washington.

33. Even if one assumes that Amiga Washington was not insolvent and that all required parties gave their written consent to the transfer of Amiga Washington's rights in the Itec Contract and all subsequent contracts, Hyperion has at no time, and will not in the future in its dealings with ACube Systems Srl, violate the provisions of its license under the Agreement. Amiga Delaware therefore has no valid basis upon which to terminate the licensing agreement.

34. Hyperion specifically alleges that it went well beyond its contractual obligations under the Agreement—at substantial expense to itself—and unquestionably met its obligations to exercise "best efforts," both with respect to releasing AmigaOS 4.0 as promptly as possible, and with respect to obtaining the widest possible rights from third party developers.

35. Because Amiga Delaware and its purported predecessors in interest failed to pay $25,000 to Hyperion by the required date, Amiga Delaware and its purported predecessors in

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

interest failed to timely exercise the "buy-in option" in §3.01. Hyperion, therefore, has no obligation to provide to Amiga Delaware the Object Code, Source Code and intellectual property of OS 4.0 pursuant to and within the limits set out in §2.06 of the Agreement.

36. Amiga Delaware had neither the legal right nor the factual basis upon which to terminate the Agreement.

**CAUSES OF ACTION**

**CAUSE NO. 1: DECLARATORY JUDGMENT UNDER RCW CH. 7.24**

Hyperion realleges paragraphs 1 through 36 as if restated in full herein.

37. Pursuant to RCW Ch. 7.24 *et seq.,* Hyperion seeks a declaratory judgment under the November 3, 2001 Agreement that:

(a) Under the self-executing provisions of §2.07 of the Agreement, the Amiga One Partners received an exclusive, perpetual, world-wide and royalty free right and license to develop (at their sole expense), use, modify and market the Software and OS 4 under the Amiga OS trademark upon Amiga Washington's insolvency, and that Amiga Washington was insolvent prior to and on April 24, 2003;

(b) Amiga Delaware and its predecessors did not comply with the requirement of §7.12 of the Agreement that the Amiga One Partners and Amiga Washington each provide prior written consent before the purported assignment of Amiga Washington's rights under the Agreement could occur in the Itec Contract. Amiga Delaware therefore has no rights under the contract upon which it is suing;

(c) Amiga Delaware and its predecessors did not comply with the requirement of §7.12 of the Agreement that subsequent transfers of rights under the Agreement also be completed only after obtaining the prior written consent of the parties thereto. Amiga Delaware therefore has no rights under the contract upon which it is suing;

(d) Even if one assumes that Amiga Washington was not insolvent and that all required parties gave their written consent to the transfer of Amiga Washington's rights, neither

**HYPERION'S ANSWER TO AMENDED COMPLAINT,**
**AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** - 29

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

Amiga Washington nor any of its purported successors paid the $25,000 within the six-month time period required by §3.01 to "buy in" to OS 4. Thus, Amiga Delaware has not acquired the Object Code, Source Code and intellectual property of OS 4.0 pursuant to and within the limits set out in §2.06 of said Agreement. Instead, Hyperion possesses all ownership and title in the enhancements of and additions to the Software effected by Hyperion and its subcontractors pursuant to the terms of the Agreement;

(e) Even if one assumes that Amiga Washington was not insolvent and that all required parties gave their written consent to the transfer of Amiga Washington's rights, the self-executing provisions of §2.08 of the agreement transferred an exclusive, perpetual, worldwide right and license to develop, use, modify and market the Software and OS 4 under the Amiga OS trademark at their sole expense because Amiga Washington and its purported successors failed to release a substantially new version of the Classic Amiga OS for the Target Hardware within six months of Hyperion's completion of OS 4.0;

(f) Even if one assumes that Amiga Washington was not insolvent and that all required parties gave their written consent to the transfer of Amiga Washington's rights, (i) Hyperion exercised its "best efforts" as required of it under the Agreement, and (ii), Hyperion has at no time, and will not in the future in its dealings with ACube Systems Srl, violate the provisions of its license under the November 3, 2001 Agreement. Amiga Delaware therefore has no valid basis upon which to terminate the licensing agreement; and

(g) Hyperion is entitled to whatever other declaratory relief is required to fully adjudicate the rights of the parties to the Agreement pursuant to RCW 7.24.010, .020, .030, .050, .080, and .090.

38. In addition to a declaratory judgment in its favor, Hyperion is entitled to an award from Amiga Delaware of its attorney's fees and expenses under §7.07 of the Agreement and its costs under RCW 7.24.100.

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

**CAUSE NO. 2: FRAUDULENT CONVEYANCE OF THE AMIGA WASHINGTON/KMOS CONTRACT**

Hyperion realleges paragraphs 1 through 38 as if restated in full herein.

39.     Hyperion is a creditor of Amiga Washington because, among other things, Amiga Washington breached its Warranties and Indemnification obligations in Article IV of the Agreement.

40.     For example, Amiga Washington breached its warranty that it was the owner of all intellectual property rights in the Software, defined to include but not be limited to OS 3.1, 3.5 and 3.9, when it in fact did not own said rights and could not deliver the code.  (Agreement, §4.01.)  On information and belief, Amiga Washington and its insiders knew it could not comply with these warranty obligations at the time the Agreement was entered into.  This breach caused Hyperion substantial damage because Hyperion was then forced to enter into dozens of contracts with the actual owners of that Software and acquire the liabilities attendant thereto.

41.     Amiga Washington then further breached its duties of indemnification under §4.02 of the Agreement because it failed to hold Hyperion harmless from those damages, costs and expenses.

42.     As another example, Hyperion's rights under §2.01 of the Agreement included the right to retain all revenues from the distribution of OS 4.0.  In 2001 and 2002 Amiga Washington breached Hyperion's rights by engaging in illicit discount voucher schemes aimed at future end-consumers of OS 4.0.  Specifically, Amiga Washington issued $100 "Amiga Party Pack" and $50 "I am Amiga" vouchers designed to induce consumers to pay Amiga Washington $100 or $50 in anticipation of the release of OS 4.0.  Amiga Washington represented that in exchange for these vouchers it would either grant a discount or provide free copies of software, e.g. OS 4.0, that it did not own.  By Amiga Washington's own admissions, it raised at least $90,000 from consumers in this manner.  Hyperion never endorsed these

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

**CAUSE NO. 2: FRAUDULENT CONVEYANCE OF THE AMIGA WASHINGTON/KMOS CONTRACT**

Hyperion realleges paragraphs 1 through 38 as if restated in full herein.

39.     Hyperion is a creditor of Amiga Washington because, among other things, Amiga Washington breached its Warranties and Indemnification obligations in Article IV of the Agreement.

40.     For example, Amiga Washington breached its warranty that it was the owner of all intellectual property rights in the Software, defined to include but not be limited to OS 3.1, 3.5 and 3.9, when it in fact did not own said rights and could not deliver the code.  (Agreement, §4.01.)  On information and belief, Amiga Washington and its insiders knew it could not comply with these warranty obligations at the time the Agreement was entered into.  This breach caused Hyperion substantial damage because Hyperion was then forced to enter into dozens of contracts with the actual owners of that Software and acquire the liabilities attendant thereto.

41.     Amiga Washington then further breached its duties of indemnification under §4.02 of the Agreement because it failed to hold Hyperion harmless from those damages, costs and expenses.

42.     As another example, Hyperion's rights under §2.01 of the Agreement included the right to retain all revenues from the distribution of OS 4.0.  In 2001 and 2002 Amiga Washington breached Hyperion's rights by engaging in illicit discount voucher schemes aimed at future end-consumers of OS 4.0.  Specifically, Amiga Washington issued $100 "Amiga Party Pack" and $50 "I am Amiga" vouchers designed to induce consumers to pay Amiga Washington $100 or $50 in anticipation of the release of OS 4.0.  Amiga Washington represented that in exchange for these vouchers it would either grant a discount or provide free copies of software, e.g. OS 4.0, that it did not own.  By Amiga Washington's own admissions, it raised at least $90,000 from consumers in this manner.  Hyperion never endorsed these

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

schemes, was never paid any of the money, and has been damaged both in its reputation and monetarily as it was confronted with demands from these consumers for benefits that Hyperion was not in a position to provide.

43.     Hyperion assumed the status of a creditor of Amiga Washington prior to April 24, 2003.

44.     The Amiga Washington/KMOS Contract, purportedly signed on August 30, 2004, violates RCW 19.40.041(a) and RCW 19.40.051(a).

45.     Amiga Delaware, either as the renamed KMOS or as a subsequent transferee who failed to take in good faith and failed to provide reasonably equivalent value, is liable to Hyperion for this fraudulent transfer pursuant to RCW 19.40.071 and .081.

46.     Pursuant to RCW 19.40.071 and .081, Hyperion is entitled to a judgment voiding the transfer that took place in the Amiga Washington/KMOS Contract and to a judgment awarding Hyperion full right and title to the intellectual property rights covered by the Amiga Washington/KMOS Contract in partial satisfaction of Amiga Washington's liabilities to Hyperion.

47.     Pursuant to RCW 19.40.071 and .081, Hyperion is further entitled to an injunction prohibiting Amiga Delaware from using the name "Amiga" in its corporate name, in corporate sponsorships of public facilities, and from using the Amiga trademarks in any of its commercial or noncommercial activities.

48.     Finally, Hyperion is entitled to any other relief required by the circumstances of this case to provide it full relief pursuant to RCW 19.40.071(a)(3)(iii).

**CAUSE NO. 3:  FRAUDULENT CONVEYANCE OF THE ITEC/KMOS CONTRACT**

Hyperion realleges paragraphs 1 through 48 as if restated in full herein.

49.     The Itec/KMOS Contract was purportedly entered into on October 7 or 10, 2003.

50.     At the alleged time of that contract, Hyperion was a creditor of Amiga Washington.

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

51.     The Itec/KMOS Contract violates RCW 19.40.041(a) and RCW 19.40.051(a) in as much as it was part of a larger scheme to hinder, delay or defraud the creditors of Amiga Washington.

52.     Amiga Delaware, either as the renamed KMOS or as a subsequent transferee who failed to take in good faith and failed to provide reasonably equivalent value, is liable to Hyperion for this fraudulent transfer pursuant to RCW 19.40.081.

53.     Pursuant to RCW 19.40.071 and .081, Hyperion is entitled to a judgment voiding the transfer that took place in the Itec/KMOS Contract.  To the extent that Hyperion has not already received the same in response to its cause of action for declaratory judgment, Hyperion is further entitled to a judgment awarding Hyperion full right and title to the intellectual property rights covered by the Itec/KMOS Contract in partial satisfaction of Amiga Washington's liabilities to Hyperion.

54.     Finally, Hyperion is entitled to any other relief required by the circumstances of this case to provide it full relief pursuant to RCW 19.40.071(a)(3)(iii).

**4.     CAUSE NO. 4:  BREACH OF CONTRACT**

Hyperion realleges paragraphs 1 through 54 as if restated in full herein.

55.     If Amiga Delaware is in fact a valid successor in interest to Amiga Washington under the Agreement, then Amiga Delaware assumed all of the contractual obligations and liabilities of Amiga Washington with respect to the same.

56.     As alleged previously, Amiga Washington breached its warranties and indemnification obligations of Article IV of the Agreement by failing both to deliver OS 3.1, 3.5 and 3.9 source code free of encumbrances and, with respect to OS 3.5 and 3.9, the outright failure to produce that code in any form.  These breaches caused substantial damages to Hyperion in an amount to be proven at trial.  Amiga Delaware is liable for those damages if in fact it is the legitimate successor in interest to Amiga Washington.

**HYPERION'S ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** - 33

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

57. As alleged previously, Amiga Washington breached Hyperion's rights under §2.01 of the Agreement by engaging in the "I am Amiga Club" and "Party Pack" voucher schemes. These breaches caused substantial damages to Hyperion in an amount to be proven at trial. Amiga Delaware is liable for those damages if in fact it is the legitimate successor in interest to Amiga Washington.

58. Discovery is ongoing and additional breaches of contract by may be discovered.

59. Hyperion accordingly demands judgment against Amiga Delaware in an amount to be determined at trial, plus attorney's fees and expenses, if plaintiff is in fact determined to be a valid successor in interest to Amiga Washington.

**CAUSE NO. 5: VIOLATION OF RCW CH. 19.86 ET AL.**

Hyperion realleges paragraphs 1 through 59 as if restated in full herein.

60. Amiga Delaware has misrepresented to third parties that it owns the Object Code, the Source Code and all intellectual property of the Operating System known as OS 4 in the context of negotiating, or attempting to negotiate contracts with said parties relating to the development, marketing, distribution and/or sale of OS 4. One such example of this is a Subscription Agreement between KMOS and a Singapore company named TAPUL S.A. dated May 10, 2004. In making these misrepresentations, Amiga Delaware made a representation of existing fact, the factual misrepresentation was material, it was false, Amiga Delaware knew it was false, and Amiga Delaware intended that third parties act on those false representations.

61. In making the foregoing misrepresentations, Amiga Delaware was engaging in an unfair or deceptive act or practice that occurred in trade or commerce. Those misrepresentations have had a public interest impact because certain of those third parties have accepted as true Amiga Delaware's misrepresentations, and their subsequent actions have had a negative impact on Hyperion's ability to develop, market and sell its intellectual property. Furthermore, certain of Hyperion's independent contractors have viewed Amiga Delaware's actions as an infringement on their rights, and those third parties have instituted, or threatened

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

1  to institute, legal proceedings against Hyperion. Because of the same, Amiga Delaware's

2  actions have caused injury to Hyperion's business or property. RCW 19.86.020.

3      62.    In light of the foregoing violations, RCW 19.86.090 entitles Hyperion (a) to

4  injunctive relief requiring Amiga Delaware to cease and desist its wrongful acts, (b) to recover

5  actual damages, trebled to no more than $10,000 per violation, and (c), to recover costs of suit,

6  including a reasonable attorney's fee.

7  **CAUSE NO. 6:  LANHAM ACT—TRADE MARK INFRINGEMENT AND DILUTION**

8      Hyperion realleges paragraphs 1 through 62 as if restated in full herein.

9      63.    As previously alleged, Amiga Delaware acquired its alleged rights to the Amiga

10 trademarks through a fraudulent conveyance. As such, those alleged rights are invalid and

11 unenforceable.

12     64.    Amiga Delaware's past and present use of the Amiga trademarks violates

13 Hyperion's explicit contractual rights under the Agreement.

14     65.    As between Amiga Delaware and Hyperion, Hyperion also has the right of first

15 use with respect to the Amiga trademarks because Hyperion in fact was the first to use those

16 marks in conjunction with the expenditure of time and the resources needed to develop the

17 Amiga OS 4.0 Software and to promote the same within the scope of its rights under the

18 Agreement.

19     66.    Amiga Delaware's use of the Amiga marks is and has been done with actual and

20 constructive knowledge of, and with deliberate, willful and utter disregard of Hyperion's rights

21 in the same. Furthermore, Amiga Delaware uses those marks in a way that is not only

22 confusingly similar, but identical, to Hyperion's use of its trademark rights. Amiga Delaware's

23 use of those marks is likely to cause confusion, deception and mistake among the consuming

24 public as to the source or affiliation of Hyperion's goods, namely Amiga OS 4.0.

25

26

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

67.     Amiga Delaware has used and seeks to use the Amiga marks to falsely proclaim that it is the source of the Amiga OS 4.0 Software, to the damage of Hyperion's valuable goodwill as the source of the same.

68.     Amiga Delaware's actions have had the effect of diluting and weakening the unique and distinctive significance of Hyperion's rights in the Amiga trademarks as acquired through the Agreement and through first use.

69.     By reason of the foregoing, Amiga Delaware has violated §32(1) and §43(c) of the Lanham Act, 15 U.S.C. §1114(1) & 1125(c).

70.     Because of the above acts, Hyperion asks the Court to enjoin Amiga Delaware from continuing these wrongful acts and to award it monetary damages in an amount to be proven at trial.

**CLAIM NO. 7:  LANHAM ACT—FALSE DESIGNATION OF ORIGIN**

Hyperion realleges paragraphs 1 through 70 as if restated in full herein.

71.     Amiga Delaware's use of the trademark AmigaOS 4.0 to promote and sell Software and products to which it has no contractual right is a false designation of origin.

72.     On information and belief, Hyperion alleges that Amiga Delaware's actions have been knowing, deliberate, willful and in utter disregard of Hyperion's rights.

73.     The above acts by Amiga Delaware constitute a false designation of origin.  By reason of the foregoing, Amiga Delaware has violated §43(a) of the Lanham Act, 15 U.S.C. §1125(a), and will continue to do so unless the above acts, among others, are enjoined by the Court.

**CLAIM NO. 8:  INDEMNIFICATION AND CONTRACTUAL FEES, EXPENSES, ETC.**

Hyperion realleges paragraphs 1 through 73 as if restated in full herein.

74.     Whether or not Amiga Delaware is ultimately determined to be a valid successor in interest to Amiga Washington under the 3 November 2001 Agreement, Amiga Delaware is

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

subject to the indemnity and attorney fee provisions of that Agreement, found at §4.02 and §7.07, by virtue of the fact that plaintiff has asserted that it is a party to that Agreement.

75.     Amiga Delaware owes Hyperion the contractual duty under §4.02 of the Agreement to indemnify and hold harmless Hyperion from and against all claims, suits, demands, actions, judgments, penalties, damages, costs and expenses (including attorney's fees and costs), losses or liabilities of any kind arising from a claim that the Software infringes a patent, copyright or other intellectual property right of any other person anywhere in the world.

76.     As previously alleged, Amiga Washington breached numerous warranties and representations owed to Hyperion regarding Amiga Washington's ownership of and rights to the Software.  If Amiga Delaware is the legal successor-in-interest of Amiga Washington, Amiga Delaware is responsible to Hyperion for those breaches.

77.     There currently is pending in Belgium a legal proceeding commenced by Thomas Frieden, Hans-Jörg Frieden and Andrea Vallinotto ("petitioners") in which Amiga and Hyperion are alleged to have violated, or are threatening to violate, the intellectual property rights of those petitioners in AmigaOS 4.0.  This Belgium proceeding falls within the scope of §4.02 of the Agreement.

78.     The current action brought by Amiga Delaware falls within the scope of §4.02 of that Agreement.

79.     Hyperion hereby demands indemnity from, and to be held harmless by, Amiga Delaware pursuant to the terms of §4.02 and §7.07, whether the need for the same arises from this litigation, the Itec litigation pending in New York, the Belgium proceeding, the proceeding pending before the USPTO, or from any other matter.

### PRAYER FOR RELIEF

WHEREFORE, having fully answered the allegations contained in Amiga Delaware's Complaint, Hyperion prays that said Complaint be dismissed and that all costs incurred herein

**HYPERION'S ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** - 37

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

by Hyperion, plus a reasonable attorney's fee, be taxed against Amiga Delaware. Hyperion further requests the following relief:

    1.    For declaratory judgment that:

    (a) Under the self-executing provisions of §2.07 of the Agreement, the Amiga One Partners received an exclusive, perpetual, world-wide and royalty free right and license to develop (at their sole expense), use, modify and market the Software and OS 4 under the Amiga OS trademark upon Amiga Washington's insolvency, and that Amiga Washington was insolvent prior to and on April 24, 2003;

    (b) Amiga Delaware and its predecessors did not comply with the requirement of §7.12 of the Agreement that the Amiga One Partners and Amiga Washington each provide prior written consent before the purported assignment of Amiga Washington's rights under the Agreement could occur in the Itec Contract. Amiga Delaware therefore has no rights under the contract upon which it is suing;

    (c) Amiga Delaware and its predecessors did not comply with the requirement of §7.12 of the Agreement that subsequent transfers of rights under the Agreement also be completed only after obtaining the prior written consent of the parties thereto. Amiga Delaware therefore has no rights under the contract upon which it is suing;

    (d) Even if one assumes that Amiga Washington was not insolvent and that all required parties gave their written consent to the transfer of Amiga Washington's rights, neither Amiga Washington nor any of its purported successors paid the $25,000 within the six-month time period required by §3.01 to "buy in" to OS 4. Thus, Amiga Delaware has not acquired the Object Code, Source Code and intellectual property of OS 4.0 pursuant to and within the limits set out in §2.06 of said Agreement. Instead, Hyperion possesses all ownership and title in the enhancements of and additions to the Software effected by Hyperion and its subcontractors pursuant to the terms of the Agreement;

**LAW OFFICES OF
WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

(e) Even if one assumes that Amiga Washington was not insolvent and that all required parties gave their written consent to the transfer of Amiga Washington's rights, the self-executing provisions of §2.08 of the agreement transferred an exclusive, perpetual, worldwide right and license to develop, use, modify and market the Software and OS 4 under the Amiga OS trademark at their sole expense because Amiga Washington and its purported successors failed to release a substantially new version of the Classic Amiga OS for the Target Hardware within six months of the completion of OS 4.0 by Hyperion;

(f) Even if one assumes that Amiga Washington was not insolvent and that all required parties gave their written consent to the transfer of Amiga Washington's rights, (i) Hyperion exercised its "best efforts" as required of it under the Agreement, and (ii), Hyperion has at no time, and will not in the future in its dealings with ACube Systems Srl, violate the provisions of its license under the November 3, 2001 Agreement. Amiga Delaware therefore has no valid basis upon which to terminate the licensing agreement; and

(g) Hyperion is entitled to whatever other declaratory relief is required to fully adjudicate the rights of the parties to the Agreement pursuant to RCW 7.24.010, .020, .030, .050, .080, and .090.

2. For a declaration that the Amiga Washington/KMOS Contract is void as a fraudulent conveyance, and for a judgment awarding title to Hyperion of all rights of any kind covered by said Contract;

3. For a declaration that the Itec/KMOS Contract is void as a fraudulent conveyance and, to the extent that said rights have not already been awarded to Hyperion under paragraph 1 above, a judgment awarding all rights of any kind covered by said Contract, to the extent that they are not owned by third parties (e.g., Eyetech);

4. For an award of damages against Amiga Delaware for the breaches of the Agreement committed by Amiga Washington, if Amiga Delaware is actually a valid successor in interest to that Agreement;

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

5. For treble damages, injunctive relief, fees and costs as a result of Amiga Delaware's violation of RCW 19.86 *et seq.*

6. For injunctive relief and damages under the Lanham Act;

7. For an award of fees and expenses in bringing this suit as permitted by contract, statute and equity; and

8. For such other relief as the Court deems appropriate.

DATED this 17th day of June, 2008.

KINSEL LAW OFFICES, PLLC


By: /s/ William A. Kinsel
    William A. Kinsel, WSBA #18077
Attorney for Defendant Hyperion VOF


William A. Kinsel, Esq.
Kinsel Law Offices
2025 First Avenue, Suite 440
Seattle, WA 98121
Phone: (206) 706-8148
Fax: (206) 374-3201
Email: wak@kinsellaw.com

535p.doc

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148