1
2
3
4
5
6
7

8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

10  AMIGA, INC., a Delaware corporation,

11                           Plaintiff,

12     v.

13  HYPERION VOF, a Belgium corporation,

14                           Defendant.

15

No. 07-0631-RSM

**HYPERION'S MEMORANDUM IN OPPOSITION TO AMIGA DELAWARE'S SECOND RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS**

**Note on Motion Calendar: 07/25/08**

16                          **I.    INTRODUCTION**

17       COMES NOW defendant/counterclaimant Hyperion VOF and, for the following

18 reasons, opposes Amiga Delaware's (second renewed) Motion for Judgment on the Pleadings

19 to Dismiss Hyperion's Sixth and Seventh Amended Counterclaims. First, in order to have

20 standing to assert a claim for false designation of origin under 15 USC §1125(a), the claimant

21 need <u>not</u> be either the registrant or the owner of the mark. Instead, the claimant need merely be

22 "any person who believes that he or she is likely to be damaged" by the wrongful conduct. <u>Id.</u>

23 Since Hyperion fulfills that requirement, it has standing to sue.

24       Second, because Hyperion is the successor and/or assign of Amiga Washington, it is the

25 registrant for purposes of 15 USC §1114(1) and may assert a claim for trademark infringement

26

**HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS** - 1
**Cause No: 07-0631-RSM**

**LAW OFFICES OF
WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

under that section of the Lanham Act. Third, Hyperion is the owner of AmigaOS pursuant to the terms of the 3 November 2001 Agreement. Hyperion is, therefore, entitled to assert a claim under 15 USC §1125(c) for trademark dilution. Fourth, in addition to the claims under the Lanham Act, Hyperion has asserted common law trademark claims based on its rights as the first or senior user of the Amiga marks, e.g., AmigaOS, AmigaOne and the graphic BoingBall.

In sum, Hyperion submits that its amended counterclaims fulfill the requirements for stating valid statutory and common law trademark claims under the notice-pleading requirements of the Federal Rules of Civil Procedure. However, to the extent that the Court may conclude that any one of those claims may be technically deficient in some manner, Hyperion asks the Court to grant it permission to file an amended set of counterclaims to remedy said deficiency. Finally, because Hyperion has no objection to adding Eyetech Group to the suit, this request for permission to amend includes the addition of Eyetech as a party to the suit, if the Court deems it feasible and/or necessary to do so.

Because this brief is filed in opposition to a second renewed Motion to Dismiss, Hyperion filed a memo very similar to this one at Dkt. #56, and at Dkt. #99. Likewise, Hyperion relies herein on the Declaration of Evert Carton in Opposition to Amiga Delaware's Motion for Judgment on the Pleadings (Dkt. #54), the Declaration of William A. Kinsel in Opposition to Amiga Delaware's Motion for Judgment on the Pleadings (Dkt. #55), and the Second Declaration of William A. Kinsel in Opposition to Amiga Delaware's Renewed Motion for Judgment on the Pleadings (Dkt. #100). Those three declarations are <u>not</u> being re-filed, although additional working copies are being provided for the convenience of the Court.

HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS     - 2
Cause No: 07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

## II. FACTS

### A. HYPERION HAS COMMENCED AN ACTION AGAINST AMIGA DELAWARE BEFORE THE USPTO

In paragraph 25 of Amiga Delaware's Complaint (Dkt 1), plaintiff states that on July 28, 2006, it filed two trademark applications for a stylized "Amiga" logo and for the graphic Amiga "Boing Ball." (Kinsel Dec., Dkt. 55, ¶¶2-3.) Amiga Delaware failed to mention that it had filed three other trademark applications as well for the basic word mark "Amiga," for "Amiga Enabled," and for "Amiga Anywhere." (Kinsel Dec., Dkt. 55, ¶¶4-6 and Exs. C, D & E.) The USPTO still has not registered any of the marks subject to those applications, as Hyperion filed a still-pending Consolidated Opposition against each of them. (Second Kinsel Dec., Dkt. 100, ¶¶2-4 & Exs. 1 to 3.)

### B. HYPERION FIRST BEGAN USING THE AMIGA MARKS IN 2001

As testified to in the Declaration of Evert Carton in Opposition to Amiga Delaware's Motion for Judgment on the Pleadings, hereinafter "Carton Dec., Dkt. 54," and as demonstrated by Exhibits A to C attached thereto, Hyperion began using in commerce the AmigaOS and AmigaOne word marks, and the "BoingBall" graphic mark, promptly after the completion of the 3 November 2001 Agreement, and it has continuously done so ever since. This use necessarily preceded the first use of KMOS, Inc., now known as Amiga Delaware, because Amiga Delaware has admitted that it did not exist at the time that the 3 November 2001 Agreement was signed. (Dkt 39, Counterclaim ¶6 on p. 10; Dkt 49, Reply, ¶6 on p. 2.)

### C. HYPERION IS THE SUCCESSOR OR ASSIGN (I.E., THE REGISTRANT) OF THE AMIGA TRADEMARKS

The 3 November 2001 Agreement reads in part as follows:

> 2.07 **Bankruptcy.** In the event Amiga files for bankruptcy or becomes insolvent, the Amiga One Partners are granted an exclusive, perpetual, world-wide and royalty free right and license to develop (at their sole expense), use, modify and market the Software and OS 4 under the "Amiga OS" Trademark.

HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS - 3
Cause No: 07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

(Declaration of Evert Carton in Opposition to the Motion for Preliminary Injunction, Dkt 26, Ex. 2, p. 42). As previously reviewed in the opposition to the motion for a preliminary injunction, the evidence shows that Amiga Washington was insolvent prior to April 24, 2003, when the Itec Contract was signed, that Amiga Washington therefore had no rights to transfer to Itec on April 24, 2003, and that therefore Amiga Delaware has no rights under the November 3, 2001 contract. (Declaration of William A. Kinsel in Opposition to Amiga Delaware's Motion for Preliminary Injunction, Dkt 25, Ex. A, p. 11, at dep. pp 12-14; Ex. B, pp. 18-22.) Furthermore, Amiga Washington's corporate status expired on September 30, 2004. (Dkt 25, Ex. C.) Amiga Washington's recent efforts to resurrect its corporate status cannot "un-ring" that bell, for under the provisions of §2.07 of the 3 November 2001 Agreement, Hyperion and Eyetech (referred to by the contractually-defined term "Amiga One Partners") became and still are either or both the successors and assigns of Amiga Washington to the entirety of the Software (defined by contract to include OS 3.1, 3.5, 3.9 and the associated "Boing Bags"), OS 4, and the "Amiga OS" trademark. (Dkt 26, Ex. 2, p. 41.) A similar transfer of interests took place under the "Contingency" provision, at §2.08 of the 3 November 2001 Agreement (Dkt 26, Ex. 2, p. 42) because of "Amiga's" failure to issue a substantially new version of the Classic Amiga OS within 6 months of the completion of OS 4.0 by Hyperion.

**D.  HYPERION OWNS AmigaOS**

Hyperion was not paid $25,000 within 6 months of completion of OS 4.0 by Hyperion, as was required by the 3 November 2001 Agreement. (Carton Dec., Dkt 26, ¶¶40-46, Exs. 13, 14, & 15.) Because of this failure to pay $25,000, the following provisions of the 3 November 2001 Agreement came into play:

> Amiga may, at any time but no later than six (6) months after the completion of OS 4.0, elect to pay Hyperion Twenty Five Thousand USD (25,000 USD) in order to acquire the Object Code, Source Code

HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS          - 4
Cause No: 07-0631-RSM

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

> and intellectual property of OS 4.0 pursuant to and within the limits set
> out in article 2.06 hereof. Said payment will be first be applied against
> the balance of any outstanding invoices by the AmigaOne Partners vis à
> vis Amiga. In the event Amiga does not elect to carry out the
> aforementioned payment, all ownership and title in the enhancements of
> and additions to the Software effected by Hyperion and its
> subcontractors pursuant to this Agreement, shall rest with Hyperion.

(Dkt 26, Ex. 2, p. 42, emphasis added.) Simply put, by operation of the Agreement, Hyperion alone became the owner of the Object Code, Source Code and all intellectual property of AmigaOS 4.0. This necessarily includes the right to call Hyperion's product by its trademark, specifically, AmigaOS 4.0. (Carton Dec., Dkt. #54, ¶12.)

### E. HYPERION AND EYETECH ARE NOT LEGAL PARTNERS

Hyperion is not and has not been in a formal, legal partnership with Eyetech. The phrase "Amiga One Partners," as used in the 3 November 2001 Agreement (*see* Dkt 26, at Exhibit 2, page 40), is simply a defined term created for the purposes of that Agreement. That defined term did not create a new legal entity, as should be clear from the identification of the contracting parties at the beginning of the Agreement, at Dkt 26, Exhibit 2, p. 40, and from paragraph 4.05 of the same. (Carton Dec., Dkt. # 54, ¶11.) Furthermore, the fact that there is no separate legal entity called "Amiga One Partners" is specifically alleged by Hyperion in ¶18 of its Answer to Amiga Delaware's Amended Complaint. (*See* Dkt 105.) By contrast, Amiga Delaware presents no affirmative evidence on the issue, beyond its mere assertion that Amiga One Partners is a separate "juridical entity."[1] (Renewed Motion at Dkt. 111, p. 2, l. 17.)

---

[1] It is unclear to Hyperion what exactly a "juridical" entity is, in any event. Black's Law Dictionary, Abridged Fifth Edition, defines "juridical" to mean "relating to administration of justice, or office of a judge. Regular; done in conformity to the laws of the country and the practice which is there observed." The relevance of this word to the current motion seems stretched, unless Amiga Delaware wishes to point out that it has not even bothered to assert what country "hosts" the supposed entity of Amiga One Partners. Is it England, where Eyetech is incorporated? Is it Belgium, under which laws Hyperion VOF exists? Is it Washington?

**HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS** - 5
**Cause No: 07-0631-RSM**

**LAW OFFICES OF
WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

### III.     ARGUMENT

#### A.     LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) reads as follows:

> **(c) Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Furthermore, in assessing a motion for judgment on the pleadings, it is necessary to keep in mind that:

> Under the liberal federal pleading policies, a plaintiff need only give defendant fair notice of the claims against it. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A complaint should only be dismissed where, assuming all allegations as true in the light most favorable to plaintiff, it appears beyond doubt that no set of facts could support plaintiff's claim for relief. *Id.;* Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987), *cert denied* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).

Ultrapure Systems, Inc. v. Ham-Let Group, 921 F.Supp. 659, 665 (USDC, N.D. CA 1996).

#### B.     HYPERION HAS NO OBJECTION TO THE JOINDER OF EYETECH, IF THE COURT DETERMINES THAT JOINDER IS NECESSARY

Hyperion notes that it originally asserted that Eyetech was a necessary party in its opposition to Amiga Delaware's Motion for Preliminary Injunction. Hyperion further states that it has no objection to an order concluding that Eyetech should be joined in this action if feasible. However, as discussed in more detail below, Hyperion does <u>not</u> agree that Eyetech is a necessary party to providing Hyperion with standing to sue Amiga Delaware on Hyperion's trademark counterclaims. Furthermore, given the obvious expense involved in this litigation, Hyperion is reluctant to "volunteer" Eyetech as a party defendant/counterclaimant.

The burden to prove that Eyetech is a necessary party with respect to Hyperion's trademark counterclaims rests upon the moving party, here Amiga Delaware. Ferrofluidics

HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS      - 6
Cause No: 07-0631-RSM

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

Corp. v. Advanced Vacuum Components, Inc., 789 F.Supp. 1201, 1208 (USDC, DNH 1992), *affirmed* 968 F.2d 1463 (1st Cir. 1992). If the Court does determine that Eyetech is a necessary party, the proper remedy is an order requiring the joinder of Eyetech, and not the dismissal of Hyperion's counterclaims, as the philosophy behind Rule 19 is to avoid dismissal whenever possible. Heath v. Aspen Skiing Corp., 325 F.Supp. 223, 229 (USDC, D.Colo. 1971).

**C.  ANY PARTY DAMAGED BY A FALSE DESIGNATION OF ORIGIN MAY BRING A §1125(A) CLAIM UNDER THE LANHAM ACT**

Even in the third filing of this motion, Amiga Delaware still pays scant attention to its attempt to dismiss Hyperion's claim for false designation of origin under 15 USC §1125(a). Amiga Delaware slights that part of its motion because plaintiff knows that the statute does not support its argument:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> <u>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.</u>

(Underlined emphasis added.) The case law confirms the conclusions that flow naturally from the plain language of the statute:

**HYPERION'S MEMORANDUM IN OPPOSITION TO AMIGA DELAWARE'S SECOND RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS** - 7
**Cause No: 07-0631-RSM**

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

The remaining relevant portion of the Lanham Act, §43(a), 15 U.S.C. §1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services. Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1106 (9th Cir. 1992). Unlike §32(1), which grants a right of action solely to the registrant of a trademark, §43(a) permits "any person who believes that he or she is likely to be damaged" by the proscribed conduct to bring a civil action. 15 U.S.C. §1125(a). Where a plaintiff might lack standing under §32, a plaintiff may yet have standing to bring an action under §43(a). Murphy v. Provident Mutual Life Ins. Co., 756 F.Supp. 83, 86 (D.Conn.) ("[T]he question of ownership is immaterial to standing under §43(a), since standing may lie with mere users of trademarks."), aff'd, 923 F.2d 923 (2d Cir. 1990); Silverstar Enters., Inc. v. Adav, 537 F.Supp. 236, 241 (S.D.N.Y. 1982)(holding that because §1125(a) is broader than §1114, users of trademarks who are not owners of the marks might have standing).

National Licensing Association v. Inland Joseph Fruit Company, 361 F.Supp.2d 1244, 1256 (USDC, ED WA 2004). Here, because Hyperion has broad commercial interests in the Amiga trademarks (i.e., AmigaOS, AmigaOne and the "BoingBall"), Hyperion easily meets these standing requirements. (Carton Dec., Dkt. #54, ¶¶2-12 and Exhibits A to C; Hyperion's Amended Counterclaims, Dkt. 105, p. 24, ¶5 to p. 36, ¶73.)

The arguments Amiga Delaware makes to try to overcome Hyperion's standing rest heavily on the allegation that Eyetech is a necessary party. That assertion in turn rests on the incorrect conclusion that Hyperion's trademark claims are based solely on the 3 November 2001 Agreement. (*See* Amiga Delaware's second renewed Motion for Judgment on the Pleadings at Dkt. 111, pp. 9-10.) In fact, Hyperion's §1125(a) claim rests independently on that Agreement and on the common law trademark doctrine of first use. (Hyperion's Amended Counterclaims, Dkt 105, ¶65; Carton Dec., Dkt #54, ¶¶2-10, Exhibits A to C.) Because that first use has created independent trademark significance in AmigaOS, AmigaOne and the BoingBall with respect to Hyperion's operating system, Hyperion has independent standing to pursue this claim based on its "trademark user" status. Quiksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 754, 757-8 (9th Cir. 2006); Allard Enterprises v. Advanced Programming Resources,

**HYPERION'S MEMORANDUM IN OPPOSITION TO AMIGA DELAWARE'S SECOND RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS** - 8
**Cause No: 07-0631-RSM**

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

Inc., 249 F.3d 564, 571-572 (6th Cir. 2001). Amiga Delaware presents no *evidence* to contradict Mr. Carton's testimony.

Furthermore, the plain language of the statute, which grants the right to sue to "any person," does not require the joinder of "all persons" who are likely to be damaged by the conduct of the alleged violator. This, then, leaves only Amiga Delaware's argument that a defined contractual term, namely "Amiga One Partners," could in and of itself create a separate, judicially-recognized partnership that compels both Hyperion and Eyetech to take all legal action together. As Mr. Carton testifies, this argument is factually false, for Hyperion and Eyetech did not intend to create a formal, legal partnership when they signed the 3 November 2001 Agreement. (Carton Dec., Dkt. 54, ¶11, the Agreement at Dkt. 26, Ex. 2, p. 40, and §4.05 of the same. *See also* §III.H below.) Furthermore, Amiga Delaware presents no *evidence* to the contrary.

**D.   A PARTY'S STATUS AS A "REGISTRANT" UNDER THE LANHAM ACT PROVIDES SIGNIFICANT—YET STILL LIMITED—RIGHTS TO THE HOLDER OF THAT REGISTRATION**

As the fact section of this brief demonstrates, Amiga Delaware is still struggling to obtain registrations for its recent trademark applications. (Second Kinsel Dec., ¶¶2-4 & Exs. 1 to 3.) That problem, besides raising an interesting question about the validity of plaintiff's own claims under the Lanham Act, naturally leads one to an examination of the significance of a "registration":

> An action for trademark infringement can only succeed if, among other things, the plaintiff owns the mark. Registration provides prima facie evidence of ownership, but this can be rebutted by competent evidence. *See* 15 U.S.C. §1115(a). Ultimately, it is not the fact of registration that matters so much as the use of the mark in commerce; "[b]y insisting that firms use marks to obtain rights in them, the law prevents entrepreneurs from reserving brand names in order to make their rivals' marketing more costly." Zazu Designs v. L'Oreal, S.A., 979 F.2d 499, 503 (7th Cir. 1992). Established use by a nonregistrant is a valid defense to a registrant's infringement claim. 15 U.S.C. §1115(b)(5).

HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS      - 9
Cause No: 07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

| | |
|---|---|
| 1 | Central Mfg., Inc. v. Brett, 492 F.3d 876, 881 (7th Cir., July 9, 2007). And further: |

> At common law, ownership of trademark or service mark rights is obtained by actual use. [Cite omitted.] The first to use a mark in the sale of goods or services is the "senior user" of the mark and gains common law rights to the mark in the geographic area in which the mark is used.
>
> <u>Ownership rights flow only from prior use-either actual or constructive</u>. Federal registration of a trademark or service mark cannot create rights and priority over others who have previously used the mark in commerce, but federal registration is prima facie evidence of the registrant's ownership and exclusive right to use the mark, 15 U.S.C. §§1057(b), 1115(a), and constitutes constructive use of the mark. [Cite omitted.] "Constructive use" means that which establishes a priority date with the same legal effect as the earliest actual use of a trademark at common law. [Cite omitted.] In the typical case in which a senior user applies for the federal registration, "[c]onstructive use will fix a registrant's nationwide priority rights in a mark from the filing of its application for registration." *Id.* <u>In the case in which a junior user applies for registration, however, the extent of the senior user/non-registrant's territory is frozen as of the date of actual registration to the junior user.</u> 4 McCarthy §§26:40, 25:53; Lanham Act §15, 15 U.S.C. §1065.
>
> The territorial rights of a holder of a federally registered trademark are always subject to any superior common law rights acquired by another party through actual use prior to the registrant's constructive use. . . .

Allard Enterprises, 249 F.3d at 571-2 (underlined emphasis added).

In the case at bar, Hyperion is the senior user of the Amiga trademarks, as it was using them before KMOS, now known as Amiga Delaware, even came into existence. (Carton Dec., Dkt. 54, ¶¶2 to 10, Exs. A to C.) Furthermore as the *junior user* Amiga Delaware's rights, if any, can come into play only *upon the actual registration* of Amiga Delaware's trademarks. To date, the USPTO has refused to register any of plaintiff's recent trademark applications. (Second Kinsel Dec., ¶¶2-4, Exhibits 1 to 3.) And of course, Hyperion has clearly and unequivocally challenged the alleged assignment/transfer of intellectual property rights from Amiga Washington to Amiga Delaware inasmuch as any pre-existing registrations are at issue. (*See, e.g.,* Amended Counterclaims, Dkt. 105, p. 24, ¶8 to p. 29, ¶36.)

HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS - 10
Cause No: 07-0631-RSM

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

## E. HYPERION IS THE "REGISTRANT" UNDER THE LANHAM ACT FOR PURPOSES OF §1114(1)

The Lanham Act, at 15 USC §1114(1), permits the "registrant" of a trademark to bring a statutory claim for trademark infringement. 15 USC §1127 states in turn that the "terms "applicant" and "registrant" embrace the legal representatives, predecessors, successors and assigns of such applicant or registrant." The question then becomes, is Hyperion a successor and/or assign of Amiga Washington?

In responding to this question in the negative, Amiga Delaware relies on National Licensing Association v. Inland Joseph Fruit Company, 361 F.Supp.2d 1244, 1254 (USDC, ED WA 2004), for the proposition that a licensee of a trademark does not have standing to sue as a registrant under §1114(1). In that case, however, National Licensing Association's ("NLA") license was nothing like Hyperion's, for there NLA was "recipient of nothing more than the bare claims for trademark infringement," and that was insufficient to bring suit for trademark infringement. Id., at 1256. To put it differently, of all the "bundle of sticks" that made up the universe of trademark rights at issue in National Licensing, NLA owned *only one stick*, and that was the right to sue for prior infringements of the trademark rights held by other parties. NLA, could not, for instance, actually use the marks in commerce to further its own business ends. It was this limited license that was determined to be insufficient for purposes of §1114(1).

By contrast, the relevant language of §2.07 of the 3 November 2001 Agreement is extremely broad:

> 2.07 **Bankruptcy**. In the event Amiga files for bankruptcy or becomes insolvent, the Amiga One Partners are granted an exclusive, perpetual, world-wide and royalty free right and license to develop (at their sole expense), use, modify and market the Software and OS 4 under the "Amiga OS" trademark.

(Dkt. 26, Ex. 2, p. 42.) Given the legal and geographic breadth of this grant of exclusive rights, including the rights to the "Software," which is defined to include the Source Code of Amiga

HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS - 11
Cause No: 07-0631-RSM

LAW OFFICES OF
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

OS 3.1, 3.5, and 3.9, and the associated "BoingBags," there appears to be nothing left for anyone else to possess. This is especially the case given the fact that Amiga Washington was insolvent and, as of September 30, 2004, administratively dissolved. (Carton Dec., Dkt. 54, ¶11; Dkt. 25, Ex. C, p. 23.) In sum Hyperion meets the common sense definition of the term "successor" or "assign" and is a registrant for purposes of 15 USC §1114(1), not only because of the language of §2.07, but also because of the rights acquired through §2.08, which are to very similar effect. (Dkt. 26, Ex. 2, p. 41.)

The case law supports Hyperion's interpretation of the statutorily-defined term "registrant," and of Hyperion's contractual rights:

> Title 15 U.S.C. §1114 permits civil actions for trademark infringement to be brought by the "registrant" of the mark. The term registrant includes the legal representative, predecessors, successors, and assigns of the registrant. 15 U.S.C. §1127. Here, Plaintiff is an *exclusive licensee* to use Beach Boys trademarks to perform at live concerts. Complaint ¶¶4, 51. This license was granted him by the legal owner of the trademark, BRI. *Id.* The determination of whether a licensee has standing to sue under §1114 depends largely on the rights granted to the licensee in the licensing agreement. Typically, where the license is an exclusive license and does not set forth any restrictions on the licensee's ability to enforce the trademark, the licensee has standing to sue for infringement. Ultrapure Systems, Inc. v. Ham-Let Group, 921 F.Supp. 659, 665-666 (N.D. Cal. 1996). Under such circumstances, the licensee does have a property interest in the trademark and qualifies as an assignee or successor of the registrant. *Id.*

Love v. The Mail on Sunday, 2006 WL 4046180 (C.D.Cal., 2006). Here, Amiga Washington granted Hyperion an exclusive license in the AmigaOS trademark and OS 4.0, etc. Furthermore, that license does *not* set forth any limitations on Hyperion's ability to enforce the same. Hyperion has, as a result, the right to sue Amiga Delaware for trademark infringement under §1114(1).[2]

---

[2] The paragraphs alleging the facts pertinent to Hyperion's status as a successor or assign of Amiga Washington include those found at Dkt 105, Amended Counterclaims p. 24, ¶¶5-9; p. 25, ¶21; p. 26, ¶24; p. 29, ¶37; p. 35, ¶63-4; P. 36, ¶69.

**HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS** - 12
**Cause No: 07-0631-RSM**

**LAW OFFICES OF
WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

F.  **HYPERION IS THE OWNER OF THE AmigaOS TRADEMARKS AND HAS STANDING TO SUE FOR TRADEMARK DILUTION UNDER §1125(C)**

Just as with the claim for false designation of origin under §1125(a), and the claim for trademark infringement under §1114(1), the precise language of 15 USC §1125(c) must be scrutinized to determine who has standing to sue for statutory trademark dilution:

> Subject to the principles of equity, the <u>owner</u> of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the <u>owner's</u> mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

(Emphasis added.) Amiga Delaware cites to <u>Love v. The Mail on Sunday</u>, 2006 WL 4046180, at p. 14, to support its motion for judgment on the pleadings, yet that case simply confirms that the focus of the analysis is on whether the claimant is the "owner" of the mark:

> Defendants moved to dismiss on the ground that Plaintiff lacks standing to bring a claim for trademark dilution because he is only an exclusive licensee of the mark, and not the owner of the mark. Because the statute grants standing to sue only to the "owner of the famous mark," Plaintiff lacks standing to bring this claim.

<u>Id.</u> Yet, the 3 November 2001 Agreement specifically states that Hyperion (and Hyperion alone) becomes the <u>owner</u> of AmigaOS 4.0 upon the happening of certain specified events:

> 3.01 Amiga may, at any time but no later than six (6) months after the completion of OS 4.0, elect to pay Hyperion Twenty Five Thousand USD (25,000 USD) <u>in order to acquire</u> the Object Code, Source Code and intellectual property of OS 4.0 pursuant to and within the limits set out in article 2.06 hereof. Said payment will first be applied against the balance of any outstanding invoices by the AmigaOne Partners vis a vis Amiga. In the event Amiga does not elect to carry out the aforementioned payment, <u>all ownership and title</u> in the enhancements of and additions to the Software effected by Hyperion and its subcontractors pursuant to this Agreement, shall rest with Hyperion.

(Dkt 26, Ex. 2, p. 42, underlined emphasis added.) This provision of the Agreement makes clear that, before any payment of $25,000, Hyperion was the owner of the intellectual property it created and, if Amiga failed to make that payment, Hyperion *remained* the owner of said

HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS   - 13
Cause No: 07-0631-RSM

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

intellectual property, including necessarily the right to call it by name, specifically, AmigaOS 4.0. (Carton Dec., Dkt. 54, ¶13.) Furthermore, Hyperion has succeeded in making the marks famous. (Carton Dec., Dkt. 54, ¶7.) Finally, the essential facts needed for this cause of action are pled at Dkt 105, Amended Counterclaim p. 27, ¶29; p. 28, ¶35; p. 29, ¶37(d); p.35, ¶¶63-70.

### G. HYPERION HAS PLED COMMON LAW CLAIMS FOR INFRINGEMENT AND DILUTION

Amiga Delaware's motion simply assumes that Hyperion's trademark claims are limited to statutory causes of action under the Lanham Act. Perhaps the titles to Counterclaims 6 and 7 have something to do with that mistake, as those titles mention the Lanham Act. Yet, the actual paragraphs of those causes of action make specific allegations of and to Hyperion's common law rights of first use. (Dkt. 105, Amended Counterclaim p. 35, ¶65 & p. 36, ¶68 in Claim 6, and the "re-allegation" paragraph of Claim 7.) Because the statutory rights granted by the Lanham Act are subject to the superior rights of "senior users," Hyperion has alleged valid common law causes of action for trademark infringement, dilution and false designation of origin. Allard, 249 F.3d at 571-72; Quiksilver, 466 F.3d at 754-58; Central Manufacturing, 2007 WL 1965673 at p.5.

### H. HYPERION HAS STANDING TO BRING ITS TRADEMARK CLAIMS WITH OR WITHOUT EYETECH

Again, while Hyperion has no objection to joining Eyetech to this suit, it does deny that it is in a formal partnership with that English company. (Carton Dec., Dkt. 54, ¶11; Hyperion's Answer, Dkt #105, p. 5, ¶18.) In addition, Hyperion claims ownership to the Amiga trademarks through §3.01 of the 3 November 2001 Agreement, which confirms and "rests" all ownership and title to the stated intellectual property in Hyperion alone (subject to the rights of its contractors). (Carton Dec, Dkt. 54, ¶13.) Indeed, the fact that §3.01 of the Agreement vests distinct and valuable property in Hyperion alone, as opposed to the "Amiga One Partners,"

HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS        - 14
Cause No: 07-0631-RSM

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

establishes that there was no intent to form a partnership. RCW 25.05.060 ("Property acquired by a partnership is property of the partnership and not of the partners individually.") Likewise, the fact that Hyperion and Eyetech each signed the Agreement in its individual capacity, rather than as a "partner" of "Amiga One Partners," (Dkt 26, Ex. 2, p. 46), and that different obligations were imposed on Hyperion and Eyetech (e.g., id. at p. 41, §2.02), establishes the lack of any intent to form such a partnership. Kintz v. Read, 28 Wash.App. 731, 734, 626 P.2d 52 (1981)(Existence of a partnership depends upon the intention of the parties.).

Indeed, one has to wonder if Amiga Delaware is truly serious about its contention that "Amiga One Partners" is a separate legal entity, for that result makes the "partnership" the actual contracting party in the 3 November 2001 Agreement, and that in turn has obvious implications for plaintiff's claims against Hyperion:

> A partner is not a co-owner of partnership property and has no interest in partnership property which can be transferred, either voluntarily or involuntarily.

RCW 25.05.200. Put simply, if Amiga Delaware is right, then Hyperion could not transfer OS 4.0 to it under any circumstances, even if plaintiff ultimately won this suit.

## I. TO THE EXTENT THE COURT DEEMS IT APPROPRIATE, HYPERION REQUESTS PERMISSION TO FILE AMENDED COUNTERCLAIMS

Hyperion submits that its Counterclaims satisfy the notice-pleading requirements of the Federal Rules of Civil Procedure to allege trademark infringement, dilution and false designation of origin claims under both the Lanham Act and common law. If the Court disagrees with that conclusion in any regard, however, Hyperion respectfully requests the Court's permission to file amended counterclaims to address those deficiencies.

HYPERION'S MEMORANDUM IN OPPOSITION
TO AMIGA DELAWARE'S SECOND RENEWED MOTION
FOR JUDGMENT ON THE PLEADINGS - 15
Cause No: 07-0631-RSM

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148

## IV. CONCLUSION

For all of the foregoing reasons, Hyperion asks this Court to deny Amiga Delaware's Motion for Judgment on the Pleadings.

DATED this 21st day of July, 2008.

        KINSEL LAW OFFICES, PLLC

By: /s/ William A. Kinsel
    William A. Kinsel, WSBA #18077
Attorney for Defendant Hyperion VOF
    William A. Kinsel, Esq.
    Kinsel Law Offices
    2025 First Avenue, Suite 440
    Seattle, WA 98121
    Phone: (206) 706-8148
    Fax: (206) 374-3201
    Email: wak@kinsellaw.com

536p.doc

**HYPERION'S MEMORANDUM IN OPPOSITION TO AMIGA DELAWARE'S SECOND RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS** - 16
**Cause No: 07-0631-RSM**

**LAW OFFICES OF WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 440
SEATTLE, WASHINGTON 98121
(206) 706-8148