| | |
|---|---|
| AMIGA, INC., a Delaware corporation, | |
| Plaintiff, | CAUSE NO. CV07-0631RSM |
| and | |
| HYPERION VOF, a Belgium corporation, | AMIGA'S REPLY MEMORANDUM OF LAW SUPPORTING 12(c) MOTION |
| Defendant. | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMIGA'S REPLY MEMORANDUM OF LAW
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE
BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

# PRELIMINARY STATEMENT

Plaintiff Amiga, Inc., a Delaware corporation ("Amiga Delaware"), replies in support of its Rule 12(c) motion. Hoping to distract the Court from fatal flaws in its counter-claims, Defendant Hyperion's opposition misrepresents fact and law in an effort to create false issues. Hyperion also proffers declarations making irrelevant, demonstrably false assertions and attaching irrelevant exhibits, all of which are extrinsic to the pleadings and should be stricken.

## I. HYPERION'S 15 U.S.C. §1114(1) INFRINGEMENT CLAIM FAILS BECAUSE HYPERION IS NOT A "REGISTRANT" OF ANY AMIGA MARK

### A. Amiga Delaware Is The Sole Registrant Of All AMIGA Formative Or Related Trademark Registrations

Hyperion is not a "registrant" of any federally registered AMIGA formative or related mark and so it lacks standing under 15 U.S.C. § 1114(1). Hyperion has submitted no evidence to the contrary, because there is no evidence to submit. Attempting to obscure this simple truth, Hyperion again proffers (Dkt. 112, p. 2:16-22) a Declaration of William A. Kinsel dated July 20, 2007 (Dkt 55), previously filed in opposition to Amiga Delaware's Rule 12(c) motion to dismiss Hyperion's initial Counterclaims. By citing that declaration, which Amiga Delaware previously refuted (*see* Dkt. 60, 61), Hyperion attempts to perpetuate the irrelevant and demonstrably false assertion that *Amiga Delaware* is not a registrant of any registered AMIGA mark. Amiga Delaware, as a matter of public record, is the registrant of all relevant registered AMIGA formative and related trademarks. (Dkt. 61 ¶¶ 4-5; Ex. A)[1] However, on this motion, *Amiga Delaware's* registrant status is irrelevant to the undeniable fact that *Hyperion* is not a "registrant" of any registered mark purportedly being infringed – an essential element of

---

[1] In connection with its prior 12(c) motion against Hyperion's initial Counterclaims, Amiga, Inc. submitted two reply declarations of Tim Paterson, one addressing trademark *registrations* (Dkt 61), and the other trademark *applications* (Dkt. 60), as well as a reply Declaration of Lawrence R. Cock Authenticating Documents (Dkt 62). Those three declarations are relied on for this reply and incorporated herein by reference, but not re-filed.

AMIGA'S REPLY MEMORANDUM OF LAW - 1
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Hyperion's § 1114(1) claim. All assertions that Amiga Delaware is not a registrant of such marks should be stricken (*see* Point V below) and the 15 U.S.C. § 1114(1) counterclaim dismissed.

**B.     The PTO Has Approved Amiga Delaware's Recent Trademark Applications, And Hyperion's Mere Notice of Opposition Is Irrelevant To This Motion**

Citing a Second Declaration of William A. Kinsel (Dkt. 100) that was filed in opposition to Amiga's previous 12(c) motion against Hyperion's Amended Counterclaims (Dkt. 98), Hyperion makes the further irrelevant and misleading statement that Amiga Delaware "is still struggling to obtain registrations" for certain additional, recently-filed trademark applications. (Dkt. 99, p. 9:3-4) The only obstacle is a Consolidated Notice of Opposition, filed by Hyperion at the Trademark Trial and Appeal Board ("TTAB") on ***December 7, 2007***. (*See* Dkt. 100, Ex. 2, p. 8) However, the ability to file a notice of opposition at the TTAB is not dependent on the opposer having any ownership rights in, or entitlement to register the mark. J. McCarthy, 3 *McCarthy on Trademarks & Unfair Competition*, § 20:07 at 20-17 (2007).[2] Again, the status of recent Intent-to-Use applications filed by Amiga Delaware is entirely irrelevant to the fact that *Hyperion* is not a "registrant" of any federally-registered AMIGA trademark purportedly being infringed by Amiga Delaware. Accordingly, these assertions in Hyperion's opposition papers should be stricken. (*See* Point V below)

**C.     As a Matter of Law, Hyperion is Neither "Successor" Nor "Assign" With Respect to Any Registered AMIGA Trademark, by Virtue of Any Limited License Purportedly Granted Under the Agreement or Otherwise**

Hyperion's sole basis for claiming that it should be treated as a "registrant" within the

---

[2]     By citing the July 20, 2007 Kinsel Declaration (Dkt. 55), Hyperion also attempts to perpetuate the further irrelevant and misleading statement, that the PTO issued "final" refusals to register Amiga Delaware's additional, recent applications. (*See* Dkt. 55, ¶¶ 1-6) As demonstrated in connection with the prior 12(c) motion, that statement mischaracterized the nature and consequences of the PTO action as well as the then-current status of those applications, all of which had by then been ***approved*** by the PTO. The applications were published in the PTO's Official Gazette and only thereafter were opposed by Hyperion. (*See* Dkt. 60, ¶¶ 4-5, Ex. A, Dkt 100, Kinsel Decl.)

AMIGA'S REPLY MEMORANDUM OF LAW - 2
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

meaning of 15 U.S.C. §1114(1) is its conclusory assertion that it "meets the ***common sense*** definition of the term 'successor' or 'assign'" (Dkt. 112, p. 12:4-5; emphasis added) (1) by virtue of the license it claims to have acquired through Sections 2.07 and 2.08 of the Agreement and (2) based on Hyperion's erroneous contention that as of September 30, 2004, Amiga Washington's "corporate status expired" when it was administratively dissolved by the Secretary of State, and that by virtue of Amiga Washington's supposed non-existence Hyperion somehow became Amiga Washington's "successor" or "assign" to "the Amiga trademarks" (which are actually owned and registered by Amiga Delaware). (*See* Dkt. 112, p 3:18 through p. 4:11; p. 11:24 through p. 12:8) Hyperion is wrong as a matter of fact and law.

1. <u>Amiga Washington Has Never Ceased to Exist</u>

As a threshold matter, Hyperion's assertions regarding the effect of Amiga Washington's administrative dissolution by the Secretary of State are entirely inaccurate. "A corporation administratively dissolved continues its corporate existence," RCW 23B.14.210 (3), and has five years to remedy whatever deficiency led to its dissolution and be reinstated. RCW 23B.14.220. During the period of its dissolution, a corporation may operate to the extent necessary to wind up and liquidate its business and affairs. *Equipito Div. Aurora Equip. Co. v. Yarmouth*, 134 Wash.2d 356, 370, 950 P.2d 451, 458 (1998). Reinstatement, when obtained, relates back to the date of dissolution, and the corporation may resume its business as if the administrative dissolution had never occurred. RCW 23B.14.200 (3). Therefore, Amiga Washington continued to exist. Moreover, even if it had never been reinstated, any sale or assignment of its trademarks and intellectual property after it was administratively dissolved (*e.g.*, Amiga Washington's sale and assignment of assets to KMOS, aka Amiga Delaware) would constitute a permissible and valid step toward winding-up and liquidating its business and affairs.

2. Any Licenses Under the Agreement Are Extremely Narrow

AMIGA'S REPLY MEMORANDUM OF LAW - 3
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

in Scope, Compared With Amiga Delaware's Registrations

Simply put, a license is ***not*** an assignment. Any trademark license purportedly granted pursuant to Sections 2.07 or 2.08 of the Agreement was to Amiga One Partners, not Hyperion, and certainly was not an assignment of all rights in a registered AMIGA trademark for all purposes, as Hyperion claims. Hyperion disingenuously asserts that rights it allegedly received under these sections, allowing it to develop a new version of the operating system based on prior versions, also gave it unlimited rights to use all AMIGA formative and related trademarks for all purposes and glibly concludes that "there appears to be nothing left for anyone else to possess." (Dkt. 112, p. 12:1-2) However, Hyperion is blurring the distinction between copyright and trademark rights purportedly licensed to Amiga One Partners under these sections, in an attempt to beef up a narrow putative trademark license and make the further leap that the license was an assignment. "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression," 17 U.S.C. § 102(a), while "[t]he term 'trademark' includes any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

Any license allegedly granted to the Amiga One Partners under Section 2.07 ( "an exclusive, perpetual, world-wide and royalty free right and license to develop (at their sole expense), use, modify and market the Software and OS 4 under the 'Amiga OS' trademark") or under Section 2.08 ( "an exclusive, perpetual, worldwide right and license to develop, use, modify and market the Software and OS 4 under the 'Amiga OS' trademark and at their sole expense") would comprise separate copyright and trademark rights: (1) a ***copyright*** license to develop certain updated versions of Amiga Operating System software based on the Source Code of certain pre-existing versions of the Amiga Operating System (constituting derivative works of

AMIGA'S REPLY MEMORANDUM OF LAW - 4
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1 | copyright, *see* 17 U.S.C. § 101) and (2) a limited ***trademark*** license to market only those updated
2 | versions – *i.e.,* only those derivative works – only under the "Amiga OS" trademark.

3 | This alleged limited trademark license for use of the "Amiga OS" mark is a far cry from
4 | what Hyperion claims was a complete assignment of all AMIGA formative or related trademarks
5 | covering a wide range of goods far beyond new versions of an old operating system. In contrast,
6 | Amiga Delaware's trademark registrations encompass a broad range of goods. For example:

- Registration No. 1,401,045 for the trademark AMIGA, issued July 15, 1986, covers computers, computer disk drives, RAM expansion cartridges, computer monitors and computer modems. (Dkt. 1, Complaint Ex. C)
- Registration No. 2,369,059 for the POWERED BY AMIGA & Boing Ball Design mark, issued July 18, 2000, covers computers, computer peripherals and computer operating systems. (*Id.* at Ex. D)
- Registration No. 2,802,748 for the AMIGA trademark, issued July 18, 2000, covers computer software used to facilitate development of software applications that can run on multiple platforms and other electronic devices; operating system software for personal computers and other electronic devices. (*Id.* at Ex. E)

Further, any license under Sections 2.07 or 2.08 of the Agreement to use the "Amiga OS" trademark is expressly limited to the Amiga One Partners' use of that particular mark in connection with updated versions of the old operating system software. It would ***not***, for example, extend to use of the "Amiga OS" trademark to market an entirely new operating system that is not derived from Source Code of pre-existing versions, let alone to separate software applications (*e.g.,* word processing and spreadsheet programs and games), or for computer hardware or peripherals. Any such license also would not extend to use of the "Boing Ball" mark or any AMIGA or AMIGA-formative marks, aside from just the mark "Amiga OS." All other rights regarding all other products and all other trademarks and all trademark registrations were retained by Amiga Washington in the Agreement – assuming the Section 2.07 or 2.08 licenses were ever triggered. Amiga Delaware now owns all those other rights, trademarks and trademark registrations. (*See* Dkt. 61, Paterson *Registration* Decl. ¶¶ 4-5 and Ex. A)

AMIGA'S REPLY MEMORANDUM OF LAW - 5
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

As a matter of law, Hyperion is neither a "registrant" nor a successor or assign of a "registrant" with respect to any AMIGA formative or related trademark registrations and so lacks standing under § 1114(1). *See Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1254 (E.D. Wash. 2004). The § 1114(1) counterclaim should be dismissed.

## II. HYPERION'S 15 U.S.C. § 1125(C) DILUTION CLAIM FAILS BECAUSE, AS A MATTER OF LAW, IT IS NOT "OWNER" OF ANY FAMOUS AMIGA MARK

Erroneously asserting that it is the owner of the "AmigaOS" trademark, (*see* (Dkt. 99, p. 4:19 through p. 5:8; p. 13:1 to p. 14:4), Hyperion again confuses the distinction between copyright and trademark. Hyperion claims that Amiga Washington (or its successors-in-interest) failed to make payment pursuant to Section 3.01 of the Agreement, with the result that Hyperion purportedly retained ownership of the Object Code, Source Code and intellectual property of OS 4.0, which is just an updated version of prior operating systems (*i.e.*, a derivative copyright work, 17 U.S.C. § 101) owned and previously sold by Amiga Washington and its predecessors under the AMIGA brand. Hyperion then makes the conclusory leap that ownership of the OS 4.0 derivative copyright includes "necessarily the right to call it by name, specifically AmigaOS 4.0." (Dkt. 112, p.14:1-2; *see also* p. 5:7-8) That is simply wrong as a matter of law.

Contrary to Hyperion's assertion, alleged ownership of the copyright in the derivative work, including Object Code and Source Code, would not carry with it ownership of the AMIGA trademark that was used to sell prior versions of the operating system. The 4.0 version is merely a version of an "operating system" – a derivative copyright work. Its "name," if any, is "OS 4.0," not "*Amiga*OS 4.0." Neither "AmigaOS," nor "AmigaOS 4.0," is a generic designation for this or any other operating system. "AMIGA" and "AmigaOS" are trademarks used to identify a single source of goods -- i.e., the trademark owner. *See* 15 U.S.C. § 1127 (purpose of a trademark is to "identify and distinguish" one's products "from those manufactured or sold by

AMIGA'S REPLY MEMORANDUM OF LAW - 6
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

others and to indicate the source of the goods"). Whatever Hyperion might have acquired pursuant to Section 3.01 of the Agreement, it was not ownership of a trademark.

Since Hyperion is not the "owner" of any famous AMIGA trademark allegedly being diluted by Amiga Delaware, its Cause No. 6 should be dismissed with prejudice. *See Thane Int'l v. Trek Bicycle Corp.*, 305 F.3d 894, 907 (9th Cir. 2002); *see also Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1012 (9th Cir. 2004).

### III. HYPERION NEVER PLED AND CANNOT AS A MATTER OF LAW STATE ANY CLAIM FOR COMMON LAW TRADEMARK INFRINGEMENT OR DILUTION OR FALSE DESIGNATION OF ORIGIN

#### A. Hyperion's Counterclaims Do Not Allege Common Law Causes of Action

Faced with dismissal of its Federal claims, Hyperion scrambles to assert that its Counterclaims are intended to include common law causes of action for trademark infringement and dilution and false designation of origin. (Dkt. 112, p. 14:5-17) However, Hyperion's allegations in Cause Nos. 6 and Cause No. 7 claim only Lanham Act violations. It is not just the counterclaims' titles that reference the Lanham Act. Paragraph 69 in Cause No. 6 expressly states: "By reason of the foregoing, Amiga Delaware has violated § 32(1) and § 43(a) of the Lanham Act, 15 U.S.C. § 1114(1) and 1125(c)." *Accord* ¶ 73 in Cause No. 7. Nowhere in either counterclaim does Hyperion allege anything about trademark rights, infringement, dilution or false designation of origin under common law. Such claims must be pled separately and specifically if at all.

#### B. Trademark Dilution Under Washington Law Is Exclusively Statutory

Hyperion adamantly asserts that its trademark dilution claim encompasses a claim of dilution under Washington *common law*. (*See* Dkt. 112, p. 14:5-17) However, trademark dilution under Washington law is *exclusively statutory*. RCW § 19.77.160. No common law cause of action exists. Any purportedly pled by Hyperion should be dismissed as a matter of law.

AMIGA'S REPLY MEMORANDUM OF LAW - 7
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1. **Attempting to Assert a Statutory Dilution Claim Under Washington Law Would Not Avail Hyperion Which is Not "Owner" of Any AMIGA Mark**

Even if Hyperion could invoke Washington's dilution statute, as explained in Amiga Delaware's moving papers, Hyperion is not the "owner" of any AMIGA trademark purportedly being diluted by Amiga Delaware, and Washington's dilution statute makes relief available only to "[t]he owner of a mark that is famous in this state . . . ." RCW § 19.77.160(1).

2. **Any Claim Under Washington's Dilution Statute Is Preempted By 15 U.S.C. § 1125(c)(6) Due to Amiga Delaware's Federal Registrations**

Moreover, any dilution claim under the Washington statute would, by virtue of Amiga Delaware's federal trademark registrations, be preempted by 15 U.S.C. § 1125(c)(6), which provides that "ownership by a person of a valid [federal trademark] registration . . . shall be a complete bar to an action against that person with respect to that mark [for trademark dilution] brought by another person under the common law or a statute of a State . . . ."

In sum, Hyperion has no basis whatsoever for any kind of trademark dilution claim against Amiga Delaware under any federal or Washington statutory or common law.

**C.  Washington Has Never Recognized a Common Law Claim for False Designation of Origin Apart From a Claim Under 15 U.S.C. § 1125(a)**

Research has revealed no case in Washington ever recognizing a false designation of origin claim under state common law, apart from a claim under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). Accordingly, there is no basis for allowing such a claim by Hyperion.

**D.  Hyperion's Opposition Papers Demonstrate Its Lack of Priority Of Trademark "Use in Commerce" as a Matter of Law, Thereby Barring Any Kind of Common Law Trademark Claim**

Hyperion's opposing papers demonstrate that Hyperion has never engaged in any trademark use that could establish any trademark rights inuring to its own benefit and thus cannot, as a matter of law, establish common law trademark rights superior to Amiga Delaware's.

AMIGA'S REPLY MEMORANDUM OF LAW - 8
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Hyperion purports to claim priority over Amiga Delaware by virtue of having "used" various AMIGA formative and related marks ever since entering into the Agreement in November 2001, which granted limited trademark use rights to Amiga One Partners. (*See* Dkt. 112, p. 3:12-21)  All use of a trademark by a licensee necessarily inures to the benefit of the licensor, not the licensee. *See Twentieth Cent. Fox Film Corp. v. Marvel Enter.*, 155 F. Supp. 2d 1, 20-21 (S.D.N.Y. 2001); *Printers Serv. Co. v. Bondurant*, 1991 U.S. Dist. LEXIS 20561, *13 (C.D. Cal. 1991); *see also* 15 U.S.C. § 1055.  Thus, to the extent Hyperion engaged in any "use" of the trademarks in commerce, such use either was pursuant to the license, thereby inuring to the benefit of the licensor, or (if outside the scope of the license) constituted infringement.

Indeed, the very examples of "use" cited in the Carton Declaration demonstrate Hyperion's lack of independent trademark rights.  For example, various Hyperion web pages cited by Carton bear a legend and notice stating: ***"AMIGA and its logos are registered trademarks of Amiga, Inc."*** (Dkt. 54 Ex. B, pp. 17, 18; emphasis added)  Similarly, Carton cites Hyperion's placement of Amiga trademarks on the CD jacket and CD containing Developer Pre-release versions of OS 4.0, but those bear the legend and notice: ***"developed under license from KMOS, Inc.  All rights reserved.  Amiga ® is a registered trademark of Amiga, Inc."*** (Dkt. 54 Ex. C, pp. 20, 21; emphasis added)  Far from establishing Hyperion's trademark rights in AMIGA marks, such notices constitute admissions that Hyperion lacked such trademark rights and was not using the AMIGA marks to exercise or establish trademark rights for itself.  *See Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1221 (9th Cir. 1996) (holding that trademark ownership, or the lack thereof, can be established by "admissions by the parties as to which one owns the trademark.")  Much the same is true of the Amiga History Guide web site (http://www.amigahistory.co.uk) cited by Carton as a supposed example of "public awareness of

AMIGA'S REPLY MEMORANDUM OF LAW - 9
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

the relationship between Hyperion and Amiga OS 4.0." (Dkt. 54 ¶ 7) That site, like Hyperion's own web pages, contains a legend stating unequivocally ***"Amiga is a registered Trademark of Amiga Inc."*** demonstrating third party awareness that the AMIGA belongs to Amiga Delaware, ***not*** Hyperion. (Dkt. 62 Lawrence Cock Decl. Ex. 1; emphasis added) In any event, a link on a ".uk" web site in the United Kingdom does not constitute evidence of any kind of general, "public awareness" of anything – even in the United Kingdom, let alone in the United States. *See Grupo Gigante SA DE CV v. Dallo & Co., Inc.*, 391 F.3d 1088 (9th Cir. 2004) ("[A] well-established principle of trademark law, the territoriality principle, ... says that priority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world.").

Although Hyperion further asserts that it has used AmigaOS, AmigaOne and Boing Ball trademarks outside the scope, and independent, of the license granted in the Agreement (s*ee* Dkt. 112, p. 8:4-13; Dkt. 54 ¶¶2-10, Exs. A-C), the purported "use" described by Hyperion, as a matter of law, does not and cannot constitute "use in commerce." For example, Evert Carton, Managing Partner of Hyperion, alleges that the name "AmigaOS 4.0" was mentioned "in interviews and appearances at enthusiasts shows to create public awareness and explain the project to the public," and alleges that Hyperion used the trademarks in press releases and over the internet, including in "announcements about the development of OS 4.0" on its website and to "develop consumer awareness" about the operating system. (Dkt. 54 ¶¶ 2-4, 6 and Exs. A, B) Such conduct barely rises to the level of mere advertising, which does not constitute "use in commerce." *See Brookfield*, 174 F.3d at 1052-53 (defendant's "purported use" of a mark by "limited email correspondence with lawyers and a few customers" and "register[ing] its domain name" insufficient; these activities show a mere intent or preparation to use a mark in commerce,

AMIGA'S REPLY MEMORANDUM OF LAW - 10
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

not "use in commerce"); *Sleep Country USA, Inc. v. Northwest Pacific, Inc.*, 2003 U.S. Dist. LEXIS 26055 (W.D.Wa. 2003) (holding "pre-sale activities," consisting of a listing in the phone directory and distributing flyers, did not constitute "use in commerce" to establish trademark ownership.); *Future Domain Corp. v. Trantor Sys. Ltd.*, 1993 U.S. Dist. LEXIS 9177 (N.D.Cal. 1993); *see also Sweetwater Brewing Co., LLC v. Great Am. Rests., Inc.*, 266 F. Supp. 2d 457, 464 (E.D.Va. 2003) ("use of a mark on press releases, brochures, sales presentations, newspaper articles, and the like, [is] not relevant trademark use ... Defendants' attempts to establish 'use' of the mark through promotional activities are without merit.").

As a matter of law, Hyperion has failed to identify any "use in commerce" that could create *any* common law trademark rights for itself, let alone rights senior to Amiga Delaware's federal registrations. Accordingly, Hyperion has no basis for asserting any supposed common law infringement, dilution or false designation of origin claims.

### IV. HYPERION HAS ADMITTED THAT THE AMIGA ONE PARTNERS PARTNERSHIP IS THE SOLE LICENSEE UNDER SECTION 2.07

A partnership is created when two or more persons agree to carry on a business and share profits and ownership control and may be formed regardless of whether the persons entering into the agreement intend to form the partnership entity. RCW 25.05.055(1). "Property acquired by a partnership is property of the partnership and not of the partners individually." *Curley Electric, Inc. v. Bills*, 130 Wn.App. 114, 122, 121 P.3d 106, (2005); RCW 25.05.060. Hyperion admits in its Counterclaims what appears from the Agreement's face: Amiga One Partners is the sole licensee under provisions, including Section 2.07, at issue in the Counterclaims. (*E.g.,* Dkt. 105, ¶ 37(a)) Hyperion itself has asserted that Eyetech Group Limited ("Eyetech"), the other partner therein, is a necessary party to claims arising from the Agreement, which certainly include Hyperion's Counterclaims. (Dkt. 24. Hyperion Prelim. Inj. Opp. Brief, p. 2:13-16, p. 14:17-25)

AMIGA'S REPLY MEMORANDUM OF LAW - 11
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1   Thus, Hyperion is estopped from denying the partnership. Moreover, when the Agreement's
2   drafters intended to give rights or obligations to Hyperion (or Eyetech) individually, they knew
3   how to do so. (*See e.g.*, Dkt. 1 Ex. A, Agreement §§ 2.02, 2.03 (A), (B), (C) and 4.02) If
4   Hyperion's Cause No. 6 or No. 7 somehow survive this motion, Hyperion should be required to
5   join Eyetech and Amiga One Partners. In their absence, this Court should dismiss Hyperion's
6   Counterclaims for trademark infringement and dilution and for false designation of origin, which
7   are based on rights allegedly acquired through licenses made expressly to "Amiga One Partners,"
8   not to Hyperion individually and apart from the partnership, whether *de jure* or *de facto*.[3]

## V. MOTION TO STRIKE: HYPERION'S DECLARATIONS INJECT MATTERS OUTSIDE THE PLEADINGS AND SHOULD BE IGNORED

A Court reviews a motion for judgment on the pleadings as it would a 12(b)(6) motion to dismiss. *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir.1999). The non-moving party's well-pled material allegations are taken as true. *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 544 (6th Cir.1991), and the court should strike the non-movant's extrinsic material. *See e.g. Proctor v. DialAmerica Mktg.*, 2007 WL 1394153 (N.D.Ohio); *John S. Clark Co. v. United Nat'l. Ins. Co.*, 304 F.Supp.2d 758, 764 n.4 (M.D.N.C.2004) (striking the factual matters presented by non-movant where movant under Rule 12(c) limited itself to the pleadings and pleading exhibits).

Amiga's Rule 12(c) motion is based on Hyperion's failure to plead elements essential to two counterclaims and is limited to the pleadings. The Court need only consider the counter-claims, not extrinsic "evidence" and legal conclusions in the Kinsel and Carton declarations.

---

[3] Hyperion's feigned ignorance regarding the term "juridical entity" is entirely disingenuous. (*See* Dkt. 112, p. 5, n. 1: 22-26) Indeed, the term has been legally defined in Article I of the Inter-American Convention on Personality and Capacity of Juridical Persons in Private International Law, May 24, 1984, O.A.S.T.S No. 63, 24 ILM 465, 1985 WL 204586 (1985) ("This Convention shall apply to juridical persons organized in any of the States Parties, juridical person being understood to mean any entity having its own existence and being responsible for its own actions, separately and distinctly from those of its members or organizers, and classified as a juridical person in accordance with the law of the place of its organization"). Amiga One Partners is a juridical entity, separate and apart from Hyperion.

AMIGA'S REPLY MEMORANDUM OF LAW - 12
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

| | |
|---|---|
| 1 | DATED July 25, 2008. |
| 2 | /s/ Lawrence R. Cock |
| | Lawrence R. Cock, WSBA No. 20326 |
| 3 | CABLE, LANGENBACH, KINERK & BAUER, LLP |
| | Suite 3500, 1000 Second Avenue Building |
| 4 | Seattle, Washington 98104-1048 |
| | (206) 292-8800 phone |
| 5 | (206) 292-0494 facsimile |
| | lrc@cablelang.com |

AMIGA'S REPLY MEMORANDUM OF LAW - 13
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

# **CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

William A. Kinsel
Law Offices of William A. Kinsel, PLLC
Market Place Tower
2025 First Avenue, Suite 440
Seattle, WA  98121

A copy was also served by hand delivery on July 25, 2008.

/s/
Lawrence R. Cock, WSBA No. 20326
Attorney for Plaintiff Amiga, Inc.
CABLE, LANGENBACH, KINERK & BAUER, LLP
Suite 3500, 1000 Second Avenue Building
Seattle, Washington 98104-1048
(206) 292-8800 phone
(206) 292-0494 facsimile
lrc@cablelang.com

AMIGA'S REPLY MEMORANDUM OF LAW - 14
Case No. CV07-0631RSM

CABLE, LANGENBACH,
KINERK & BAUER, LLP
SUITE 3500
1000 SECOND AVENUE BUILDING
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800